1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONIQUE TIRADO, on behalf of herself and the Class members,<br><br>               Plaintiff,<br><br>v.<br><br>VICTORIA'S SECRET STORES, LLC; L BRANDS, INC.,<br><br>               Defendants. | Case No. 1:21-cv-00636-JLT-SKO<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE AND GRANTING DEFENDANTS' ALTERNATIVE MOTION TO STAY ALL PROCEEDINGS<br><br>(Doc. 10) |

On March 15, 2021, Monique Tirado initiated this action, on behalf of herself and similarly situated employees, against her former employers, Victoria's Secret Stores, LLC and L Brands, Inc. (Doc. 1.) Tirado's claims raise various violations of California's Labor Code, resulting from Victoria's Secret's failure to fully compensate employees for the time spent undergoing temperature screenings prior to their shifts. (*Id*.) On June 16, 2021, Victoria's Secret filed a motion to dismiss or to stay all proceedings as duplicative of four previously filed class actions against Victoria's Secret which assert similar causes of action. (Doc. 10.) For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Victoria's Secret's motion to dismiss but **GRANTS** the motion to stay the action.

## I.     BACKGROUND

Tirado's claims arise from the imposition of required temperature checks, a policy which Victoria's Secret began in response to the COVID-19 pandemic. (Doc. 1 at 2, ¶ 1.) Tirado claims

1

that the policy required employees to spend approximately five minutes before each shift undergoing temperature screenings while off-the-clock and without compensation. (*Id.* at 4, ¶ 17.) Tirado alleges that Victoria's Secret implemented the temperature screening protocol on approximately March 4, 2020, across all its facilities in California. (*Id.* at 4-5, ¶¶ 17-19.) The complaint sets forth five causes of action each premised on Victoria's Secret's temperature screening protocol: (1) failure to pay for all hours worked under California Labor Code § 204; (2) failure to pay minimum wage and liquidated damages under Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; (3) waiting time penalties under Labor Code §§ 201-203; (4) failure to provide timely and accurate itemized wage statements under Labor Code §§ 201-203; and (5) unlawful business practices under California Business and Professions Code §§ 17200. (*Id.* at 1.) Tirado seeks to represent a proposed class defined as: "All current and former hourly, non-exempt workers employed at any Victoria's Secret store throughout California during the time period starting March 4, 2020 until resolution of this action." (*Id.* at 6, ¶ 31.) In its motion to dismiss, Victoria's Secret contends that Tirado's claims duplicate four putative class actions previously filed in California.

**A.      Previously Filed Putative Class Actions**

   1.   The *Ochoa* Action

  On March 14, 2017, Elizabeth Ochoa, a former employee of Victoria's Secret, filed a first amended complaint in the Superior Court of California, Alameda County. (Doc. 11 at 106.) Her claims include: (1) failure to pay wages for all time worked at minimum wage in violation of Labor Code §§ 1194 and 1197; (2) failure to pay proper overtime under Labor Code §§ 510, 1194, and 1198; (3) failure to authorize or permit meal periods in violation of Labor Code §§ 512 and 226.7; (4) failure to authorize or permit rest periods in violation of Labor Code § 226.7; (5) failure to provide complete and accurate wage statements in violation of Labor Code § 226; (6) failure to timely pay all earned wages and final paychecks in violation of Labor Code §§ 201, 202, and 203; (7) unfair business practices in violation of Business and Professions Code § 17200, *et seq.*; (8) civil penalties pursuant to PAGA, Labor Code § 2698, *et seq.* (*Id.* at 106-07.)   Ochoa's claims for failure to compensate employees at minimum wage for all time

worked arise from Victoria's Secret's policy of that required employees to arrive approximately

fifteen minutes prior to the start of their shift to "arrange the stores before they opened to the

public." (Doc. 11 at 112.) The complaint separately defines subclasses for each claim. (*Id.* at

118.) For the minimum wage class, the proposed class includes all current and former non-

exempt California employees of Victoria's Secret within "within the four years prior to the filing

of the initial complaint in this action and through the date notice is mailed to a certified class"

who did not receive full minimum wage compensation. (*Id.*)

The *Ochoa* action was stayed pending the outcome of another class actions suit filed

against Victoria's Secret (*Mayra Casas v. Victoria's Secret Stores, LLC*, No. 14-cv-6412-

GW(VBXx) (C.D. Cal.)). (Doc. 10 at 11.) The parties reached a settlement in *Casas* that resolved

most of the claims in *Ochoa*. (Doc. 11 at 207.) In *Casa*, the claims included "failure to pay

reporting time on regularly schedule shifts"; "failure to pay reporting time on 'call-in' shifts"; and

"failure to pay for all time worked." (*Id.* at 11.) At the time Victoria's Secret filed its motion to

dismiss Tirado's claims, it had reached a settlement in principle with the remaining claims in

*Ochoa*. (Doc. 10 at 12.) On September 13, 2022, the superior court issued a preliminary approval

of the settlement agreement. *See* Joint Status Report at 3, *Lee v. Victoria's Secret Stores LLC*,

8:19-cv-01625-DOC (KESx) (C.D. Cal. Dec. 22, 2022), ECF No. 27.

2.   The *Lee* Action

On May 28, 2019, Shauntese Lee initiated a putative class action against Victoria's Secret

in the Superior Court of California, Orange County. (Doc. 11 at 251.) Victoria's Secret removed

the action to the Central District of California. (*Id.* at 273.) Lee's complaint included a claim for

failure to pay wages, including overtime, under Labor Code §§ 510 and 1194. (*Id.* at 251.) Lee

asserted claims for unpaid wages because store managers required employees to start their shifts

early due to high customer volume or short staff periods; Victoria's Secret used an unlawful

rounding policy; and it failed to pay the required extra hour worked for interrupted rest periods.

(*Id.* at 258-60.) Lee's proposed class included all non-exempt employees in California within four

years prior to filing the complaint until resolution of the action. (*Id.* at 254.) The parties stipulated

to stay the action pending conclusion of the *Ochoa* action. (*Id.* at 282-83.)

3.  The *Cortes* Action

On September 27, 2019, Elia Cortes initiated a putative class action against Victoria's Secret raising similar causes of action as in *Ochoa* and *Lee*. (Doc. 11 at 321.) Victoria's Secret removed the case to federal court. Notice of Removal, *Cortes v. Victoria Secret Stores, LLC*, 5:19-cv-07639-EJD (N.D. Cal. Nov. 20, 2019), ECF No. 1. Cortes alleged that Victoria's Secret required employees to work during their rest breaks and to undergo a bag check before leaving, resulting in unpaid wages. (Doc. 11 at 325-26.) Cortes's proposed class includes all California non-exempt employees, who suffered the asserted labor code violations, within four years prior to filing of the complaint until judgment is entered. (*Id.* at 323.) Over Cortes's objections, the Central District of California entered a stay pending the final disposition of the *Lee* action. *Cortes v. Victoria Secret Stores, LLC*, 2020 WL 1139657 (N.D. Cal. Mar. 9, 2020).

4.  The *Velazquez* Action

On February 24, 2020, Monica Velazquez and Crystal Fregoso initiated a putative class action in the Superior Court of California, Los Angeles County. (Doc. 11 at 342.) Asserting similar claims as in *Ochoa*, *Lee*, and *Cortes*, the plaintiffs alleged that Victoria's Secret subjected employees to bag checks and security screenings after they clocked out and required employees to wait after their shift for all employees to leave and set store alarms. (Doc. 11 at 343.) The proposed class included all California non-exempt employees from August 12, 2017 through the filing of the certified class notice. (*Id.* at 355-56.) Victoria's Secret removed the case to federal court and moved to stay the action. Notice of Removal, *Velazquez v. L Brands, Inc.*, 2:20-cv-03521-DOC-KES (C.D. Cal. Apr. 16, 2020), ECF No. 1. The court granted the stay, over plaintiffs' objections. (Doc. 11 at 413-21.) On January 20, 2023, the parties filed a stipulation to dismiss. Stipulated Dismissal, *Velazquez*, 2:20-cv-03521-DOC-KES, ECF No. 26.

**B.     Status Update**

Because the *Ochoa* action reached preliminary approval of the class settlement since Tirado and Victoria's Secret filed their briefing for this motion, the Court requested the parties provide a status update regarding the *Ochoa* settlement and whether it covers the class claims asserted by Tirado. (Doc. 32.) Tirado alleges that the *Ochoa* court required the parties to amend

4

the settlement agreement "so that the release of class claims would specify that it is limited to claims based on facts alleged in the operative complaint." (Doc. 34 at 3-4 (emphasis omitted).) Victoria's Secret alleges the *Ochoa* settlement releases class claims from January 3, 2013 through May 26, 2021. (*Id.* at 2.) Although the parties did not submit the precise settlement class definition or proposed agreement, they agree the scope of the *Ochoa* release includes only claims that were asserted or that could have been asserted in the operative second amended complaint. (*Id.* at 2-4.) Tirado and the named plaintiff in the *Lee* action opted out of the *Ochoa* settlement. (*Id.* at 2-5.) With respect to whether the settlement covers Tirado's class claims, the parties generally maintain the same arguments asserted in their original briefing. (*Id.*)

## II.   EVIDENTIARY ISSUES

With its motion to dismiss or stay, Victoria's Secret filed a request for judicial notice of fifteen court filings from the *Casas*, *Ochoa*, *Lee*, *Cortes*, and *Velazquez* lawsuits. (Doc. 11.) Tirado did not oppose the request for judicial notice. In general, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Parties may introduce evidence outside the pleadings under two exceptions: "the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Under Rule 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is generally known or "can be accurately and readily determined" from indisputably reliable sources. Fed. R. Evid. 201. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984-85 (E.D. Cal. 2012) (taking judicial notice of documents filed in related Iowa state court proceedings); *see Schulze v. FBI*, 2010 WL 2902518, at *1 (E.D. Cal. July 22, 2010) (quoting *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.2007) ("A federal court may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). Though the Court does not accept the representations stated within the court filings as true, it may take notice of the fact those representations were made. Accordingly, the request for judicial notice is **GRANTED**.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.      DISCUSSION

Victoria's Secret seeks a motion to dismiss or stay Tirado's claims based upon the first-to-file rule, the *Colorado River* doctrine, and the Court's inherent authority to control the cases on its docket. (Doc. 10 at 9-10.) The Court addresses each in turn.

**C.      First-to-File Rule**

Victoria's Secret argues Tirado's claims should be dismissed or stayed under the first-to-file rule in light of the previously filed *Lee*, *Cortes*, and *Velasquez* actions. (Doc. 10 at 16.) The first-to-file rule allows a district court to stay proceedings or dismiss a case "if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The first-to-file rule "serve[s] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cali. v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir. 1980). Though the rule is not applied mechanically, courts typically analyze three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Kohn*, 787 F.3d at 1240.

"The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltade*, 946 F.2d at 628 ((quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). When a court finds the rule to be applicable, the court has the power to transfer, stay, or dismiss the case. *Id.* at 623. However, the court has discretion to disregard the rule in the interests of equity. *Id.* at 628.

1.   Chronology of the Actions

The parties do not dispute that the *Lee*, *Cortes*, and *Velazquez* actions were filed before Tirado filed her complaint. The first factor, therefore, weighs in favor of application of the rule. *See De La Cruz v. Target Corp.*, 2018 WL 3817950, at *2 (S.D. Cal. Aug. 8, 2018) ("The first

1    factor, chronology of the lawsuits, simply requires that the case in question was filed later in

2    time." (internal quotations omitted)).

3              2.   Similarity of the Parties

4              The second element of the first-to-file rule evaluates the similarity of the parties. In the

5    context of class actions, courts typically examine the similarity among the proposed classes rather

6    than the named plaintiffs. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal.

7    2010); *see also Red v. Unilever U.S., Inc.*, 2010 WL 11515197, at *4 (C.D. Cal. Jan. 25, 2010)

8    (collecting cases). When the scope of the proposed classes includes "at least some of the same

9    individuals," courts often find this element satisfied. *Wallerstein v. Dole Fresh Vegetables, Inc.*,

10   967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013); *Riffel v. Regents of the Univ. of Cal.*, 2019 WL

11   5978784, at *4 (C.D. Cal. Nov. 12, 2019) (finding sufficiently similar parties where "some of the

12   members of the proposed class in Riffel . . . would fall within the proposed [first-filed] class").

13   The named plaintiff's ability to opt in to the first-filed class further demonstrates the similarity of

14   the two classes. *See Adoma*, 711 F. Supp. 2d at 1148.

15             Victoria's Secret argues that Tirado's proposed class is "entirely subsumed within the

16   prior-filed cases." (Doc. 16 at 6.) The prior actions have a similarly defined class because they

17   seek to represent all non-exempt employees of Victoria's Secret in California. (Doc. 11 at 118,

18   254, 323, 355-56.) Tirado's proposed class likewise includes "[a]ll current and former hourly,

19   non-exempt workers employed at any Victoria's Secret store throughout California." (Doc. 1 at 6,

20   ¶ 31.) Despite the similarities, Tirado argues the prior actions' classes are not substantially similar

21   because none of plaintiffs in the prior actions can represent Tirado and her claims. (Doc. 15 at 18-

22   19.) Because Tirado's claims arise from a policy instituted to combat the COVID-19 pandemic,

23   which started after each of the prior actions were filed, she contends the prior plaintiffs lack

24   standing to bring Tirado's claims because they left Victoria's Secret prior to the institution of this

25   policy. (*Id.* at 15-16); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d

26   29, 30 (9th Cir. 1994) (holding only "an aggrieved class member" has standing).

27             Under the similarity of the parties, the inclusion of least some members of Tirado's class

28   in the prior proposed classes sufficiently satisfies the rule. Tirado's proposed class includes

7

former and current non-exempt employees starting on March 4, 2020 until the resolution of this

action.[1] (Doc. 1 at 6, ¶ 31.) Tirado does not limit the definition of her class to those employees

who underwent temperature screenings. (*Id.*) Therefore, the proposed class in *Lee* contains at

least some cross over of putative class members. The *Lee* class includes former and current non-

exempt employees within four years prior to filing the complaint until the resolution of the action.

(Doc. 11 at 254.) Because the *Lee* action has not yet resolved, at least some overlap exists among

the non-exempt California employees that may recover from Lee's claims with the employees

that may recover from Tirado's claims. The proposed class in *Cortes* likewise has an overlapping

timeline with Tirado's proposed class.[2] (Doc. 11 at 254, 323.) Accordingly, the Court finds this

factor also weighs in favor of application of the rule.

### 3.   Similarity of the Issues

Victoria's Secret maintains that the prior actions, *Lee*, *Cortes*, and *Velazquez*, involve

substantially similar issues as Tirado's case because they contain the same causes of action under

the California Labor Code and the Business and Professions Code. (Doc. 10 at 17-18.) Tirado, on

the other hand, argues that the factual basis giving rise to each of the causes of action differs,

rendering the issues not substantially similar. (Doc. 15 at 19-20.) The parties' dispute turns on the

degree of similarity required by the first-to-file rule. The rule does not require the issues to be

identical, but the issues must be "substantially similar" and must have "substantial overlap"

between the suits. *Kohn*, 787 F.3d at 1240-41. A substantial overlap exists where the cases

involve the same "central questions." *Pacesetter*, 678 F.2d at 95.

In Victoria's Secret's view, the comparison occurs at the cause of action level. (Doc. 10 at

18.) Victoria's Secret argues that the prior actions similarly question whether Victoria's Secret

failed to fully compensate employees for time spent working prior to their shifts. (Doc. 16 at 7-8.)

Victoria's Secret relies upon *Morrison v. CRST Van Expedited Inc.*, to show that overlap in

causes of action suffices and an additional claim does not necessarily negate substantial similarity

---

[1] Although the Court agrees with Tirado that a lack of standing *may* have precluded the prior plaintiffs from asserting
Tirado's claims, this argument relates more to the similarity of issues factor.

[2] The Court does not evaluate the *Velazquez* action's proposed class or the similarity of its issues because the parties
have stipulated to dismissal in that action without a public, class settlement.

of the issues. 2010 WL 11519596, at *3 (C.D. Cal Aug. 5, 2010); (Doc. 10 at 17-18.) However, to reach its conclusion that substantial overlap existed, the *Morrison* court did not merely compare the causes of action asserted but also considered whether the second plaintiff's theories of liability "rest[ed] upon the same *factual* allegations." *Morrison*, 2010 WL 11519596, at *3 (emphasis added). Substantial similarity of the issues requires more than simply a comparison of the causes of action; rather the cases must share similar factual underpinnings of those claims. *See e.g.*, *Espineli v. Toyotal Motor Sales U.S.A., Inc.*, 2018 WL 1569570, at **1-2 (E.D. Cal. Mar. 30, 2018) (finding insufficient overlap where both cases alleged design defect due to use of soy-based wiring but the first case alleged problems with the wiring more broadly and did not specifically allege problems in the engine control wiring harness); *see also Peak v. Green Tree Fin. Servicing Corp.*, 2000 WL 973685, at *2 (N.D. Cal. July 7, 2000) (finding substantial similarity of the issues where the both sets of claims arose from the same "allegedly offending conduct").

To support its interpretation of the issue similarity factor, Victoria's Secret also relies on the *Cortes* court's decision to stay the case pending the resolution in the *Lee* and *Ochoa* actions. (Doc. 10 at 18.) It contends that *Cortes* reached its decision because of the similarity in claims asserted and remedies sought. (*Id.*; Doc. 16 at 5.) However, the *Cortes* court not only considered the similarity in the causes of action, but also evaluated the factual basis of the claims. *Cortes*, 2020 WL 1139657, at *4. In *Cortes*, the plaintiff asserts a claim for unpaid rest periods because employees had to keep their walkie-talkies on during breaks. *Id.* The *Lee* complaint states a claim under the same labor code violation, based on the same walkie-talkie policy. *Id.* The court concluded substantial overlap existed in the unpaid rest period claims. *Id.* However, the court also recognized that Cortes raised a separate, distinct issue by claiming unpaid wages for the time employees spent undergoing security bag checks. (*Id.*) Given the substantial factual overlap of Cortes's and Lee's other claims, the Court determined a stay under the first-to-file rule was appropriate but refused to dismiss the case because "the bag check claim is not likely to be resolved in the *Lee* action."[3] (*Id.*)

---

[3] Likewise in *Velazquez*, the court evaluated the factual basis giving rise to the labor code violations. (Doc. 11 at 419.) The court found sufficient factual overlap with *Cortes*, where the plaintiff also challenged the failure to pay for

Similarly, Tirado's unpaid wages claims assert a different factual theory for liability not alleged in the prior actions. Tirado's claims arise from the temperature screening policy Victoria's Secret implemented in response to the COVID-19 pandemic. (Doc. 1 at 2, ¶ 1.) Each of the prior actions against Victoria's Secret were initiated before the pandemic began, and therefore, the complaints do not include claims for unpaid wages relating to the temperature screening policy. On the other hand, because it is likely that security bag checks would have occurred at the same time as the temperature checks, this case poses a likelihood of significant overlap with the *Cortes* case. *Melendras v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) ("[W]hether [representative parties] may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); *see also McGhee v. Tesoro Refining & Mktg*. Co. LLC, 440 F. Supp. 3d 1062, 1072 (N.D. Cal. 2020) (dismissing named plaintiff's waiting time penalties claim "to the extent that is relies on an injury that he did not himself suffer"). Because resolution of the prior actions against Victoria's Secret would likely resolve Tirado's claims, the issues present substantial overlap. *See Swangler v. Cherne Contracting Corp.*, 2021 WL 6332532, at *3 (N.D. Cal. Jan. 22, 2021) (finding substantial overlap of issues where both plaintiffs brought unpaid wages claims to recover time spent "to complete a check-in process that was 'off-the-clock' and unpaid and to be at their place of work at the beginning of their shift").

Victoria's Secret raises an additional argument to demonstrate substantial similarity of the issues.[4] It argues that Tirado's claims under Labor Code § 226 for inaccurate wage statements and § 203 for payment of all wages at termination overlap with *Lee*, *Cortes*, and *Velazquez* and this duplication mandates application of the first-to-file rule. (Doc. 16 at 8.) The penalties stemming from § 226 accrue per paid period in which a violation occurs, not for each error in wages

---

off-the-clock security checks and closing procedures. *Id.* Velazquez's claims for unpaid overtime and failure to provide meal and rest periods rested on the same security bag check policy. *Id.*

[4] Arguably, the Court should disregard Victoria's Secret's argument because it waited to raise this until its reply. *United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) ("[A]rguments raised for the first time in a reply brief are generally considered waived."). Though arguments raised for the first time in the reply brief deprive the non-movant of the opportunity to respond, Victoria's Secret's argument does not, standing alone, form the basis of the Court's decision.

1   miscalculated on the statement. Cal. Lab. Code § 226(e)(1). Because the period of Tirado's

2   proposed class shares at least some overlap with those proposed in *Lee* and *Cortes*, resolution of

3   the § 226 claims for overlapping pay periods would likely bar subsequent recovery by employees

4   for those pay periods as to prevent double recovery. With respect to the § 203 claims, settlements

5   in the earlier actions will likely include a release of those claims for unpaid wages at termination,

6   independent of the unpaid wages due to off-the-clock temperature screenings. *See Dmuchowsky v.*

7   *Sky Chefs, Inc.*, 2018 WL 5886529 (N.D. Cal. Nov. 9, 2018) (finding payment to plaintiff from a

8   prior class settlement barred subsequent recover of his § 203 recovery, but not his separate unpaid

9   overtime claim). Even still, the Court finds the first-to-file rule does not warrant dismissal at this

10  time. There exists *some*, though slight, possibility that the facts will demonstrate that the *Cortes*

11  matter will not fully address the class Tirado seeks to represent. *See Nat'l Public Radio, Inc. v.*

12  *U.S. Central Command*, 570 F. Supp. 3d 866, 872 (S.D. Cal. 2021) (finding first-to-file rule does

13  not apply where the plaintiff in the second action "may not be fully remedied if the case is

14  dismissed or stayed due to the existence" of differences in the first action's claims). Thus, the

15  totality of these factors and in the interest of equity and efficiency, as discussed below, weighs in

16  favor of staying these proceedings.

17          4.   Equity and Efficiency

18          "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946

19  F.2d at 628. In *Alltrade*, the Ninth Circuit recognized the district court has "an ample degree of

20  discretion" and may "dispense with the first-filed principle for reasons of equity." *Id.* (internal

21  quotations omitted); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal.

22  2010) ("Even assuming the three requirements of the first-to-file rule are satisfied here, it does

23  not follow that application of the rule is appropriate."). The primary purpose of the rule is to

24  promote comity, to preserve unnecessary waste of judicial resources, and to avoid conflicting

25  judgments. *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 749-50 (9th Cir.

26  1979) *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836

27  F.3d 987 (9th Cir. 2016).

28          Granting a stay of Tirado's claims promotes comity, efficiency, or equity. First, the risk of

1  some duplicative recovery by class members exists given the overlap among the prior actions'

2  § 226 and § 203 claims and the off-the-clock claims. Tirado's case has effectively been stayed for

3  approximately a year and half pending an outcome of this motion because of this District's

4  considerable backlog. In that time, the *Ochoa* action reached the preliminary approval stage for

5  its class action settlement. Joint Status Report at 3, *Lee*, 8:19-cv-01625-DOC (KESx), ECF No.

6  27. However, the parties' status report regarding *Ochoa*'s settlement provided little to no

7  additional details as to the scope of claims included in the settlement such that the Court can

8  discern what, if any, portion of Tirado's class claims might have been released. (*See* Doc. 34.)

9  Moreover, the *Lee* and *Cortes* actions remain stayed pending final resolution of the *Ochoa* action.

10  (*Id.* at 4.) Once these actions reach a final resolution, the parties will be in a better position to

11  determine more precisely which of the alleged injuries have not yet been redressed. Accordingly,

12  the Court, in its discretion, finds the first-to-file rule warrants a stay of Tirado's claims until

13  resolution of the *Lee* and *Cortes* actions.

14  **D.**   ***Colorado River* Doctrine**

15        Victoria's Secret also seeks dismissal under the *Colorado River* doctrine given the

16  pending *Ochoa* case in state court. (Doc. 10 at 18-23.) Although not an "abstention" doctrine, the

17  *Colorado River* doctrine functions similarly and allows a district court to stay or dismiss an action

18  in deference to parallel state proceedings. *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir.

19  1989). The *Colorado River* doctrine applies only in "rare cases" and "only the clearest of

20  justifications will warrant dismissal." *United States v. State Water Res. Control Bd.*, 988 F.3d

21  1194, 1202 (9th Cir. 2021) (citing *Colo. River Water Conservation Dist. v. United States*, 424

22  U.S. 800, 819 (1976)). The court's "task in [such] cases ... is not to find some substantial reason

23  for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether

24  there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under

25  *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v.

26  Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). If "substantial doubt"

27  exists about whether the parallel state proceeding "will be an adequate vehicle for complete and

28  prompt resolution of the issues between the parties," courts may not dismiss the case. *Id.* at 28.

The Ninth Circuit articulated eight factors to determine whether the *Colorado River* doctrine applies:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). The factors do not operate mechanically, and the weight given to each factor varies from case to case. *State Water Res.*, 988 F.3d at 1203. The eighth factor is considered a "preliminary matter." *R.R. St.*, 656 F.3d at 979 n.9. The Ninth Circuit has "repeatedly emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the *entire* case before the federal court." *State Water Res.*, 988 F.3d at 1204 (emphasis added).

The eighth factor does not require "exact parallelism" between the issues but "substantial similarity of claims is necessary." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017). As similarly discussed regarding similarity of the issues in the *Lee* and *Cortes* actions, the *Ochoa* action does not have substantially similar claims because it will likely not resolve Tirado's unpaid wages claim arising from off-the-clock time spent undergoing temperature checks. The *Ochoa* claims for unpaid wages arise from the failure to pay employees who worked arranging stores prior to their shifts. (Doc. 11 at 112.) Ochoa, who left Victoria's Secret in February 2016, cannot serve as an adequate representative for atypical class claims based on policies initiated after her employment ended. (*Id.* at 109.) Therefore, the *Ochoa* settlement, which includes only claims asserted and those that could have been asserted, likely does not resolve the temperature screening claims. The factual distinctions underlying the claims preclude application of the *Colorado River* doctrine. Because the Court lacks "full confidence that the parallel state proceeding will end the litigation," it would be an abuse of discretion to dismiss Tirado's claims. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

///

13

1    Victoria's Secret's arguments to the contrary are unpersuasive. First, Victoria's Secret

2    argues that the *Ochoa* action will resolve the "vast majority" of issues in Tirado's case. (Doc. 10

3    at 22.) Claim comparison in the *Colorado River* doctrine focuses on factual similarity rather than

4    similarity in the causes of action. For example, in *Nakash v. Marciano*, the Ninth Circuit held

5    substantial claim similarity existed because the disputes in both actions concerned the same

6    factual issues about the interactions between the parties, despite the prior case asserting state law

7    claims and the second case asserting federal law claims. 882 F.2d at 1416-17; *see also Waterbury*

8    *v. Safeway Inc.*, 2006 WL 3147687, at *4 (N.D. Cal. Oct. 31, 2006) (finding substantial similarity

9    in the underlying issue in both actions which concerned whether Safeway misclassified its

10   employees, thus entitling them to overtime pay, even though causes of action were different).

11   Therefore, Victoria's Secret's arguments regarding the overlap in causes of action, without

12   explaining how the factual circumstances are similar, fail.

13   Second, Victoria's Secret argues the eighth factor is met because *res judicata* will bar

14   Tirado's claims after the *Ochoa* action reaches a settlement for the class claims. Under the

15   California *res judicata* doctrine,[5] a final judgment on the merits bars a subsequent action by the

16   same parties, or parties in privity, "on the same cause of action." *Amin v. Khazindar*, 112 Cal.

17   App. 4th 582, 589-90 (2003). "A 'cause of action' is defined by the 'primary right' theory." *Id.*

18   The same primary right exists in both actions only "[i]f the matter was within the scope of the

19   action, related to the subject matter and relevant to the issues, so that it *could* have been raised,

20   the judgment is conclusive on it." *Id.* (emphasis in original); *Panos v. Great W. Packing Co.*, 21

21   Cal. 2d 636, 637 (1943) ("The doctrine of res judicata rests upon the ground that the party to be

22   affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate

23   the same matter in a former action in a court of competent jurisdiction."). The *Ochoa* settlement

24   includes all claims that could have been raised in the operative complaint, mirroring the *res*

25   *judicata* standard. (*See* Doc. 34 at 2.) However, as previously explained, Ochoa may or may not

26   serve as an adequate representative of the temperature check claims because they do not share

27

28   [5] When *res judicata* or claim preclusion is based on a state court judgment, state claim preclusion law governs. *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016).

typicality or commonality with Ochoa's claims. *See Melendres*, 784 F.3d at 1262. Although both Ochoa's injuries and Tirado's injuries generally arise from unpaid wages for work performed off-the-clock, they may not share substantial similarity in the underlying employment practice and policies that created those claims. Accordingly, distinct legal questions may exist about whether the different policies each violate the California Labor Code. *See Woodard v. Labrada*, 2021 WL 4499184, at *32 (C.D. Cal. Aug. 31, 2021) ("Differences in applicable law among putative class members can impede the generation of common answers." (internal quotations and alterations omitted)). Indeed, Victoria Secret maintains that Tirado's claims lack merit because "it is an open question as to whether government-mandated screenings would even be compensable." (Doc. 34 at 3 n.1.) Thus, Tirado's temperature screening claims likely could not have been raised in the *Ochoa* complaint, demonstrating that the two cases assert different causes of action under the primary right theory.

Victoria's Secret's arguments regarding the preference to avoid piecemeal litigation fail for similar reasons. It argues that a stay will avoid piecemeal litigation because Tirado's claims "are a subset of the claims at issue in the *Ochoa* action." (Doc. 10 at 20.) As explained above, Tirado's claims rest on a unique factual basis not presented in the *Ochoa* action. A determination about whether the temperature screening protocol violates the California Labor Code's requirement to compensate employees for all time worked does not necessarily conflict with a potentially contrary determination of the *Ochoa* claims challenging Victoria's Secret's policy of requiring workers to arrange stores before their shifts begin. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.").

Given that the *Ochoa* action may not resolve all of Tirado's claims, the remaining factors receive little weight. Victoria's Secret's arguments regarding the first to jurisdiction, choice of law, inconvenience of federal forum, and adequacy of state court to protect federal rights[6] cannot

---

[6] Victoria's Secret's arguments about the adequacy of state court further fail because "[t]his factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Travelers Indem.*, 914 F.2d at 1370 (internal quotations omitted) ("In addition, it appears that this Circuit has not applied this factor against the exercise of federal jurisdiction, only in favor of it.").

justify application of the *Colorado River* doctrine where the eight factor is not met. *State Water Res.*, 988 F.3d at 1208 ("[T]he eight factor is 'dispositive' in concluding that a stay of the entire case is not appropriate." (citing *Intel Corp.*, 12 F.3d at 913)). Accordingly, the Court finds the *Colorado River* doctrine does not warrant dismissal. Because the Court has already determined the first-to-file rule warrants a stay pending the *Lee* and *Cortes* actions, which are themselves stayed pending the *Ochoa* resolution, the Court need not address whether the *Colorado River* doctrine or the Court's inherent authority provides an independent basis to issue a stay.

## IV.   ORDER

For the reasons set forth above, the Court **ORDERS**:

1.   Victoria's Secret's request for judicial notice (Doc. 11) is **GRANTED**.

2.   Victoria's Secret's motion to dismiss (Doc. 10) is **DENIED WITHOUT PREJUDICE**.

3.   Victoria's Secret's alternative motion to stay (Doc. 10) is **GRANTED**.

4.   This action is administratively **STAYED** pending the resolution of *Lee* and *Cortes*. The parties **SHALL** filed a joint status report every six months, starting September 1, 2023, or within thirty days of entry of judgment in both the *Lee* and *Cortes* actions, whichever is sooner.

IT IS SO ORDERED.

Dated:   __**March 9, 2023**__

UNITED STATES DISTRICT JUDGE

16