1   Carolyn Hunt Cottrell (SBN 166977)
    Esther L. Bylsma (SBN 264208)
2   Philippe M. Gaudard (SBN 331744)
    SCHNEIDER WALLACE
3   COTTRELL KONECKY LLP
    2000 Powell Street, Suite 1400
4   Emeryville, California 94608
    Tel: (415) 421-7100
5   Fax: (415) 421-7105
    ccottrell@schneiderwallace.com
6   ebylsma@schneiderwallace.com
    pgaudard@schneiderwallace.com

7   *Attorneys for Plaintiff and the
    Putative Class*

8

9                 IN THE UNITED STATES DISTRICT COURT
10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  MONIQUE TIRADO, on behalf of herself    Case No. 1:21-CV-00636-JLT-SKO
    and the Class members,
13                                          **PLAINTIFF'S REQUEST FOR**
            Plaintiffs,                     **JUDICIAL NOTICE IN SUPPORT**
14                                          **OF OPPOSITION TO**
    vs.                                     **DEFENDANTS VICTORIA'S**
15                                          **SECRET STORES, LLC AND L**
    VICTORIA'S SECRET STORES, LLC;          **BRANDS, INC.'S MOTION FOR**
16  L BRANDS, INC.;                         **JUDGMENT ON THE PLEADINGS**

17          Defendants.
                                            Date:        June 17, 2024
18                                          Time:        9:00 a.m.
                                            Courtroom:   4 (7th Floor)
19
                                            Complaint Filed:   April 15, 2021
20

21

22

23

24

25

26

27

28

1    Pursuant to Rule 201 of the Federal Rules of Evidence ("FRE 201"), Plaintiff
2  Monique Tirado ("Tirado") respectfully requests that the Court take judicial notice
3  of three documents that are a part of the court file in a case styled as *Elizabeth Ochoa,*
4  *et al. v. L Brands, Inc., et al.*, Los Angeles County Superior Court Case No. BC661822
5  ("*Ochoa*").

6    Under FRE 201, "[t]he court may judicially notice a fact that is not subject to
7  reasonable dispute because it can be accurately and readily determined from sources
8  whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Courts
9  have consistently held that courts may take judicial notice of documents filed in other
10 court proceedings." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984
11 (E.D. Cal. 2012); *see Martin v. QBE Ins. Corp.*, 2019 WL 2009874, at *3 (S.D. Cal.
12 May 7, 2019) (taking judicial notice that "complaints were filed on certain dates, and
13 that the pleadings contained certain allegations (without claiming that the allegations
14 were or are true)") (internal quotation marks and alteration omitted). Here, Plaintiff
15 requests that the Court take judicial notice of court documents previously filed in
16 the Superior Court for the State of California. Thus, the documents are properly the
17 subject of judicial notice pursuant to FRE 201.

| Exhibit A | Elizabeth Ochoa's First Amended Complaint, filed on March 14, 2017 in *Ochoa* |
| Exhibit B | Elizabeth Ochoa's Supplemental Briefing in Support of the Motion for Preliminary Approval of Class Action Settlement, filed June 10, 2022 in *Ochoa* |
| Exhibit C | Order Granting Motion for Final Approval of Class Action Settlement, filed February 3, 2023 in *Ochoa* |

1

2

3    DATED: May 15, 2024              SCHNEIDER WALLACE
                                      COTTROLL KONECKY LLP
4

5                                     __/s_ Esther L. Bylsma_____

6                                     Carolyn H. Cottrell
                                      Esther L. Bylsma
7                                     Philippe M.J. Gaudard
                                      SCHNEIDER WALLACE
8                                     COTTRELL KONECKY LLP

9

10                                    *Attorneys for Plaintiff and the Putative Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT A

ENDORSED
FILED
ALAMEDA COUNTY

MAR 1 4 2017

SUE PESKO

By

1  Joseph Lavi, Esq. (SBN 209776)
   Vincent C. Granberry, Esq. (SBN 276483)
2  **LAVI & EBRAHIMIAN, LLP**
   8889 W. Olympic Blvd., Suite 200
3  Beverly Hills, California 90211
   Telephone: (310) 432-0000
4  Facsimile: (310) 432-0001

5  Attorneys for PLAINTIFF ELIZABETH OCHOA,
   on behalf of herself and others similarly situated.

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                    **FOR THE COUNTY OF ALAMEDA**

9

10 ELIZABETH OCHOA, on behalf of herself and       Case No.: RG17844337
   others similarly situated,

11                                                  **CLASS ACTION**

12             PLAINTIFF,                           **PLAINTIFF ELIZABETH OCHOA'S
                                                    FIRST AMENDED COMPLAINT FOR
13 vs.                                              DAMAGES AND RESTITUTION AND
                                                    FOR:**

14
                                                    1.   **FAILURE TO PAY WAGES FOR
15 L BRANDS, INC.; LIMITED BRANDS, INC.;                 ALL TIME WORKED AT
   THE LIMITED, INC.; VICTORIA'S SECRET                  MINIMUM WAGE IN VIOLATION
16 STORES, LLC; and DOES 1 to 100, Inclusive,            OF LABOR CODE SECTIONS 1194
                                                         AND 1197**
17
                                                    2.   **FAILURE TO PAY PROPER
18             DEFENDANTS.                                OVERTIME WAGES FOR DAILY
                                                         OVERTIME WORKED, ALL
19                                                       HOURS WORKED, AND FAILURE
                                                         TO INCLUDE BONUS PAY IN
20                                                       CALCULATING OVERTIME
                                                         WAGES IN VIOLATION OF
21                                                       LABOR CODE SECTIONS 510,
                                                         1194, AND 1198**

22                                                  3.   **FAILURE TO AUTHORIZE OR
23                                                       PERMIT MEAL PERIODS IN
                                                         VIOLATION OF LABOR CODE
24                                                       SECTIONS 512 AND 226.7**

25                                                  4.   **FAILURE TO AUTHORIZE OR
                                                         PERMIT REST PERIODS IN
26                                                       VIOLATION OF LABOR CODE
                                                         SECTION 226.7**

27                                                  5.   **FAILURE TO PROVIDE
28                                                       COMPLETE AND ACCURATE**

| | | |
|---|---|---|
| | | **WAGE STATEMENTS IN VIOLATION OF LABOR CODE SECTION 226** |
| | 6. | **FAILURE TO TIMELY PAY ALL EARNED WAGES AND FINAL PAYCHECKS DUE AT TIME OF SEPARATION OF EMPLOYMENT IN VIOLATION OF LABOR CODE SECTIONS 201, 202, AND 203** |
| | 7. | **UNFAIR BUSINESS PRACTICES, IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, et seq.** |
| | 8. | **CIVIL PENALTIES PURSUANT TO THE PRIVATE ATTORNEY GENERAL ACT OF 2004 ("PAGA"), LABOR CODE SECTION 2698, et seq.** |
| | | **DEMAND FOR JURY TRIAL** |

**COMES NOW** Plaintiff ELIZABETH OCHOA ("Plaintiff"), who alleges and complains against Defendants L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC, and DOES 1 to 100, inclusive, (collectively "Defendants") as follows:

## I.    INTRODUCTION

1.    This is a class action lawsuit seeking unpaid wages and interest thereon for unpaid wages for all hours worked at the minimum wage and overtime rates, including failure to pay overtime at the proper rate, of pay due to Defendants' policy, practice, and/or procedure of requiring Plaintiff and similarly situated hourly non-exempt employees to work 15 minutes prior to the start of their shift without being paid for that time, failure to include all remuneration into the overtime rate of pay, failure to authorize or permit timely first meal periods prior to the sixth hour of work and/or second meal periods; failure to separately compensate hourly non-exempt employees who are paid on commission and/or sales incentive for rest periods and failure to authorize or permit third rest periods; statutory penalties for failure to provide accurate wage statements; waiting time penalties in the form of continuation wages for failure to timely pay employees all wages due upon separation of

1    employment; injunctive relief and other equitable relief; reasonable attorney's fees pursuant to

2    California Labor Code sections 226(e), 1194, and 2699(g)(1); costs; and interest brought on behalf

3    of Plaintiff and others similarly situated.

4    **II.    JURISDICTION AND VENUE**

5    2.    This Court has jurisdiction over Plaintiff's and the Class Members' claims for unpaid

6    wages for all hours worked at the minimum wage and overtime rates of pay and failure to pay

7    overtime at the proper rate due to Defendants' policy, practice, and/or procedure of requiring

8    Plaintiff and similarly situated hourly non-exempt employees work 15 minutes prior to the start of

9    their shifts off-the-clock; failure to include all remuneration when calculating the overtime rate of

10    pay; failure to authorize or permit timely first meal periods prior to the sixth hour of work and/or

11    second meal periods; failure to separately compensate hourly non-exempt employees who are paid

12    on commission and/or sales incentive for rest periods and authorize or permit third rest periods;

13    statutory penalties for failure to provide accurate wage statements; waiting time penalties in the

14    form of continuation wages for failure to timely pay employees all wages due upon separation of

15    employment; injunctive relief and restitution under California Business & Professions Code section

16    17200 *et seq.* for the following reasons: Defendants operate throughout California; Defendants

17    employed putative class members in Alameda County at 345 Stoneridge Mall Drive, D207,

18    Pleasanton, CA 94588; at all relevant times, Defendants' employed putative class members through

19    its business located 345 Stoneridge Mall Drive, D207, Pleasanton, CA 94588; more than two-thirds

20    of the putative class members are California citizens; the principal violations of California law

21    occurred in California; no other class actions have been filed against Defendants in the last three

22    years alleging wage and hour violations; the conduct of Defendants forms a significant basis for

23    Plaintiff's and the Class Members' claims; and Plaintiff and the Class Members seek significant

24    relief from Defendants.

25    **III.    PARTIES**

26    3.    Plaintiff brings this action on behalf of herself and other members of the general

27    public similarly-situated.  The named Plaintiff and the class of persons on whose behalf this action

28    is filed are current, former and/or future employees of Defendants who work as hourly non-exempt

employees. At all times mentioned herein, the currently named Plaintiff is and was a resident of California and was employed by Defendants as a surgical technician, within the four years prior to the filing of the complaint.

4.    Defendants employed Plaintiff as an hourly non-exempt employee who was paid on commission/sales incentive from on or around May of 2014, through on around February 2, 2016.

5.    Plaintiff is informed and believes and on that basis alleges that Defendants employed Plaintiff and other hourly non-exempt employees, including hourly non-exempt employees who are paid on commission and/or sales incentive, throughout the State of California and therefore its conduct forms a significant basis of the claims asserted in this matter.

6.    Plaintiff is informed and believes and thereon alleges that Defendant L BRANDS, INC. is authorized to do business within the State of California and is doing business in the State of California and/or that Defendants DOES 1 - 20 are, and at all times relevant hereto were persons acting on behalf of L BRANDS, INC. in the establishment of, or ratification of, the aforementioned illegal wage and hour practices or policies. Defendant L BRANDS, INC. operates in Alameda County and employed putative class members in Alameda County at its business located at 345 Stoneridge Mall Drive, D207, Pleasanton, CA 94588.

7.    Plaintiff is informed and believes and thereon alleges that Defendant LIMITED BRANDS, INC. is authorized to do business within the State of California and is doing business in the State of California and/or that Defendants DOES 21 - 40 are, and at all times relevant hereto were persons acting on behalf of LIMITED BRANDS, INC. in the establishment of, or ratification of, the aforementioned illegal wage and hour practices or policies. Defendant LIMITED BRANDS, INC. operates in Alameda County and employed putative class members in Alameda County at its business located at 345 Stoneridge Mall Drive, D207, Pleasanton, CA 94588.

8.    Plaintiff is informed and believes and thereon alleges that Defendant THE LIMTIED, INC. is authorized to do business within the State of California and is doing business in the State of California and/or that Defendants DOES 41 - 60 are, and at all times relevant hereto were persons acting on behalf of THE LIMITED, INC. in the establishment of, or ratification of, the aforementioned illegal wage and hour practices or policies. Defendant THE LIMITED, INC.

1    operates in Alameda County and employed putative class members in Alameda County at its

2    business located at 345 Stoneridge Mall Drive, D207, Pleasanton, CA 94588.

3          9.      Plaintiff is informed and believes and thereon alleges that VICTORIA'S SECRET

4    STORES, LLC is authorized to do business within the State of California and is doing business in

5    the State of California and/or that Defendants DOES 61 - 80 are, and at all times relevant hereto

6    were persons acting on behalf of VICTORIA'S SECRET STORES, LLC in the establishment of, or

7    ratification of, the aforementioned illegal wage and hour practices or policies. Defendant

8    VICTORIA'S SECRET STORES, LLC operates in Alameda County and employed putative class

9    members in Alameda County at its business located at 345 Stoneridge Mall Drive, D207,

10   Pleasanton, CA 94588.

11         10.     Plaintiff is informed and believes and thereon alleges that Defendants DOES 81 -

12   100 are individuals unknown to Plaintiff. Each of the individual Defendants is sued individually in

13   his or her capacity as an agent, shareholder, owner, representative, manager, supervisor, independent

14   contractor and/or employee of each Defendant and participated in the establishment of, or

15   ratification of, the aforementioned illegal wage and hour practices or policies.

16         11.     Plaintiff is unaware of the true names of Defendants DOES 1 through 100. Plaintiff

17   sues said defendants by said fictitious names, and will amend this complaint when the true names

18   and capacities are ascertained or when such facts pertaining to liability are ascertained, or as

19   permitted by law or by the Court. Plaintiff is informed and believes that each of the fictitiously

20   named Defendants is in some manner responsible for the events and allegations set forth in this

21   complaint.

22         12.     Plaintiff is informed, believes, and thereon alleges that at all relevant times, each

23   defendant was an employer, was the principal, agent, partner, joint venturer, officer, director,

24   controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or

25   predecessor in interest of some or all of the other Defendants, and was engaged with some or all of

26   the other defendants in a joint enterprise for profit, and bore such other relationships to some or all

27   of the other defendants so as to be liable for their conduct with respect to the matters alleged in this

28   complaint. Plaintiff is further informed and believes and thereon alleges that each defendant acted

pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants. As used in this complaint, "Defendant" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action in which the word appears and Defendants L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC, and DOES 1 to 100, inclusive.

13.    At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

14.    Plaintiff makes the allegations in this complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading and Plaintiff reserves all of Plaintiff rights to plead in the alternative.

## IV.    DESCRIPTION OF ILLEGAL PAY PRACTICES

15.    Pursuant to the applicable Industrial Welfare Commission ("IWC") Wage Order ("Wage Order"), codified at California Code of Regulations title 8, section 11070, Defendants are employers of Plaintiff within the meaning of the applicable Wage Order and applicable California Labor Code sections. Therefore, each of these Defendants is jointly and severally liable for the wrongs complained of herein in violation of the Wage Order and the California Labor Code.

16.    **Failure to pay wages for all hours worked at the legal minimum wage**: Defendants employed many of their employees, including Plaintiff, as hourly non-exempt employees. In California, an employer is required to pay hourly employees for all "hours worked," which includes all time that an employee is under control of the employer and all time the employee is suffered and permitted to work. This includes the time an employee spends, either directly or indirectly, performing services which inure to the benefit of the employer.

17.    California Labor Code sections 1194 and 1197 require an employer to compensate

1    employees for all "hours worked" at least at a minimum wage rate of pay as established by the

2    Industrial Welfare Commission ("IWC") and the Wage Orders.

3        18.    In this case, Defendants employed a policy, practice, and/or procedure whereby

4    Plaintiff and similarly situated employees were required to arrive approximately 15 minutes prior to

5    the start of their shift in order in order to arrange the stores before they opened to the public.

6    Defendants failed to compensate Plaintiff and similarly situated hourly non-exempt employees for

7    this time.

8        19.    Despite the fact that California law requires employers to pay employees for all hours

9    worked at least at a minimum wage rate, because of Defendants failed to pay Plaintiff and similarly

10   situated hourly non-exempt employees for time spent arranging the stores prior to the start of their

11   shifts and before the stores opened to the public, Defendants policy, practice, and procedure resulted

12   in its hourly non-exempt employees working time for which they were not compensated any wages,

13   in violation of California Labor Code sections 1194, 1197, and the Wage Orders.

14       20.    **Failure to pay wages for all hours worked at the employee's overtime rate of**

15   **pay**: As described above, Defendants' policies, practices, and procedures require Plaintiff and

16   similarly situated employees arrive approximately 15 minutes prior to the start of their shift in order

17   to arrange the stores before they opened to the public without being compensated for that time.  The

18   foregoing resulted in time each work day which Plaintiff and similarly situated employees were

19   under control of Defendants but were not compensated.

20       21.    Labor Code sections 510 and 1194 require an employer to compensate employees a

21   higher rate of pay for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, and

22   on any seventh consecutive day of work in a workweek.

23       Any work in excess of eight hours in one workday and any work in excess of 40
         hours in any one workweek and the first eight hours worked on the seventh day of
24       work in any one workweek shall be compensated at the rate of no less than one and
         one-half times the regular rate of pay for an employee. Any work in excess of 12
25       hours in one day shall be compensated at the rate of no less than twice the regular
         rate of pay for an employee. In addition, any work in excess of eight hours on any
26       seventh day of a workweek shall be compensated at the rate of no less than twice the
         regular rate of pay of an employee.
27

28   (Lab. Code §510.)

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

22.    Despite that California law requires employers to pay employees for all hours worked and at a higher rate of pay when those hours fall during work periods in excess of 8 hours in a workday and 40 hours in a workweek; Defendants would fail to pay employees wages when arrived approximately 15 minutes prior to the start of their shift in order in order to arrange the stores before they opened to the public. To the extent the employees had already worked 8 hours in the day and or in workweeks they had already worked 40 hours in a workweek, the employees should have been paid overtime for this unpaid time. This resulted in non-exempt employees working time which should have been paid at the legal overtime rate, but was not paid any wages in violation of Labor Code sections 510, 1194, and the Wage Orders.

23.    **Failure to pay overtime at the legal overtime rate by failing to include bonus compensation in calculating the regular rate of pay for purposes of paying overtime:** Defendants employ hourly non-exempt employees, including Plaintiff and others similarly situated, with a compensation structure that includes bonus pay. At times, Plaintiff and similarly situated employees worked overtime hours under state law during pay periods that they earned bonus compensation.

24.    California Labor Code sections 510 and 1194 require an employer to compensate employees a higher rate of pay for hours worked in excess of eight hours in a workday:

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

(Cal. Lab. Code §510.)

25.    Despite the fact that California law requires employers to include bonus compensation as part of the regular rate of pay for determining overtime premium pay, Defendants entirely excluded their hourly non-exempt employees' bonus in calculating those employees' overtime rate of pay. This practice resulted in Plaintiff and other similarly situated hourly non-exempt employees working hours in excess of eight hours in a workday and/or 40 hours in a

1    workweek and Defendants paying them less overtime than they earned pursuant to California law.

2    26.    **Failure to pay hourly employees wages to compensate them for workdays**
3    **Defendants failed to provide required meal periods:** Defendants often employed hourly
4    employees, including the named Plaintiff and all others similarly-situated, for shifts longer than 10
5    hours in length.

6    27.    California law requires an employer to authorize or permit an employee an
7    uninterrupted meal period of no less than 30-minutes in which the employee is relieved of all duties
8    and the employer relinquishes control over the employee's activities prior to the employee's sixth
9    hour of work.  Cal. Lab. Code §§ 226.7, 512; Wage Order 9-2001, 11; *Brinker Rest. Corp. v. Super*
10   *Ct.(Hohnbaum)* (2012) 53 Cal.4th 1004.  An employer may not employ an employee for a work
11   period of more than 10 hours per day without providing the employee with a second such meal
12   period of not less than 30 minutes prior to the start of the eleventh hour of work.  *Id.*  If the
13   employee is not relieved of all duty during a meal period, the meal period shall be considered an "on
14   duty" meal period and counted as time worked. A paid "on duty" meal period is only permitted
15   when: (1) the nature of the work prevents an employee from being relieved of all duty; and (2) the
16   parties have a written agreement agreeing to on duty meal periods.

17   28.    If an employer fails to provide an employee a meal period in accordance with the
18   law, the employer must pay the employee one hour of pay at the employee's regular rate of pay for
19   each work day that a legally required meal period was not timely provided or was not duty-free.  *Id.*

20   29.    Plaintiff and similarly situated employees would work on workdays in shifts long
21   enough to entitle them to both first and second meal periods under California law.  Despite the fact
22   that California law requires employers to authorize or permit an uninterrupted, duty-free first meal
23   period of not less than 30 minutes prior to their sixth hour of work when they worked shifts more
24   than five hours in length, Defendants often failed to authorize or permit Plaintiff and similarly
25   situated hourly non-exempt employees to take their first meal periods prior the sixth hour of work in
26   violation of California law.

27   30.    Moreover, despite that California law requires a second duty-free meal period of not
28   less than 30 minutes when they worked shifts over 10 hours in length, Defendants routinely failed to

1  authorize or permit failed to authorize or permit second meal periods altogether when employees

2  worked shifts of more than 10 hours.

3     31.    In addition, Defendants failed to pay premium wages to Plaintiff and similarly

4  situated employees to compensate them for each workday the employees did not receive legally-

5  required first meal periods prior to the ·sixth hour of work or second meal periods.  Defendants

6  employed policies and procedures which ensured employees did not receive any premium wages to

7  compensate them for the workdays in which they did not receive all legally required meal periods.

8     32.    This practice resulted in Plaintiff and all other similarly situated employees not

9  receiving premium wages to compensate them for workdays which Defendants did not provide them

10  with either first or second duty free meal periods, or both, in compliance with California law.

11     33.    **Failure to pay hourly employees wages to compensate them for workdays**

12  **Defendants failed to provide required rest periods:** Defendants employed hourly employees,

13  including the named Plaintiff and all others similarly-situated, for shifts at least three and one-half

14  (3.5) hours in length.

15     34.    California law requires an employer to provide an employee a rest period of ten (10)

16  net minutes for every four hours worked, "which insofar as practicable shall be in the middle of

17  each work period."  Cal. Lab. Code §226.7; Wage Order No. 7, §12(A).  Thus, employees are

18  entitled to 10 minutes rest for shifts from three and one-half to six hours in length, 20 minutes for

19  shifts between six and ten hours in length, 30 minutes for shifts between 10 and 14 hours in length,

20  and so on. *See Brinker*, *supra*.

21     35.    If the employer fails to provide a required rest period, the employer must pay the

22  employee one hour of pay at the employee's regular rate of compensation for each work day the

23  employer did not provide all legally required rest periods.  *Id.*

24     36.    Defendants employed policies and procedures which ensured Plaintiff and similarly

25  situated employees would not receive all legally required rest periods.  Defendants also employed

26  policies and procedures which ensured Plaintiff and similarly situated employees did not receive any

27  premium wages to compensate them for workdays that they did not receive all legally required rest

28  periods.

37.    These practices resulted in Plaintiff and all other similarly situated employees not receiving wages to compensate them for workdays which Defendants did not provide them with all rest periods required by California law.

38.    **Failure to separately compensate hourly non-exempt employees who are paid on commission and/or sales incentive for rest periods:** Defendants also employed hourly employees who are paid on commission and/or sales incentive, including the named Plaintiff and others similarly-situated, pursuant to a compensation structure that failed to separately compensate them for rest periods.

39.    California law requires an employer to separately compensate commissioned employees for rest periods where the employer uses a commission compensation system that does not directly compensate for rest periods. *See* Wage Order No. 7, §§1, 2(T), 12(A); *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864, 872; and *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43.

40.    Defendants employed policies and procedures that compensated Plaintiff and similarly situated hourly employees who are paid on commission and/or sales incentive pursuant to a compensation plan that did not include a minimum hourly wage for rest breaks and failed to separately compensate Plaintiff and similarly situated hourly employees who are paid on commission and/or sales incentive for rest periods.

41.    Defendants also employed policies and procedures which ensured Plaintiff and similarly situated hourly employees who are paid on commission and/or sales incentive did not receive premium wages to compensate them for workdays that they were not separately compensated for their rest periods.

42.    These practices resulted in Plaintiff and all other similarly situated hourly employees who are paid on commission and/or sales incentive not receiving wages to compensate them for workdays which Defendants failed to provide them with separately compensated rest periods required by California law.

43.    **Pay Stub Violations**: California Labor Code section 226(a) provides, *inter alia*, that, upon paying an employee his or her wages, the employer must "furnish each of his or her employees

... an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

44.    In direct violation of California Labor Code sections 226(a)(1) and (4), Defendants failed to provide Plaintiff and similarly situated employees who are paid on commission and/or sales incentive accurate paystubs because: 1) Defendants deducted hourly employees who are paid on commission and/or sales incentive's hourly wages from their earned commissions and/or incentive pay rendering the total amount of their commissions; and 2) failed to separately compensate Plaintiff and similarly situated employees who are paid on commission and/or sales incentive for their rest periods, and thus their total gross earned wages and deductions inaccurate.

45.    Moreover, Defendants failed to provide accurate wage and hour statements to Plaintiff and similarly situated hourly non-exempt employees who were subject to Defendants' control for uncompensated time and who did not receive the wages they earned (including minimum wages, overtime wages, overtime at the proper overtime rate, as well as failure to pay premium wages for missed meal and rest periods).

46.    **Failure to Pay California Employees All Wages Due at Time of Termination/Resignation**: An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination (California Labor Code section 201) or within 72 hours of resignation (California Labor Code section 202).

47.    Because Defendants failed to pay Plaintiff and other similarly situated employees all their earned wages (including minimum wages, overtime wages, overtime wages and the proper

1   rate, and unpaid meal and rest period premium wages), Defendants failed to pay those employees

2   timely after each employee's termination and/or resignation.

3   **V.    CLASS DEFINITIONS AND CLASS ALLEGATIONS**

4       48.    Plaintiff brings this action on behalf of herself, on behalf of all others similarly

5   situated, and on behalf of the General Public, and as a member of a Class defined as follows:

6       A.    **Minimum Wage Class**: All current and former non-exempt employees

7   employed by Defendants in California at any time within the four years prior to the filing of the

8   initial complaint in this action and through the date notice is mailed to a certified class who were not

9   compensated at minimum wages for all of hours worked.

10       B.    **Overtime Wages Class**: All current and former non-exempt employees

11   employed by Defendants in California at any time within the four years prior to the filing of the

12   initial complaint in this action and through the date notice is mailed to a certified class who worked

13   more than eight in a day to whom Defendants did not pay overtime wages.

14       C.    **Regular Rate Class**: All current and former non-exempt employee employed

15   by Defendants in California at any time within the four years prior to the filing of the initial

16   complaint in this action and through the date notice is mailed to a certified class who received bonus

17   compensation and/or incentive pay during pay periods in which they worked more than eight hours

18   in a workday and/or 40 hours in a workweek and whose regular rate of pay did not include such

19   bonus compensation and/or incentive pay when Defendants calculated those employees' overtime

20   wages.

21       D.    **Meal Period Class**: All current and former hourly employees employed by

22   Defendants in California at any time within the four years prior to the filing of the initial complaint

23   in this action and through the date notice is mailed to a certified class who worked shifts of at least

24   six hours yet Defendants did not provide required duty-free meal periods of not less than 30 minutes

25   prior to the sixth hour of work, and/or who worked shifts more than ten hours yet Defendants did

26   not provide required duty-free meal periods of not less than 30 minutes prior to the start of their

27   eleventh hour of work.

28       E.    **Rest Period Class**: All current and former hourly employees employed by

1    Defendants in California at any time within the four years prior to the filing of the initial complaint
2    in this action and through the date notice is mailed to a certified class who worked at least three and
3    one-half (3.5) or more hours in day who did not receive required rest periods of ten net minutes rest
4    time for every four hours worked between three and one-half and six hours, six and ten hours, or ten
5    and fourteen hours.

6          F.      **Commission/Sales Incentive Rest Period Class**: All current and former
7    hourly employees who are paid on commission and/or sales incentive employed by Defendants in
8    California at any time within the four years prior to the filing of the initial complaint in this action
9    and through the date notice is mailed to a certified class who were not separately compensated for
10   rest periods.

11         G.      **Wage Statement Class**: All current and former hourly employees employed
12   by Defendants in California at any time within the one year prior to the filing of the initial complaint
13   in this action and through the date notice is mailed to a certified class who received inaccurate or
14   incomplete wage and hour statements.

15         H.      **Waiting Time Class**: All current and former hourly employees employed by
16   Defendants in California at any time within the three years prior to the filing of the initial complaint
17   in this action and through the date notice is mailed to a certified class who did not receive payment
18   of all unpaid wages upon separation of employment within the statutory time period.

19         I.      **California Class**: All aforementioned classes are here collectively referred to
20   as the "California Class."

21   49.    There is a well-defined community of interest in the litigation and the classes are
22   ascertainable:

23         A.      **Numerosity**: While the exact number of class members in each class is
24   unknown to plaintiff at this time, the Plaintiff classes are so numerous that the individual joinder of
25   all members is impractical under the circumstances of this case.

26         B.      **Common Questions Predominate**: Common questions of law and fact exist
27   as to all members of the Plaintiff classes and predominate over any questions that affect only
28   individual members of each class. The common questions of law and fact include, but are not

limited to:

    i.    Whether Defendants violated California Labor Code sections 1194 and 1197 by not paying employees' wages at a minimum wage rate for all time that the Minimum Wage Class Members were subject to Defendants' control but were not paid;

    ii.    Whether Defendants violated California Labor Code sections 510 and 1194 by not paying employees' wages at an overtime wage rate for all overtime hours that the Overtime Wage Class Members were subject to Defendants' control but were not paid;

    iii.    Whether Defendants violated California Labor code sections 510 and 1194 by not factoring in bonus compensation and/or incentive pay of the Regular Rate Class when calculating the Regular Rate Class Members' overtime rates of pay for workdays worked in excess of eight hours and/or workweeks in excess of 40 hours during pay periods in which the Regular Rate Class Members worked overtime hours and received bonus compensation and/or incentive pay;

    iv.    Whether Defendants violated California Labor Code sections 512 and 226.7, as well as the applicable Wage Order, by employing Meal Period Class Members without providing all their required meal periods or paying meal period premium wages;

    v.    Whether Defendants violated California Labor Code section 226.7 and the applicable Wage Order by employing Rest Period Class Members without providing all their required rest periods or paying rest period premium wages;

    vi.    Whether Defendants violated California Labor Code section 226.7 and the applicable Wage Order by employing Commission/Sales Incentive Rest Period Class Members without separately compensating them for rest periods or paying rest period premium wages;

    vii.    Whether Defendants failed to provide the Wage Statement Class Members with accurate itemized statement at the time they received their itemized statements;

    viii.    Whether Defendants failed to provide the Waiting Time Class Members with all of their earned wages upon separation of employment within the statutory time period;

    ix.    Whether Defendants committed unlawful business acts or practice

within the meaning of Business and Professions Code section 17200 *et seq.*;

           x.     Whether Class Members are entitled to unpaid wages, penalties and other relief pursuant to their claims;

           xi.     Whether, as a consequence of Defendants' unlawful conduct, the Class Members are entitled to restitution, and/or equitable relief; and

           xii.     Whether Defendant's affirmative defenses, if any, raise any common issues of law or fact as to Plaintiff and as to the Class Members as a whole.

           C.    **Typicality**: Plaintiff's claims are typical of the claims of the class members in each of the classes. Plaintiff and the members of the Minimum Wage Class sustained damages arising out of Defendants' failure to pay wages at least at minimum wage for all time the employees were subject to Defendants' control. Plaintiff and the members of the Overtime Wage Class sustained damages arising out of Defendants' failure to pay wages at the overtime wage for all overtime hours the employees were subject to Defendants' control. Plaintiff and the members of the Regular Rate Class sustained damages arising out of Defendants' failure to include bonus compensation and/or incentive pay when Defendants calculated those employees' overtime wages. Plaintiff and the members of the Meal Period Class sustained damages arising out of Defendants' failure to provide employees all legally required meal periods and failure to pay meal period premium wages as compensation. Plaintiff and the members of the Rest Period Class sustained damages arising out of Defendants' failure to provide employees all legally required rest periods and failure to pay rest period premium wages as compensation. Plaintiff and the members of the Commission/Sales Incentive Rest Period Class sustained damages arising out of Defendants' failure to separately compensate them for rest periods. Plaintiff and the members of the Wage Statement Class sustained damages arising out of Defendants' failure to furnish them with accurate itemized wage statements in compliance with California Labor Code section 226. Plaintiff and the members of the Waiting Time Class sustained damages arising out of Defendants' failure to provide all unpaid yet earned wages due upon separation of employment within the statutory time limit.

           D.    **Adequacy of Representation**: Plaintiff will fairly and adequately protect the interests of the members of each class. Plaintiff has no interest that is adverse to the interests of the

1  other class members.

2         E.      **Superiority**:  A class action is superior to other available means for the fair
3  and efficient adjudication of this controversy. Because individual joinder of all members of each
4  class is impractical, class action treatment will permit a large number of similarly situated persons to
5  prosecute their common claims in a single forum simultaneously, efficiently, and without the
6  unnecessary duplication of effort and expense that numerous individual actions would engender.
7  The expenses and burdens of individual litigation would make it difficult or impossible for
8  individual members of each class to redress the wrongs done to them, while important public
9  interests will be served by addressing the matter as a class action. The cost to and burden on the
10  court system of adjudication of individualized litigation would be substantial, and substantially
11  more than the costs and burdens of a class action.  Individualized litigation would also present the
12  potential for inconsistent or contradictory judgments.

13         F.      **Public Policy Consideration**: Employers throughout the state violate wage
14  and hour laws. Current employees often are afraid to assert their rights out of fear of direct or
15  indirect retaliation.  Former employees fear bringing actions because they perceive their former
16  employers can blacklist them in their future endeavors with negative references and by other means.
17  Class actions provide the class members who are not named in the complaint with a type of
18  anonymity that allows for vindication of their rights.

19                              **FIRST CAUSE OF ACTION**

20      **FAILURE TO PAY WAGES FOR ALL HOURS OF WORK AT THE LEGAL MINIMUM**

21          **WAGE RATE IN VIOLATION OF LABOR CODE SECTIONS 1194 AND 1197**

22          **(As Against all Defendants and DOE Defendants by the Minimum Wage Class)**

23         50.     Plaintiff hereby incorporates by reference paragraphs 1 - 49 above, as if fully set
24  herein by reference.

25         51.     At all times relevant to this Complaint, Plaintiff and the members of the Unpaid
26  Work Minimum Wage Class were hourly employees of Defendants.

27         52.     Pursuant to Labor Code sections 1194, 1197, and Wage Orders, Plaintiff and the
28  Minimum Wage Class are entitled to receive wages for all hours worked, i.e., all time subject to

Defendants' control, and those wages must be paid at least at the minimum wage rate in effect during the time the employees earned the wages.

53.    Defendants' policies, practices, and/or procedures required employees of the Minimum Wage Class to be engaged, suffered, or permitted to work without being paid wages for all of the time in which they were subject to Defendants' control.

54.    Specifically, Defendants required employees to arrive approximately 15 minutes prior to the start of their shift in order in order to arrange the stores before they opened to the public without being paid for that time.

55.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Minimum Wage Class have suffered damages in an amount subject to proof, to the extent that they were not paid wages at a minimum wage rate for all hours worked.

56.    Pursuant to California Labor Code Sections 1194 and 1194.2, Plaintiff and the Minimum Wage Class members are entitled to recover unpaid minimum wage, interest thereon, liquidated damages in the amount of their unpaid minimum wage, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**FAILURE TO PAY OVERTIME WAGES, IN VIOLATION OF LABOR CODE SECTIONS 510, 1194 AND 1198**

**(As Against All Defendants by the Overtime Class and the Regular Rate Class)**

57.    Plaintiff hereby incorporates by reference paragraphs 1-56 above, as if fully set herein by reference.

58.    At times relevant to this Complaint, Plaintiff and the members of the Overtime Class and the Regular Rate Class were hourly non-exempt employees of Defendants covered by California Labor Code sections 510 and 1194 and the Wage Order.

59.    Pursuant to California Labor Code sections 510 and 1194 and the Wage Order, non-exempt employees are entitled to receive a higher rate of pay for all hours worked in excess of 8 hours in a workday.

60.    California Labor Code section 510, subdivision (a), states in relevant part:
Eight hours of labor constitutes a day's work. Any work in excess of eight hours in

one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

61.    Further, California Labor Code section 1198 provides,

The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

62.    Defendants' payroll policies and procedures required employees of the Overtime Class to work in excess of eight hours in a workday but Defendants did not pay employees' wages for this time.

63.    In addition, Defendants' payroll policies and procedures requiring employees to work off-the-clock time subject to Defendants' control resulted in workdays in which Class Members worked in excess of eight hours in a workday but Defendants did not pay employees' wages for this time.  This unpaid time often occurred in work periods during which the Class Members had already worked at least eight hours in a workday.  To the extent the unpaid work occurred during such work periods such that it forced the Class Members to work overtime hours during a workday, Defendants were required to pay employees wages at an overtime rate of pay.

64.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Overtime Class have suffered damages in an amount subject to proof, to the extent that they were not paid wages at an overtime rate of pay for all on-the-clock and off-the-clock hours worked which constitute overtime.

65.    Pursuant to California Labor Code section 1194, Plaintiff and the Overtime Class members are entitled to recover the full amount of their unpaid overtime wages, prejudgment interest and attorneys' fees and costs.

66.    Further, under California law, the determination of the regular rate of pay for the purposes of determining the amount of overtime pay must include all remuneration earned by the

employee including the employee's bonuses, or other non-hourly compensation, such as incentive pay.

67.    At all times mentioned herein, Plaintiff and the members of the Regular Rate Class were non-exempt and subject to the overtime provisions set forth above.  Plaintiff alleges that he and the Regular Rate Class Members worked for Defendants during shifts that consisted of more than eight (8) hours in a workday or more than 40 hours in a workweek.  Plaintiff further alleges that he and the Regular Rate Class members were paid overtime compensation for such hours but which did not include their bonus compensation and/or incentive pay as part of the determination of the regular rate upon which the overtime premium pay would be calculated.

68.    Therefore, Plaintiff alleges wages are due to her and the members of the Regular Rate Class for all hours worked which she as well as the other class members were not paid proper overtime compensation as described above.

69.    Pursuant to California Labor Code section 1194, Plaintiff and the members of the Regular Rate Class are entitled to recover the full amount of their unpaid overtime wages, prejudgment interest and attorneys' fees and cost.

## THIRD CAUSE OF ACTION

## FAILURE TO PROVIDE REQUIRED MEAL PERIODS IN VIOLATION OF

## CALIFORNIA LABOR CODE SECTIONS 512 AND 226.7 AND THE WAGE ORDER

### (As Against all Defendants and DOE Defendants by the Meal Period Class)

70.    Plaintiff hereby incorporates by reference paragraphs 1-69 above, as if fully set herein by reference.

71.    At all times relevant to this Complaint, Plaintiff and the members of the Meal Period Class were hourly employees of Defendants, covered by California Labor Code sections 512 and 226.7 and the Wage Order.

72.    California law requires an employer to provide an employee an uninterrupted meal period of no less than 30-minutes in which the employee is relieved of all duties and the employer relinquishes control over the employee's activities no later than the employee's sixth hour of work.  Cal. Lab. Code §§ 226.7, 512; Wage Order 7, §11; *Brinker Rest. Corp. v. Super Ct.(Hohnbaum)*

(2012) 53 Cal.4th 1004.  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second such meal period of not less than 30 minutes by no later than the start of the eleventh hour of work.  *Id.*  If the employee is not relieved of all duty during a meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. A paid "on duty" meal period is only permitted when: (1) the nature of the work prevents an employee from being relieved of all duty; and (2) the parties have a written agreement agreeing to on duty meal periods.

73.    Plaintiff and similarly situated employees worked in shifts long enough to entitle them to both first and second meal periods under California law.  Defendants failed to authorize or permit employees a full 30-minute meal period for each five-hour period of work as required by law.  With regard to first meal periods, at times, Defendants failed to authorize or permit a timely 30 minute first meal period prior to the sixth hour of work.

74.    With regard to second meal periods, Plaintiff and similarly situated employees also would work on workdays in shifts long enough to entitle them to second meal periods under California law.  Defendants employed a policy and procedure that did not provide at all for a second 30-minute meal period when the employees worked shifts of more than ten hours

75.    Defendants also failed to provide premium wages to Plaintiff and similarly situated employees to compensate them for workdays they did not receive their legally required duty free meal periods of not less than 30 minutes.  Defendants employed policies and procedures which ensured employees did not receive premium wages to compensate them for workdays that they did not receive timely first meal periods prior to the sixth hour of work or a second meal periods when they worked in excess of 10 hours, or both.  This practice resulted in Plaintiff and all other similarly situated employees not receiving premium wages to compensate them for workdays which Defendants failed to authorize or permit all required meal periods, in compliance with California law.

76.    Defendants' policies and procedures prevented Plaintiff and other Meal Period Class Members from timely receiving and/or receiving all legally required meal periods or Defendants from providing such meal periods to Plaintiff and other Meal Period Class Members during

1    workdays the employees worked more than six hours and/or more than ten hours in one shift.

2        77.    Defendants' unlawful conduct alleged herein occurred in the course of employment

3    of Plaintiff and all others similarly situated and such conduct has continued through the filing of this

4    Complaint.

5        78.    Because Defendants failed to provide proper meal periods, they are liable to Plaintiff

6    and the Meal Period Class Members for one hour of additional pay at the regular rate of

7    compensation for each workday that the proper meal period was not provided, pursuant to California

8    Labor Code section 226.7 and the Wage Order.

9        79.    Plaintiff, on behalf of herself and the Meal Period Class, seeks damages and all

10   other relief allowable, including a meal period premium wage for each workday Defendants failed

11   to provide all required 30-minute uninterrupted meal periods, plus pre-judgment interest.

12                    **FOURTH CAUSE OF ACTION**

13   **FAILURE TO PROVIDE REQUIRED REST PERIODS IN VIOLATION OF CALIFORNIA**

14              **LABOR CODE SECTION 226.7 AND THE WAGE ORDER**

15       **(As Against all Defendants and DOE Defendants by the Rest Period Class and**

16              **Commission/Sales Incentive Rest Period Class)**

17       80.    Plaintiff hereby incorporates by reference paragraphs 1-79 above, as if fully set

18   herein by reference.

19       81.    At all times relevant to this Complaint, Plaintiff and the members of the Rest Period

20   Class were employees of Defendants, covered by California Labor Code section 226.7 and the Wage

21   Order.

22       82.    all times relevant to this Complaint, Plaintiff and the members of the

23   Commission/Sales Incentive Rest Period Class were hourly employees of Defendants who were who

24   are paid on commission and/or sales incentive, covered by California Labor Code section 226.7 and

25   the Wage Order.

26       83.    California law requires an employer to authorize or permit an employee to take a rest

27   period of ten (10) net minutes for every four hours worked. Cal. Lab. Code §226.7; Wage Order 7,

28   §12. Such rest periods must be in the middle of the four-hour period "insofar as practicable." *Id.* If

1    the employer fails to provide any required rest period, the employer must pay the employee one hour

2    of pay at the employee's regular rate of compensation for each work day the employer did not

3    provide at least one legally required rest period. *Id.*

4        84.    California law requires an employer to separately compensate commissioned

5    employees for rest periods where the employer uses a compensation system that does not directly

6    compensate for rest periods. *See* Wage Order No. 7, §§1, 2(T), 12(A); *Bluford v. Safeway Stores,*

7    *Inc.* (2013) 216 Cal.App.4th 864, 872; and *Gonzalez v. Downtown LA Motors, LP* (2013) 215

8    Cal.App.4th 36, 43.

9        85.    Defendants failed to provide Plaintiff and the Class Members all required rest

10   periods and failed to pay premium wages to Plaintiff and similarly situated employees to

11   compensate them for each workday they did not receive all legally required rest periods. Defendants

12   employed policies and procedures which ensured Plaintiff and similarly situated employees would

13   not receive all legally required rest periods. Specifically, Defendants failed to authorize or permit

14   third rest periods when the employees were subject to Defendants' control between 10 and 14 hours.

15       86.    Defendants employed policies and procedures which ensured Plaintiff and the Rest

16   Period Class did not receive any premium wages to compensate them for workdays that they did not

17   receive all legally required rest periods.

18       87.    Defendants employed policies and procedures that compensated Plaintiff and the

19   Commission/Sales Incentive Rest Period Class pursuant to a compensation plan that did not include

20   a minimum hourly wage for rest breaks and failed to separately compensate Plaintiff and similarly

21   situated hourly employees who are paid on commission and/or sales incentive for rest periods.

22       88.    Defendants also employed policies and procedures which ensured Commission/Sales

23   Incentive Rest Period Class did not receive premium wages to compensate them for workdays that

24   they were not separately compensated for their rest periods.

25       89.    This practice resulted in Defendants failing to pay Plaintiff and all other similarly

26   situated employees premium wages to compensate them for workdays in which Defendants did not

27   provide the employees with all required rest periods, in violation of California law.

28       90.    These practices resulted in Plaintiff and all other similarly situated hourly employees

who are paid on commission and/or sales incentive not receiving wages to compensate them for workdays which Defendants failed to provide them with separately compensated rest periods required by California law.

91.     Plaintiff, on behalf of herself and on behalf of the Rest Period Class and Commission/Sales Incentive Rest Periods Class, seeks damages and all other relief allowable including: rest period premium wages for each workday the employee was not provided with all required rest periods of ten net minutes; and prejudgment interest.

92.     Pursuant to California Labor Code section 226.7 and the Wage Order, Plaintiff and the Rest Period Class Members are entitled to one hour of pay for each workday Defendants failed to provide all required rest periods, plus pre-judgment interest.

## FIFTH CAUSE OF ACTION

## FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS, IN

## VIOLATION OF LABOR CODE SECTION 226

### (As Against all Defendants and DOE Defendants by the Wage Statement Class)

93.     Plaintiff hereby incorporates by reference paragraphs 1-92 above, as if fully set herein by reference.

94.     At all times relevant to this Complaint, Plaintiff and the other members of the Wage Statement Class were hourly employees of Defendants, covered by California Labor Code section 226.

95.     Pursuant to California Labor Code section 226, subdivision (a), Plaintiff and the other members of the class were entitled to receive, semimonthly or at the time of each payment of wages, an itemized wage statement accurately stating the following:

(1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his

or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

96.     In direct violation of California Labor Code sections 226(a)(1) and (4), Defendants failed to provide Plaintiff and similarly situated employees who are paid on commission and/or sales incentive accurate paystubs because: 1) Defendants deducted hourly employees who are paid on commission and/or sales incentive's hourly wages from their earned commissions and/or incentive pay rendering the total amount of their commissions; and 2) failed to separately compensate Plaintiff and similarly situated employees who are paid on commission and/or sales incentive for their rest periods, and thus their total gross earned wages and deductions inaccurate..

97.     Moreover, Defendants' illegal wage practices, including but not limited to Defendants' failure to pay at least minimum wage for all time worked, overtime wages of all overtime hours worked, failure to include all remuneration in the overtime rate of pay, and failure to pay meal and rest period premium wages resulted in Defendants providing their hourly employees with inaccurate itemized wage statements in violation of California Labor Code section 226.

98.     Defendants provided Plaintiff and members of the Wage Statement Class with itemized statements which stated inaccurate information including, but not limited to, the gross and net pay, and all applicable hourly rates and earnings at each rate.

99.     Defendants' failure to provide Plaintiff and members of the Wage Statement Class with accurate wage statements was knowing and intentional. Defendants had the ability to provide Plaintiff and members of the Class with accurate wage statements but intentionally provided wage statements it knew were not accurate. Defendants knowingly and intentionally put in place practices which deprived employees of wages and resulted in Defendants' knowing and intentional providing of inaccurate wage statements. These practices included Defendants' failure to include all hours worked and all wages due.

100.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered injury. The absence of accurate information on their wage statements has prevented earlier challenges to Defendants' unlawful pay practices, will require discovery and mathematical

computations to determine the amount of wages owed, and will cause difficulty and expense in attempting to reconstruct time and pay records. Defendants' conduct led to the submission of inaccurate information about wages and amounts deducted from wages to state and federal government agencies. As a result, Plaintiff and similarly situated employees are required to participate in this lawsuit and create more difficulty and expense for Plaintiff and similarly situated employees from having to reconstruct time and pay records than if Defendants had complied with their legal obligations.

101.    Pursuant to California Labor Code section 226(e), Plaintiff and members of the Wage Statement Class are entitled to recover fifty dollars per employee for the initial pay period in which a Section 226 violation occurred and one hundred dollars per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand dollars per employee.

102.    Pursuant to California Labor Code Section 226(h), Plaintiff and members of the Wage Statement Class are entitled to bring an action for injunctive relief to ensure Defendants' compliance with California Labor Code section 226(a). Injunctive relief is warranted because Defendants continue to provide currently employed members of the Class with inaccurate wage statements in violation of California Labor Code section 226(a) and currently employed members of the Class have no adequate legal remedy for the continuing injuries that will be suffered as a result of Defendants' ongoing unlawful conduct.  Injunctive relief is the only remedy available for ensuring Defendants' compliance with California Labor Code section 226(a).

103.    Pursuant to California Labor Code sections 226(e) and 226(h), Plaintiff and members of the Wage Statement Class are entitled to recover the full amount of penalties due under Section 226(e), reasonable attorneys' fees, and costs of suit.

## SIXTH CAUSE OF ACTION

## FAILURE TO PAY ALL WAGES TIMELY UPON SEPARATION OF EMPLOYMENT, IN

## VIOLATION OF LABOR CODE SECTIONS 201 AND 202

### (As Against all Defendants and DOE Defendants by the Waiting Time Class)

104.    Plaintiff hereby incorporates by reference paragraphs 1-103 above, as if fully set herein by reference.

105. At all times relevant to this Complaint, Plaintiff and the other members of the Waiting Time Class were employees of Defendants, covered by California Labor Code sections 201 or 202.

106. Pursuant to California Labor Code sections 201 and 202, Plaintiff and members of the Waiting Time Class were entitled upon termination to timely payment of all wages earned and unpaid prior to termination. Discharged employees were entitled to payment of all wages earned and unpaid prior to discharge immediately upon termination. Employees who resigned were entitled to payment of all wages earned and unpaid prior to resignation within 72 hours after giving notice of resignation or, if they gave 72 hours previous notice, they were entitled to payment of all wages earned and unpaid prior to resignation at the time of resignation.

107. Defendants failed to pay Plaintiff and members of the Waiting Time Class all wages earned and unpaid prior to separation of employment, in accordance with either California Labor Code section 201 or 202. Plaintiff is informed and believes and thereon alleges that at all relevant times within the limitations period applicable to this cause of action Defendants maintained a policy or practice of not paying hourly employees all earned wages timely upon separation of employment.

108. Defendants' failure to pay Plaintiff and members of the Waiting Time Class all wages earned prior to separation of employment timely in accordance with California Labor Code sections 201 and 202 was willful. Defendants had the ability to pay all wages earned by hourly workers prior to separation of employment in accordance with California Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of California Labor Code sections 201 and 202. Defendants' practices include failing to pay at least minimum wage for all time worked, failing to pay overtime wages for overtime hours worked, failure to include all remuneration in employees' overtime rate of pay, failing to pay premium wages for workdays Defendants did not provide employees all meal periods in compliance with California law, and failing to pay premium wages for workdays Defendants did not provide employees all rest periods in compliance with California law. When Defendants failed to pay its hourly workers all earned wages timely upon separation of employment, it knew what they were doing and intended to do what it did.

109.    Pursuant to either California Labor Code section 201 or 202, Plaintiff and members of the Waiting Time Class are entitled to all wages earned prior to separation of employment that Defendants did not pay them.

110.    Pursuant to California Labor Code section 203, Plaintiff and members of the Waiting Time Class are entitled to continuation of their wages, from the day their earned and unpaid wages were due upon separation until paid, up to a maximum of 30 days.

111.    As a result of Defendants' conduct, Plaintiff and members of the Waiting Time Class have suffered damages in an amount, subject to proof, to the extent they were not paid for all wages earned prior to separation.

112.    As a result of Defendants' conduct, Plaintiff and members of the Waiting Time Class have suffered damages in an amount, subject to proof, to the extent they were not paid all continuation wages owed under California Labor Code section 203.

113.    Plaintiff and members of the Waiting Time Class are entitled to recover the full amount of their unpaid wages, continuation wages under Section 203, and interest thereon.

## SEVENTH CAUSE OF ACTION

## UNFAIR COMPETITION

### (Against All Defendants and DOE Defendants by the California Class)

114.    Plaintiff hereby incorporates by reference paragraphs 1-113 above, as if fully set herein by reference.

115.    The unlawful conduct of Defendants alleged herein constitutes unfair competition within the meaning of California Business and Professions Code Section 17200. This unfair conduct includes Defendants' use of policies and procedures which resulted in: failing to pay employees at least at the minimum wage rate for all hours which they worked; failure to pay overtime wages for overtime hours worked; failure to include all remuneration in to the overtime rate of pay; failure to provide all required meal periods or pay meal period premium wages; failure to authorize or permit, or provide, all required rest periods or pay rest period premium wages; failure separately compensate employees paid on commission/sales incentive for rest periods; failure to provide accurate wage and hour statements; and failure to pay timely all wages due upon separation of

1    employment.  Due to their unfair and unlawful business practices in violation of the California

2    Labor Code, Defendants have gained a competitive advantage over other comparable companies

3    doing business in the State of California that comply with their obligations to pay employees for all

4    hours worked, to provide meal periods or pay meal period premium wages, to authorize or permit

5    rest periods or pay rest period premium wages, to provide accurate wage and hour statements, and to

6    timely pay all wages due upon separation of employment.

7        116.   As a result of Defendants' unfair competition as alleged herein, Plaintiff and

8    members of the Minimum Wage Class, Overtime Wage Class, Regular Rate Class, Meal Period

9    Class, Rest Period Class and Commission/Sales Incentive Rest Periods Class, Wage Statement

10   Class, and Waiting Time Class have suffered injury in fact and lost money or property, as described

11   in more detail above.

12       117.   Pursuant to California Business and Professions Code Section 17203, Plaintiff and

13   members of the Minimum Wage Class, Overtime Class, Regular Rate Class, Meal Period Class,

14   Rest Period Class and Commission/Sales Incentive Rest Periods Class, Wage Statement Class, and

15   Waiting Time Class are entitled to restitution of all wages and other monies rightfully belonging to

16   them that Defendants failed to pay and wrongfully retained by means of their unlawful and unfair

17   business practices.  Plaintiff also seeks an injunction against Defendants on behalf of the California

18   Class enjoining Defendants, and any and all persons acting in concert with them, from engaging in

19   each of the unlawful practices, policies and patterns set forth herein.

20                            **EIGHTH CAUSE OF ACTION**

21   **CIVIL PENALTIES PURSUANT TO THE PRIVATE ATTORNEYS GENERAL ACT OF**

22                   **2004, LABOR CODE SECTION 2698 et seq.**

23          **(As Against All Defendants and DOE Defendants by the California Class)**

24       118.   Plaintiff hereby incorporates by reference paragraphs 1-117 above, as if fully set

25   herein by reference.

26       119.   During the period beginning one-year period preceding the filing of the initial

27   complaint in this action, Defendants violated Labor Code sections California Labor Code sections

28   201, 202, 226, 226.7, 510, 512, 1194, and 1197 as alleged in more detail above.

---

120.   Specifically, Defendants have committed the following violations of the California Labor Code:

(a)    **Failure to pay wages for all hours worked at the legal minimum wage**: Defendants employed many of their employees, including Plaintiff, as hourly non-exempt employees.  In California, an employer is required to pay hourly employees for all "hours worked," which includes all time that an employee is under control of the employer and all time the employee is suffered and permitted to work. This includes the time an employee spends, either directly or indirectly, performing services which inure to the benefit of the employer.  In this case, Defendants employed a policy, practice, and/or procedure whereby Plaintiff and similarly situated employees were required to arrive approximately 15 minutes prior to the start of their shift in order in order to arrange the stores before they opened to the public.  Defendants failed to compensate Plaintiff and similarly situated hourly non-exempt employees for this time in violation of California Labor Code sections 1194, 1197, and the Wage Order.

(b)    **Failure to pay wages for all hours worked at the employee's overtime rate of pay**: Defendants' policies, practices, and procedures require Plaintiff and similarly situated employees arrive approximately 15 minutes prior to the start of their shift in order to arrange the stores before they opened to the public without being compensated for that time.  The foregoing resulted in time each work day which Plaintiff and similarly situated employees were under control of Defendants but were not compensated.  To the extent the employees had already worked 8 hours in the day and or in workweeks they had already worked 40 hours in a workweek, the employees should have been paid overtime for this unpaid time. This resulted in non-exempt employees working time which should have been paid at the legal overtime rate, but was not paid any wages in violation of Labor Code sections 510, 1194, and the Wage Order.

(c)    **Failure to pay overtime at the legal overtime rate by failing to include bonus compensation in calculating the regular rate of pay for purposes of paying overtime:** Defendants employ hourly non-exempt employees, including Plaintiff and others similarly situated, with a compensation structure that includes bonus pay.  At times, Plaintiff and similarly situated employees worked overtime hours under state law during pay periods that they earned bonus

1    compensation. Despite that California law requires employers to include bonus compensation as
2    part of the regular rate of pay for determining overtime premium pay, Defendants entirely excluded
3    their hourly non-exempt employees' bonus in calculating those employees' overtime rate of pay.
4    This practice resulted in Plaintiff and other similarly situated hourly non-exempt employees working
5    hours in excess of eight hours in a workday and/or 40 hours in a workweek and Defendants paying
6    them less overtime than they earned pursuant to California law.

7              (d)    **Failure to pay hourly employees wages to compensate them for workdays**
8    **Defendants failed to provide required meal periods:** Defendants often employed hourly
9    employees, including the named Plaintiff and all others similarly-situated, for shifts longer than 10
10    hours in length. Plaintiff and similarly situated employees would work on workdays in shifts long
11    enough to entitle them to both first and second meal periods under California law. Defendants often
12    failed to authorize or permit Plaintiff and similarly situated hourly non-exempt employees to take
13    their first meal periods prior the sixth hour of work in violation of California law. Moreover,
14    Defendants routinely failed to authorize or permit failed to authorize or permit second meal periods
15    altogether when employees worked shifts of more than 10 hours. In addition, Defendants failed to
16    pay premium wages to Plaintiff and similarly situated employees to compensate them for each
17    workday the employees did not receive legally-required first meal periods prior to the sixth hour of
18    work or second meal periods.

19              (e)    **Failure to pay hourly employees wages to compensate them for workdays**
20    **Defendants failed to provide required rest periods:** Defendants employed hourly employees,
21    including the named Plaintiff and all others similarly-situated, for shifts at least three and one-half
22    (3.5) hours in length. Defendants employed policies and procedures which ensured Plaintiff and
23    similarly situated employees would not receive all legally required rest periods. Defendants also
24    employed policies and procedures which ensured Plaintiff and similarly situated employees did not
25    receive any premium wages to compensate them for workdays that they did not receive all legally
26    required rest periods. These practices resulted in Plaintiff and all other similarly situated employees
27    not receiving wages to compensate them for workdays which Defendants did not provide them with
28    all rest periods required by California law.

(f)    **Failure to separately compensate hourly non-exempt employees who are paid on commission and/or sales incentive for rest periods:** Defendants employed hourly commissioned who are paid on commission and/or sales incentive, including the named Plaintiff and others similarly-situated, pursuant to a sales commission compensation structure that failed to separately compensate them for rest periods.  Defendants employed policies and procedures that compensated Plaintiff and similarly situated hourly employees who are paid on commission and/or sales incentive pursuant to a compensation plan that did not include a minimum hourly wage for rest breaks and failed to separately compensate Plaintiff and similarly situated hourly employees who are paid on commission and/or sales incentive for rest periods.  These practices resulted in Plaintiff and all other similarly situated hourly employees who are paid on commission and/or sales incentive not receiving wages to compensate them for workdays which Defendants failed to provide them with separately compensated rest periods required by California law.

(g)    **Pay Stub Violations**: In direct violation of California Labor Code sections 226(a)(1) and (4), Defendants failed to provide Plaintiff and similarly situated employees who are paid on commission and/or sales incentive accurate paystubs because Defendants deducted hourly employees who are paid on commission and/or sales incentive's  hourly wages from their earned commissions and/or incentive pay rendering the total amount of their commissions and failed to separately compensate them for rest periods, and thus their total gross earned wages and deductions inaccurate.  Furthermore, Defendants failed to provide accurate wage and hour statements to Plaintiff and similarly situated hourly non-exempt employees who were subject to Defendants' control for uncompensated time and who did not receive the wages they earned (including minimum wages, overtime wages, overtime at the proper overtime rate, as well as failure to pay premium wages for missed meal and rest periods.

(h)    **Failure to Pay California Employees All Wages Due at Time of Termination/Resignation**: Because Defendants failed to pay Plaintiff and other similarly situated employees all their earned wages (including minimum wages, overtime wages, overtime wages and the proper rate, and unpaid meal and rest period premium wages), Defendants failed to pay those employees timely after each employee's termination and/or resignation.

121.    Labor Code sections 2699, subdivisions (a) and (g) authorize an aggrieved employee, on behalf of himself and other current or former employees, to bring a civil action to recover civil penalties and unpaid wages against all Defendants pursuant to the procedures specified in Labor Code section 2699.3.

122.    Plaintiff has complied with the procedures for bringing suit specified in Labor Code section 2699.3. By online submission on January 5, 2017 and with a courtesy copy sent via certified mail dated January 3, 2017, Plaintiff gave written noticed to the Labor and Workforce Development Agency ("LWDA") of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.    Proof of Plaintiff's online submission and a true and correct copy of the courtesy copy sent via certified mail are hereto attached as **Exhibit 1**.

123.    On January 3, 2017 Plaintiff notified Defendants by letter sent via certified mail of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.    True and correct copies of Plaintiff's certified letters to Defendants are hereto attached as **Exhibit 2**.

124.    Pursuant to Labor Code section 2699.3, the LWDA must give written notice by certified mail to the parties that it intends to investigate the alleged violations of the Labor Code within 66 days of the date of the complainant's written notice. As of March 13, 2017, or 66 days after the date of Plaintiff's online submission to the LWDA, the LWDA had not provided notice to the parties that the LWDA intended to investigate Plaintiff's allegations.

125.    Pursuant to Labor Code sections 2699(a) and (f), Plaintiff is entitled to recover civil penalties and wages for Defendants' violations of Labor Code sections 201, 202, 226, 226.7, 510, 512, 1194, and 1197 during the Civil Penalty Period in the following amounts:

(a)    For violations of Labor Code sections 201 or 202, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation [penalty amounts established by Labor Code section 2699(f)(2)];

(b)    For violations of Labor Code section 226, two hundred fifty dollars ($250)

for each aggrieved employee for each employee in an initial citation, and one thousand dollars ($1000) for each underpaid employee for in a subsequent citation [penalty amounts established by Labor Code section 226.3];

(c)    For violations of California Labor Code section 226.7, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation [penalty amounts established by California Labor Code section 2699(f)(2)];

(d)    For violations of California Labor Code section 510, fifty dollars ($50) for each aggrieved employee per pay period for the initial violation and one hundred dollars ($100) for each aggrieved employee per pay period for each subsequent violation [penalty amounts established by California Labor Code section 558];

(e)    For violations of California Labor Code section 512, fifty dollars ($50) for each aggrieved employee for each pay period for the initial violation, and for each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period [penalty amounts established by California Labor Code section 558]; and

(f)    For violations of Labor Code sections 1194 and 1197, one hundred dollars ($100) for each underpaid employee for each pay period for the initial violation, and for each subsequent violation, two hundred fifty dollars ($250) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 1197.1].

126.    Pursuant to Labor Code section 2699(g), Plaintiff is entitled to an award of reasonable attorney's fees and costs in connection with her claims for civil penalties.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF, ON HER BEHALF AND ON BEHALF OF THOSE SIMILARLY-SITUATED, PRAYS AS FOLLOWS:**

**ON THE FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, AND EIGHTH CAUSES OF ACTION:**

1.    That the Court determine that this action may be maintained as a class action (for the entire California Class and/or any and all of the specified sub-classes) pursuant to California Code

1   of Civil Procedure section 382 and any other applicable law;

2       2.      That the named Plaintiff be designated as class representative for the California Class

3   (and all sub-classes thereof);

4       3.      A declaratory judgment that the practices complained herein are unlawful; and,

5       4.      An injunction against Defendants enjoining them, and any and all persons acting in

6   concert with them, from engaging in each of the unlawful practices, policies and patterns set forth

7   herein.

8                       **ON THE FIRST CAUSE OF ACTION:**

9       1.      That Defendants be found to have violated the minimum wage provisions of the

10  California Labor Code and the IWC Wage Order as to Plaintiff and the Minimum Wage Class;

11      2.      For damages, according to proof, including but not necessarily limited to unpaid

12  wages;

13      3.      For any and all legally applicable penalties;

14      4.      For liquidated damages pursuant to California Labor Code section 1194.2;

15      5.      For pre-judgment interest, including but not limited to that recoverable under

16  California Labor Code section 1194, and post-judgment interest;

17      6.      For attorneys' fees and costs of suit, including but not limited to that recoverable

18  under California Labor Code section 1194;

19      7.      For pre-judgment interest, including but not limited to that recoverable under

20  California Labor Code section 218.6, and post-judgment interest; and,

21      8.      For such and other further relief, in law and/or equity, as the Court deems just or

22  appropriate.

23                      **ON THE SECOND CAUSE OF ACTION:**

24      1.      That Defendants be found to have violated the overtime provisions of the California

25  Labor Code and the Wage Order as to Plaintiff and the Overtime Class and the Regular Rate Class;

26      2.      For damages, according to proof, including but not limited to unpaid wages;

27      3.      For any and all legally applicable penalties;

28      4.      For pre-judgment interest, including but not limited to that recoverable under

1 | California Labor Code section 1194, and post-judgment interest;

2 |     5.    For attorneys' fees and costs of suit, including but not limited to that recoverable
3 | under California Labor Code section 1194; and,

4 |     6.    For such and other further relief, in law and/or equity, as the Court deems just or
5 | appropriate.

6 | **ON THE THIRD CAUSE OF ACTION:**

7 |     1.    That Defendants be found to have violated the meal period provisions of the
8 | California Labor Code and the Wage Order as to Plaintiff and the Meal Period Class;

9 |     2.    For damages, according to proof, including unpaid premium wages;

10 |     3.    For any and all legally applicable penalties;

11 |     4.    For pre-judgment interest, including but not limited to that recoverable under
12 | California Labor Code section 218.6, and post-judgment interest; and

13 |     5.    For such and other further relief, in law and/or equity, as the Court deems just or
14 | appropriate.

15 | **ON THE FOURTH CAUSE OF ACTION:**

16 |     1.    That Defendants be found to have violated the rest period provisions of the
17 | California Labor Code and the Wage Order as to Plaintiff and the Rest Period Class;

18 |     2.    For damages, according to proof, including unpaid premium wages;

19 |     3.    For any and all legally applicable penalties;

20 |     4.    For pre-judgment interest, including but not limited to that recoverable under
21 | California Labor Code section 218.6, and post-judgment interest; and

22 |     5.    For such and other further relief, in law and/or equity, as the Court deems just or
23 | appropriate.

24 | **ON THE FIFTH CAUSE OF ACTION:**

25 |     1.    That Defendants be found to have violated the provisions of the California Labor
26 | Code regarding accurate itemized paystubs as to the Wage Statement Class;

27 |     2.    For damages and/or penalties, according to proof, including damages and/or statutory
28 | penalties under California Labor Code section 226(e) and any other legally applicable damages or

1    penalties;

2        3.    For pre-judgment interest and post-judgment interest;

3        4.    For an injunction against Defendants enjoining them, and any and all persons acting

4    in concert with them, from engaging in violations of California Labor Code section 226(a);

5        5.    For attorneys' fees and costs of suit, including but not limited to that recoverable

6    under California Labor Code section 226(e); and,

7        6.    For such and other further relief, in law and/or equity, as the Court deems just or

8    appropriate.

9                        **ON THE SIXTH CAUSE OF ACTION:**

10       1.    That Defendants be found to have violated the provisions of the California Labor

11   Code regarding payment of all unpaid wages due upon resignation or termination as to the Waiting

12   Time Class;

13       2.    For damages and/or penalties, according to proof, including damages and/or statutory

14   penalties under California Labor Code section 203 and any other legally applicable damages or

15   penalties;

16       3.    For pre-judgment interest, including under California Labor Code section 218.6, and

17   post-judgment interest; and,

18       4.    For such and other further relief, in law and/or equity, as the Court deems just or

19   appropriate.

20                      **ON THE SEVENTH CAUSE OF ACTION:**

21       1.    That Defendants be found to have violated California Business and Professions Code

22   section 17200, et seq., for the conduct alleged herein as to all Classes;

23       2.    A declaratory judgment that the practices complained herein are unlawful;

24       3.    An injunction against Defendants enjoining them, and any and all persons acting in

25   concert with them, from engaging in each of the unlawful practices, policies and patterns set forth

26   herein;

27       4.    For restitution to the full extent permitted by law; and,

28       5.    For such and other further relief, in law and/or equity, as the Court deems just or

1    appropriate.

2                        **ON THE EIGHTH CAUSE OF ACTION:**

3         1.    That the Defendants be found to have violated the provisions of the Labor Code and

4    the IWC Wages Orders as to the Plaintiff and current or former aggrieved employees;

5         2.    For any and all legally applicable penalties, including but not limited to that

6    recoverable under California Labor Code section 2699(f), 201, 202, 226, 226.7, 510, 512, 1194, and

7    1197;

8         3.    For attorneys' fees and costs of suit, including but not limited to that recoverable

9    under California Labor Code section 2699(g); and

10        4.    For such and other further relief, in law and/or equity, as the Court deems just or

11   appropriate.

12

13   Dated: March 14, 2017                Respectfully submitted,

14                                        **LAVI & EBRAHIMIAN, LLP**

15

16                                        By: _____

17                                           Joseph Lavi, Esq.
                                             Vincent C. Granberry, Esq.
18                                           Attorneys for PLAINTIFF
                                             ELIZABETH OCHOA
19                                           and Other Class Members
     ///
20
     ///
21
     ///
22
     ///
23
     ///
24
     ///
25
     ///
26
     ///
27
     ///
28

──────────────────────────────────────────────
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES
38

1

## DEMAND FOR JURY TRIAL

2      PLAINTIFF ELIZABETH OCHOA demands a trial by jury for herself and the California

3  Class on all claims so triable.

4

5  Dated:  March 14, 2017                    Respectfully submitted,

6                                            **LAVI & EBRAHIMIAN, LLP**

7

8                                            By: _____

9                                                  Joseph Lavi, Esq.
                                                   Vincent C. Granberry, Esq.
10                                                 Attorneys for PLAINTIFF
                                                   ELIZABETH OCHOA
11                                                 and Other Class Members

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

# EXHIBIT 1

**Vincent Granberry**

| | |
|---|---|
| **From:** | noreply@salesforce.com on behalf of LWDA DO NOT REPLY <lwdadonotreply@dir.ca.gov> |
| **Sent:** | Thursday, January 05, 2017 10:09 AM |
| **To:** | Vincent Granberry |
| **Subject:** | Thank you for submission of your PAGA Case. |

1/5/2017

LWDA Case No. LWDA-CM-194056-17

Item submitted: Initial PAGA Notice

Thank you for your submission to the Labor and Workforce Development Agency. Please make a note of the LWDA Case No. above as you may need this number for future reference when filing any subsequent documents for this Case.

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

LAW OFFICES OF

### LAVI & EBRAHIMIAN, LLP
8889 W. OLYMPIC BLVD., SUITE 200
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE: (310) 432-0000
FACSIMILE: (310) 432-0001
WWW.LELAWFIRM.COM

January 3, 2017

## NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO
## LABOR CODE SECTION 2699.3

To:   California Labor and Workforce Development Agency
      Department Of Industrial Relations
      Accounting Unit
      455 Golden Gate Avenue, 10th Floor
      San Francisco, California 94102
      Certified Mail Number: **7016 2140 0000 2169 4241**

      L Brands, Inc.
      Four Limited Parkway
      Reynoldsburg, Ohio 43068
      Certified Mail Number: **7016 2140 0000 2169 4258**

      Limited Brands, Inc.
      Four Limited Parkway
      Reynoldsburg, Ohio 43068
      Certified Mail Number: **7016 2140 0000 2169 4265**

      The Limited, Inc.
      Four Limited Parkway
      Reynoldsburg, Ohio 43068
      Certified Mail Number: **7016 2140 0000 2169 4272**

      Victoria's Secret Stores, LLC
      Four Limited Parkway
      Reynoldsburg, Ohio 43068
      Certified Mail Number: **7016 2140 0000 2169 4289**

From: Elizabeth Ochoa, on behalf of herself and all "aggrieved" hourly paid California based
      employees of L Brands, Inc.., *et al.*
      c/o Joseph Lavi, Esq.
      Vincent C. Granberry, Esq.
      Lavi & Ebrahimian, LLP
      8889 West Olympic Boulevard, Suite 200
      Beverly Hills, California 90211

1

## Factual Statement and Theories of Labor Code Violations

Aggrieved employee Elizabeth Ochoa was formerly employed by L Brands, Inc., Limited Brands, Inc., The Limited, Inc., and Victoria's Secret Stores, LLC (collectively, "Employers"). Ms. Ochoa was employed as an hourly non-exempt employee in a commissioned sales person position for Employers. Ms. Ochoa resigned from her employment with Employers on or around February 22, 2016.

First, Ms. Ochoa maintains that, during her employment, Employers failed to pay her and other California-based hourly non-exempt employees with compensation at the minimum wage rate of pay for all the hours that they worked in violation of California Labor Code sections 1194 and 1197 and compensation at their overtime rate for overtime hours worked in violation of California Labor Code sections 510 and 1194. Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful." Labor Code section 1194 states, "...any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

With regard to overtime hours, Labor Code section 510 provides:

"Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

Importantly, overtime is based upon an employee's regular rate of pay. "The regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf, of the employee." *See* Division of Labor Standards Enforcement – Enforcement Policies and Interpretations Manual, Section 49.1.2.

Finally, Labor Code section 1194 states, "...any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

2

Ms. Ochoa maintains she and other California-based hourly non-exempt employees worked more hours per day than Employers credited them with having worked because Employers maintained a policy, practice, and/or procedure whereby they required Ms. Ochoa and other California-based hourly non-exempt employees to arrive approximately 15 minutes prior to the start of their shift in order to arrange the stores before they opened to the public. Employers did not pay Ms. Ochoa and other California-based hourly non-exempt employees for this time. Accordingly, Employers' foregoing policies practices, and/or procedures resulted in time each workday that Ms. Ochoa and other California-based hourly employees were subject to Employers' control, but not compensated for that time. To the extent that the uncompensated time described above resulted in Ms. Ochoa and other California-based hourly employees being subject to the control of Employers exceed eight (8) hours in a day or forty (40) hours in a week, that time should have been compensated at Ms. Ochoa's and other California-based hourly employees' overtime rates of pay. In addition, as evidenced by the paystubs attached as **Exhibit 1**, Ms. Ochoa maintains that during her employment, Employers failed to pay her and other California-based hourly employees for overtime hours worked at their proper overtime rate because Employers failed to include all remuneration, including employees' "Recognition Bonus," "Rcc Bonus," and "Bonus True Up" in their overtime rate of pay for pay periods in which they worked in excess of eight hours in a day or 40 hours in a week and earned one or more of the aforementioned bonuses.

As a derivative claim of Employers' above-described violations, Ms. Ochoa intends to seek civil penalties pursuant to the Private Attorney General Act ("PAGA"), California Labor Code §2698, et seq. on behalf of the Labor and Workforce Development Agency ("LWDA") against Employers if authorized to file a representative action on behalf of the State of California. As a derivative claim of Employers' failure to pay for all hours worked, including overtime hours worked and overtime hours worked at the proper overtime rate of pay, Ms. Ochoa will seek statutory penalties under Labor Code 226(a)(1) because the failure to pay such wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Second, Ms. Ochoa maintains that during her employment, Employers failed to maintain compliant meal period polices. With regard to first meal periods, Ms. Ochoa maintains that Employers' policies, practices, and/or procedures failed to authorize or permit timely duty free first meal periods of not less than 30 minutes prior to the sixth hour of work. Moreover, Ms. Ochoa maintains that Employers often employed her and other California-based hourly non-exempt employees to work shifts more than 10 hours in length without providing second meals whatsoever and failed to inform them their right to take a second off duty unpaid 30 minute meal period for when they worked shifts over 10 hours in length as required by Labor Code § 226.7, Labor Code § 512 and Industrial Welfare Commission ("IWC") Wage Order 7-2001, 11. In addition, Employers failed to provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for untimely first meal periods that occurred after the sixth hour of work and/or missed second meal periods for qualifying shifts. Ms. Ochoa will seek both restitution

pursuant to Labor Code § 558(a)(3) for herself and other aggrieved employees for each violation of Labor Code § 226.7 (and failure to pay premium pay) and will seek civil penalties under PAGA, Labor Code §2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

As a derivative claim of Employers' failure to permit and/or authorize timely first meal periods prior to the sixth hour of work and second meal periods and failure to pay meal period premiums for late first meal periods and/or missed second meal periods, Ms. Ochoa will seek statutory penalties under Labor Code 226(a)(1) because the failure to pay such premium wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Third, Ms. Ochoa maintains that during her employment, Employers failed to maintain compliant rest period policies. Employers did not authorize or permit all its hourly non-exempt employees to take 10-minute paid rest periods for every four hours of work or major fraction thereof, as required by Labor Code § 226.7 and industrial Welfare commission (IWC) Wage Order 7-2001, 12. Specifically, Ms. Ochoa maintains that Employers' failed to authorize or permit third rest periods when she and other California-based hourly non-exempt employees worked shifts more than 10 hours in length. At no time did Employers provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for rest periods shorter than 10 minutes in length and/or failure to authorize or permit third rest periods for qualifying shifts. Ms. Ochoa will seek both restitution pursuant to Labor Code §558(a)(3) for herself and other aggrieved employees for each violation of Labor Code §226.7 (and failure to pay premium pay), and will seek civil penalties under PAGA, Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

As a derivative claim of Employers' failure to provide third rest periods or pay rest period premium wages, Ms. Ochoa will seek statutory penalties under Labor Code §226(a)(1) because the failure to pay such premium wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Fourth, as evidenced by the paystubs attached as **Exhibit 1**, in direct violation of Labor Code § 226, Employers failed to provide Ms. Ochoa and other California-based hourly employees who received commission pay accurate paystubs because Employers deducted employees' hourly wages from their earned commissions rendering the total amount of their commissions, and thus their total gross, earned wages and deductions inaccurate in direct violation of Labor Code §§ 226(a)(1) and (4). Moreover, based on the aforementioned derivative violations of Labor Code § 226, Ms. Ochoa will seek recovery of civil penalties under Labor Code § 226.3 and PAGA, Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

4

Fifth, as a result of Employers' aforementioned violations of the California Labor Code, Ms. Ochoa was not paid her final wages pay in a timely manner as required by Labor Code § 203. The wages for all hours worked, including overtime hours worked and overtime wages at the proper overtime rate of pay, premium wages for late first meal periods and/or missed second meal periods, and rest periods premium wages for missed third rest periods were not paid at the time of Ms. Ochoa's February 2, 2016 resignation. Ms. Ochoa is informed and believes other employees who separated from Employers, weather voluntarily or involuntarily, were not paid all wages due in a timely manner, including wages for all hours worked, including overtime hours worked and at the proper overtime rate, and premium wages for late and/or missed meal and rest periods, as required by Labor Code § 203. Ms. Ochoa will seek both restrictions pursuant to Labor Code § 558(a)(3) for himself and other aggrieved employees for each violation of Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

## Request for Relief and Remedies

By this letter, Ms. Ochoa, on behalf of herself and all other aggrieved employees in the state of California, makes the following claims and will seek to represent the LWDA in a civil action based on the following claims:

(1)     Employers are subject to civil penalties under PAGA for failing to pay wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as required by California Labor Code sections 510, 1194 and 1197;

(2)     Employers are subject to civil penalties under PAGA for failing to authorize or permit a first meal period of not less than 30 minutes prior to the sixth hour of work and second meal period when employees worked in shifts exceeding 10 hours in length as required under Wage Order 7, Section 11. Moreover, Employers failed to pay one hour of premium pay at the employee's regular rate of pay for each day an employee did not receive a timely first meal period prior to the sixth hour of work and/or worked over 10 hours in a shift, but was not provided a 30-minute, uninterrupted and duty-free second meal period in a violation of Labor Code Section § 226.7;

(3)     Employers are subject to civil penalties under PAGA for failing to implement a policy to authorize and permit duty-free, paid 10-minute rest periods for every four hours worked (or every major fraction thereof) as required under Wage Order 7, Section 12, and failure to pay a rest period premium as required by Labor Code § 226.7;

(4)     Employers are subject to civil penalties under Labor Code § 226.3 for direct violations of Labor Code §§ 226(a)(1) and (4), including failing to accurately reflect commissioned employees' gross wages earned and all deductions as well as

derivate claims for Employers' failure to pay and document wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as well as meal and rest period premium wages for employees not provided compliant meal and rest periods as required by Labor Code § 226(a)(1), thus rendering wage statements inaccurate in the amount of "gross wages earned" in violation of Labor Code § 226(e)(2)(B)(i); and

(5)    Employers are subject to civil penalties under PAGA for willfully failing to timely pay wages to employees who were discharged or quit, including wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, well as meal and rest period premium wages, and further failing to pay a day's wages up to 30 days until final wages were paid, in violation of Labor Code § 203.

### Conclusion

Ms. Ochoa intends to file PAGA Complaint in the appropriate California Superior Court alleging the aforementioned violations. Ms. Ochoa, through her counsel, awaits notice from the LDWA as to whether it intends to pursue the matter, or whether Employers will elect to cure remedies.

Very truly yours,
**LAVI & EBRAHIMIAN, LLP**

Vincent C. Granberry, Esq.

"Exhibit 1"

Victoria's Secret Stores, LLC
Four Imperial Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| | |
|---|---|
| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 09/27/2015 |
| Pay End Date: | 10/10/2015 |

| | |
|---|---|
| Business Unit: | VSSBU |
| Advice #: | 000000008795979 |
| Advice Date: | 10/16/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| | |
|---|---|
| Employee ID: | 00001684550 |
| Department: | 00679-35033 1/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

**TAX DATA:** Federal / CA St
| | |
|---|---|
| Marital Status: | Single / H-of |
| Allowances: | 2 |
| Addl. Pct: | |
| Addl. Amt: | |

## HOURS AND EARNINGS

| Description | | Current | | | YTD | | TAXES Description | Current | YT |
|---|---|---|---|---|---|---|---|---|---|
| | Rate | Hours | Earnings | Hours | Earnings | | | |
| Regular | 14.44 | 29.38 | 424.25 | 1,119.23 | 12,789.71 | Fed Withholdng | 47.31 | 12,878. |
| Regular | 11.44 | 35.18 | 402.46 | 9.24 | 105.56 | Fed MED/EE | 12.03 | 917.9 |
| Reporting Time Pay | 11.44 | 0.15 | 1.72 | 0.15 | 1.72 | Fed OASDI/EE | 51.45 | 3,925. |
| OVT-FLSA | 17.13 | 0.08 | 1.37 | 12.10 | 1,010.86 | CA Withholdng | 0.00 | 3,826.9 |
| Holiday Worked - FLSA | | | 0.00 | 6.62 | 221.35 | CA OASDI/EE | 7.46 | 569. |
| Sick Pay | | | 0.00 | 5.75 | 343.71 | | | |
| Bonus True Up | | | 0.00 | | 8.51 | | | |
| Sales Incentive | | | 0.00 | | 48,715.13 | | | |
| Non-Cash Award | | | 0.00 | | 109.34 | | | |
| Double Time | 0.00 | | 0.00 | | 3.40 | | | |
| **TOTAL:** | | 64.79 | 829.80 | 1,153.09 | 63,209.29 | **TOTAL:** | 118.25 | 22,118. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | | TOTAL TAXES | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|
| Current | 829.80 | 829.80 | | 118.25 | 0.00 | | 711. |
| YTD | 63,209.29 | 63,309.29 | | 22,118.25 | 0.00 | | 41,091. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | | |
| - Taken | 0.00 | 5.75 | Advice #000000008795979 | Checking | $711.55 | | 64. |
| End Balance | 0.00 | 18.25 | **TOTAL:** | | $711.55 | | |

MESSAGE: Go GREEN! Get your paystub on-line www.associateresources.limitedbrands.com

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 10/31/2015        Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC | Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 | Business Unit: | VSSBU |
| Four Limited Parkway | Pay Begin Date: | 10/11/2015 | Advice #: | 000000008801084 |
| Reynoldsburg, OH 43068 | Pay End Date: | 10/24/2015   ** On-line Advice ** | Advice Date: | 10/15/2015 |
| HR Direct 1-866-473-4728 | | | | |

| | | | | TAX DATA: | Federal | CA Sta |
| --- | --- | --- | --- | --- | --- | --- |
| Elizabeth Ochoa | Employee ID: | 000016&4550 | | Marital Status: | Single | H-of |
| 10000 Imperial Hwy | Department: | 00679-350331/00679/Stonewood | | Allowances: | 2 | |
| Apt F215 | Location: | 350331/00679/Stonewood | | Addl. Pet: | | |
| Downey, CA 90242 | Job Title: | Sales Specialist | | Addl. Amt: | | |
| | Pay Rate: | $433.20 Biweekly | | | | |

## HOURS AND EARNINGS

|  | Prior Period | | | Current | | | YTD | | TAXES | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | | Earnings | Description | Current | YT |
| Ree Bonus | 10/04/2015 | 10/10/2015 | | | 2,000.00 | | | 2,000.00 | Fed Withholding | 500.00 | 13,378. |
| Regular | | | | | 0.00 | 1,128.47 | | 12,895.27 | Fed MED/EE | 29.00 | 946. |
| Hol Worked | | | | | 0.00 | 6.62 | | 221.35 | Fed OASDI/EE | 124.00 | 4,049. |
| Rptg Time | | | | | 0.00 | 0.15 | | 1.72 | CA Withholdng | 132.00 | 3,958. |
| Sick Pay | | | | | 0.00 | 5.75 | | 343.71 | CA OASDI/EE | 18.00 | 587. |
| Bon TrueUp | | | | | 0.00 | | | 8.51 | | | |
| Sales Ince | | | | | 0.00 | | | 48,715.13 | | | |
| Non-Cash | | | | | 0.00 | | | 109.34 | | | |
| OVT - FLSA | | | | | 0.00 | 12.10 | | 1,010.86 | | | |
| DoubleTime | | | 0.00 | | 0.00 | | | 3.40 | | | |
| **TOTAL:** | | | | 0.00 | 2,000.00 | 1,153.09 | | 65,209.29 | **TOTAL:** | 803.00 | 22,921. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| | | | | | | | | |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | | NET PA |
| --- | --- | --- | --- | --- | --- | --- |
| Current | 2,000.00 | 2,000.00 | 803.00 | 0.00 | | 1,197. |
| YTD | 65,209.29 | 65,309.29 | 22,921.25 | 0.00 | | 42,288. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | | | HOURS WORKE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Start Balance | 0.00 | 24.00 | | Account Type | | Deposit Amount | |
| - Taken | 0.00 | 5.75 | Advice #000000008801084 | Checking | | $1,197.00 | 0. |
| End Balance | 0.00 | 18.25 | TOTAL: | | | $1,197.00 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limitedbrands

Employee ID: 100016&4550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 10/23/2015          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VIII-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/11/2015 |
| Pay End Date: | 10/24/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008834275 |
| Advice Date: | 10/30/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
| --- | --- | --- |
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | Hours | YTD Earnings |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Regular | | | 14.44 | 63.17 | 912.17 | 1,191.64 | 13,807.44 |
| Sales Ince | 09/27/2015 | 10/03/2015 | | | 816.07 | | 52,795.48 |
| Sales Ince | 09/20/2015 | 09/26/2015 | | | 816.07 | | 0.00 |
| Sales Ince | 09/13/2015 | 09/19/2015 | | | 816.07 | | 0.00 |
| Sales Ince | 09/06/2015 | 09/12/2015 | | | 816.07 | | 0.00 |
| Sales Ince | 08/30/2015 | 09/05/2015 | | | 816.07 | | 0.00 |
| OVT-FLSA | | | 21.65 | 0.43 | 9.31 | 12.53 | 1,021.10 |
| OVT-FLSA | 09/27/2015 | 10/03/2015 | 17.13 | -0.08 | -1.37 | | 0.00 |
| OVT-FLSA | 09/27/2015 | 10/03/2015 | 28.75 | 0.08 | 2.30 | | 0.00 |
| Hol Worked | | | | | 0.00 | 6.62 | 221.35 |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 |
| Sick Pay | | | | | 0.00 | 5.75 | 343.71 |
| Rec Bonus | | | | | 0.00 | | 2,000.00 |

**CONTINUED ON NEXT PAGE**

### TAXES

| Description | Current | YT |
| --- | --- | --- |
| Fed Withholdng | 1,081.29 | 14,459. |
| Fed MED/EE | 72.54 | 1,019. |
| Fed OASDI/EE | 310.17 | 4,359. |
| CA Withholdng | 297.95 | 4,256. |
| CA OASDI/EE | 45.03 | 632. |
| | | |
| **TOTAL:** | 1,806.98 | 24,728. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| | | | | | | | | |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | | NET PA |
| --- | --- | --- | --- | --- | --- | --- |
| Current | 5,002.76 | 5,002.76 | 1,806.98 | 0.00 | | 3,195. |
| YTD | 70,212.05 | 70,312.05 | 24,728.23 | 0.00 | | 45,483. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | | HOURS WORKE |
| --- | --- | --- | --- | --- | --- | --- |
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 5.75 | Advice #000000008834275 | Checking | $3,195.78 | 63.0 |
| | | | | | | |
| End Balance | 0.00 | 18.25 | **TOTAL:** | | $3,195.78 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 11/14/2015        Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC<br>Four Limited Parkway<br>Reynoldsburg, OH 43068<br>HR Direct 1-866-473-4728 | | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | VH1-Victoria's Secret Hourly 1 - 4<br>10/11/2015<br>10/24/2015 | | Business Unit:<br>Advice #:<br>Advice Date: | VSSBU<br>000000008834275<br>10/30/2015 | |

| Elizabeth Ochoa<br>10000 Imperial Hwy<br>Apt F215<br>Downey, CA 90242 | Employee ID:<br>Department:<br>Location:<br>Job Title:<br>Pay Rate: | 00001684550<br>00679-350331/00679/Stonewood<br>350331/00679/Stonewood<br>Sales Specialist<br>$433.20 Biweekly | TAX DATA:<br>Marital Status:<br>Allowances:<br>Addl. Pct:<br>Addl. Amt: | Federal<br>Single<br>2 | CA St<br>H-of |

### HOURS AND EARNINGS

| | Prior Period | | | Current | | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | | Earnings | Description | Current | YT |
| Bon TrueUp | 08/30/2015 | 10/03/2015 | | | 0.00 | | | 8.51 | | | |
| Sales Ince | | | | | 0.00 | | | 0.00 | | | |
| Non-Cash | | | | | 0.00 | | | 109.34 | | | |
| DoubleTime | | | 0.00 | | 0.00 | | | 3.40 | | | |

| TOTAL: | | | | 63.60 | 5,002.76 | 1,216.69 | 70,212.05 | TOTAL: | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| | |
|---|---|
| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/25/2015 |
| Pay End Date: | 11/07/2015 |

| | |
|---|---|
| Business Unit: | VSSBU |
| Advice #: | 000000008862149 |
| Advice Date: | 11/13/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| | |
|---|---|
| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

**TAX DATA:**

| | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| | | | Current | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YT |
| Regular | 14.44 | 54.24 | 783.22 | 1,245.88 | 14,590.66 | Fed Withholdng | 78.22 | 14,537.8 |
| Sick Pay | 42.12 | 6.00 | 252.70 | 11.75 | 596.41 | Fed MED/EE | 15.03 | 1,034.5 |
| Holiday Worked - FLSA | | | 0.00 | 6.62 | 221.35 | Fed OASDI/EE | 64.22 | 4,423.5 |
| Reporting Time Pay | | | 0.00 | 0.15 | 1.72 | CA Withholdng | 0.00 | 4,256.9 |
| Recognition | | | 0.00 | | 2,000.00 | CA OASDI/EE | 9.32 | 642.1 |
| Bonus True Up | | | 0.00 | | 8.51 | | | |
| Sales Incentive | | | 0.00 | | 52,795.48 | | | |
| Non-Cash Award | | | 0.00 | | 109.34 | | | |
| OVT - FLSA | | | 0.00 | 12.53 | 1,021.10 | | | |
| Double Time | 0.00 | | 0.00 | | 3.40 | | | |
| **TOTAL:** | | 60.24 | 1,035.92 | 1,276.93 | 71,247.97 | **TOTAL:** | 166.79 | 24,895.0 |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y1 |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 1,035.92 | 1,035.92 | 166.79 | 0.00 | 869. |
| YTD | 71,247.97 | 71,347.97 | 24,895.02 | 0.00 | 46,352. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | | |
| - Taken | 0.00 | 11.75 | Advice #000000008862149 | Account Type: Checking | Deposit Amount: $869.13 | 54.2 |
| End Balance | 0.00 | 12.25 | **TOTAL:** | | $869.13 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limited brands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 11/28/2015        Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/08/2015 |
| Pay End Date: | 11/21/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008922405 |
| Advice Date: | 11/27/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-35033 1/00679/Stonewood |
| Location: | 35033 1/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Str |
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 67.63 | 976.58 | 1,313.51 | 15,567.24 |
| Sales Ince | 10/25/2015 | 10/31/2015 | | | 649.54 | | 55,393.65 |
| Sales Ince | 10/18/2015 | 10/24/2015 | | | 649.54 | | 0.00 |
| Sales Ince | 10/11/2015 | 10/17/2015 | | | 649.54 | | 0.00 |
| Sales Ince | 10/04/2015 | 10/10/2015 | | | 649.55 | | 0.00 |
| OVT-FLSA | 10/18/2015 | 10/24/2015 | 21.65 | -0.43 | -9.31 | 11.56 | 631.83 |
| OVT-FLSA | 10/18/2015 | 10/24/2015 | 31.56 | 0.43 | 13.57 | | 0.00 |
| Hol Worked | | | | | 0.00 | 6.62 | 221.35 |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 |
| Sick Pay | | | | | 0.00 | 11.75 | 596.41 |
| Rec Bonus | | | | | 0.00 | | 2,000.00 |
| Bon TrueUp | | | | | 0.00 | | 8.51 |
| Sales Ince | 10/04/2015 | 10/31/2015 | | | 0.00 | | 0.00 |

**CONTINUED ON NEXT PAGE**

## TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 719.50 | 15,257. |
| Fed MED/EE | 51.89 | 1,086. |
| Fed OASDI/EE | 221.90 | 4,645. |
| CA Withholdng | 152.30 | 4,409. |
| CA OASDI/EE | 32.21 | 674. |
| | | |
| **TOTAL:** | 1,177.80 | 26,072.: |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| | | | | | | | | |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 3,579.01 | 3,579.01 | 1,177.80 | 0.00 | 2,401. |
| YTD | 74,826.98 | 74,926.98 | 26,072.82 | 0.00 | 48,754. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | Advice #000000008922405 | | |
| - Taken | 0.00 | 11.75 | Account Type: Checking | Deposit Amount $2,401.21 | 67.( |
| End Balance | 0.00 | 12.25 | **TOTAL:** | $2,401.21 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associntcresources.limitedbrands.com

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 12/12/2015        Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/08/2015 |
| Pay End Date: | 11/21/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008922405 |
| Advice Date: | 11/27/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

| HOURS AND EARNINGS | | | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | ------ Prior Period ------ | | ------ | Current | ------ | ------ | YTD | ------ | | | |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | | Earnings | Description | Current | YT |
| Non-Cash | | | | | 0.00 | | | 109.34 | | | |
| OVT - FLSA | | | | | 0.00 | 0.97 | | 393.53 | | | |
| DoubleTime | | | 0.00 | | 0.00 | | | 3.40 | | | |
| TOTAL: | | | | 67.63 | 3,579.01 | 1,344.56 | | 74,826.98 | TOTAL: | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/22/2015 |
| Pay End Date: | 12/05/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008974265 |
| Advice Date: | 12/11/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | . | |

## HOURS AND EARNINGS

| | Prior Period | | | Current | | | YTD | |
|---|---|---|---|---|---|---|---|---|
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | |
| Regular | | | 14.44 | 68.85 | 994.20 | 1,382.36 | 16,561.44 | |
| Hol Worked | | | 32.93 | 5.97 | 196.58 | 12.59 | 417.93 | |
| Meal Pay | | | 14.44 | 1.00 | 14.44 | 1.00 | 14.44 | |
| Sales Ince | | | | | 942.38 | | 59,163.15 | |
| Sales Ince | 11/15/2015 | 11/21/2015 | | | 942.38 | | 0.00 | |
| Sales Ince | 11/08/2015 | 11/14/2015 | | | 942.38 | | 0.00 | |
| Sales Ince | 11/01/2015 | 11/07/2015 | | | 942.36 | | 0.00 | |
| OVT-FLSA | | | 32.93 | 4.52 | 148.83 | 17.05 | 1,174.19 | |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 | |
| Sick Pay | | | | | 0.00 | 11.75 | 596.41 | |
| Rec Bonus | | | | | 0.00 | | 2,000.00 | |
| Bon TrueUp | | | | | 0.00 | | 8.51 | |
| Non-Cash | | | | | 0.00 | | 109.34 | |
| **CONTINUED ON NEXT PAGE** | | | | | | | | |

## TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 1,068.32 | 16,325, |
| Fed MED/EE | 74.29 | 1,160. |
| Fed OASDI/EE | 317.66 | 4,963. |
| CA Withholdng | 310.30 | 4,719. |
| CA OASDI/EE | 46.11 | 720. |
| **TOTAL:** | 1,816.68 | 27,889. |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|

## EMPLOYER PAID BENEFITS

| Description | Current | Y' |
|---|---|---|

| TOTAL: | 0.00 | 0.00 | TOTAL: | | 0.00 | 0.00 | *TAXABLE |

| | TOTAL GROSS | | FED TAXABLE GROSS | | TOTAL TAXES | | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|---|---|
| Current | 5,123.55 | | 5,123.55 | | 1,816.68 | | 0.00 | | 3,306. |
| YTD | 79,950.53 | | 80,050.53 | | 27,889.50 | | 0.00 | | 52,061, |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | | 11.75 | Advice #000000008974265 | Checking | $3,306.87 | 79. |
| End Balance | 0.00 | | 12.25 | TOTAL: | | $3,306.87 | |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 12/26/2015          Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC<br>Four Limited Parkway<br>Reynoldsburg, OH 43068<br>HR Direct 1-866-473-4728 | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | VH1-Victoria's Secret Hourly 1 - 4<br>11/22/2015<br>12/05/2015 | Business Unit:<br>Advice #:<br>Advice Date: | VSSBU<br>000000008974265<br>12/11/2015 |

| Elizabeth Ochoa<br>10000 Imperial Hwy<br>Apt F215<br>Downey, CA 90242 | Employee ID:<br>Department:<br>Location:<br>Job Title:<br>Pay Rate: | 00001684550<br>00679-350331/00679/Stonewood<br>350331/00679/Stonewood<br>Sales Specialist<br>$433.20 Biweekly | TAX DATA:<br>Marital Status:<br>Allowances:<br>Addl. Pct:<br>Addl. Amt: | Federal<br>Single<br>2 | CA St<br>H-of |

| HOURS AND EARNINGS | | | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | — Prior Period — | | — | Current | — | — | YTD | — | | | |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | | Earnings | Description | Current | YT |
| DoubleTime | | | 0.00 | | 0.00 | | | 3.40 | | | |
| TOTAL: | | | | 80.34 | 5,123.55 | 1,424.90 | | 79,950.53 | TOTAL: | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 12/06/2015 |
| Pay End Date: | 12/19/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000009023182 |
| Advice Date: | 12/24/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | | Current | | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|
| | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YT |
| Regular | 14.44 | 59.78 | 863.22 | 1,442.14 | 17,424.66 | Fed Withholdng | 66.32 | 16,391.5 |
| OVT-FLSA | 21.66 | 4.31 | 93.36 | 21.36 | 1,267.55 | Fed MED/EE | 13.87 | 1,174.0 |
| Holiday Worked - FLSA | | | 0.00 | 12.59 | 417.93 | Fed OASDI/EE | 59.31 | 5,022.4 |
| Reporting Time Pay | | | 0.00 | 0.15 | 1.72 | CA Withholdng | 0.00 | 4,719.5 |
| Sick Pay | | | 0.00 | 11.75 | 596.41 | CA OASDI/EE | 8.61 | 729.0 |
| Meal Pay | | | 0.00 | 1.00 | 14.44 | | | |
| Recognition | | | 0.00 | | 2,000.00 | | | |
| Bonus True Up | | | 0.00 | | 8.51 | | | |
| Sales Incentive | | | 0.00 | | 59,163.15 | | | |
| Non-Cash Award | | | 0.00 | | 109.34 | | | |
| Double Time | | 0.00 | 0.00 | | 3.40 | | | |
| TOTAL: | | 64.09 | 956.58 | 1,488.99 | 80,907.11 | TOTAL: | 148.11 | 28,037.( |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| | | | | | | | | |
| TOTAL: | 0.00 | 0.00 | TOTAL: | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 956.58 | 956.58 | 148.11 | 0.00 | 808. |
| YTD | 80,907.11 | 81,907.11 | 28,037.61 | 0.00 | 52,869. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 11.75 | Advice #000000009023182 | Checking | $808.47 | 64.( |
| End Balance | 0.00 | 12.25 | TOTAL: | | $808.47 | |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 01/08/2016          Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC<br>Four Limited Parkway<br>Reynoldsburg, OH 43068<br>HR Direct 1-866-473-4728 | | | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | VH1-Victoria's Secret Hourly 1 - 4<br>12/20/2015<br>01/02/2016 | | | | Business Unit:<br>Advice #:<br>Advice Date: | VSSBU<br>008000009072100<br>01/08/2016 | |
|---|---|---|---|---|---|---|---|---|---|---|

| Elizabeth Ochoa<br>10000 Imperial Hwy<br>Apt F215<br>Downey, CA 90242 | Employee ID:<br>Department:<br>Location:<br>Job Title:<br>Pay Rate: | 00001684550<br>00679-350331/00679/Stonewood<br>350331/00679/Stonewood<br>Sales Specialist<br>$433.20 Biweekly |
|---|---|---|

**TAX DATA:**

| | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 46.20 | 667.12 | 46.20 | 667.12 |
| Hol Worked | | | 21.66 | 3.62 | 78.41 | 3.62 | 78.41 |
| Rptg Time | | | 14.44 | 0.42 | 6.06 | 0.42 | 6.06 |
| Sick Pay | 12/06/2015 | 12/12/2015 | 45.55 | 4.00 | 182.21 | 4.00 | 182.21 |
| OVT-FLSA | | | 21.66 | 1.00 | 21.66 | 1.00 | 21.66 |
| **TOTAL:** | | | | 55.24 | 955.46 | 55.24 | 955.46 |

### TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 65.77 | 65. |
| Fed MED/EE | 13.85 | 13. |
| Fed OASDI/EE | 59.24 | 59. |
| CA Withholdng | 0.00 | 0. |
| CA OASDI/EE | 8.60 | 8. |
| **TOTAL:** | 147.46 | 147. |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

### EMPLOYER PAID BENEFITS

| Description | Current | Y |
|---|---|---|
| *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 955.46 | 955.46 | 147.46 | 0.00 | 808. |
| YTD | 955.46 | 955.46 | 147.46 | 0.00 | 808. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance<br>- Taken | 0.00<br>0.00 | 24.00<br>0.00 | Advice #000000009072100 | Account Type<br>Checking | Deposit Amount<br>$808.00 | 50.1 |
| End Balance | 0.00 | 24.00 | **TOTAL:** | | $808.00 | |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration: 01/23/2016          Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC | | | Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 | | | Business Unit: | VSSBU | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Four Limited Parkway | | | Pay Begin Date: | 01/03/2016 | | | Advice #: | 000000009117253 | | |
| Reynoldsburg, OH 43068 | | | Pay End Date: | 01/16/2016 | | | Advice Date: | 01/22/2016 | | |
| HR Direct 1-866-473-4728 | | | | | | | | | | |

| | | | | | | | TAX DATA: | | Federal | CA Sta |
|---|---|---|---|---|---|---|---|---|---|---|
| Elizabeth Ochoa | | Employee ID: | 00001684550 | | | | Marital Status: | | Exempt | Exem |
| 10000 Imperial Hwy | | Department: | 00679-350331/00679/Stonewood | | | | Allowances: | | | |
| Apt F215 | | Location: | 350331/00679/Stonewood | | | | Addl. Pct: | | | |
| Downey, CA 90242 | | Job Title: | Sales Specialist | | | | Addl. Amt: | | | |
| | | Pay Rate: | $433.20 Biweekly | | | | | | | |

| HOURS AND EARNINGS | | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Prior Period | | | Current | | YTD | | | | |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YT |
| Regular | | | 14.44 | 18.22 | 263.10 | 64.42 | 930.22 | Fed Withholding | 0.00 | 65. |
| Hol Worked | 12/27/2015 | 01/02/2016 | 21.66 | -3.62 | -78.41 | 3.62 | 185.91 | Fed MED/EE | 107.27 | 121. |
| Hol Worked | 12/27/2015 | 01/02/2016 | 51.36 | 3.62 | 185.91 | | 0.00 | Fed OASDI/EE | 458.67 | 517. |
| Sick Pay | | | 37.63 | 5.50 | 206.97 | 9.50 | 389.18 | CA Withholdng | 0.00 | 0. |
| Sales Ince | 12/27/2015 | 01/02/2016 | | | 1,338.67 | | 6,693.33 | CA OASDI/EE | 66.58 | 75. |
| Sales Ince | 12/20/2015 | 12/26/2015 | | | 1,338.67 | | 0.00 | | | |
| Sales Ince | 12/13/2015 | 12/19/2015 | | | 1,338.67 | | 0.00 | | | |
| Sales Ince | 12/06/2015 | 12/12/2015 | | | 1,338.67 | | 0.00 | | | |
| Sales Ince | 11/29/2015 | 12/05/2015 | | | 1,338.65 | | 0.00 | | | |
| OVT-FLSA | 12/27/2015 | 01/02/2016 | 21.66 | -0.50 | -10.83 | 1.00 | 73.89 | | | |
| OVT-FLSA | 12/27/2015 | 01/02/2016 | 51.36 | 0.50 | 25.68 | | 0.00 | | | |
| OVT-FLSA | 12/20/2015 | 12/26/2015 | 21.66 | -0.50 | -10.83 | | 0.00 | | | |
| OVT-FLSA | 12/20/2015 | 12/26/2015 | 45.32 | 0.50 | 22.66 | | 0.00 | | | |
| CONTINUED ON NEXT PAGE | | | | | | | | TOTAL: | 632.52 | 779. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | | Current | YTD | Description | Current | Y |
| | | | | | | | | | |
| TOTAL: | 0.00 | 0.00 | TOTAL: | | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | | FED TAXABLE GROSS | | TOTAL TAXES | | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|---|---|
| Current | 7,397.91 | | 7,397.91 | | 632.52 | | 0.00 | | 6,765. |
| YTD | 8,353.37 | | 8,353.37 | | 779.98 | | 0.00 | | 7,573. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | | Deposit Amount | | |
| - Taken | 0.00 | 5.50 | Advice #000000009117253 | Checking | | $6,765.39 | | 18. |
| End Balance | 0.00 | 18.50 | TOTAL: | | | $6,765.39 | | |

MESSAGE: Your W2 is NOW AVAILABLE  call 877-325-9239 to get it TODAY.

## Limited brands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration D: 02/06/2016          Discount: 30%

Associate Signature_____

| Victoria's Secret Stores, LLC<br>Four Limited Parkway<br>Reynoldsburg, OH 43068<br>HR Direct 1-866-473-4728 | | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | VH1-Victoria's Secret Hourly 1 - 4<br>01/03/2016<br>01/16/2016 | | Business Unit:<br>Advice #:<br>Advice Date: | VSSBU<br>00000009117253<br>01/22/2016 | |

| | | | | | TAX DATA: | Federal | CA Sta |
|---|---|---|---|---|---|---|---|
| Elizabeth Ochoa<br>10000 Imperial Hwy<br>Apt F215<br>Downey, CA 90242 | | Employee ID:<br>Department:<br>Location:<br>Job Title:<br>Pay Rate: | 00001684550<br>00679-350331/00679/Stonewood<br>350331/00679/Stonewood<br>Sales Specialist<br>$433.20 Biweekly | | Marital Status:<br>Allowances:<br>Addl. Pct:<br>Addl. Amt: | Exempt | Exem |

| HOURS AND EARNINGS | | | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Prior Period | | | Current | | | YTD | | | | |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | Description | | Current | YT |
| OVT-FLSA | 12/13/2015 | 12/19/2015 | 21.66 | -1.48 | -32.06 | | 0.00 | | | | |
| OVT-FLSA | 12/13/2015 | 12/19/2015 | 38.93 | 1.48 | 57.61 | | 0.00 | | | | |
| OVT - FLSA | 12/06/2015 | 12/12/2015 | 21.66 | -2.83 | -61.30 | | 74.78 | | | | |
| OVT - FLSA | 12/06/2015 | 12/12/2015 | 48.08 | 2.83 | 136.08 | | 0.00 | | | | |
| Rptg Time | | | | | 0.00 | 0.42 | 6.06 | | | | |
| Sales Ince | 11/29/2015 | 01/02/2016 | | | 0.00 | | 0.00 | | | | |
| TOTAL: | | | | 23.72 | 7,397.91 | 78.96 | 8,353.37 | TOTAL: | | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VIII-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 01/17/2016 |
| Pay End Date: | 01/30/2016 |

| Business Unit: | VSSBU |
| Advice #: | 000000009154985 |
| Advice Date: | 02/05/2016 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
| Marital Status: | Exempt | Exem |
| Allowances: | | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| | | | Current | | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Hours | Earnings | | Description | Current | YT |
| Regular | 14.44 | 38.70 | 558.83 | 103.12 | 1,489.05 | | Fed Withholding | 0.00 | 65. |
| Holiday Worked - FLSA | | | 0.00 | 3.62 | 185.91 | | Fed MED/EE | 8.11 | 129. |
| Reporting Time Pay | | | 0.00 | 0.42 | 6.06 | | Fed OASDI/EE | 34.65 | 552. |
| Sick Pay | | | 0.00 | 9.50 | 389.18 | | CA Withholding | 0.00 | 0. |
| Sales Incentive | | | 0.00 | | 6,693.33 | | CA OASDI/EE | 5.03 | 80. |
| OVT - FLSA | | | 0.00 | 1.00 | 148.67 | | | | |

| TOTAL: | | 38.70 | 558.83 | 117.66 | 8,912.20 | | TOTAL: | 47.79 | 827. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | YT |

| TOTAL: | 0.00 | 0.00 | TOTAL: | | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | | TOTAL TAXES | | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|---|
| Current | 558.83 | 558.83 | | 47.79 | | 0.00 | | 511. |
| YTD | 8,912.20 | 8,912.20 | | 827.77 | | 0.00 | | 8,084. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | | Deposit Amount | | |
| - Taken | 0.00 | 5.50 | Advice #000000009154985 | Checking | | $511.04 | | 38. |
| End Balance | 0.00 | 18.50 | TOTAL: | | | $511.04 | | |

MESSAGE: Your W2 is NOW AVAILABLE call 877-325-9239 to get it TODAY.

## Limitedbrands

BATH & BODY WORKS / C.O. BIGELOW / HENRI BENDEL
LA SENZA / VICTORIA'S SECRET / WHITE BARN CANDLE CO.

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 02/20/2016        Discount: 30%

Associate Signature_____



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Pos
$

Sent To    California Labor and Workforce Development Agency
Street an      Department Of Industrial Relations
City, State         Accounting Unit
              455 Golden Gate Avenue, 10th Floor
                San Francisco, California 94102

PS Form

4241 2159 2160 0000 0000 2140 2110 7016

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

California Labor and Workforce Development Agency
Department Of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

9590 9403 0885 5223 9991 93

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                  ☐ Agent
                                   ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature                  ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery  ☐ Registered Mail™
■ Certified Mail®                   ☐ Registered Mail Restricted
☐ Certified Mail Restricted Delivery    Delivery
☐ Collect on Delivery              ■ Return Receipt for
☐ Collect on Delivery Restricted Delivery   Merchandise
                                   ☐ Signature Confirmation™
I Restricted Delivery              ☐ Signature Confirmation
                                     Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

USPS TRACKING#

9590 9403 0885 5223 9991 93

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

Ochoa v. Victoria's secret | LWDA | VG | LN | JL

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

California Labor and Workforce Development Agency
Department Of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

9590 9403 0885 5223 9991 93

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

7014 2140 0000 2169 7424

California Labor & Workforce Development Agency
Department Of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt

2. Article Number (Transfer from service label)
7016 2140 0000 2169 7424

9590 9403 0885 5225 9991 93

3. Service Type
□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Adult Signature
□ Adult Signature Restricted Delivery

□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery
□ Return Receipt for Merchandise

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
California Labor and Workforce Development Agency
Department Of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
□ Agent
□ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:  □ No



# EXHIBIT 2

LAW OFFICES OF
LAVI & EBRAHIMIAN, LLP
8889 W. OLYMPIC BLVD., SUITE 200
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE: (310) 432-0000
FACSIMILE: (310) 432-0001
WWW.LELAWFIRM.COM

January 3, 2017

## NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO
## LABOR CODE SECTION 2699.3

To:    California Labor and Workforce Development Agency
       Department Of Industrial Relations
       Accounting Unit
       455 Golden Gate Avenue, 10th Floor
       San Francisco, California 94102
       Certified Mail Number: **7016 2140 0000 2169 4241**

       L Brands, Inc.
       Four Limited Parkway
       Reynoldsburg, Ohio 43068
       Certified Mail Number: **7016 2140 0000 2169 4258**

       Limited Brands, Inc.
       Four Limited Parkway
       Reynoldsburg, Ohio 43068
       Certified Mail Number: **7016 2140 0000 2169 4265**

       The Limited, Inc.
       Four Limited Parkway
       Reynoldsburg, Ohio 43068
       Certified Mail Number: **7016 2140 0000 2169 4272**

       Victoria's Secret Stores, LLC
       Four Limited Parkway
       Reynoldsburg, Ohio 43068
       Certified Mail Number: **7016 2140 0000 2169 4289**

From:  Elizabeth Ochoa, on behalf of herself and all "aggrieved" hourly paid California based
       employees of L Brands, Inc.., *et al.*
       c/o Joseph Lavi, Esq.
       Vincent C. Granberry, Esq.
       Lavi & Ebrahimian, LLP
       8889 West Olympic Boulevard, Suite 200
       Beverly Hills, California 90211

1

## Factual Statement and Theories of Labor Code Violations

Aggrieved employee Elizabeth Ochoa was formerly employed by L Brands, Inc., Limited Brands, Inc., The Limited, Inc., and Victoria's Secret Stores, LLC (collectively, "Employers"). Ms. Ochoa was employed as an hourly non-exempt employee in a commissioned sales person position for Employers. Ms. Ochoa resigned from her employment with Employers on or around February 22, 2016.

First, Ms. Ochoa maintains that, during her employment, Employers failed to pay her and other California-based hourly non-exempt employees with compensation at the minimum wage rate of pay for all the hours that they worked in violation of California Labor Code sections 1194 and 1197 and compensation at their overtime rate for overtime hours worked in violation of California Labor Code sections 510 and 1194. Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful." Labor Code section 1194 states, "...any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

With regard to overtime hours, Labor Code section 510 provides:

"Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

Importantly, overtime is based upon an employee's regular rate of pay. "The regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf, of the employee." *See* Division of Labor Standards Enforcement – Enforcement Policies and Interpretations Manual, Section 49.1.2.

Finally, Labor Code section 1194 states, "...any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

2

Ms. Ochoa maintains she and other California-based hourly non-exempt employees worked more hours per day than Employers credited them with having worked because Employers maintained a policy, practice, and/or procedure whereby they required Ms. Ochoa and other California-based hourly non-exempt employees to arrive approximately 15 minutes prior to the start of their shift in order to arrange the stores before they opened to the public. Employers did not pay Ms. Ochoa and other California-based hourly non-exempt employees for this time. Accordingly, Employers' foregoing policies practices, and/or procedures resulted in time each workday that Ms. Ochoa and other California-based hourly employees were subject to Employers' control, but not compensated for that time. To the extent that the uncompensated time described above resulted in Ms. Ochoa and other California-based hourly employees being subject to the control of Employers exceed eight (8) hours in a day or forty (40) hours in a week, that time should have been compensated at Ms. Ochoa's and other California-based hourly employees' overtime rates of pay. In addition, as evidenced by the paystubs attached as **Exhibit 1**, Ms. Ochoa maintains that during her employment, Employers failed to pay her and other California-based hourly employees for overtime hours worked at their proper overtime rate because Employers failed to include all remuneration, including employees' "Recognition Bonus," "Rcc Bonus," and "Bonus True Up" in their overtime rate of pay for pay periods in which they worked in excess of eight hours in a day or 40 hours in a week and earned one or more of the aforementioned bonuses.

As a derivative claim of Employers' above-described violations, Ms. Ochoa intends to seek civil penalties pursuant to the Private Attorney General Act ("PAGA"), California Labor Code §2698, et seq. on behalf of the Labor and Workforce Development Agency ("LWDA") against Employers if authorized to file a representative action on behalf of the State of California. As a derivative claim of Employers' failure to pay for all hours worked, including overtime hours worked and overtime hours worked at the proper overtime rate of pay, Ms. Ochoa will seek statutory penalties under Labor Code 226(a)(1) because the failure to pay such wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Second, Ms. Ochoa maintains that during her employment, Employers failed to maintain compliant meal period polices. With regard to first meal periods, Ms. Ochoa maintains that Employers' policies, practices, and/or procedures failed to authorize or permit timely duty free first meal periods of not less than 30 minutes prior to the sixth hour of work. Moreover, Ms. Ochoa maintains that Employers often employed her and other California-based hourly non-exempt employees to work shifts more than 10 hours in length without providing second meals whatsoever and failed to inform them their right to take a second off duty unpaid 30 minute meal period for when they worked shifts over 10 hours in length as required by Labor Code § 226.7, Labor Code § 512 and Industrial Welfare Commission ("IWC") Wage Order 7-2001, 11. In addition, Employers failed to provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for untimely first meal periods that occurred after the sixth hour of work and/or missed second meal periods for qualifying shifts. Ms. Ochoa will seek both restitution

3

pursuant to Labor Code § 558(a)(3) for herself and other aggrieved employees for each violation of Labor Code § 226.7 (and failure to pay premium pay) and will seek civil penalties under PAGA, Labor Code §2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

As a derivative claim of Employers' failure to permit and/or authorize timely first meal periods prior to the sixth hour of work and second meal periods and failure to pay meal period premiums for late first meal periods and/or missed second meal periods, Ms. Ochoa will seek statutory penalties under Labor Code 226(a)(1) because the failure to pay such premium wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Third, Ms. Ochoa maintains that during her employment, Employers failed to maintain compliant rest period policies. Employers did not authorize or permit all its hourly non-exempt employees to take 10-minute paid rest periods for every four hours of work or major fraction thereof, as required by Labor Code § 226.7 and industrial Welfare commission (IWC) Wage Order 7-2001, 12. Specifically, Ms. Ochoa maintains that Employers' failed to authorize or permit third rest periods when she and other California-based hourly non-exempt employees worked shifts more than 10 hours in length. At no time did Employers provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for rest periods shorter than 10 minutes in length and/or failure to authorize or permit third rest periods for qualifying shifts. Ms. Ochoa will seek both restitution pursuant to Labor Code §558(a)(3) for herself and other aggrieved employees for each violation of Labor Code §226.7 (and failure to pay premium pay), and will seek civil penalties under PAGA, Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

As a derivative claim of Employers' failure to provide third rest periods or pay rest period premium wages, Ms. Ochoa will seek statutory penalties under Labor Code §226(a)(1) because the failure to pay such premium wages rendered her pay calculations inaccurate and in violation of Labor Code § 226(e)(2)(B)(i).

Fourth, as evidenced by the paystubs attached as **Exhibit 1**, in direct violation of Labor Code § 226, Employers failed to provide Ms. Ochoa and other California-based hourly employees who received commission pay accurate paystubs because Employers deducted employees' hourly wages from their earned commissions rendering the total amount of their commissions, and thus their total gross, earned wages and deductions inaccurate in direct violation of Labor Code §§ 226(a)(1) and (4). Moreover, based on the aforementioned derivative violations of Labor Code § 226, Ms. Ochoa will seek recovery of civil penalties under Labor Code § 226.3 and PAGA, Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

4

Fifth, as a result of Employers' aforementioned violations of the California Labor Code, Ms. Ochoa was not paid her final wages pay in a timely manner as required by Labor Code § 203. The wages for all hours worked, including overtime hours worked and overtime wages at the proper overtime rate of pay, premium wages for late first meal periods and/or missed second meal periods, and rest periods premium wages for missed third rest periods were not paid at the time of Ms. Ochoa's February 2, 2016 resignation. Ms. Ochoa is informed and believes other employees who separated from Employers, weather voluntarily or involuntarily, were not paid all wages due in a timely manner, including wages for all hours worked, including overtime hours worked and at the proper overtime rate, and premium wages for late and/or missed meal and rest periods, as required by Labor Code § 203. Ms. Ochoa will seek both restrictions pursuant to Labor Code § 558(a)(3) for himself and other aggrieved employees for each violation of Labor Code § 2698, et seq., on behalf of the LWDA against Employers if authorized to file a representative action on behalf of the State of California.

### Request for Relief and Remedies

By this letter, Ms. Ochoa, on behalf of herself and all other aggrieved employees in the state of California, makes the following claims and will seek to represent the LWDA in a civil action based on the following claims:

(1)    Employers are subject to civil penalties under PAGA for failing to pay wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as required by California Labor Code sections 510, 1194 and 1197;

(2)    Employers are subject to civil penalties under PAGA for failing to authorize or permit a first meal period of not less than 30 minutes prior to the sixth hour of work and second meal period when employees worked in shifts exceeding 10 hours in length as required under Wage Order 7, Section 11. Moreover, Employers failed to pay one hour of premium pay at the employee's regular rate of pay for each day an employee did not receive a timely first meal period prior to the sixth hour of work and/or worked over 10 hours in a shift, but was not provided a 30-minute, uninterrupted and duty-free second meal period in a violation of Labor Code Section § 226.7;

(3)    Employers are subject to civil penalties under PAGA for failing to implement a policy to authorize and permit duty-free, paid 10-minute rest periods for every four hours worked (or every major fraction thereof) as required under Wage Order 7, Section 12, and failure to pay a rest period premium as required by Labor Code § 226.7;

(4)    Employers are subject to civil penalties under Labor Code § 226.3 for direct violations of Labor Code §§ 226(a)(1) and (4), including failing to accurately reflect commissioned employees' gross wages earned and all deductions as well as

5

derivate claims for Employers' failure to pay and document wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as well as meal and rest period premium wages for employees not provided compliant meal and rest periods as required by Labor Code § 226(a)(1), thus rendering wage statements inaccurate in the amount of "gross wages earned" in violation of Labor Code § 226(e)(2)(B)(i); and

(5)    Employers are subject to civil penalties under PAGA for willfully failing to timely pay wages to employees who were discharged or quit, including wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, well as meal and rest period premium wages, and further failing to pay a day's wages up to 30 days until final wages were paid, in violation of Labor Code § 203.

### Conclusion

Ms. Ochoa intends to file PAGA Complaint in the appropriate California Superior Court alleging the aforementioned violations. Ms. Ochoa, through her counsel, awaits notice from the LDWA as to whether it intends to pursue the matter, or whether Employers will elect to cure remedies.

Very truly yours,
**LAVI & EBRAHIMIAN, LLP**

Vincent C. Granberry, Esq.

"Exhibit 1"

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 09/27/2015 |
| Pay End Date: | 10/10/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008795979 |
| Advice Date: | 10/16/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

**TAX DATA:**

| | Federal | CA St |
| Marital Status: | Single | H-of |
| Allowances: | | |
| Addl. Pct: | 2 | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Rate | Hours | Current Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|
| Regular | 14.44 | 29.38 | 424.25 | 1,119.23 | 12,789.71 |
| Regular | 11.44 | 35.18 | 402.46 | 9.24 | 105.56 |
| Reporting Time Pay | 11.44 | 0.15 | 1.72 | 0.15 | 1.72 |
| OVT-FLSA | 17.13 | 0.08 | 1.37 | 12.10 | 1,010.86 |
| Holiday Worked - FLSA | | | 0.00 | 6.62 | 221.35 |
| Sick Pay | | | 0.00 | 5.75 | 343.71 |
| Bonus True Up | | | 0.00 | | 8.51 |
| Sales Incentive | | | 0.00 | | -48,715.13 |
| Non-Cash Award | | | 0.00 | | 109.34 |
| Double Time | 0.00 | | 0.00 | | 3.40 |
| **TOTAL:** | | 64.79 | 829.80 | 1,153.09 | 63,209.29 |

### TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 47.31 | 12,878. |
| Fed MED/EE | 12.03 | 917.9 |
| Fed OASDI/EE | 51.45 | 3,925. |
| CA Withholdng | 0.00 | 3,826.9 |
| CA OASDI/EE | 7.46 | 569. |
| **TOTAL:** | 118.25 | 22,118. |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

## EMPLOYER PAID BENEFITS

| Description | Current | Y |
|---|---|---|
| *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 829.80 | 829.80 | 118.25 | 0.00 | 711. |
| YTD | 63,209.29 | 63,309.29 | 22,118.25 | 0.00 | 41,091. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | |
|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | |
| - Taken | 0.00 | 5.75 | | HOURS WORKE |
| End Balance | 0.00 | 18.25 | | 64.1 |

**NET PAY DISTRIBUTION**

| Account Type | Deposit Amount |
|---|---|
| Advice #000000008795979 Checking | $711.55 |
| **TOTAL:** | $711.55 |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 10/31/2015          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/11/2015 |
| Pay End Date: | 10/24/2015   ** On-line Advice ** |

| Business Unit: | VSSBU |
| Advice #: | 000000008801084 |
| Advice Date: | 10/15/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA St |
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Prior Period | | | Current | | | YTD | | TAXES | | |
| | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | Description | Current | Y1 |
| Rec Bonus | 10/04/2015 | 10/10/2015 | | | 2,000.00 | | 2,000.00 | Fed Withholdng | 500.00 | 13,378. |
| Regular | | | | | 0.00 | 1,128.47 | 12,895.27 | Fed MED/EE | 29.00 | 946. |
| Hol Worked | | | | | 0.00 | 6.62 | 221.35 | Fed OASDI/EE | 124.00 | 4,049. |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 | CA Withholdng | 132.00 | 3,958. |
| Sick Pay | | | | | 0.00 | 5.75 | 343.71 | CA OASDI/EE | 18.00 | 587. |
| Bon TrueUp | | | | | 0.00 | | 8.51 | | | |
| Sales Ince | | | | | 0.00 | | 48,915.13 | | | |
| Non-Cash | | | | | 0.00 | | 109.34 | | | |
| OVT - FLSA | | | | | 0.00 | 12.10 | 1,010.86 | | | |
| DoubleTime | | | 0.00 | | 0.00 | | 3.40 | | | |
| TOTAL: | | | | 0.00 | 2,000.00 | 1,153.09 | 65,209.29 | TOTAL: | 803.00 | 22,921. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y1 |
| | | | | | | | | |
| TOTAL: | 0.00 | 0.00 | TOTAL: | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
| Current | 2,000.00 | 2,000.00 | 803.00 | 0.00 | 1,197. |
| YTD | 65,209.29 | 65,209.29 | 22,921.25 | 0.00 | 42,288. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | | HOURS WORKE |
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 5.75 | Advice #000000008801084 | Checking | $1,197.00 | 0. |
| End Balance | 0.00 | 18.25 | TOTAL: | | $1,197.00 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limited brands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 10/23/2015          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VIII-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/11/2015 |
| Pay End Date: | 10/24/2015 |

| Business Unit: | VSSBU |
| Advice #: | 00000008834275 |
| Advice Date: | 10/30/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-35033I/00679/Stonewood |
| Location: | 35033I/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Str |
|---|---|---|
| Marital Status: | Single | II-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | Hours | YTD | Earnings |
|---|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 63.17 | 912.17 | 1,191.64 | | 13,807.44 |
| Sales Ince . | 09/27/2015 | 10/03/2015 | | | 816.07 | | | 52,795.48 |
| Sales Ince | 09/20/2015 | 09/26/2015 | | | 816.07 | | | 0.00 |
| Sales Ince | 09/13/2015 | 09/19/2015 | | | 816.07 | | | 0.00 |
| Sales Ince | 09/06/2015 | 09/12/2015 | | | 816.07 | | | 0.00 |
| Sales Ince | 08/30/2015 | 09/05/2015 | | | 816.07 | | | 0.00 |
| OVT-FLSA | | | 21.65 | 0.43 | 9.31 | 12.53 | | 1,021.10 |
| OVT-FLSA | 09/27/2015 | 10/03/2015 | 17.13 | -0.08 | -1.37 | | | 0.00 |
| OVT-FLSA | 09/27/2015 | 10/03/2015 | 28.75 | 0.08 | 2.30 | | | 0.00 |
| Hol Worked | | | | | 0.00 | 6.62 | | 221.35 |
| Rptg Time | | | | | 0.00 | 0.15 | | 1.72 |
| Sick Pay | | | | | 0.00 | 5.75 | | 343.71 |
| Rec Bonus | | | | | 0.00 | | | 2,000.00 |

CONTINUED ON NEXT PAGE

### TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholding | 1,081.29 | 14,459. |
| Fed MED/EE | 72.54 | 1,019. |
| Fed OASDI/EE | 310.17 | 4,359.. |
| CA Withholding | 297.95 | 4,256. |
| CA OASDI/EE | 45.03 | 632.. |

| TOTAL: | 1,806.98 | 24,728. |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| | | |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| | | |

## EMPLOYER PAID BENEFITS

| Description | Current | Y] |
|---|---|---|
| | | |

| TOTAL: | 0.00 | 0.00 | TOTAL: | 0.00 | 0.00 | *TAXABLE |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|
| Current | 5,002.76 | 5,002.76 | 1,806.98 | 0.00 | | 3,195. |
| YTD | 70,212.05 | 70,312.05 | 24,728.23 | 0.00 | | 45,483. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 5.75 | Advice #000000008834275 | Checking | $3,195.78 | 63.6 |
| End Balance | 0.00 | 18.25 | TOTAL: | | $3,195.78 | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 11/14/2015        Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/11/2015 |
| Pay End Date: | 10/24/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008834275 |
| Advice Date: | 10/30/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Current Rate | Hours | Earnings | Hours | YTD Earnings |
|---|---|---|---|---|---|---|---|
| Reg TrueUp | 08/30/2015 | 10/03/2015 | | | 0.00 | | 8.51 |
| Sales Ince | | | | | 0.00 | | 0.00 |
| Non-Cash | | | | | 0.00 | | 109.34 |
| DoubleTime | | | 0.00 | | 0.00 | | 3.40 |
| **TOTAL:** | | | | 63.60 | 5,002.76 | 1,216.69 | 70,212.05 |

### TAXES

| Description | Current | YT |
|---|---|---|
| | | |
| **TOTAL:** | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 10/25/2015 |
| Pay End Date: | 11/07/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008862149 |
| Advice Date: | 11/13/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | | | Current | | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Rate | Hours | Earnings | Hours | | Earnings | Description | Current | YT |
| Regular | 14.44 | 54.24 | 783.22 | 1,245.88 | | 14,590.66 | Fed Withholdng | 78.22 | 14,537.3 |
| Sick Pay | 42.12 | 6.00 | 252.70 | 11.75 | | 596.41 | Fed MED/EE | 15.03 | 1,034.5 |
| Holiday Worked - FLSA | | | 0.00 | 6.02 | | 221.35 | Fed OASDI/EE | 64.22 | 4,423. |
| Reporting Time Pay | | | 0.00 | 0.15 | | 1.72 | CA Withholdng | 0.00 | 4,256. |
| Recognition | | | 0.00 | | | 2,000.00 | CA OASDI/EE | 9.32 | 642. |
| Bonus True Up | | | 0.00 | | | 8.51 | | | |
| Sales Incentive | | | 0.00 | | | 52,795.48 | | | |
| Non-Cash Award | | | 0.00 | | | 109.34 | | | |
| OVT - FLSA | | | 0.00 | 12.53 | | 1,031.10 | | | |
| Double Time | 0.00 | | 0.00 | | | 3.40 | | | |
| **TOTAL:** | | 60.24 | 1,035.92 | 1,276.93 | | 71,247.97 | **TOTAL:** | 166.79 | 24,895. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y1 |
| | | | | | | | | |
| **TOTAL:** | 0.00 | 0.00 | **TOTAL:** | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | | FED TAXABLE GROSS | | TOTAL TAXES | | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|---|---|
| Current | 1,035.92 | | 1,035.92 | | 166.79 | | 0.00 | | 869. |
| YTD | 71,247.97 | | 71,347.97 | | 24,895.02 | | 0.00 | | 46,352. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | | |
| - Taken | 0.00 | 11.75 | Advice #000000008862149 | Checking | $869.13 | | 54. |
| End Balance | 0.00 | 12.25 | **TOTAL:** | | $869.13 | | |

MESSAGE: Go GREEN! Get your paystub on-line  www.associateresources.limitedbrands.com

## Limitedbrands
BATH & BODY WORKS / C.O. BIGELOW / HENRI BENDEL
LA SENZA / VICTORIA'S SECRET / WHITE BARN CANDLE CO

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 11/28/2015          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| | |
|---|---|
| Pay Group: | VHI-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/08/2015 |
| Pay End Date: | 11/21/2015 |

| | |
|---|---|
| Business Unit: | VSSBU |
| Advice #: | 000000008922405 |
| Advice Date: | 11/27/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| | |
|---|---|
| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

**TAX DATA:**

| | |
|---|---|
| Marital Status: | Federal | Single | CA St... II-of... |
| Allowances: | 2 |
| Addl. Pct: | |
| Addl. Amt: | |

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | Hours | YTD Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 67.63 | 976.58 | 1,313.51 | 15,567.24 |
| Sales Ince | 10/25/2015 | 10/31/2015 | | | 649.54 | | 55,393.65 |
| Sales Ince | 10/18/2015 | 10/24/2015 | | | 649.54 | | 0.00 |
| Sales Ince | 10/11/2015 | 10/17/2015 | | | 649.54 | | 0.00 |
| Sales Ince | 10/04/2015 | 10/10/2015 | | | 649.55 | | 0.00 |
| OVT-FLSA | 10/18/2015 | 10/24/2015 | 31.65 | -0.43 | -9.31 | 11.56 | 631.83 |
| OVT-FLSA | 10/18/2015 | 10/24/2015 | 31.56 | 0.43 | 13.57 | | 0.00 |
| Hol Worked | | | | | 0.00 | 6.62 | 221.35 |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 |
| Sick Pay | | | | | 0.00 | 11.75 | 596.41 |
| Rec Bonus | | | | | 0.00 | | 2,000.00 |
| Bon TrueUp | | | | | 0.00 | | 8.51 |
| Sales Ince | 10/04/2015 | 10/31/2015 | | | 0.00 | | 0.00 |
| CONTINUED ON NEXT PAGE | | | | | | | |

## TAXES

| Description | Current | YT... |
|---|---|---|
| Fed Withholdng | 719.50 | 15,257.. |
| Fed MED/EE | 51.89 | 1,086.. |
| Fed OASDI/EE | 221.90 | 4,645.. |
| CA Withholdng | 152.30 | 4,409.' |
| CA OASDI/EE | 32.21 | 674.. |
| **TOTAL:** | 1,177.80 | 26,072.. |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| | | |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| | | |

### EMPLOYER PAID BENEFITS

| Description | Current | Y... |
|---|---|---|
| | | |

| TOTAL: | 0.00 | 0.00 | TOTAL: | | 0.00 | 0.00 | *TAXABLE | | |
|---|---|---|---|---|---|---|---|---|---|

| | TOTAL GROSS | | FED TAXABLE GROSS | | TOTAL TAXES | | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|---|---|---|
| Current | 3,579.01 | | 3,579.01 | | 1,177.80 | | 0.00 | | 2,401. |
| YTD | 74,826.98 | | 74,926.98 | | 26,072.82 | | 0.00 | | 48,754. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | | | HOURS WORKE |
|---|---|---|---|---|---|---|---|---|
| Start Balance | 0.00 | | 24.00 | Account Type | | Deposit Amount | | |
| - Taken | 0.00 | | 11.75 | Advice #000000008922405 | Checking | $2,401.21 | | 67.( |
| End Balance | 0.00 | | 12.25 | TOTAL: | | $2,401.21 | | |

MESSAGE: Go GREEN! Get your paystub on-line www.associateresources.limitedbrands.com

Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 12/12/2015        Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/08/2015 |
| Pay End Date: | 11/21/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008922405 |
| Advice Date: | 11/27/2015 |

| Elizabeth Ochoa | Employee ID: | 00001684550 |
| 10000 Imperial Hwy | Department: | 00679-350331/00679/Stonewood |
| Apt F215 | Location: | 350331/00679/Stonewood |
| Downey, CA  90242 | Job Title: | Sales Specialist |
| | Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA St: |
|---|---|---|
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| | Prior Period | | | Current | | YTD | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YT |
| Non-Cash | | | | | 0.00 | | 109.34 | | | |
| OVT - FLSA | | | | | 0.00 | 0.97 | 393.53 | | | |
| DoubleTime | | | 0.00 | | 0.00 | | 3.40 | | | |

| TOTAL: | | | | 67.63 | 3,579.01 | 1,344.56 | 74,826.98 | TOTAL: | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/22/2015 |
| Pay End Date: | 12/05/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008974265 |
| Advice Date: | 12/11/2015 |

| Elizabeth Ochoa | Employee ID: | 00001684550 |
| 10000 Imperial Hwy | Department: | 00679-350331/00679/Stonewood |
| Apt F215 | Location: | 350331/00679/Stonewood |
| Downey, CA 90242 | Job Title: | Sales Specialist |
| | Pay Rate: | $433.20 Biweekly |

**TAX DATA:**

| | Federal | CA Sta |
| Marital Status: | Single | H-of- |
| Allowances: | 2 | |
| Addl. Pct: | · | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | Current Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 68.85 | 994.20 | 1,382.36 | 16,561.44 |
| Hol Worked | | | 32.93 | 5.97 | 196.58 | 12.59 | 417.93 |
| Meal Pay | | | 14.44 | 1.00 | 14.44 | 1.00 | 14.44 |
| Sales Ince | | | | | 942.38 | | 59,163.15 |
| Sales Ince | 11/15/2015 | 11/21/2015 | | | 942.38 | | 0.00 |
| Sales Ince | 11/08/2015 | 11/14/2015 | | | 942.38 | | 0.00 |
| Sales Ince | 11/01/2015 | 11/07/2015 | | | 942.36 | | 0.00 |
| OVT-FLSA | | | 32.93 | 4.52 | 148.83 | 17.05 | 1,174.19 |
| Rptg Time | | | | | 0.00 | 0.15 | 1.72 |
| Sick Pay | | | | | 0.00 | 11.75 | 596.41 |
| Rec Bonus | | | | | 0.00 | | 2,000.00 |
| Don TrueUp | | | | | 0.00 · | | 8.51 |
| Non-Cash | | | | | 0.00 | | 109.34 |
| CONTINUED ON NEXT PAGE | | | | | | | |

## TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 1,068.32 | 16,325, |
| Fed MED/EE | 74.29 | 1,160. |
| Fed OASDI/EE | 317.66 | 4,963. |
| CA Withholdng | 310.30 | 4,719. |
| CA OASDI/EE | 46.11 | 720. |

| TOTAL: | 1,816.68 | 27,889. |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | Y |
| | | | | | | | | |
| TOTAL: | 0.00 | 0.00 | TOTAL: | 0.00 | 0.00 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | | NET PA |
|---|---|---|---|---|---|---|
| Current | 5,123.55 | 5,123.55 | 1,816.68 | 0.00 | | 3,306. |
| YTD | 79,950.53 | 80,050.53 | 27,889.50 | 0.00 | | 52,061. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | Account Type | Deposit Amount | |
| - Taken | 0.00 | 11.75 | Advice #000000008974265 | Checking | $3,306.87 | 79. |
| End Balance | 0.00 | 12.25 | TOTAL: | | $3,306.87 | |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limited brands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores. LLC

Expiration Dt: 12/26/2015          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 11/22/2015 |
| Pay End Date: | 12/05/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000008974265 |
| Advice Date: | 12/11/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA St. |
| Marital Status: | Single | H-of. |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

### HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | Hours | YTD | Earnings | | Description | TAXES Current | YT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DoubleTime | | | 0.00 | | 0.00 | | | 3.40 | | | | |
| **TOTAL:** | | | | 80.34 | 5,123.55 | 1,424.90 | | 79,950.53 | | **TOTAL:** | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 12/06/2015 |
| Pay End Date: | 12/19/2015 |

| Business Unit: | VSSBU |
| Advice #: | 000000009023182 |
| Advice Date: | 12/24/2015 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
|---|---|---|
| Marital Status: | Single | H-of |
| Allowances: | 2 | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Rate | Hours | Current Earnings | Hours | YTD Earnings |
|---|---|---|---|---|---|
| Regular | 14.44 | 59.78 | 863.22 | 1,442.14 | 17,424.66 |
| OVT-FLSA | 21.66 | 4.31 | 93.36 | 21.36 | 1,267.55 |
| Holiday Worked - FLSA | | | 0.00 | 12.59 | 417.93 |
| Reporting Time Pay | | | 0.00 | 0.15 | 1.72 |
| Sick Pay | | | 0.00 | 11.75 | 596.41 |
| Meal Pay | | | 0.00 | 1.00 | 14.44 |
| Recognition | | | 0.00 | | 2,000.00 |
| Bonus True Up | | | 0.00 | | 8.51 |
| Sales Incentive | | | 0.00 | | 59,163.15 |
| Non-Cash Award | | | 0.00 | | 109.34 |
| Double Time | 0.00 | | 0.00 | | 3.40 |
| **TOTAL:** | | 64.09 | 956.58 | 1,488.99 | 80,907.11 |

### TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 66.32 | 16,391.5 |
| Fed MED/EE | 13.87 | 1,174.6 |
| Fed OASDI/EE | 59.31 | 5,022.4 |
| CA Withholdng | 0.00 | 4,719.5 |
| CA OASDI/EE | 8.61 | 729.0 |
| **TOTAL:** | 148.11 | 28,037.6 |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

### EMPLOYER PAID BENEFITS

| Description | Current | Y1 |
|---|---|---|

*TAXABLE

| | TOTAL GROSS | | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|---|
| Current | 956.58 | | 956.58 | 148.11 | 0.00 | 808. |
| YTD | 80,907.11 | | 81,007.11 | 28,037.61 | 0.00 | 52,869. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 11.75 | Advice #000000009023182 | Checking | $808.47 | 64.( |
| End Balance | 0.00 | 12.25 | TOTAL: | | $808.47 | |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 01/08/2016          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 12/20/2015 |
| Pay End Date: | 01/02/2016 |

| Business Unit: | VSSBU |
| Advice #: | 000000009072100 |
| Advice Date: | 01/08/2016 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 10001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

**TAX DATA:**    Federal    CA Sta
Marital Status:    Single    H-of-
Allowances:    2
Addl. Pct:
Addl. Amt:

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 46.20 | 667.12 | 46.20 | 667.12 |
| Hol Worked | | | 21.66 | 3.62 | 78.41 | 3.62 | 78.41 |
| Rptg Time | | | 14.44 | 0.42 | 6.06 | 0.42 | 6.06 |
| Sick Pay | 12/06/2015 | 12/12/2015 | 45.55 | 4.00 | 182.21 | 4.00 | 182.21 |
| OVT-FLSA | | | 21.66 | 1.00 | 21.66 | 1.00 | 21.66 |
| **TOTAL:** | | | | 55.24 | 955.46 | 55.24 | 955.46 |

### TAXES

| Description | Current | YT |
|---|---|---|
| Fed Withholdng | 65.77 | 65. |
| Fed MED/EE | 13.85 | 13. |
| Fed OASDI/EE | 59.24 | 59. |
| CA Withholdng | 0.00 | 0. |
| CA OASDI/EE | 8.60 | 8. |
| **TOTAL:** | 147.46 | 147. |

### BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | 0.00 | 0.00 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| **TOTAL:** | | 0.00 | 0.00 |

### EMPLOYER PAID BENEFITS

| Description | Current | Y |
|---|---|---|
| *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 955.46 | 955.46 | 147.46 | 0.00 | 808. |
| YTD | 955.46 | 955.46 | 147.46 | 0.00 | 808. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | NET PAY DISTRIBUTION | | |
| - Taken | 0.00 | 0.00 | Advice #000000009072100 | Account Type: Checking   Deposit Amount $808.00 | 50.( |
| End Balance | 0.00 | 24.00 | TOTAL: | | $808.00 |

MESSAGE: For FASTER W2 by email, Call 877-325-9239  To update Name/Address, Call 866-473-4728

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 01/23/2016     Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 01/03/2016 |
| Pay End Date: | 01/16/2016 |

| Business Unit: | VSSBU |
| Advice #: | 000000009117253 |
| Advice Date: | 01/22/2016 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA Sta |
| Marital Status: | Exempt | Exen |
| Allowances: | | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | Prior Period Begin Date | End Date | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|---|---|
| Regular | | | 14.44 | 18.22 | 263.10 | 64.42 | 930.22 |
| Hol Worked | 12/27/2015 | 01/02/2016 | 21.66 | -3.62 | -78.41 | 3.62 | 185.91 |
| Hol Worked | 12/27/2015 | 01/02/2016 | 51.36 | 3.62 | 185.91 | | 0.00 |
| Sick Pay | | | 37.63 | 5.50 | 206.97 | 9.50 | 389.18 |
| Sales Ince | 12/27/2015 | 01/02/2016 | | | 1,338.67 | | 6,693.33 |
| Sales Ince | 12/20/2015 | 12/26/2015 | | | 1,338.67 | | 0.00 |
| Sales Ince | 12/13/2015 | 12/19/2015 | | | 1,338.67 | | 0.00 |
| Sales Ince | 12/06/2015 | 12/12/2015 | | | 1,338.67 | | 0.00 |
| Sales Ince | 11/29/2015 | 12/05/2015 | | | 1,338.65 | | 0.00 |
| OVT-FLSA | 12/27/2015 | 01/02/2016 | 21.66 | -0.50 | -10.83 | 1.00 | 0.00 |
| OVT-FLSA | 12/27/2015 | 01/02/2016 | 51.36 | 0.50 | 25.68 | | 73.89 |
| OVT-FLSA | 12/20/2015 | 12/26/2015 | 21.66 | -0.50 | -10.83 | | 0.00 |
| OVT-FLSA | 12/20/2015 | 12/26/2015 | 45.32 | 0.50 | 22.66 | | 0.00 |
| CONTINUED ON NEXT PAGE | | | | | | | |

## TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholding | 0.00 | 65. |
| Fed MED/EE | 107.27 | 121. |
| Fed OASDI/EE | 458.67 | 517. |
| CA Withholding | 0.00 | 0. |
| CA OASDI/EE | 66.58 | 75. |

| TOTAL: | 632.52 | 779. |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|

## EMPLOYER PAID BENEFITS

| Description | Current | YT |
|---|---|---|

| TOTAL: | 0.00 | 0.00 | TOTAL: | 0.00 | 0.00 | *TAXABLE |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PA |
|---|---|---|---|---|---|
| Current | 7,397.91 | 7,397.91 | 632.52 | 0.00 | 6,765. |
| YTD | 8,353.37 | 8,353.37 | 779.98 | 0.00 | 7,573. |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | NET PAY DISTRIBUTION | | HOURS WORKE |
|---|---|---|---|---|---|
| Start Balance | 0.00 | 24.00 | | Account Type | Deposit Amount | |
| - Taken | 0.00 | 5.50 | Advice #000000009117253 | Checking | $6,765.39 | 18. |
| End Balance | 0.00 | 18.50 | TOTAL: | | $6,765.39 | |

MESSAGE: Your W2 is NOW AVAILABLE call 877-325-9239 to get it TODAY.

Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 02/06/2016          Discount: 30%

Associate Signature_____

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VHI-Victoria's Secret Hourly 1 – 4 |
| Pay Begin Date: | 01/03/2016 |
| Pay End Date: | 01/16/2016 |

| Business Unit: | VSSBU |
| Advice #: | 000000009117253 |
| Advice Date: | 01/22/2016 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | | Federal | CA Sta |
|---|---|---|---|
| Marital Status: | | Exempt | Exem |
| Allowances: | | | |
| Addl. Pct: | | | |
| Addl. Amt: | | | |

### HOURS AND EARNINGS

| | Prior Period | | | Current | | | YTD | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | | Earnings | Description | | Current | YT |
| OVT-FLSA | 12/13/2015 | 12/19/2015 | 21.66 | -1.48 | -32.06 | | | 0.00 | | | | |
| OVT-FLSA | 12/13/2015 | 12/19/2015 | 38.93 | 1.48 | 57.61 | | | 0.00 | | | | |
| OVT - FLSA | 12/06/2015 | 12/12/2015 | 21.66 | -2.83 | -61.30 | | | 74.78 | | | | |
| OVT - FLSA | 12/06/2015 | 12/12/2015 | 48.08 | 2.83 | 136.08 | | | 0.00 | | | | |
| Rptg Time | | | | | 0.00 | 0.42 | | 6.06 | | | | |
| Sales Ince | 11/29/2015 | 01/02/2016 | | | 0.00 | | | 0.00 | | | | |
| TOTAL: | | | | 23.72 | 7,397.91 | 78.96 | | 8,353.37 | TOTAL: | | | |

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, OH 43068
HR Direct 1-866-473-4728

| Pay Group: | VH1-Victoria's Secret Hourly 1 - 4 |
| Pay Begin Date: | 01/17/2016 |
| Pay End Date: | 01/30/2016 |

| Business Unit: | VSSBU |
| Advice #: | 000000009154985 |
| Advice Date: | 02/05/2016 |

Elizabeth Ochoa
10000 Imperial Hwy
Apt F215
Downey, CA 90242

| Employee ID: | 00001684550 |
| Department: | 00679-350331/00679/Stonewood |
| Location: | 350331/00679/Stonewood |
| Job Title: | Sales Specialist |
| Pay Rate: | $433.20 Biweekly |

| TAX DATA: | Federal | CA St |
| Marital Status: | Exempt | Exen |
| Allowances: | | |
| Addl. Pct: | | |
| Addl. Amt: | | |

## HOURS AND EARNINGS

| Description | | | Current | | | YTD | |
| | Rate | Hours | Earnings | Hours | | Earnings | |
| Regular | 14.44 | 38.70 | 558.83 | 103.12 | | 1,489.05 | |
| Holiday Worked - FLSA | | | 0.00 | 3.62 | | 185.91 | |
| Reporting Time Pay | | | 0.00 | 0.42 | | 6.06 | |
| Sick Pay | | | 0.00 | 9.50 | | 389.18 | |
| Sales Incentive | | | 0.00 | | | 6,693.33 | |
| OVT - FLSA | | | 0.00 | 1.00 | | 148.67 | |
| **TOTAL:** | | **38.70** | **558.83** | **117.66** | | **8,912.20** | |

### TAXES

| Description | Current | YT |
| Fed Withholdng | 0.00 | 65. |
| Fed MED/EE | 8.11 | 129. |
| Fed OASDI/EE | 34.65 | 552. |
| CA Withholdng | 0.00 | 0. |
| CA OASDI/EE | 5.03 | 80. |
| **TOTAL:** | **47.79** | **827.** |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
| | 0.00 | 0.00 |
| **TOTAL:** | **0.00** | **0.00** |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
| | 0.00 | 0.00 |
| **TOTAL:** | **0.00** | **0.00** |

## EMPLOYER PAID BENEFITS

| Description | Current | Y |
| *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS · | NET PA |
| Current | 558.83 | 558.83 | 47.79 | 0.00 | 511. |
| YTD | 8,912.20 | 8,912.20 | 827.77 | 0.00 | 8,084, |

| YEAR-TO-DATE | PAID TIME OFF | PAID SICK LEAVE | | | |
| Start Balance | 0.00 | 24.00 | | | |
| - Taken | 0.00 | 5.50 | | | |
| End Balance | 0.00 | 18.50 | | | |

### NET PAY DISTRIBUTION

Advice #000000009154985

| Account Type | Deposit Amount | HOURS WORKE |
| Checking | $511.04 | 38. |
| | **$511.04** | |

MESSAGE: Your W2 is NOW AVAILABLE call 877-325-9239 to get it TODAY.

## Limitedbrands

Employee ID: 10001684550

Employee Name: Elizabeth Ochoa

Division: Victoria's Secret Stores, LLC

Expiration Dt: 02/20/2016        Discount: 30%

Associate Signature_____



**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

Total
$

Sent
*To*     L Brands, Inc.

*Street*    Four Limited Parkway

*City,*     Reynoldsburg, Ohio 43068

7016 2140 0000 2169 4258

PS Fo... ...structions

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |

1. Article Addressed to:

     L Brands, Inc.

     Four Limited Parkway

     Reynoldsburg, Ohio 43068

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9403 0885 5223 9992 09

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ail
☐ ...ail Restricted Delivery
  (...0)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number *(Transfer from service label)*

7016 2140 0000 2169 4258

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

USPS TRACKING#

9590 9403 0885 5223 9992 09

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

Ochoa v. Victoria's Secret/ LWDA | VG | JL | LN

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

L Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

9590 9403 0885 5223 9992 09

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4258

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

7014 2140 0000 2169 4258

L Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

---

Domestic Return Receipt

PS Form 3811, July 2015 PSN 7530-02-000-9053

| 2. Article Number (Transfer from service label) | 7014 2140 0000 2169 4258 |

| 3. Service Type | |
| --- | --- |
| ☐ Priority Mail Express® | ☐ Adult Signature |
| ☐ Registered Mail™ | ☐ Adult Signature Restricted Delivery |
| ☐ Registered Mail Restricted Delivery | ☐ Certified Mail® |
| ☐ Return Receipt for Merchandise | ☐ Certified Mail Restricted Delivery |
| ☐ Signature Confirmation™ | ☐ Collect on Delivery |
| ☐ Signature Confirmation Restricted Delivery | ☐ Collect on Delivery Restricted Delivery |
| | ☐ Insured Mail |
| | ☐ Insured Mail Restricted Delivery |

9590 9403 5885 5223 9992 09

1. Article Addressed to:

L Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

C. Date of Delivery

B. Received by (Printed Name)

A. Signature
X
☐ Agent
☐ Addressee

SENDER: COMPLETE THIS SECTION
■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____        Postmark
☐ Adult Signature Required          $ _____          Here
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Total P
$

Sent To        Limited Brands, Inc.
Street        Four Limited Parkway
City, St        Reynoldsburg, Ohio 43068

PS Fo...                                    ...Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Limited Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

9590 9403 0885 5223 9992 47

2. Article Number *(Transfer from service label)*
7016 2140 0000 2169 4265

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                   ☐ Agent
                                    ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature                ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
■ Certified Mail®                ☐ Registered Mail Restricted
☐ Certified Mail Restricted Delivery   Delivery
☐ Collect on Delivery            ■ Return Receipt for
☐ Collect on Delivery Restricted Delivery   Merchandise
   Mail                          ☐ Signature Confirmation™
   Mail Restricted Delivery      ☐ Signature Confirmation
                                   Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

USPS TRACKING#

9590 9403 0885 5223 9992 47

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

Ochoa v. Victorias Secret | LWDA | VG | JL | LN

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Limited Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

9590 9403 0885 5223 9992 47

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4265

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

7016 2140 0000 2169 4265

Limited Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

CERTIFIED MAIL

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Limited Brands, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

9590 9406 0885 5223 9992 47

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4265

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

MAILED FROM ZIP CODE
UNITED STATES



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Pos
$

Sent To     The Limited, Inc.
Street and  Four Limited Parkway
City, State Reynoldsburg, Ohio 43068

PS Form

7016 2140 0000 2169 4272

---

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

1. Article Addressed to:

The Limited, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

9590 9403 0885 5223 9992 30

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4272

PS Form 3811, July 2015 PSN 7530-02-000-9053            Domestic Return Receipt




USPS TRACKING#

9590 9403 0885 5223 9992 30

**United States Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box*

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

Ochoav. Victorias secret / LWDA / VS / UL / IN

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Limited, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068



9590 9403 0885 5223 9992 30

2. Article Number (Transfer from service label)

7016 2140 0000 2169 4272

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

7016 2140 0000 2169 4272

CERTIFIED MAIL

The Limited, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

**Domestic Return Receipt**

PS Form 3811, July 2015 PSN 7530-02-000-9053

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. | A. Signature |
| ■ Print your name and address on the reverse so that we can return the card to you. | X ☐ Agent ☐ Addressee |
| ■ Attach this card to the back of the mailpiece, or on the front if space permits. | B. Received by (Printed Name)    C. Date of Delivery |

1. Article Addressed to:

The Limited, Inc.
Four Limited Parkway
Reynoldsburg, Ohio 43068

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9403 5225 9880 5223 9992 30

3. Service Type
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery (over $500)

2. Article Number (Transfer from service label)
7016 2140 0000 2169 4272

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____          Postmark
☐ Certified Mail Restricted Delivery  $ _____          Here
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage

$

Total Pos

$

Sent To    Victoria's Secret Stores, LLC

Street an    Four Limited Parkway

City, Stat    Reynoldsburg, Ohio 43068

PS Form

7016 2140 0000 2169 4289

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Victoria's Secret Stores, LLC

Four Limited Parkway

Reynoldsburg, Ohio 43068

9590 9403 0885 5223 9992 54

2. Article Number *(Transfer from service label)*
7016 2140 0000 2169 4289

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ d Mail
☐ d Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

USPS TRACKING#



9590 9403 0885 5223 9992 54

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

Ochoa v. Victoria's secret / LWDA / VG / JL / LN

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, Ohio 43068



9590 9403 0885 5223 9992 54

2. Article Number (Transfer from service label)

7016 2140 0000 2169 4289

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
■ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
■ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Ste. 200
Beverly Hills, CA 90211

7014 2140 0000 2169 4289

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, Ohio 43068





**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Victoria's Secret Stores, LLC
Four Limited Parkway
Reynoldsburg, Ohio 43068

9590 9403 0885 5223 9992 54

2. Article Number (Transfer from service label)
7014 2140 0000 2169 4289

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**OCHOA v. L BRANDS, INC. et al**                                   **Case No. RG17844337**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ALAMEDA

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 8889 W. Olympic Blvd., Suite 200, Beverly Hills, California 90211.

On March 14, 2017, I served the foregoing document, described as:

### "PLAINTIFF ELIZABETH OCHOA'S FIRST AMENDED COMPLAINT"

on all interested parties in this action as follows:

| | |
|---|---|
| L Brands, Inc.<br>c/o: C T Corporation<br>2345 Stoneridge Mall Rd #d207<br>Pleasanton CA 94588 | Limited Brands, Inc.<br>c/o: C T Corporation<br>2345 Stoneridge Mall Rd #d207<br>Pleasanton CA 94588 |
| The Limited, Inc.<br>c/o: C T Corporation<br>2345 Stoneridge Mall Rd #d207<br>Pleasanton CA 94588 | Victoria's Secret Stores, LLC<br>c/o: C T Corporation<br>818 West Seventh Street, Suite 930<br>Los Angeles, CA 90017 |

☒ **(BY MAIL)** As follows:

I placed such envelope, with postage thereon prepaid, in the United States mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid, at Los Angeles, California, in the ordinary course of business. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

☐ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the attorney at the offices of the addressee.

☒ **(STATE)** I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on March 14, 2017, at Beverly Hills, California.

_____
Siklali Gonzalez

# EXHIBIT B

Electronically FILED by Superior Court of California, County of Los Angeles on 06/10/2022 04:41 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Rowe,Deputy Clerk

Case 1:21-cv-00636-KJM-SKO     Document 52     Filed 05/15/24     Page 106 of 320

Joseph Lavi, Esq. (SBN 209776)
Vincent C. Granberry, Esq. (SBN 276483)
Melissa A. Huether, Esq. (SBN 316604)
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

David M. deRubertis, Esq. State Bar No. 208709
**The deRubertis Law Firm, APC**
4219 Coldwater Canyon Avenue
Studio City, California 91604
Telephone:     (818) 761-2322
Facsimile:     (818) 761-2323
Email: David@deRubertisLaw.com

Attorneys for PLAINTIFFS ELIZABETH OCHOA,
MONICA VELAZQUEZ and CRYSTAL FREGOSO,
on behalf of themselves and others similarly situated.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE

| | |
|---|---|
| ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf of themselves and others similarly situated,<br><br>    PLAINTIFFS,<br><br> vs.<br><br>L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, Inclusive,<br><br>    DEFENDANTS. | Case No.: BC661822<br><br>**CLASS ACTION**<br><br>[*Assigned For All Purposes To The Hon. Maren E. Nelson, Dept. SSC17*]<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF MELISSA A. HUETHER**<br><br>Hearing Information:<br>Date:  July 5, 2022<br>Time:  9:00 a.m.<br>Dept.:  17 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Following the December 30, 2021 filing of Plaintiffs Elizabeth Ochoa, Monica Velasquez, and Crystal Fregoso ("Plaintiffs") Motion for Preliminary Approval of Class Action Settlement

("Motion for Preliminary Approval"), the Court entered a Checklist Order on January 14, 2022 ordering the Parties to submit supplemental briefing addressing concerns raised by the Court in the checklist order ("January 14, 2022 Checklist Order"). The Court's January 14, 2022 Checklist Order also continued the Motion for Preliminary Approval Hearing to July 5, 2022 at 9:00 a.m. in Department 17 of the Los Angeles Superior Court, Spring Street Courthouse, located at 312 North Spring Street, Los Angeles, California 90012.  (*See* Declaration of Melissa A. Huether ("Huether Dec.") ¶2; ¶34, Ex. 1 [January 14, 2022 Checklist Order].)  The following provides the proposed resolutions and responses to the Court's concerns.

A.    **SETTLEMENT TERMS AND EVALUATION – FAIR, ADEQUATE AND REASONABLE:**

The Court asked the Parties to address the various issues in the Class Action Settlement Agreement ("Original Settlement Agreement") as described below. The Parties entered into an Amended Class Action Settlement Agreement ("Amended Settlement") to resolve and address the Court's issues raised in the January 14, 2022 Checklist Order. (See Declaration of Melissa A. Huether, ¶ 35, Ex. 2 [Redline Amended Settlement Agreement] and Ex. 3 [Final Version of Amended Settlement Agreement incorporating redlines]).

1.    The Court stated that the release of class claims should specify that it is limited to claims asserted in or based on facts alleged in the operative complaint (SAC). To address that issue, the Parties have revised the settlement agreement to clarify that the released class claims are limited to claims that "were asserted in the operative Second Amended Complaint . . . or could have been asserted . . . because they reasonably arise out of the same set of operative facts as alleged" in the operative complaint. (Amended Settlement Agreement, § 23.a.).  The scope of the release in the Amended Settlement Agreement tracks the scope of the release approved by the Court of Appeal in *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521,

538 (2021) (finding "release covering 'potential claims reasonably arising out of . . . the same set of operative facts' pled in the complaint" to be "sufficiently tailored").

2. The Court also noted that the release of PAGA claims should be separately defined, and limited to claims for penalties that were brought or could have been brought based on the facts alleged in Plaintiffs' LWDA letter. The Parties have revised the Released Claims to provide a separate release for PAGA claims (i.e., the "Released PAGA Claims"), which are limited to claims that "were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter." (Amended Settlement Agreement, § 23.a.)  *See Amaro*, 69 Cal. App. 5th at 538 (release of "'potential claims reasonably arising out of . . . the same set of operative facts'" "sufficiently tailored").  The Court also requested a copy of the LWDA letter. Plaintiffs' operative LWDA notice is attached to the Declaration of Melissa A. Huether as Exhibit 4.

3. The Court noted that the formula for calculating individual settlement payments does not appear to consume the net if any class member opts out. The Parties have amended the Original Settlement Agreement to provide additional clarity that in the event a Settlement Class Member excludes themselves, their Individual Settlement Award will remain part of the Settlement Class Member Allocation and be distributed to Settlement Class Members who have not opted out.  (Amended Settlement Agreement, § 14.c.1.i.)  Thus, the individual settlement payments necessarily will consume the net settlement amount, as set forth in the Amended Settlement Agreement.

4.    The Court inquired as to why an allocation of $300,000 to the resolution of PAGA claims is appropriate given the maximum PAGA exposure is likely $3,000,000.  As explained in further detail below, while the Parties believe that the original $300,000 allocation was within the range of reasonableness, the Parties have agreed to increase the PAGA allocation to $500,000, which is 10% of the Maximum Settlement Amount and 17% of Plaintiffs' estimate of realistic exposure.  Importantly, Courts routinely approve far smaller PAGA allocations as fair and reasonable.  The Parties' PAGA allocation also is adequate to effectuate PAGA's purpose (*i.e.*, to use civil penalties to deter and punish), especially where, as here, the settlement class members who suffered the alleged Labor Code violations stand to receive the bulk of the recovery.  In addition, PAGA confers discretion on judges to reduce the amount of PAGA penalties awarded, and Defendants have strenuously argued the application of such discretion would have been warranted here. Defendant VSS vigorously enforces its lawful written policies, meaning that any Labor Code violations would have been hyper-technical or inadvertent. Moreover, Defendants also argued that the PAGA claims properly would be subject to a motion to strike because, they contend, the PAGA claims could not be tried in a manner that comports with due process.  *See Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 859 (2021). Thus, the Parties believe that the $500,000 PAGA allocation is fair and reasonable by any measure.

5.    The Court inquired into the necessity of Defendant Victoria's Secret Stores, LLC ("Defendant" or "Defendant VSS") having 30 days after final approval to find the settlement. The Parties have revised the Amended Settlement to provide that Defendant will fund the settlement fourteen (14) calendar days

1

2

after the Court grants final approval. (Amended Settlement Agreement, § 21.b.)

6.    The Court also inquired into why Defendant required 30 days after preliminary approval to provide the class data. The Parties have revised the Amended Settlement to provide that Defendant will provide the class data to the Claims Administrator within fourteen (14) calendar days of the Court's entry of the order granting preliminary approval. (See generally Amended Settlement Agreement, § 13.a.)

7.    The Court further inquired whether maintaining the class list as confidential will impede Class Counsel's ability to discharge its fiduciary duties and why it is in the best interest of the Class. The Parties revised the Amended Settlement to grant Class Counsel access to information sufficient to evaluate any Settlement Class Member's workweek disputes, which the Parties believe is sufficient for Class Counsel to discharge its fiduciary obligations. Further, the Amended Agreement requires settlement class member data to remain confidential to protect the Class' privacy rights. (Amended Settlement Agreement, § 13.a.)

8.    The Court requested that given the class size in this action, the Parties should establish a website and provide the URL. The Parties have revised the Amended Agreement to provide that the Settlement Administrator will establish a website and will post relevant information including the Amended Settlement Agreement, class notice, motion for final approval, motion for fees, and final approval order and judgment. (Amended Settlement Agreement, § 13.b.10 & 13.c.)

9.    The Court also stated that the deadline to submit requests for exclusion, written objections, and/or disputes to workweeks should be a date 45 or more

days from the date the notice is initially mailed. The Parties have revised the Amended Settlement to provide the requests for exclusion, written objections, and/or disputes to workweeks are now to be submitted 45 calendar days after the initial mailing of the Notice. (Amended Settlement Agreement, § 13.b.4 & 13.d, & 18.).

10.    The Court asked how notice of the judgment will be given to the class. The Parties revised the Amended Settlement and the Notice to reflect that the judgment will be posted to the administrator's website. (Amended Settlement Agreement, § 12.c.)

11.    The Court noted that the settlement and exhibits should not suggest that the end result of Court approval will be dismissal of the action. The Parties have revised the Amended Settlement to remove all references to dismissal. (See generally, Amended Settlement Agreement.)

12.    Finally, the Court inquired as to how it would be appropriate for the Court to bar and permanently enjoin Class and PAGA Group Members. The Parties have deleted any references to enjoining or barring the Class and PAGA Group. (See generally, Amended Settlement Agreement.)

**B.    RELEASED PARTIES**:

The Court inquired as to why it would be proper for the release to extend to "any individual or entity that could be jointly liable with Defendant" if they are not named as parties in the action. (See Huether Decl., ¶ 34, Ex 1, January 14, 2022 Checklist Order, section 5(d).)  As a practical matter, the settlement will extinguish the released claims against the settlement class members' employer, Victoria's Secret Stores, LLC.  The Parties do not believe the settlement class members have any cognizable claims to preserve under a joint liability theory.  Nonetheless, a significant purpose of the settlement from Defendant's perspective is to "buy peace," and that purpose would be undermined if the settlement were to leave open any possibility that a settlement class member

could initiate another lawsuit based on the same set of operative facts and claims under some joint liability theory that would implicate Defendants in some fashion. Under these circumstances, the Parties believe a release extending to "any individual or entity that could be jointly liable with Defendant" is fair and reasonable. (Huether Decl., ¶ 4.)

**C.      ENGLISH ONLY CLASS NOTICE**:

The Court inquired into whether it is sufficient that the Notice be sent to Class Members in only English. Defendant VSS represents that Class Members are required to speak English as part of their job duties, which include interfacing with the public in a retail environment. Thus, an English-only Notice is fair and adequate. (Huether Decl., ¶ 5.)

**D.      REVISIONS TO THE NOTICE:**

The Parties also have made the revisions to the Notice, as described below and required by the Court. (Huether Decl., ¶ 6.)

First, the Court stated that the Notice must include the procedure and deadline to Class Members to submit workweeks disputes to the Claims Administrator. The Parties have revised the Notice to address the Court's requirement. (Huether Decl., ¶ 7.)

Second, consistent with the January 14, 2022 Checklist Order, the Notice now informs Class Members of the option to appear by audio or video at the final approval hearing and provides the URL for the Court's website for directions. In accordance with the Court's instructions, Class Members also are not required to submit letters to the Court to request permission to be heard and may be heard just by appearing in person at the hearing. (Huether Decl., ¶ 8.)

Third, the Court required the Notice to be revised to include boxes on the first page identifying Class Members' options as well as the time and location for the Final Approval Hearing. The Parties have made the requisite revisions to the Notice. (Huether Decl., ¶ 9.)

Finally, the Parties have also revised the Notice to conform to the changes in the Amended Settlement Agreement and have confirmed that the Amended Settlement Agreement and Notice are consistent. (See Declaration of Melissa A. Huether, ¶ 10; ¶ 28, Ex. 5 [Redline Class Notice]).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.     **SETTLEMENT ADMINSITRATION COSTS**:

The Court questioned the propriety of the Original Settlement Agreement capping administration costs at $225,000 when CPT had agreed to cap the costs at $180,000. The Court also noted the original quote from CPT estimated there were 65,000 class members when there are only approximately 55,252.  The reason for the disparity is that Class Counsel sought a conservative bid that contained a buffer in the event an issue or problem arose during the administration and notice process which incurred unanticipated funds. (Huether Decl., ¶ 11.)

Nevertheless, to address the Court's concern, the Parties have received an updated, more tailored, "not to exceed" quote from CPT based on the actual number of Class Members, which Defendant provided and has confirmed to be 48,957 Class Members.[1] CPT has provided a discounted flat fee estimate of $147,000 to complete the notice and settlement administration process and has agreed that the administration costs will not exceed $155,000. Therefore, the Parties have revised the Amended Settlement Agreement to provide that the allocated settlement administration costs shall not exceed $155,000 and any unused costs will remain a part of the Potential Gross Settlement Proceeds.  (Huether Decl., ¶ 12.)

F.     **REVIEW OF INFORMATION IN ADVANCE OF MEDIATION**:

The Court inquired as to why the year 2017 was selected for the sampling of time and wage records as well as whether the sampling was statistically significant, and whether expert analysis supported the conclusion that the sampling was sufficient to provide useful data. (See Declaration of Melissa A. Huether, ¶ 13; Ex. 1 [January 14, 2022 Checklist Order].)

Given the seasonal nature of Defendant's business, the volume of applicable data, and the burden in extracting select portions of the data, the Parties agreed it would be sufficient, and most efficient for discovery and mediation purposes, for Defendant to produce an entire year of data across all VSS California stores.  Further, Class Counsel contends that there were no significant

---

[1] The updated number of settlement class members is smaller because the original list inadvertently identified some settlement class members twice.  Defendant VSS has confirmed to the best of its ability that this number is accurate.

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF MELISSA A. HUETHER

8

changes in policies and practices affecting Plaintiffs' claims during the Class Period, and therefore, information from any year during the Class Period should present an accurate picture of the issues. Plaintiffs, nonetheless, believed 2017 to be the most optimal representative sample for several reasons. (Huether Decl., ¶ 14.)

First, 2017 contained the largest amount of data for a single year. Second, 2017 was one of only three full years in the class period that both pre-dated the COVID-19 pandemic, which caused statewide store closures, and post-dated the *Casas v. Victoria's Secret Stores, LLC, et al.*, C.D. Cal. Case No. CV 14-6412-GW(VBKx) settlement, which resolved many of the same claims at issue in this case. Third, 2017 provided a statistically significant sample. The 2017 data spans approximately 771,031 individual shifts (which is an objectively large amount). During the entire Class Period, Class Members worked approximately 5,833,112 shifts. Therefore, the shifts from the year 2017 represents approximately 13% of the Class Period. Based on Plaintiffs' counsel's experience in scores of similar cases and on informal discussions with an expert, Plaintiffs believe 13% is a statistically significant data sample for this volume of data. (Huether Decl., ¶ 15.)

As such, Class Counsel believes that the data and metrics reviewed in advance of mediation were significant and more than sufficient to provide a basis for the settlement and the contention that the settlement is fair, reasonable, and adequate based on the value of the claims. (Huether Decl., ¶ 16.)

### G.    PAGA ALLOCATION:

The Court inquired as to why an allocation of $300,000 to the resolution of PAGA claims is appropriate given the maximum PAGA exposure is likely $3,000,000. (See Declaration of Melissa A. Huether, ¶ 17; Ex. 1 [January 14, 2022 Checklist Order].)[2]

---

[2]  The Court noted the reference to more than $600 million in maximum PAGA penalties. Such calculation presented maximum theoretical exposure – *i.e.*, the maximum penalty if every claim were proven for every allegedly aggrieved employee for every pay period, and if the "double" penalties applied, and if Plaintiffs could obtain all such penalties every pay period for every violation (*i.e.*, "stacking"). As noted, it was not a realistic number, and the likely maximum recovery on the PAGA claims was $3,000,000. Defendants contested even that amount and believed no penalties would be recovered.

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF MELISSA A. HUETHER**

**9**

1

2          As set forth in Plaintiff's initial motion for preliminary settlement approval, $300,000

3   constitutes 10% of the likely maximum PAGA exposure.  While the caselaw makes clear, as further

4   discussed below, that such an amount is well within the range of fair and reasonable – particularly

5   under the instant facts and circumstances – in light of the Court's comment, the Parties have

6   increased the PAGA allocation to $500,000, which amount represents 10% of the entire settlement

7   and 17% of the realistic exposure. Of the $500,000, 75% or $375,000 will be distributed to the

8   LWDA and the remaining 25%, or $125,000, will be distributed to aggrieved employees *pro rata*.

9   As set forth below, the PAGA allocation is undeniably fair and adequate. (Huether Decl., ¶ 18.)

10          First, under the instant facts and circumstances, 17% of the realistic exposure, and 10% of

11   the Maximum Settlement Amount, is fair and reasonable as measured by other settlements that have

12   been approved by courts in California.   Indeed, courts routinely approve far smaller PAGA

13   allocations. *Magadia v. Wal-Mart Assocs.* (N.D. Cal. May 31, 2019, No. 17-CV-00062-LHK) 2019

14   U.S. Dist. LEXIS 91732, *90-91, citing as examples *Ceja-Corona v. CVS Pharm., Inc.* (E.D. Cal.

15   Jan. 14, 2015) 2015 U.S. Dist. LEXIS 5118, 2015 WL 222500, at *2-3 [preliminarily approving

16   $10,000 in PAGA penalties out of a total settlement amount of $900,000]; *Thio v. Genji, LLC* (N.D.

17   Cal. 2014) 14 F. Supp. 3d 1324, 1330 [preliminarily approving $10,000 in PAGA penalties out of a

18   total settlement amount of $1,250,000]; *Franco v. Ruiz Food Prods.* (E.D. Cal. Nov. 27, 2012) 2012

19   U.S. Dist. LEXIS 169057, 2012 WL 5941801, at *14 [granting final approval of $10,000 in PAGA

20   penalties out of a total settlement amount of $2,500,000]; *Garcia v. Gordon Trucking, Inc.* (E.D.

21   Cal. Oct. 31, 2012) 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575, at *3  [granting final

22   approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000]; *Chu v.

23   Wells Fargo Invs., LLC* (N.D. Cal. Feb. 16, 2011) 2011 U.S. Dist. LEXIS 15821, 2011 WL 672645,

24   at *1 [granting final approval of $10,000 in PAGA penalties out of a total settlement amount of

25   $6,900,000].)  The fairness and reasonableness of the PAGA allocation is manifest for this reason

26   alone.  (Huether Decl., ¶ 19.)

27   ///

28

1      Second, while 17% is a reasonable compromise of disputed claims, it must be noted that

2   these are civil penalties designed to punish and deter, not a damages award designed to make

3   injured parties whole.  Lab. Code § 2699(2); *Thurgood v. Bayshore Transit Management, Inc.*, 203

4   Cal. App. 4th 1112, 1135 (2012). Indeed, that is why the Court has discretion to reduce PAGA

5   awards in the first instance. This principle has particular salience where a plaintiff alleges both class

6   claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.*, 2016 WL

7   5907869, *9 (N.D. Cal. Oct. 11, 2016). PAGA was enacted to ensure compliance with the Labor

8   Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los

9   Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the parties have reached a settlement

10   providing employees with monetary compensation for alleged underlying Labor Code violations,

11   many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial

12   likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA

13   penalties even if Plaintiffs proved successful at trial.  (Huether Decl., ¶ 20.)

14      Moreover, where, as here, there was a distinct possibility that Defendants would prove that

15   any Labor Code violations were atypical and a departure from their lawful policies, there is a further

16   likelihood the Court would exercise its discretion to reduce any penalties assessed under PAGA.

17   While Plaintiffs dispute Defendants' contentions, Defendants strenuously argued that VSS has

18   lawful written policies, VSS trains its associates on those policies, and that VSS vigorously enforces

19   those policies.  For example, with respect to the meal period and rest break claims, VSS provided

20   evidence that it requires it associates to certify whether they received all requisite meal periods and

21   rest breaks, then automatically pays break premiums when as associate certifies that he or she did

22   not receive a break in accordance with VSS's written policy.  In these circumstances, the Court may

23   well have concluded that any Labor Code violations were inadvertent or hyper-technical and

24   therefore less deserving of punishment.  Accordingly, a reduction is penalties would have been

25   appropriate for this additional reason. (Huether Decl., ¶ 21.)

26   ///

27

28

1    Third, to balance these goals of obtaining damages for the class members and seeking to

2    discourage Labor Code violations and penalize the employer when the settlement is significantly

3    less than the potential damages, Class Counsel believed it appropriate to seek significant relief

4    focusing on claims with damages that would go to the class members whose rights were actually

5    violated and suffered the most from the Labor Code violations. As the Court noted in *Moniz v.*

6    *Adecco U.S., Inc.*, PAGA settlements are to be reviewed to "determine whether it is fair, reasonable,

7    and adequate in view of PAGA's purposes to remediate present labor law violations, deter future

8    ones, and to maximize enforcement of state labor laws." *Moniz*, 27 Cal.App.5th 56, 77. These

9    damages and the amount paid in settlement to these claims also serve the purpose of PAGA civil

10   penalties to discourage Labor Code violations and penalize Defendants for Plaintiffs' belief that

11   Defendants violated the law. Accordingly, Class Counsel believed it fair that the class members

12   should receive the majority of the damages when the settlement is less than the full estimate of

13   liability because: (1) the class members are the direct victims of the alleged Labor Code violations;

14   and (2) although not denominated as PAGA penalties, the non-PAGA settlement amount furthers

15   the purpose of the PAGA penalties, *i.e.*, to discourage Labor Code violations and penalize an

16   employer violating the law. *Iskanian,* 59 Cal.4th at 387. See Lab. Code § 2699, subd. (e)(2) [court

17   may award less than the statutory maximum PAGA penalties if unjust, arbitrary and oppressive, or

18   confiscatory]; *Amaral v. Cintax Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213-1214 [noting

19   court's discretion]. (Huether Decl., ¶ 22.)

20   Fourth, the Parties considered that the PAGA Period begins on January 3, 2016, whereas the

21   Class Periods starts three years earlier and thereby covers significantly more time and claims. It is

22   also important to note that Defendant VSS is in the retail industry and was largely non-operational

23   during 2020 due to the COVID-19 pandemic, thereby likely limiting penalties to just 3 years of

24   actual working time. (Huether Decl., ¶ 23.)

25   Finally, Defendants contended that Plaintiffs' PAGA claims were properly the subject of a

26   motion to strike because the instant action cannot be tried in a manageable manner that comports

27

28

1    with due process. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 859 (2021)

2    ("[C]ourts have inherent authority to ensure that PAGA claims can be fairly and efficiently tried

3    and, if necessary, may strike a claim that cannot be rendered manageable."); *see also Williams v.*

4    *Sup. Ct.*, 3 Cal. 5th 531, 559 (2017) (recognizing that PAGA representative actions must be

5    "manageable").[3]  In support of their position, Defendants argued that Plaintiff Ochoa only was able

6    to survive summary judgment by relying on individualized proof because, in part, she was unable to

7    identify any unlawful policies that uniformly apply to VSS's associates.   Thus, Defendants

8    contended, a trial of the PAGA claims in this case necessarily would devolve into thousands of min-

9    trials and turn on each associate's individual experience.   While Plaintiffs disagree with

10    Defendants' contentions, the possibility that Defendants would prevail on a motion to strike bolsters

11    the conclusion that the PAGA allocation is fair and reasonable.   Therefore, the Plaintiffs' counsel

12    believes the allocation of $500,000, which is 10% of the total settlement amount and 17% of the

13    realistic exposure, to the resolution of PAGA claims is fair and reasonable and should approved.

14    (Huether Decl., ¶ 24.)

15         **H.     PLAINTIFFS' ADEQUACY**:

16       The Court requested briefing to support the contention that Plaintiffs are adequate class

17    representatives considering their separate individual agreements and additional sums they are to

18    receive. The Court also asked whether the individual and class settlements were negotiated at the

19    same time, if the sources of funds between the class settlement and individual settlements are the

20    same, and why there is not a potential conflict of interest between Plaintiffs and the class. (See

21    Declaration of Melissa A. Huether, ¶ 25; Ex. 1 [January 14, 2022 Checklist Order].)

22       Plaintiffs Ochoa, Velasquez, and Fregoso have each entered into a "Individual Settlement

23    Agreement and Release" agreement in exchange for $12,500, $7,000, and $7,000, respectively. (See

24

25    [3]  The Fourth District recently issued an opinion that reached the opposite conclusion as the Second

26    District in *Wesson*, thereby creating a split in authority.  *Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 697 (2022), review filed (May 2, 2022).  *Wesson*, however, remains good law,

27    and Defendants contend that motions to strike PAGA claims on manageability grounds remain viable – particularly in the Second District.

28

Huether Decl., Exhibit E to Exhibit 3.)  The individual agreements simply provide for a "general release" with a 1542 waiver. In this action, the Parties elected to have an entirely separate agreement and payment in exchange for the general release of claims. With the execution of these agreements, Plaintiffs have agreed to release any potential claims related to their employment and separation from Defendant, including, and not limited to, claims for harassment, retaliation, and discrimination, as well as other wage claims which are not being released as part of the settlement such as claims for vacation/PTO pay and reimbursement for business expenditures.  Thus, the named Plaintiffs are receiving additional money in exchange for a broader release. (Huether Decl., ¶ 26.)

In addition to these payments in exchange for a general release, Plaintiffs are requesting modest enhancement payments solely for their work as class representatives and for the risks associated with being class representatives. Enhancement awards in wage and hour cases typically range from $5,000.00 to $40,000.00, although some awards are higher. Often, multiple class representatives receive awards in the above range. (*See e.g.*, *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 412 [approving an enhancement request of $10,000.00 per named plaintiff in a 188 member class]; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ["We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination."].) Even when considering the enhancement together with the amount of the individual settlement, the awards to Plaintiffs are within the range of reasonableness for what courts generally approve.  (Huether Decl., ¶ 27.)

These individual settlement agreements do not create a conflict of interest because they have no impact on the recovery of any settlement class member.  Each settlement class member, including each Plaintiff, will receive a settlement award pursuant to the same formula.  The additional monies that Plaintiffs will receive arise from the fact that they performed additional work, among other things, as a result of their status as named plaintiffs and provided Defendant

with a broader release.  Moreover, it is not the case that individual settlement class members would receive additional money if Plaintiffs had not entered into individual settlement agreements; instead, Defendant contends it simply would have offered less money to settle the case (*i.e.*, the $5 million Maximum Settlement Amount is not the lowest possible "fair" number), which renders the fact that the settlement amount comes from the same fund irrelevant.  (Huether Decl., ¶ 27.)

The Parties negotiated the class settlement at mediation and when discussing and revising the terms of the long for settlement, agreed to the specific amounts for the incentive awards and general release fee.

Finally, the general release fees from the separate agreements (Exhibit E) are to be paid from the Maximum Settlement Amount. (See Amended Settlement Agreement, § 14.b.) (Huether Decl., ¶ 28.)

Therefore, Plaintiffs' and Class Counsel respectfully request that the Court approve the enhancement payments and the inclusion of the individual general release agreements as they are fair, reasonable, and adequate and do not create a conflict between Plaintiffs and the class. (Huether Decl., ¶ 29.)

### I.    PAGA GROUP:

Defendants' counsel has confirmed there are 32,400 individuals in the PAGA Group during the PAGA Period. (Huether Decl., ¶ 30.)

### J.    FEE SPLIT:

Plaintiffs' counsel, Lavi & Ebrahimian LLP and the DeRubertis Law Firm, as well as Plaintiffs Ochoa, Fregoso and Velasquez have entered into a fee split agreement in writing as required. (See Huether Decl., ¶ 33; DeRubertis Decl., ¶ 19; Ochoa Decl., ¶ 10; Fregoso Decl., ¶ 10 ; and Velasquez Decl., ¶ 10.)

### K.    ADEQUACY OF CO-COUNSEL:

Co-Counsel David deRubertis of the deRubertis Law Firm is experienced in class action lawsuits and has been appointed Class Counsel in over a dozen matters. Mr. deRubertis graduated

**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF MELISSA A. HUETHER**

**15**

1    from Loyola Law School, Los Angeles in 2000 and has been a high successful trial counsel in the

2    years since. Mr. deRubertis has been named "Trial Lawyer of the Year" by the consumer Attorneys

3    Association of Los Angeles and has been named as Top 100 Southern California Super Lawyer

4    from 2011 through 2022. Mr. deRubertis has significant experience in class actions and is well

5    qualified to serve as class counsel in this action. (See generally Declaration of David deRubertis in

6    Support of Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action

7    Settlement.)

8    Dated:  June 10, 2022                     Respectfully submitted,

9                                              **LAVI & EBRAHIMIAN, LLP**

10

11   By: _Melissa Huether_____

12       Joseph Lavi, Esq.
         Vincent C. Granberry, Esq.
         Melissa A. Huether, Esq.
13       Attorneys for Plaintiffs Elizabeth Ochoa, Monica
         Velasquez, and Crystal Fregoso

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF MELISSA A. HUETHER**

I, Melissa A. Huether, declare:

     1.     I am an attorney licensed to practice law in the state of California and have been admitted to practice before this Court. I am an attorney with the law firm Lavi & Ebrahimian, LLP, Counsel for Plaintiffs Elizabeth Ochoa, Monica Velasquez, and Crystal Fregoso ("Plaintiffs") in this action, and I am an attorney assigned to work on this case.  Based on my assignment to this case and familiarity with the file and actions in this matter; I have personal knowledge of the matters stated herein and if called and sworn as a witness, I would and could competently testify under oath thereto. I am a member in good standing of the bar of all State and Federal District Courts of California. This Declaration is submitted in response to the Court's November 10, 2021 Minute Order and in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. The following provides the proposed resolutions and responses to the Court's concerns.

     2.     Following the December 30, 2021 filing of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") the Court entered a Checklist Order on January 14, 2022 ordering the Parties to submit supplemental briefing addressing concerns raised by the Court in the checklist order ("January 14, 2022 Checklist Order"). The Court's January 14, 2022 Checklist Order also continued the Motion for Preliminary Approval Hearing for July 5, 2022 at 9:00 a.m. in Department 17 of the Los Angeles Superior Court, Spring Street Courthouse located at 312 North Spring Street, Los Angeles, California 90012.  The following provides the proposed resolutions and responses to the Court's concerns.

     3.     **SETTLEMENT TERMS AND EVALUATION – FAIR, ADEQUATE AND REASONABLE:**

     The Court asked the Parties to address the various issues in the Class Action Settlement Agreement ("Original Settlement Agreement") as described below. The Parties entered into an Amended Class Action Settlement Agreement ("Amended Settlement") to resolve and address the Court's issues raised in the January 14, 2022 Checklist Order.

///

---

**DECLARATION OF MELISSA A. HUETHER**

**1**

- The Court stated that the release of class claims should specify that it is limited to claims asserted in or based on facts alleged in the operative complaint (SAC). To address that issue, the Parties have revised the settlement agreement to clarify that the released class claims are limited to claims that "were asserted in the operative Second Amended Complaint . . . or could have been asserted . . . because they reasonably arise out of the same set of operative facts as alleged" in the operative complaint. (Amended Settlement Agreement, § 23.a.).  The scope of the release in the Amended Settlement Agreement tracks the scope of the release approved by the Court of Appeal in *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 538 (2021) (finding "release covering 'potential claims reasonably arising out of . . . the same set of operative facts' pled in the complaint" to be "sufficiently tailored").

- The Court also noted that the release of PAGA claims should be separately defined, and limited to claims for penalties that were brought or could have been brought based on the facts alleged in Plaintiffs' LWDA letter. The Parties have revised the Released Claims to provide a separate release for PAGA claims (i.e., the "Released PAGA Claims"), which are limited to claims that "were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter." (Amended Settlement Agreement, § 23.a.)  *See Amaro*, 69 Cal. App. 5th at 538 (release of "'potential claims reasonably arising out of . . . the same set of operative facts'" "sufficiently tailored").  The Court also requested a copy of the LWDA letter. Plaintiffs' operative LWDA notice is attached to the Declaration of Melissa A. Huether as Exhibit 4.

///

- The Court noted that the formula for calculating individual settlement payments does not appear to consume the net if any class member opts out. The Parties have amended the Original Settlement Agreement to provide additional clarity that in the event a Settlement Class Member excludes themselves, their Individual Settlement Award will remain part of the Settlement Class Member Allocation and be distributed to Settlement Class Members who have not opted out. (Amended Settlement Agreement, § 14.c.1.i.) Thus, the individual settlement payments necessarily will consume the net settlement amount, as set forth in the Amended Settlement Agreement.

- Court inquired as to why an allocation of $300,000 to the resolution of PAGA claims is appropriate given the maximum PAGA exposure is likely $3,000,000. As explained in further detail below, while the Parties believe that the original $300,000 allocation was within the range of reasonableness, the Parties have agreed to increase the PAGA allocation to $500,000, which is 10% of the Maximum Settlement Amount and 17% of Plaintiffs' estimate of realistic exposure. Importantly, Courts routinely approve far smaller PAGA allocations as fair and reasonable. The Parties' PAGA allocation also is adequate to effectuate PAGA's purpose (*i.e.*, to use civil penalties to deter and punish), especially where, as here, the settlement class members who suffered the alleged Labor Code violations stand to receive the bulk of the recovery. In addition, PAGA confers discretion on judges to reduce the amount of PAGA penalties awarded, and Defendants have strenuously argued the application of such discretion would have been warranted here. Defendant VSS vigorously enforces its lawful written policies, meaning that any Labor Code violations would have been hyper-technical or inadvertent. Moreover, Defendants also argued that the PAGA claims properly would be

DECLARATION OF MELISSA A. HUETHER

3

subject to a motion to strike because, they contend, the PAGA claims could not be tried in a manner that comports with due process. *See Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 859 (2021). Thus, the Parties believe that the $500,000 PAGA allocation is fair and reasonable by any measure.

- The Court inquired into the necessity of Defendant Victoria's Secret Stores, LLC ("Defendant" or "Defendant VSS") having 30 days after final approval to find the settlement. The Parties have revised the Amended Settlement to provide that Defendant will fund the settlement fourteen (14) calendar days after the Court grants final approval. (Amended Settlement Agreement, § 21.b.)

- The Court also inquired into why Defendant required 30 days after preliminary approval to provide the class data. The Parties have revised the Amended Settlement to provide that Defendant will provide the class data to the Claims Administrator within fourteen (14) calendar days of the Court's entry of the order granting preliminary approval. (See generally Amended Settlement Agreement, § 13.a.)

- The Court further inquired whether maintaining the class list as confidential will impede Class Counsel's ability to discharge its fiduciary duties and why it is in the best interest of the Class. The Parties revised the Amended Settlement to grant Class Counsel access to information sufficient to evaluate any Settlement Class Member's workweek disputes, which the Parties believe is sufficient for Class Counsel to discharge its fiduciary obligations. Further, the Amended Agreement requires settlement class member data to remain confidential to protect the Class' privacy rights. (Amended Settlement Agreement, § 13.a.)

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The Court requested that given the class size in this action, the Parties should establish a website and provide the URL. The Parties have revised the Amended Agreement to provide that the Settlement Administrator will establish a website and will post relevant information including the Amended Settlement Agreement, class notice, motion for final approval, motion for fees, and final approval order and judgment. (Amended Settlement Agreement, § 13.b.10 & 13.c.)

- The Court also stated that the deadline to submit requests for exclusion, written objections, and/or disputes to workweeks should be a date 45 or more days from the date the notice is initially mailed. The Parties have revised the Amended Settlement to provide the requests for exclusion, written objections, and/or disputes to workweeks are now to be submitted 45 calendar days after the initial mailing of the Notice. (Amended Settlement Agreement, § 13.b.4 & 13.d, & 18.).

- The Court asked how notice of the judgment will be given to the class. The Parties revised the Amended Settlement and the Notice to reflect that the judgment will be posted to the administrator's website. (Amended Settlement Agreement, § 12.c.)

- The Court noted that the settlement and exhibits should not suggest that the end result of Court approval will be dismissal of the action. The Parties have revised the Amended Settlement to remove all references to dismissal. (See generally, Amended Settlement Agreement.)

- Finally, the Court inquired as to how it would be appropriate for the Court to bar and permanently enjoin Class and PAGA Group Members. The Parties have deleted any references to enjoining or barring the Class and PAGA Group. (See generally, Amended Settlement Agreement.).

///

1

**RELEASED PARTIES:**

2      4.    The Court inquired as to why it would be proper for the release to extend to "any

3   individual or entity that could be jointly liable with Defendant" if they are not named as parties in

4   the action. As a practical matter, the settlement will extinguish the released claims against the

5   settlement class members' employer, Victoria's Secret Stores, LLC.  The Parties do not believe the

6   settlement class members have any cognizable claims to preserve under a joint liability theory.

7   Nonetheless, a significant purpose of the settlement from Defendant's perspective is to "buy peace,"

8   and that purpose would be undermined if the settlement were to leave open any possibility that a

9   settlement class member could initiate another lawsuit based on the same set of operative facts and

10  claims under some joint liability theory that would implicate Defendants in some fashion.  Under

11  these circumstances, the Parties believe a release extending to "any individual or entity that could

12  be jointly liable with Defendant" is fair and reasonable.

13      **ENGLISH ONLY CLASS NOTICE**:

14      5.    The Court inquired into whether it is sufficient that the Notice be sent to Class

15  Members in only English. Defendant VSS represents that Class Members are required to speak

16  English as part of their job duties, which include interfacing with the public in a retail environment.

17   Thus, an English-only Notice is fair and adequate.

18      **REVISIONS TO THE NOTICE**:

19      6.    The Parties also have made the revisions to the Notice, as described below and

20  required by the Court.

21      7.    First, the Court stated that the Notice must include the procedure and deadline to

22  Class Members to submit workweeks disputes to the Claims Administrator.  The Parties have

23  revised the Notice to address the Court's requirement.

24      8.    Second, consistent with the January 14, 2022 Checklist Order, the Notice now

25  informs Class Members of the option to appear by audio or video at the final approval hearing and

26  provides the URL for the Court's website for directions. In accordance with the Court's

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

instructions, Class Members also are not required to submit letters to the Court to request permission to be heard and may be heard just by appearing in person at the hearing.

9.      Third, the Court required the Notice to be revised to include boxes on the first page identifying Class Members' options as well as the time and location for the Final Approval Hearing. The Parties have made the requisite revisions to the Notice.

10.      Finally, the Parties have also revised the Notice to conform to the changes in the Amended Settlement Agreement and have confirmed that the Amended Settlement Agreement and Notice are consistent.

**SETTLEMENT ADMINISTRATION COSTS**:

11.      The Court questioned the propriety of the Original Settlement Agreement capping administration costs at $225,000 when CPT had agreed to cap the costs at $180,000. The Court also noted the original quote from CPT estimated there were 65,000 class members when there are only approximately 55,252.  The reason for the disparity is that Class Counsel sought a conservative bid that contained a buffer in the event an issue or problem arose during the administration and notice process which incurred unanticipated funds.

12.      Nevertheless, to address the Court's concern, the Parties have received an updated, more tailored, "not to exceed" quote from CPT based on the actual number of Class Members, which Defendant provided and has confirmed to be 48,957 Class Members. CPT has provided a discounted flat fee estimate of $147,000 to complete the notice and settlement administration process and has agreed that the administration costs will not exceed $155,000. Therefore, the Parties have revised the Amended Settlement Agreement to provide that the allocated settlement administration costs shall not exceed $155,000 and any unused costs will remain a part of the Potential Gross Settlement Proceeds.

**REVIEW OF INFORMATION IN ADVANCE OF MEDIATION**:

13.      The Court inquired as to why the year 2017 was selected for the sampling of time and wage records as well as whether the sampling was statistically significant, and whether expert analysis supported the conclusion that the sampling was sufficient to provide useful data.

14.    Given the seasonal nature of Defendant's business, the volume of applicable data, and the burden in extracting select portions of the data, the Parties agreed it would be sufficient, and most efficient for discovery and mediation purposes, for Defendant to produce an entire year of data across all VSS California stores.  Further, Class Counsel contends that there were no significant changes in policies and practices affecting Plaintiffs' claims during the Class Period, and therefore, information from any year during the Class Period should present an accurate picture of the issues. Plaintiffs, nonetheless, believed 2017 to be the most optimal representative sample for several reasons.

15.    First, 2017 contained the largest amount of data for a single year.  Second, 2017 was one of only three full years in the class period that both pre-dated the COVID-19 pandemic, which caused statewide store closures, and post-dated the *Casas v. Victoria's Secret Stores, LLC, et al.*, C.D. Cal. Case No. CV 14-6412-GW(VBKx) settlement, which resolved many of the same claims at issue in this case.  Third, 2017 provided a statistically significant sample.  The 2017 data spans approximately 771,031 individual shifts (which is an objectively large amount). During the entire Class Period, Class Members worked approximately 5,833,112 shifts.  Therefore, the shifts from the year 2017 represents approximately 13% of the Class Period.  Based on Plaintiffs' counsel's experience in scores of similar cases and on informal discussions with an expert, Plaintiffs believe 13% is a statistically significant data sample for this volume of data.

16.    As such, Class Counsel believes that the data and metrics reviewed in advance of mediation were significant and more than sufficient to provide a basis for the settlement and the contention that the settlement is fair, reasonable, and adequate based on the value of the claims.

**PAGA ALLOCATION:**

17.    The Court inquired as to why an allocation of $300,000 to the resolution of PAGA claims is appropriate given the maximum PAGA exposure is likely $3,000,000.

18.    As set forth in Plaintiff's initial motion for preliminary settlement approval, $300,000 constitutes 10% of the likely maximum PAGA exposure.  While the caselaw makes clear, as further discussed below, that such an amount is well within the range of fair and reasonable –

particularly under the instant facts and circumstances – in light of the Court's comment, the Parties have  increased the PAGA allocation to $500,000, which amount represents 10% of the entire settlement and 17% of the realistic exposure. Of the $500,000, 75% or $375,000 will be distributed to the LWDA and the remaining 25%, or $125,000, will be distributed to aggrieved employees *pro rata*. As set forth below, the PAGA allocation is undeniably fair and adequate.

19.    First, under the instant facts and circumstances, 17% of the realistic exposure, and 10% of the Maximum Settlement Amount, is fair and reasonable as measured by other settlements that have been approved by courts in California.  Indeed, courts routinely approve far smaller PAGA allocations.  *Magadia v. Wal-Mart Assocs.* (N.D. Cal. May 31, 2019, No. 17-CV-00062-LHK) 2019 U.S. Dist. LEXIS 91732, *90-91, citing as examples *Ceja-Corona v. CVS Pharm., Inc.* (E.D. Cal. Jan. 14, 2015) 2015 U.S. Dist. LEXIS 5118, 2015 WL 222500, at *2-3  [preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $900,000]; *Thio v. Genji, LLC* (N.D. Cal. 2014) 14 F. Supp. 3d 1324, 1330  [preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $1,250,000]; *Franco v. Ruiz Food Prods.* (E.D. Cal. Nov. 27, 2012) 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801, at *14 [granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $2,500,000]; *Garcia v. Gordon Trucking, Inc.* (E.D. Cal. Oct. 31, 2012) 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575, at *3 [granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000]; *Chu v. Wells Fargo Invs., LLC* (N.D. Cal. Feb. 16, 2011) 2011 U.S. Dist. LEXIS 15821, 2011 WL 672645, at *1 [granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $6,900,000].)  The fairness and reasonableness of the PAGA allocation is manifest for this reason alone.

20.    Second, while 17% is a reasonable compromise of disputed claims, it must be noted that these are civil penalties designed to punish and deter, not a damages award designed to make injured parties whole.  Lab. Code § 2699(2); *Thurgood v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1135 (2012). Indeed, that is why the Court has discretion to reduce PAGA awards in the first instance. This principle has particular salience where a plaintiff alleges both class

claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.*, 2016 WL 5907869, *9 (N.D. Cal. Oct. 11, 2016). PAGA was enacted to ensure compliance with the Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the parties have reached a settlement providing employees with monetary compensation for alleged underlying Labor Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiffs proved successful at trial.

21.    Moreover, where, as here, there was a distinct possibility that Defendants would prove that any Labor Code violations were atypical and a departure from their lawful policies, there is a further likelihood the Court would exercise its discretion to reduce any penalties assessed under PAGA.  While Plaintiffs dispute Defendants' contentions, Defendants strenuously argued that VSS has lawful written policies, VSS trains its associates on those policies, and that VSS vigorously enforces those policies.  For example, with respect to the meal period and rest break claims, VSS provided evidence that it requires it associates to certify whether they received all requisite meal periods and rest breaks, then automatically pays break premiums when as associate certifies that he or she did not receive a break in accordance with VSS's written policy.  In these circumstances, the Court may well have concluded that any Labor Code violations were inadvertent or hyper-technical and therefore less deserving of punishment.  Accordingly, a reduction is penalties would have been appropriate for this additional reason.

22.    Third, to balance these goals of obtaining damages for the class members and seeking to discourage Labor Code violations and penalize the employer when the settlement is significantly less than the potential damages, Class Counsel believed it appropriate to seek significant relief focusing on claims with damages that would go to the class members whose rights were actually violated and suffered the most from the Labor Code violations. As the Court noted in *Moniz v. Adecco U.S., Inc.*, PAGA settlements are to be reviewed to "determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations,

deter future ones, and to maximize enforcement of state labor laws." *Moniz*, 27 Cal.App.5th 56, 77. These damages and the amount paid in settlement to these claims also serve the purpose of PAGA civil penalties to discourage Labor Code violations and penalize Defendants for Plaintiffs' belief that Defendants violated the law. Accordingly, Class Counsel believed it fair that the class members should receive the majority of the damages when the settlement is less than the full estimate of liability because: (1) the class members are the direct victims of the alleged Labor Code violations; and (2) although not denominated as PAGA penalties, the non-PAGA settlement amount furthers the purpose of the PAGA penalties, *i.e.*, to discourage Labor Code violations and penalize an employer violating the law. *Iskanian,* 59 Cal.4th at 387. See Lab. Code § 2699, subd. (e)(2) [court may award less than the statutory maximum PAGA penalties if unjust, arbitrary and oppressive, or confiscatory]; *Amaral v. Cintax Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213-1214 [noting court's discretion].

23. Fourth, the Parties considered that the PAGA Period begins on January 3, 2016, whereas the Class Periods starts three years earlier and thereby covers significantly more time and claims. It is also important to note that Defendant VSS is in the retail industry and was largely non-operational during 2020 due to the COVID-19 pandemic, thereby likely limiting penalties to just 3 years of actual working time.

24. Finally, Defendants contended that Plaintiffs' PAGA claims were properly the subject of a motion to strike because the instant action cannot be tried in a manageable manner that comports with due process. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746, 859 (2021) ("[C]ourts have inherent authority to ensure that PAGA claims can be fairly and efficiently tried and, if necessary, may strike a claim that cannot be rendered manageable."); *see also Williams v. Sup. Ct.*, 3 Cal. 5th 531, 559 (2017) (recognizing that PAGA representative actions must be "manageable"). In support of their position, Defendants argued that Plaintiff Ochoa only was able to survive summary judgment by relying on individualized proof because, in part, she was unable to identify any unlawful policies that uniformly apply to VSS's associates. Thus, Defendants contended, a trial of the PAGA claims in this case necessarily would devolve into

thousands of min-trials and turn on each associate's individual experience.   While Plaintiffs disagree with Defendants' contentions, the possibility that Defendants would prevail on a motion to strike bolsters the conclusion that the PAGA allocation is fair and reasonable.    Therefore, the Plaintiffs' counsel believes the allocation of $500,000, which is 10% of the total settlement amount and 17% of the realistic exposure, to the resolution of PAGA claims is fair and reasonable and should approved.

**PLAINTIFFS' ADEQUACY**:

25.    The Court requested briefing to support the contention that Plaintiffs are adequate class representatives considering their separate individual agreements and additional sums they are to receive. The Court also asked whether the individual and class settlements were negotiated at the same time, if the sources of funds between the class settlement and individual settlements are the same, and why there is not a potential conflict of interest between Plaintiffs and the class.

26.    Plaintiffs Ochoa, Velasquez, and Fregoso have each entered into a "Individual Settlement Agreement and Release" agreement in exchange for $12,500, $7,000, and $7,000, respectively. (See Huether Decl., Exhibit E to Exhibit 3.)   The individual agreements simply provide for a "general release" with a 1542 waiver. In this action, the Parties elected to have an entirely separate agreement and payment in exchange for the general release of claims. With the execution of these agreements, Plaintiffs have agreed to release any potential claims related to their employment and separation from Defendant, including, and not limited to, claims for harassment, retaliation, and discrimination, as well as other wage claims which are not being released as part of the settlement such as claims for vacation/PTO pay and reimbursement for business expenditures. Thus, the named Plaintiffs are receiving additional money in exchange for a broader release.

27.    In addition to these payments in exchange for a general release, Plaintiffs are requesting modest enhancement payments solely for their work as class representatives and for the risks associated with being class representatives. Enhancement awards in wage and hour cases typically range from $5,000.00 to $40,000.00, although some awards are higher. Often, multiple class representatives receive awards in the above range. (*See e.g.*, *Munoz v. BCI Coca-Cola Bottling*

*Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 412 [approving an enhancement request of $10,000.00 per named plaintiff in a 188 member class]; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ["We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination."].) Even when considering the enhancement together with the amount of the individual settlement, the awards to Plaintiffs are within the range of reasonableness for what courts generally approve.

28.    These individual settlement agreements do not create a conflict of interest because they have no impact on the recovery of any settlement class member.  Each settlement class member, including each Plaintiff, will receive a settlement award pursuant to the same formula. The additional monies that Plaintiffs will receive arise from the fact that they performed additional work, among other things, as a result of their status as named plaintiffs and provided Defendant with a broader release.  Moreover, it is not the case that individual settlement class members would receive additional money if Plaintiffs had not entered into individual settlement agreements; instead, Defendant contends it simply would have offered less money to settle the case (*i.e.*, the $5 million Maximum Settlement Amount is not the lowest possible "fair" number), which renders the fact that the settlement amount comes from the same fund irrelevant.

29.    The Parties negotiated the class settlement at mediation and when discussing and revising the terms of the long for settlement, agreed to the specific amounts for the incentive awards and general release fee.

30.    Finally, the general release fees from the separate agreements (Exhibit E) are to be paid from the Maximum Settlement Amount. (See Amended Settlement Agreement, § 14.b.)

31.    Therefore, Plaintiffs' and Class Counsel respectfully request that the Court approve the enhancement payments and the inclusion of the individual general release agreements as they are fair, reasonable, and adequate and do not create a conflict between Plaintiffs and the class. (See Amended Settlement Agreement, § 14.b.)

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PAGA GROUP**:

32.　　Defendants' counsel has confirmed there are 32,400 individuals in the PAGA Group during the PAGA Period

**FEE SPLIT**:

33.　　Plaintiffs' counsel, Lavi & Ebrahimian LLP and the DeRubertis Law Firm, as well as Plaintiffs Ochoa, Fregoso and Velasquez have entered into a fee split agreement in writing as required.

34.　　Attached as **Exhibit 1** is a true and correct January 14, 2022 Checklist Order.

35.　　Attached as **Exhibit 2** is a true and correct copy of the Redline Version of the Settlement Agreement.

36.　　Attached as **Exhibit 3** is a true and correct copy of the Final Version Amended Settlement Agreement with all Redline changes incorporated therein and signed by the Parties.

37.　　Attached as **Exhibit 4** is a true and correct copy of Plaintiffs operative LWDA Letter.

38.　　Attached as **Exhibit 5** is a true and correct copy of the Redline Version of the Notice of Settlement of Class Action.

39.　　Attached as **Exhibit 6** is a true and correct copy of the Final Version of the Notice of Settlement of Class Action with all Redline changes incorporated therein.

40.　　Attached as **Exhibit 7** is a true and correct copy of the Declaration of Plaintiff Elizabeth Ochoa.

41.　　Attached as **Exhibit 8** is a true and correct copy of the Declaration of Plaintiff Monica Velasquez.

42.　　Attached as **Exhibit 9** is a true and correct copy of the Declaration of Plaintiff Cyrstal Fregoso.

43.　　Attached as **Exhibit 10** is a true and correct copy of the confirmation from the LWDA's online of the submission of the Amended Settlement Agreement.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 10th day of June 2022 at Beverly Hills, California.

_____

Melissa A. Huether

**DECLARATION OF MELISSA A. HUETHER**
15

# Exhibit 1

**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 1 4 2022

Sherri R. Carter, Executive Officer/Clerk of Court

By: Darla Tamayo, Deputy

## LOS ANGELES SUPERIOR COURT, COMPLEX CIVIL DEPARTMENT

**Department SSC-17**

**RE: Ochoa v. L Brands, Inc., et al. (Case No: BC661822)**

The Court has reviewed preliminarily the proposed settlement in this matter and continues the hearing on preliminary approval to __July 5__, 2022 at __9:00AM__ for further briefing and/or an amended Settlement Agreement addressed to the following;

(1) File the Second Amended Complaint as a standalone document, pursuant to the Court's January 3, 2022 Order.

(2) *Dunk/Kullar* Analysis:

    a. Class Counsel represents that the discovery exchange leading to mediation included a sampling of time and wage records that consisted of such records for all putative class members for an entire representative year (2017). (See Lavi Decl. ¶13.) Brief as to why 2017 was selected, whether the sampling was statistically significant, and whether expert analysis supported the conclusion that the sampling was sufficient to provide useful data.

    b. Counsel's PAGA claims analysis results in a total of **$616,900,000** in maximum PAGA penalties (see Lavi Decl. ¶27). Provide further briefing and support for the contention that the settlement amount allocated to the PAGA claim ($300,000, of which 25% or $75,000 would go to PAGA Group Members) should be considered fair, just, and reasonable. See *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 77. If Defendant's maximum PAGA exposure is likely "actually only $3,000,000" (Lavi Decl. ¶33) why is 10% of that amount appropriate?

(3) Plaintiffs' Adequacy: Provide further briefing to support the contention that Plaintiffs are adequate class representatives, considering their separate individual settlement agreements (Exhibit E) and the additional sums they are to receive from them. Were the individual and class settlements negotiated at the same mediation? Are the sources of funds between the class settlement and individual settlements the same? Why isn't there a potential conflict of interest between Plaintiffs and the class?

(4) PAGA Group: Approximately how many PAGA Group Members are within the settlement?

(5) Scope of Release:

    a. The release of class claims (¶22.a) should specify that it is limited to claims asserted in or based on facts alleged in the operative complaint (SAC). See *Amaro v. Anaheim Arena Mgmt.* (2021) 69 Cal. App. 5th 521, 537.

    b. The release of PAGA claims should be separately defined, and limited to claims for penalties that were brought or could have been brought based on the facts alleged in Plaintiffs' LWDA letter. *See Amaro v. Anaheim Arena Mgmt.*, supra. (2021) 69 Cal. App. 5th at 537; *Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 1005; *Moniz, supra*, 72 Cal. App. 5th at 82-83. If counsel disagree, please brief.

    c. Counsel is to provide a copy of the LWDA letter to the Court for review.

    d. Why would it be proper for the release to extend to "any individual or entity that could be jointly liable with Defendant" if they are not named as parties in the action? See ¶22.a.

(6) Payment Formula: The formula for calculating individual settlement payments (¶13.c.1) does not appear to consume the net if any class member opts out. Please address.

(7) Settlement Funding: Is it necessary for Defendant to need 30 days after final approval to fund the settlement? (¶20.b.) The Court would prefer to see this period shortened. Otherwise, brief as to the necessity of the 30-day period to fund.

(8) Notice and Notice Administration:

    a. Why does Defendant require 30 calendar days after preliminary approval to provide the class data? (¶12.a) Class information to be provided should have been compiled already or can readily be compiled. The Court would prefer that Defendant provide the Class data no later than 14 days from preliminary approval. Otherwise, brief why Defendant should require more time.

    b. If the class data is to be maintained as confidential, explain why this is in the best interest of the Class and whether it will impede Class Counsel's ability to discharge its fiduciary duties. (See ¶12.a.)

    c. Provide further explanation as to why English-only notice will be sufficient. (For example, is English-only sufficient because Class Members must speak English as a part of their basic job duties?)

d. Given the class size of approximately 55,352 members, the parties should establish a settlement website and provide the URL on the Notice. The website needs to be operational from the date the Notice is mailed, and provide deadline dates and include copies (available through hyperlink) once filed of the (revised) Settlement Agreement, (revised) Class Notice, motion for attorneys' fees and costs; motion for service awards; motion for final approval; and order of final approval and judgment.

e. The deadline to submit requests for exclusion, written objections, and/or disputes to workweeks should be a date 45 or more days from the date on which notice is initially mailed. Also, ¶12.d should include the deadline for submission of workweek disputes.

f. The Notice must include the procedure and deadline for Class Members to submit workweek disputes to the Settlement Administrator.

g. The Notice should inform class members of the option to appear by audio or video at the final approval hearing and cite the court's website for directions. Class Members should not be required to submit letters to the Court to request permission to speak at the Final Approval Hearing via videoconference – update the Notice accordingly.

h. How will notice of final judgment be given to the class? (Cal. Rules of Court, rule 3.771(b)) (e.g. Posted on administrator's website.)

i. Before Section I of the Notice, please add boxes summarizing class member's options (do nothing, request exclusion, object) and the deadlines for making requests for exclusion and written objections as appropriate. The last box should contain the date, time and location of the Final Approval Hearing.

(9) Settlement Administration:

a. Why would it be proper for administration costs to be capped at $225,000 in the agreement (¶10.a), when CPT has already agreed to administer the settlement for $180,000, at a discount? (Decl. of Julie Green ¶10.)

b. In addition, CPT Group's estimated/capped administration cost of $180,000 seems high, and appears to be based on an estimated 65,000 class members (see Exhibit B to Green Decl.) Yet counsel represents that there are approximately 55,252 Class Members (Lavi Decl. ¶3), nearly 10,000 less than the number CPT relied on. Would the administration cost be lower based on the approximate 55,252 Class Member number?

(10) **Proposed Final Approval:**

    a. The Settlement Agreement and paperwork derivative thereof should not suggest that the end result of court approval will be dismissal of the action, as to do so would violate CRC 3.769(h). See ¶18.a.

    b. How would it be appropriate for the Court to bar and permanently enjoin Class and PAGA Group Members? See ¶¶ 18.e-f.

(11) **Adequacy of Class Counsel:** Proposed class co-counsel The deRubertis Law Firm, APC should file a declaration with a summary of their class action experience and a listing of all prior cases on which they have acted as lead or co-counsel.

(12) **Provide** information regarding any fee splitting agreement and whether the clients have given written approval. (*Mark v. Spencer* (2008) 166 Cal.App.4th 219; Rules Prof. Conduct, rule 1.5.1; Cal. Rules of Court, rule 3.769.)

All additional materials shall be filed and served on all parties and the LWDA sixteen (16) court days in advance of the hearing.

Counsel are urged to consult the Court's "Checklist" on the Court website regarding matters required to be addressed in motions for preliminary approval.

If the Settlement Agreement is modified, submit both a red-lined copy showing changes made as well as a final version signed by all parties. Do not submit an addendum in lieu of a full amended settlement agreement including all operative settlement terms. Modify notice to match any alterations to the Settlement Agreement.

Counsel are reminded that exhibits in electronically filed documents are to be hyperlinked as set forth in the Presiding Judge's Amended General Order re: Electronic Filing, filed May 3, 2019, available on the Court's website.

Date:   1/14  , 2022

                                        Maren E. Neison
                                        Judge of the Superior Court

4

# Exhibit 2

# AMENDED CLASS ACTION SETTLEMENT AGREEMENT

THIS  AMENDED CLASS ACTION SETTLEMENT AGREEMENT (hereinafter "Settlement Agreement") is entered into and effective upon its execution by all parties hereto, subject to final approval by the Court.  It is entered into by and between Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs"), on their own behalf and on behalf of all members of the "Settlement Class," as defined below, and as proxies for California's Labor & Workforce Development Agency ("LWDA"), on the one hand, and Victoria's Secret Stores, LLC ("Defendant"), on the other hand, with reference to the recitals and provisions set forth below.

# RECITALS

A.      Certain claims, demands and differences have existed heretofore between Plaintiffs, on their own behalf, the Settlement Class (as defined below), and Plaintiffs as proxies for the LWDA, on the one hand, and Defendant, on the other hand, including the Settlement Class and PAGA Group's (as defined below) contentions that Defendant, as well as L Brands, Inc., (now known as Bath & Body Works, Inc.), Limited Brands, Inc., and The Limited, Inc. (collectively, the "L Brands Defendants"): (1) failed to pay wages to the Settlement Class for all time worked at the minimum wage in violation of California Labor Code §§ 1194 and 1197; (2) failed to pay proper overtime wages to the Settlement Class for all hours worked, including by failing to include bonus and similar pay in the regular rate, in violation of California Labor Code §§ 510, 1194, and 1198; (3) failed to provide meal periods to the Settlement Class in violation of California Labor Code §§ 512 and 226.7; (4) failed to authorize and permit the Settlement Class to take rest breaks in violation of Labor Code § 226.7; (5) failed to provide accurate wage statements to the Settlement Class and maintain accurate records in violation of California Labor Code § 226; (6) failed to timely pay all final wages at termination to the Settlement Class in violation of California Labor Code §§ 201 and 202; and (7) engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code § 17200, *et seq.*  Plaintiffs and the PAGA Group also seek penalties against Defendant and the L Brands Defendants pursuant to the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on the aforementioned claims as well as an alleged failure to provide suitable seating.

B.      These claims were brought by Plaintiffs on behalf of the Settlement Class and the PAGA Group against Defendant in the matter of *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Case No. BC661822 (the "Lawsuit"), which is pending before the Honorable Maren E. Nelson in the Los Angeles County Superior Court (the "Court").  Plaintiff Velazquez and Plaintiff Fregoso had initially asserted their claims in the matter of *Velazquez, et al. v. L Brands, Inc., et al.*, C.D. Cal. Case No. 2:20-CV-03521-DOC (KESX) (the "*Velazquez/Fregoso* Lawsuit"), and have agreed to dismiss their action and join the *Ochoa* Lawsuit as part of the instant settlement.

C.      Plaintiffs are represented in the Lawsuit by the following law firms ("Settlement Class Counsel"):

**LAVI & EBRAHIMIAN, LLP
THE deRUBERTIS LAW FIRM**

D.    Defendant and the L Brands Defendants are represented in the Lawsuit by:

**HUNTON ANDREWS KURTH LLP**

E.    Plaintiffs and Defendant prepared for and engaged in two formal mediations.  The first mediation took place on May 30, 2018, before the Honorable Carl J. West (Ret.), an experienced mediator, but the parties were not able to resolve the matter.  A second mediation, which was presided over by another experienced mediator, Jeffrey A. Ross, Esq., took place on February 22, 2021, and it ultimately resulted in a settlement.

F.    The parties hereto have conducted substantial formal discovery and informal investigation in connection with the claims asserted in the Lawsuit.  The parties have propounded substantial written discovery, taken party depositions, and researched and briefed the relevant legal and factual issues arising from all of the claims that are alleged in, or could have been alleged in, the Lawsuit, including in multiple motions for summary judgment / adjudication, and writ petitions to the California Court of Appeal and California Supreme Court.  The parties have considered: (1) Plaintiffs' ability to certify each of the subclasses alleged in the operative complaint; (2) the relative merits of the case and the uncertainties of trial; (3) the benefits of settlement; (4) the costs, risks, and delays associated with litigating this Lawsuit; and (5) the likely appeals from any dispositive rulings or denial of class certification.  Based on these considerations, the parties agreed to completely settle this Lawsuit to avoid the risk and cost of continued litigation and trial.

G.    On December 22, 2021, Plaintiffs moved for preliminary approval of the original Class Action Settlement Agreement.  On January 14, 2022, the Court ordered further briefing and the submission of an amended class action settlement agreement as part of the Court's effort to discharge its obligation to conduct an inquiry into the fairness of the proposed settlement.  The parties have met and conferred as appropriate to address the issues identified by the Court.  This Settlement Agreement is one product of those efforts.

G.H.    Defendant denies each and every allegation by Plaintiffs.  Defendant contends that Plaintiffs, the Settlement Class Members, and the PAGA Group Members received all of the entitlements provided by the California Labor Code.  Defendant also denies that the Lawsuit is amenable to class treatment.  Neither this Settlement Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Settlement Agreement, is or may be construed or used in the Lawsuit or in any other action or proceeding as an admission, concession, or indication by or against Defendant or the L Brands Defendants of any fault, wrongdoing, or liability whatsoever.

H.I.    It is the intention of the parties to this Settlement Agreement to settle and dispose of, fully and completely, any and all claims, demands, and causes of action that were or could have been, set forth in the Lawsuit based on the facts and causes of action alleged in the Second Amended Complaint.

## PROVISIONS

### 1.    COOPERATION BY THE PARTIES

The parties to this Settlement Agreement and their counsel agree to cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms and conditions of this Settlement Agreement.

### 2.    AMENDED CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement supersedes the prior Class Action Settlement Agreement entered into by the parties on or about July 28, 2021.

### 2.3.    AMENDED COMPLAINT

As a material term of this Settlement, Plaintiff Ochoa ~~will~~agreed to amend her operative complaint to: (a) add Monica Velazquez and Crystal Fregoso (together with Elizabeth Ochoa, "Plaintiffs") as named plaintiffs; and (b) allege all causes of action and underlying factual bases that the parties actually have litigated in this Lawsuit and intend to release through the Settlement. Those claims include alleged: (a) failures to provide uninterrupted, duty-free, 30-minute meal periods as well as rest breaks of the requisite duration; (b) failures to provide "separate rest break" pay; (c) failures to pay meal period and rest break premiums, including at the proper rate; (d) failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; (e) failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and pre-/post-shift work; (f) failures to pay associates the applicable minimum wage; (g) failures to pay reporting time pay; (h) failures to provide suitable seating; (i) failures to provide accurate wage statements and maintain accurate records; (j) failures to pay all wages owing at termination; (k) violation of California Business and Professions Code § 17200, *et seq.*; and, based on the foregoing, (l) claims for civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code 2698, *et seq.* ("PAGA"). ~~The~~Plaintiffs filed the second amended complaint described in this paragraph ~~shall be filed in a form that is mutually agreeable to the parties~~on May 17, 2022, per the Court's order.

### 3.4.    DISMISSAL OF *VELAZQUEZ/FREGOSO* ACTION

As a material term of this settlement, Plaintiffs Velazquez and Fregoso shall dismiss the *Velazquez/Fregoso* Lawsuit within five (5) days after filing the amended complaint contemplated by Paragraph ~~2~~3 of this Settlement Agreement.

### 4.5.    APPOINTMENT OF ADMINISTRATOR

The parties will stipulate to and seek the Court's order appointing CPT Group, Inc. to act as the settlement and claims administrator (the "Claims Administrator") for purposes of this settlement. The Claims Administrator shall be responsible for, among other matters:

(a)     The Settlement Administrator will be responsible for establishing a qualified settlement fund account; updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Settlement Class Members whose Notices are returned as undeliverable with no forwarding address; maintaining a manned and dedicated toll free number and email address for this Settlement; determining the amount of payments allocated to each Settlement Class Member in accordance with this Settlement Agreement, along with the amount of all payroll taxes to be paid and deductions to be withheld; preparing and mailing settlement checks; distributing any approved incentive award and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; and retaining and, upon request, providing a copy of the settlement checks to Defendant's Counsel.

(b)     Preparing and mailing of the Notice (as defined below);

(c)     After final approval of the settlement by the Court, shall resolve any dispute by any member of the Settlement Class (as defined below) as to any factor or issue regarding the computation of that member of the Settlement Class's Individual Settlement Award (as defined below) as well as any similar issues regarding any member of the PAGA Group's Individual PAGA Payment (as defined below); and the Claims Administrator's decision on any such issue or dispute shall be final, binding, and non-appealable;

(d)     Resolving any disputes regarding membership in the Settlement Class (as defined below) and the PAGA Group (as defined below) and the Claims Administrator's decision on any such issue or dispute shall be final, binding, and non-appealable;

(e)     Issuing the Individual Settlement Awards and Individual PAGA Payments, making appropriate payroll deductions, and complying with any necessary reporting as set forth below; and

(f)     Providing Settlement Class Counsel and Defendant's Counsel with periodic reports of the administration process, including, but not limited to, the mailing of the Notice, remailing of returned Notices, settlement checks mailed, settlement checks cashed, and the number of opt outs.

## 5.6.   APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

For the purpose of the settlement of the Lawsuit only, Plaintiffs shall request that the Court appoint them as representatives of the Settlement Class ("Settlement Class Representatives"), and to appoint Lavi & Ebrahimian, LLP and The deRubertis Law Firm as "Settlement Class Counsel." Defendant shall not oppose Plaintiffs' request.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision of the Settlement Agreement or the appointment of Settlement Class Representatives and/or Settlement Class Counsel for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

## 6.7.    DEFINITION OF THE SETTLEMENT CLASS AND PAGA GROUP

(a)     For purposes of this settlement only, the parties agree that the "Settlement Class" is defined as follows:

> All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.

(b)     For purposes of this settlement only, the parties agree that the "PAGA Group" is defined as follows:

> All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.

(c)     Persons Expressly Excluded From the Settlement Class

Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class.

## 7.8.    CERTIFICATION OF THE SETTLEMENT CLASS

Solely for the purposes of implementing this Settlement Agreement and effectuating the settlement, Defendant shall not oppose a request by Plaintiffs that the Court enter an order: (1) preliminarily certifying the Settlement Class (which includes the individuals in the PAGA Group) (2) appointing Lavi & Ebrahimian, LLP and The deRubertis Law Firm as Settlement Class Counsel; and (3) appointing Plaintiffs as Settlement Class Representatives.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or the certification of the Settlement Class, the appointment of Plaintiffs as Settlement Class Representatives, or the appointment of Lavi & Ebrahimian, LLP and The deRubertis Law Firm as Settlement Class Counsel for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

## 8.9.    MEMBERS' RIGHT TO EXCLUDE THEMSELVES FROM THE SETTLEMENT

(a)     Members of the Settlement Class may exclude themselves from participating in the settlement by submitting a written request to be excluded from (or "opt-out" of) the settlement, which must be post-marked and returned to the Claims Administrator at the address provided in the Notice by no later than ~~thirty~~forty-five (~~35~~45) days after the Notice is mailed, unless extended as provided for herein.  Such written requests for exclusion must contain the individual's name, address, telephone number, and the last four (4) digits of the Social Security Number of the person requesting exclusion from the settlement.   Such written requests must explicitly and unambiguously state the following in identical or substantially similar language: "I wish to exclude

myself from the settlement reached in the matter of *Ochoa vs. Victoria's Secret Stores, LLC, et al*. I understand that by excluding myself I will not receive any money from the settlement of the class claims in this matter."  Any person who properly opts-out of the settlement using this procedure will not be entitled to any payment from the Maximum Settlement Amount (or Potential Gross Settlement Proceeds) and will not be bound by the settlement or have any right to object, appeal, or comment thereon, except as to PAGA release.  Any member of the Settlement Class who does not properly exclude himself or herself from the settlement class shall be bound by all the terms and conditions of this Settlement Agreement, including the release of identified claims set forth hereinafter upon Final Approval, entry of Judgment by the Court and funding of the settlement by the Defendant.

(b)     Notwithstanding anything to the contrary in this Settlement Agreement, PAGA Group Members shall have no right to exclude themselves from the PAGA Group, because Plaintiffs are settling the PAGA claims as proxies for the LWDA on behalf of the State of California.

## ~~9.~~10.   DEFENDANT'S RIGHT TO VOID SETTLEMENT

If the total number of persons who opt-out of the Settlement Class on a timely basis is equal to or in excess of ten percent (10%) of the number of persons to whom Notices are mailed, Defendant shall have the option, in its sole and absolute discretion, to be exercised within twenty-one (21) days of receiving notice of the total opt-out percentage to void this Settlement Agreement and the parties' settlement by notifying Settlement Class Counsel in writing of its intention to do so.  The Settlement Agreement and the parties' settlement shall become void seven (7) days after the delivery of such written notification unless, during that period, the parties agree in writing to a mutually acceptable resolution and thereafter the Court approves such resolution.  Should Defendant exercise its right under this Paragraph, Defendant shall be solely responsible for all costs incurred by the Claims Administrator.

## ~~10.~~11.  CONSIDERATION BY DEFENDANT

In consideration for the releases and dismissals set forth in this Settlement Agreement, Defendant agrees to: (a) the payments to the individual Settlement Class Members pursuant to the payment procedure as described herein; (b) the PAGA Allocation, as defined below and as set forth herein and as approved by the Court; (c) the payment of attorneys' fees and costs, as set forth herein and as awarded by the Court; (d) the payment of incentive awards to Plaintiffs, as set forth herein and as awarded by the Court; and (e) the payment of the cost of administration of the settlement, including, without limitation, the fees of the Claims Administrator, as set forth hereinafter.

(a)     <u>"Maximum Settlement Amount" to be Paid by Defendant</u>

The "Maximum Settlement Amount" to be paid by Defendant is the total sum of Five Million Dollars and No Cents ($5,000,000.00).  This is a non-reversionary, "no claims made" settlement.  No amount of the "Maximum Settlement Amount" shall be retained by Defendant. Subject to Paragraph ~~10~~11(a)(2) and ~~10~~11(a)(3), the maximum payment by Defendant shall be "all inclusive," including: any damages, penalties, or other relief arising from the alleged Labor Code

violations committed against the Settlement Class and PAGA Group; any failure to pay the Settlement Class Members and PAGA Group Members minimum or overtime wages, as a result of off-the-clock work or otherwise; any failure to provide Settlement Class Members and PAGA Group Members with compliant meal breaks or rest breaks, or appropriate meal and rest break premiums or "separate rest break pay"; any failure to provide Settlement Class Members and PAGA Group Members with reporting time pay, any failure to timely pay Settlement Class Members and PAGA Group Members all wages due upon the termination of the their employment with Defendant; any failure to provide Settlement Class Members and PAGA Group Members with accurate wage statements or maintain accurate records; any failure to provide PAGA Group members with suitable seating; any restitution to Settlement Class Members and PAGA Group Members under California Business & Professions Code Section 17200 *et seq.*, based on the aforementioned claims; any PAGA penalties based upon the aforementioned alleged California Labor Code violations; interest, attorneys' fees and costs, as approved by the Court; the fees and costs of the Claims Administrator in connection with settlement and claims administration, as approved by the Court, including any fees and costs in connection with notice, the claims process, and the exclusion process, ~~up to a maximum of Two Hundred And Twenty-Five Thousand Dollars ($225,000);~~which is not to exceed $155,000; settlement payments; the incentive awards to Plaintiffs, as approved by the Court; and all other settlement-related payments and costs.

(1)     Under no condition will Defendant's liability for payments exceed the Maximum Settlement Amount, subject to Paragraphs ~~10~~11(a)(2) and ~~10~~11(a)(3) below.  At no time shall Defendant have the obligation to segregate the funds comprising the Maximum Settlement Amount, and Defendant shall retain exclusive authority over, and the responsibility for, those funds, as long as the Claims Administrator will be able to complete its tasks and duties.  All Settlement Class Members' payments, the PAGA Allocation (as defined below), and all attorneys' fees, costs, incentive awards, and claims administration expenses shall be paid out of the Maximum Settlement Amount.

(2)     In addition to the Maximum Settlement Amount, Defendant shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions, and unemployment taxes), including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of the Settlement Class. Settlement Class Members and PAGA Group Members will be responsible for their own tax obligations.

(3)     The Maximum Settlement Amount is based on Settlement Class Counsel's estimate of approximately 730,000 total shifts worked by Settlement Class Members in 2017, based on data provided by Defendant.  Defendant will provide Settlement Class Counsel with a declaration confirming that to the best of Defendant's knowledge the data provided to Settlement Class Counsel for purposes of mediation purposes is correct.   Defendant's

provision of the declaration contemplated by this paragraph is a material term of this Settlement Agreement.

(4)     Defendant's sole monetary obligations under this Settlement Agreement shall be the Maximum Settlement Amount and the employer-paid withholding and payroll taxes and similar expenses referred to in Paragraph ~~10~~11(a)(2) above.

(b)     <u>Attorneys' Fees and Costs</u>

Defendant understands that Settlement Class Counsel will file an application for an award of attorneys' fees in an amount not to exceed 33.3% of the Maximum Settlement Amount or One Million Six Hundred Sixty Five Thousand Dollars ($1,665,000.00) and reimbursement of costs in an amount not to exceed Forty-One Thousand Dollars ($41,000.00) incurred in the prosecution of the Lawsuit for the benefit of the Settlement Class and the PAGA Group.  Defendant agrees not to object to such application up to such amounts.  Notwithstanding any other provision of this Agreement, if the Court should fail to award attorneys' fees to Settlement Class Counsel in the full amount provided for in this Settlement Agreement, no order of the Court or modification of any order of the Court concerning the amount of any attorneys' fees to be paid by Defendant to Settlement Class Counsel pursuant to this settlement shall constitute grounds for cancellation or termination of the Settlement Agreement or grounds for limiting any other provision of the judgment or release contained herein.  It is agreed that no order of the Court, including any order concerning attorneys' fees, may alter or otherwise increase the Maximum Settlement Amount.  However, Settlement Class Counsel retains their right to appeal any decision by the Court regarding any award of attorney's fees and costs.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or the award of attorneys' fees and costs for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

(c)     <u>Incentive Awards</u>

Settlement Class Counsel will file an application for approval of an incentive award for each Plaintiff as follows: as to Plaintiff Ochoa, Seven Thousand Five Hundred Dollars ($7,500.00); as to Plaintiffs Velazquez and Fregoso, each not to exceed, Three Thousand Dollars ($3,000.00). These awards are in addition to Plaintiffs' Individual Settlement Awards.  Defendant agrees not to object to such application.  Any such incentive awards approved by the Court shall be paid from the Maximum Settlement Amount.

(d)     <u>The PAGA Allocation; Payment to the California Labor and Workforce Development Agency</u>

Plaintiffs shall apply to the Court for approval of payments under PAGA.  The parties agree to allocate ~~Three~~Five Hundred Thousand Dollars ($~~300~~500,000.00) to PAGA penalties (the "PAGA Allocation").  Seventy-five percent (75%) of the PAGA Allocation, or ~~Two~~Three Hundred ~~Twenty~~and Seventy-Five Thousand Dollars ($~~225~~375,000.00), shall be paid to the LWDA (the "LWDA Payment").  The remaining twenty-five percent (25%) of the PAGA allocation (the "PAGA Group Share"), or ~~Seventy~~One Hundred and Twenty-Five Thousand Dollars

($~~75~~125,000.00), shall be distributed to PAGA Group Members as "Individual PAGA Payments" in the manner described below.  In the event the Court rejects the amount of the PAGA Allocation, the parties will meet and confer with the Court to reach a penalty allocation acceptable to all parties that does not materially alter the terms of the settlement or increase the Maximum Settlement Amount hereunder.

## ~~11.~~12.  FILING OF MOTION TO CERTIFY SETTLEMENT CLASS

As part of Plaintiffs' Motion for Preliminary Approval, Plaintiffs shall request the Court to certify the Settlement Class, as defined herein, for purposes of settling the Lawsuit.  Defendant shall not oppose such certification for settlement purposes only.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or such certification for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

## ~~12.~~13.  INFORMATION TO ADMINISTRATOR; NOTICE OF SETTLEMENT AND CLAIM FORM; TIME TO SUBMIT CLAIMS

(a)     Information To Claims Administrator

The parties agree that within ~~thirty (30~~fourteen (14) calendar days of execution of the Court's order granting preliminary approval, Defendant will provide the Settlement Class Members' and PAGA Group Members' information to the Claims Administrator to the extent Defendant possesses such information and it has not already done so.  Such information shall include each Settlement Class Member's name, last known address, last known home or mobile telephone number, dates of employment within the relevant period, and Social Security Number. All such information and any other information provided to the Claims Administrator by the Defendant regarding the Settlement Class Members and the PAGA Group Members is confidential and shall not be disclosed to anyone other than the Claims Administrator. to protect those individuals' privacy rights.  Notwithstanding the foregoing, Settlement Class Counsel shall be entitled to information sufficient to evaluate any Settlement Class Member workweek disputes.

(b)     Notice of Settlement

Within forty-five (45) calendar days of preliminary approval of this Settlement Agreement and Court approval of a settlement notice to the Settlement Class, the Claims Administrator will mail to the Settlement Class Members via first class United States Mail, at their last known address, the Court-approved notice of the terms and conditions of this settlement in the form of a "Notice" agreed upon by the parties, approved by the Court, and in substantially the same form as Exhibit "A" attached hereto.

The Notice shall inform Settlement Class Members:

(1)     of the terms of the settlement, including the Class Member's estimated settlement share;

(2)    that any Class Member may submit workweek disputes to the Claims Administrator as well as the deadline and procedure for submitting any such disputes;

(2)(3)    that any Settlement member who does not exclude himself or herself from the settlement will release all claims he or she may have;

(3)(4)    of the deadlines for submitting a request for exclusion to the Claims Administrator (*i.e.*, ~~thirty~~forty-five (~~35~~45) days after the Notice is mailed, except as to those Settlement Class Members who receive the Notice pursuant to re-mailing, whose deadline shall be ~~thirty~~forty-five (~~35~~45) days from the date the Notice is mailed to the updated address;

(4)(5)    that any request for exclusion that is post-marked later than the respective deadlines will not be considered timely;

(5)(6)    of the name, address, and email address of the Claims Administrator to which the request for exclusion must be returned;

(6)(7)    that there is a toll-free number to contact the Claims Administrator; ~~and~~

(8)(8)    that there is an available website which provides information about the settlement;

(9)    The date, time, and location of the Final Approval Hearing, as defined herein.; and

(10)    That Class Members may appear by audio or video at the Final Approval Hearing.

(c)    Mailing of Notice; Website

The Claims Administrator shall send the Notice to all Settlement Class Members via first class United States Mail.  Before the first mailing, the Claims Administrator will perform a National Change of Address ("NCOA") search for the Settlement Class Members.  The Claims Administrator shall perform one skip trace as to any Notices that are returned by the post office for invalid addresses within five (5) days of its receipt of such returned Notice.  Those Settlement Class Members who receive Notice pursuant to the one skip trace shall be informed (via an insert in the Notice) that his or her time to submit a request for exclusion to the Claims Administrator shall be ~~thirty~~forty-five (~~35~~45) days after the re-mailing.  The Claims Administrator shall notify Settlement Class Counsel and Defendant's counsel of the number of all Settlement Class Members who were sent Notice as a result of a skip trace and whose Notice was again returned.  The Claims Administrator shall provide such notification within seven (7) days of its receipt of such returned Notice.  The Claims Administrator shall establish a website to be approved by both parties that: (a) is operational from the date the Notice is mailed; (b) identifies settlement-related deadlines; (c) and includes copies (available through hyperlink) of this amended Settlement Agreement once

filed; the revised Notice; Plaintiffs' motion for attorneys' fees and costs; Plaintiffs' motion for service awards; motion for final approval; and order of final approval and judgment.

 (d) Settlement Class Members' Disputes

 A Settlement Class Member may dispute the number of work weeks shown on his or her Notice within forty-five (45) days of the Notice's mailing or re-mailing, as the case may be. The Class Member will be asked to provide the correct number of work weeks he or she believes she worked in a covered position during the applicable class period. The Settlement Class Members will be asked to provide documentation in his or her possession to substantiate the dispute; however, supporting documentation is not mandatory for the dispute. The Claims Administrator shall promptly notify Defendant and Settlement Class Counsel of all such disputes and provide any information the Settlement Class Member has furnished regarding their dispute. Defendant shall investigate the dispute. In all such disputes, Defendant's records will carry a presumption of correctness. The Claims Administrator shall review Defendant's response to the dispute as well any additional information provided by the Settlement Class Member or Settlement Class Counsel and make a determination on the dispute. The Claims Administrator's determination shall be final and binding on all parties without right of appeal.

 (e) Reports by Claims Administrator

 On weekly basis, the Claims Administrator shall provide the parties with a report (the "Claims Administration Report") setting forth the number of undeliverable Notices, the number of valid requests for exclusion received, and the number of disputed claims and their resolution.

 The Claims Administrator shall submit a declaration in support of Plaintiffs' motion for final approval of this settlement detailing: (a) the number of Notices mailed and re-mailed to Settlement Class Members, (b) the number of undeliverable Notices, (c) the number of timely requests for exclusion, (d) the number of timely objections received, (e) the amount of the average Individual Settlement Award and the highest Individual Settlement Award, (f) the amount of settlement administration costs, and (g) any other information that the parties mutually agree or the Court orders the Claims Administrator to provide.

 (f) Retention of Requests for Exclusion

 The Claims Administrator shall maintain any requests for exclusion throughout the administration of the settlement. The Claims Administrator shall make the requests for exclusion available to Defendant upon a reasonable request for such documentation.

## 13.14. PAYMENT TO SETTLEMENT CLASS MEMBERS AND PAGA GROUP MEMBERS

 (a) Claims Administrator's Role

 The Claims Administrator shall calculate amounts to be paid to Settlement Class Members and PAGA Group Members as provided below.

(b)    <u>Potential Gross Settlement Proceeds</u>

The "Potential Gross Settlement Proceeds" shall equal the Maximum Settlement Amount minus the total of: (1) Court-approved attorneys' fees; (2) Court-approved reimbursement of costs; (3) Court-approved incentive awards; (4) Court-approved payments to Plaintiffs in connection with their general release of all claims (described below); and (5) the fees and costs of the Claims Administrator. The Potential Gross Settlement Proceeds minus the PAGA Allocation (as defined above) shall be known as the "Settlement Class Member Allocation."

(c)    <u>Individual Awards</u>

    (1)    <u>Calculation of Settlement Class Member's Individual Settlement Award</u>: Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation.

        (i)    The amounts representing the Individual Settlement Awards of Settlement Class Members who opt out of participating in the settlement will remain a part of the Settlement Class Member Allocation and be distributed to Settlement Class Members who have not opted out. Thus, the total of all Individual Settlement Awards necessarily will equal the Settlement Class Member Allocation.

    (2)    <u>Calculation of PAGA Group Member's Individual PAGA Payment</u>: In addition to any Individual Settlement Award allocated pursuant to Paragraph ~~13~~14(c)(1) above, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share.

    (3)    For purposes of calculating Individual Settlement Awards and Individual PAGA Payments, workweeks worked shall be determined by Defendant's records.

    (4)    The Claims Administrator will pay out all Settlement Class Members and all Individual PAGA Payments, out of a qualified settlement fund, and issue IRS tax forms.

    (5)    The Individual Settlement Awards will be allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099. The Individual


PAGA Payments will be denominated as non-wages (*i.e.*, penalties) that will be reported to the IRS on Form 1099.

(d)    Claimed Settlement Amounts; Unclaimed Amounts

All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void. Should there remain uncashed checks thirty (30) days following issuance, the Claims Administrator will mail a postcard to each holder of an uncashed check to remind them to cash the funds before the void date. Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members.

(f)    Tax Liability and Net Payments

The payment by the Defendant pursuant to this Settlement Agreement is for an alleged failure to pay compensation due, interest on said sum, and all other claims as set forth in the Second Amended Complaint. In accordance with both State and Federal tax laws, taxes and other applicable withholdings shall be withheld from each Settlement Class Member's Individual Settlement Award as is required in order to comply with the same. Portions of any Individual Settlement Award not subject to withholding will be issued with a Form 1099. After appropriate tax withholding, the net payment to be received by each Settlement Class Member shall be designated as the "Net Payment," and said sum shall be paid as provided in this Settlement Agreement. The Claims Administrator shall report the taxes withheld from the wages of each Settlement Class Member as required by law via a W-2 form, and shall immediately pay over all such withheld funds, plus the employer's contribution, to the appropriate State and Federal taxing authorities. The Claims Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with State and Federal tax requirements. In addition, the Claims Administrator shall provide such information to Defendant's counsel and to Settlement Class Counsel. Settlement Class Members and PAGA Group Members shall be solely responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due. Neither Defendant, Plaintiffs, Defendant's counsel, Settlement Class Counsel, nor the Claims Administrator shall be responsible for the amount or calculation of any taxes that may be owed by Settlement Class Members as a result of this Agreement.

The parties agree that nothing contained herein is intended to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. The tax issues for each Settlement Class Member are unique, and each Settlement Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this settlement. The parties make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Settlement Class Members are not relying on any statement or representation by the parties, Settlement Class Counsel, and Defense Counsel in this regard. Settlement Class Members understand and agree that they will be responsible for the payment of any employee taxes and penalties assessed on the Individual Settlement Payments described herein

and will hold the parties, Settlement Class Counsel and Defense Counsel free and harmless from and against any claims, liabilities, costs and expenses, including attorney's fees, resulting in any way from personal tax treatment of the payments made pursuant to this Settlement Agreement.

    (g)    <u>Payment of Settlement Funds Will Not Be Considered By Defendant as Having Any Effect on Any Employee Benefit Plan and Similar Plans</u>

The payment to any Settlement Class Member or PAGA Group Member as provided for in this Settlement Agreement is not and shall not be deemed by Defendant to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation and/or wages under any employee benefit plan, employment policy, or stock option plan of or sponsored by the Defendant or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Any such payment to any Settlement Class Member or PAGA Group Member shall not be considered by Defendant to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendant or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Defendant and each of its present and former parent corporations and affiliates retain the right to modify and/or amend the language of their employee benefit plans, employment policies, and stock option plans, and to seek to have modified and/or amended the language of any jointly trusteed benefit plans, to make clear that any amounts paid as a result of this Settlement Agreement are not considered by Defendant as compensation or wages, or payments for "hours worked," as defined by the applicable plans and policies, and that no additional contributions or benefits will be provided by Defendant by reason of the settlement.

**14.15.  ADMINISTRATION OF MAXIMUM SETTLEMENT AMOUNT**

    (a)    The Claims Administrator will calculate the Net Payments to be made to the Settlement Class Members from the Potential Gross Settlement Proceeds in accordance with the terms and provisions of this Settlement Agreement, and shall calculate the Individual PAGA Payments to be made to the PAGA Group Members from the Potential Gross Settlement Proceeds in accordance with the terms and provisions of this Settlement Agreement. Defendant's counsel and Settlement Class Counsel will be provided access to all calculations forming the basis for such determinations. The fees and costs of the Claims Administrator in connection with said verification and/or performance shall be considered settlement administration expenses and shall be paid from the Maximum Settlement Amount. All of the fees, costs of the Claims Administrator in connection with printing, issuing and/or mailing settlement payments shall be considered settlement administration expenses and shall be paid from the Maximum Settlement Amount, as provided herein.

    (b)    No person shall have any claim against Defendant, Defendant's counsel, Plaintiffs, the Settlement Class, the PAGA Group, Settlement Class Counsel, or the Claims Administrator based on distributions and payments made in accordance with this Settlement Agreement.

## 15.16.  COURT'S PRELIMINARY APPROVAL

Plaintiffs shall seek preliminary approval of this settlement by the Court for entry of a Preliminary Approval Order in substantially the same form as Exhibit "B" attached hereto.  As part of the preliminary approval process, the Court shall be asked to approve, among other matters, the terms of the settlement, the method of providing notice, the Notice, the procedure for the calculation of settlement distributions, the payment of incentive awards, and Settlement Class Counsel's fees, costs, and expenses as set forth herein.

## 16.17.  FINAL APPROVAL HEARING

The Notice shall contain a date, time, and location for a "Final Approval Hearing."  The Final Approval Hearing shall be held on a date approved by the Court no earlier than ten (10) days after the last day for Defendant to exercise its right to void this Settlement Agreement, as provided for in Paragraph 910 hereof.  The exact date, time, and location of the Final Approval Hearing shall be set forth in the Notice.  At the Final Approval Hearing, Settlement Class Counsel shall request the Court to grant final approval of the applications for attorneys' fees, costs, expenses, and incentive awards referred to in Paragraphs 1011(b) and 1011(c) of this Settlement Agreement.

## 17.18.  PROCEDURE FOR OBJECTIONS TO SETTLEMENT

Settlement Class Members also may object to the settlement by submitting a written objection to the Claims Administrator no later than the Objection Deadline or thirtyforty-five (3545) days after the Notice is mailed.  The written objection must be signed and dated, and additionally state the Settlement Class Member's name, dates of employment with Defendant, the case name and number and the basis for the objection.  A Settlement Class Member who objects to the settlement will still be considered a Settlement Class Member, unless he or she submits a valid and timely request for exclusion as set forth herein.  Settlement Class Counsel shall file copies of such objections at the time the Motion for Order Granting Final Approval of Class Action Settlement is filed with the Court.  Even if a Class Member does not submit a written objection, he or she may appear at the Final Approval hearing to lodge an objection.

## 18.19.  [PROPOSED]  FINAL  APPROVAL  ORDER, AND  FINAL  JUDGMENT  AND ORDER OF DISMISSAL

Upon final approval of the settlement, the Court shall be requested to issue a [Proposed] Final Approval Order and Final Judgment ("Proposed Final Judgment") in substantially the same form as Exhibits "C" and "D" attached hereto, respectively, which shall, *inter alia*:

(a)    Dismiss without prejudice all claims asserted in the Second Amended Complaint on behalf of individuals employed by Defendant who are not Settlement Class Members and/or PAGA Group Members.

(b)(a)    With respect to the Settlement Class, grant final approval of the settlement as fair, reasonable, adequate, in good faith and in the best interests of the Settlement Class, as a whole, and order the parties to carry out the provisions of this Settlement Agreement.  With respect to the

PAGA Group, approve the settlement as fair and reasonable and in the best interest of the PAGA Group and the State of California.

(c)(b)  Adjudge that all Settlement Class Members are conclusively deemed to have released Defendant and the other Releasees (as defined below), of and from any and all rights, claims, demands, liabilities, causes of action, liens and judgments reasonably arising out of or in any way related to the wage and hour matters set forth, or that could have been set forth, based on the facts alleged, in the Second Amended Complaint (or LWDA Notice letter, as the case may be), in relation to the alleged claims against Defendant relating to the release of the Settlement Class.

(d)(c)  Adjudge that Defendant and the other Releasees (as defined below) have been released from all PAGA claims that were set forth, or that could have been set forth, based on the facts alleged, in the Second Amended ComplaintLWDA Notice letter.

(e)  Bar and permanently enjoin each Settlement Class Member from prosecuting against the Defendant and the other Releasees (as defined below), any and all of the settled and released claims which the Settlement Class Members or any of them had or have arising out of or based upon any of the settled and released claims, or any of the allegations contained in the Second Amended Complaint.

(f)  Bar and permanently enjoin each PAGA Group Member from prosecuting any released PAGA claims against any of the Releasees.

(g)(d)  Reserve continuing jurisdiction as provided herein.

## 19.20.  APPROVAL AND ADOPTION OF [PROPOSED] FINAL JUDGMENT BY COURT AND FINAL JUDGMENT

Plaintiffs shall seek final approval and adoption of this settlement from the Court for entry of the [Proposed] Final Judgment and the Final Approval Order, as well as an Attorneys' Fee and Costs Order and Incentive Awards Order.

## 20.21.  PAYMENT OF SETTLEMENT PROCEEDS

(a)      Timing of Payments

Net payments to Settlement Class Members (including any Court-approved payments to Plaintiffs), payment to Settlement Class Counsel for Court-approved attorneys' fees and costs, payment to PAGA Group Members, and payment to the Claims Administrator for all settlement administration expenses shall be made no later than five (5) business days after the date on which the time to challenge any aspect of this settlement by appeal has lapsed, provided that no such appeal has been filed (regardless of whether any objections to the settlement were made).  If any such appeal is filed, the payments described in this Paragraph shall be made no later than five (5) business days after a final resolution of all appeals that result in the upholding of the parties' settlement.  The date defined and determined by this Paragraph shall be called the "Effective Date."

(b)    Method of Payment

Defendant will fund a qualified settlement fund established by the Claims Administrator no later than ~~thirty (30~~fourteen (14) days after Court grants final approval to the Settlement.  The Claims Administrator will be responsible for making appropriate payroll deductions and reporting obligations and issue the Individual Settlement Awards and the Individual PAGA Payments.  The expiration date on the settlement checks will be 180 days from the date the settlement checks are issued.  Uncashed settlement checks shall be paid to California's unclaimed property fund in the name of the respective Claiming Settlement Class Members.

## ~~21.~~22.  COSTS

Defendant shall bear its own costs and attorneys' fees incurred in connection with or arising out of the Lawsuit.  The Settlement Class's attorneys' fees and costs, as approved by the Court, shall be paid from the Maximum Settlement Amount.

## ~~22.~~23.  RELEASED CLAIMS

(a)    Released Claims by Settlement Class Members

As of the Effective Date, or at the time that Defendant fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc~~.,~~. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims~~".~~."  The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

For purposes of this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were~~, or could have been,~~ asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197,

1198, 1199, IWC Wage Order 7-2001 ~~(including Wage Order 7-2001(14)(A) and (B)),~~, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and ~~the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") as to the Labor Code provisions and causes of action identified in this paragraph and~~ any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, ~~statutory penalties, civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1199, 2699(f)), 2699.3, 2699.5),~~penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, ~~2699(g),~~ Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide ~~suitable seating; alleged failures to provide~~ accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200~~; and, based on the foregoing, claims for civil penalties pursuant to PAGA~~.

For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records,

alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

(b)    Release by the Named Plaintiffs

Plaintiffs each agree to execute a separate general release of all claims.  Such release shall be substantially in the same form as Exhibit "E" attached hereto.

## ~~23.~~24.  WAIVER OF RIGHTS

(a)    The parties hereto, including the Settlement Class, stipulate and agree that the consideration received by the Settlement Class Members pursuant to this Settlement Agreement compensates the Settlement Class for all damages, all restitution, all penalties (including PAGA penalties), and all liability related to any compensation to which they may be entitled as a result of the allegations that were or could have been made in the Lawsuit based on the facts alleged in the Lawsuit.

(b)    By granting preliminary and final approval of the settlement, the Court will have reviewed this Settlement Agreement and concluded that the Settlement appears fair, reasonable and adequate.

## ~~24.~~25.  NO ADMISSION BY THE PARTIES

Defendant and the other Releasees deny any and all claims alleged in the Lawsuit and deny all wrongdoing whatsoever.  This Settlement Agreement is neither a concession nor an admission, and shall not be used against Defendant or the other Releasees as an admission or indication with respect to any claim of any fault, concession or omission by Defendant or the other Releasees. Whether or not the settlement is finally approved, neither the settlement, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be:

(a)    construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant or the other Releasees, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendant, or any of the other Releasees, of any liability, fault, wrongdoing, omission, concession or damage; or

(b)    disclosed, referred to or offered or received in evidence against Defendant or any of the other Releasees in any further proceeding in the Lawsuit, or any other civil, criminal or administrative action or proceeding, except for purposes of settling the Lawsuit pursuant to this Settlement Agreement or for the enforcement of the terms of this Settlement Agreement.

## 25.26.  CONFIDENTIALITY

Plaintiffs and Defendant shall not: (i) initiate or cause the initiation of any communications concerning the settlement with any media organization and/or (ii) respond to or cause a response to be made to any communications concerning the settlement with any media organization. Plaintiffs and Defendant shall also instruct their attorneys not to (i) initiate or cause the initiation of any communications concerning the settlement with any media organization and/or (ii) respond to or cause a response to be made to any communications concerning the settlement with any media organization.  Plaintiffs shall instruct their attorneys not to use Defendant's name in marketing materials.  Plaintiffs will not make, and Plaintiff shall instruct their attorneys not to make, any posting on any website, instant message site, blog, or social networking site that uses Defendant's name and will not list or refer to the Lawsuit in any website, mailings, publicity, or other similar forums or materials.  However, following the Effective Date and notwithstanding the foregoing, nothing in this Agreement shall be read to prohibit Settlement Class Counsel in marketing materials or on websites from providing a brief description of the nature of the Lawsuit, the amount of settlement and that the defendant in the action was a "retailer."

## 26.27.  NULLIFICATION OF AGREEMENT

In the event: (a) the Court does not enter the Preliminary Approval Order specified herein in substantially the same form as Exhibit "B" attached hereto; (b) the Court does not finally approve the settlement as provided herein; (c) the Court does not issue a [Proposed] Final Judgment (as provided herein and in substantially the same form as Exhibit "D" attached hereto) which becomes final and not subject to any appeals; or (d) the settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this settlement shall be treated as void *ab initio*.  In such event, the parties hereto and any funds to be awarded under this settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Settlement Agreement, and the parties shall proceed in all respects as if this Settlement Agreement had not been executed; however in this event, Defendant agrees to separately pay for the cost charged by the Claims Administrator directly to the Claims Administrator.

## 27.28.  RETURN OF DOCUMENTS AND INFORMATION

Plaintiffs, the Settlement Class, the PAGA Group, and Settlement Class Counsel agree that none of the documents and information provided to them by Defendant shall be used for any purpose other than prosecution of the Lawsuit.  No later than ten (10) days after Settlement Class Counsel receives any Court-approved award of attorneys' fees, Plaintiffs and Settlement Class Counsel shall destroy the original and all copies of any documents that Defendant produced or provided to Plaintiffs' or Settlement Class Counsel during the Lawsuit and shall certify to Defendant's counsel that such destruction has been completed.  The certification contemplated by this paragraph is a material term of this Settlement Agreement.  In addition, Defendant counsel's firm shall retain copies of any and all documents produced in the Lawsuit, whether formally or informally, for four (4) years after judgment has been entered and shall produce all said documents to Settlement Class Counsel upon reasonable request and upon proof that such documents are required to defend itself against any claim arising out of this matter.

## 28.29.  REPRESENTATIONS AND WARRANTIES

Each party to this Settlement Agreement represents and warrants that he, she, or it has not heretofore assigned or transferred, or purported to assign or transfer, any of the claims released pursuant to this Settlement Agreement to any other person and that he, she or it is fully entitled to compromise and settle same.

## 29.30.  CALIFORNIA LAW

All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of California applicable to agreements to be wholly performed within the State of California.

## 30.31.  OWN COUNSEL

Each party hereto acknowledges that he, she or it has been represented by counsel of his, her or its own choice throughout all of the negotiations which preceded the execution of this Settlement Agreement and in connection with the preparation and execution of this Settlement Agreement.

## 31.32.  FURTHER ACTS AND DOCUMENTS

The parties hereto agree to do such acts and execute all such documents necessary to effectuate the intent of this Settlement Agreement.

## 32.33.  COUNTERPARTS

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and will be effective upon execution by all parties.  Facsimile and electronic/digital signatures shall be deemed original signatures for all purposes.

## 33.34.  HEADINGS

The headings contained in this Settlement Agreement are for reference only and are not to be construed in any way as a part of the Settlement Agreement.

## 34.35.  ENTIRE AGREEMENT

This Settlement Agreement represents the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior oral and written agreements and discussions.  Each of the parties covenants that he, she or it has not entered into this Settlement Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein.  Each party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further consideration have been made by any person.  This Settlement Agreement may be amended only by an agreement in writing duly executed by all parties hereto.

## 35.36.  BINDING EFFECT

This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, assigns and successors-in-interest.

## 36.37.  DRAFTING

Each party hereto has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any party as drafter of this Settlement Agreement.

## 37.38.  SEVERABILITY

In the event any covenant or other provision herein is held to be invalid, void or illegal, the same shall be deemed severed from the remainder of this Settlement Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision herein. If any covenant, condition or other provision herein is held to be invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

## 38.39.  INCORPORATION OF EXHIBITS

All exhibits attached to this Settlement Agreement are hereby incorporated by reference as though set forth fully herein and are a material part of this Settlement Agreement.  Any notice, order, judgment or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Settlement Agreement to become effective.  Notwithstanding this Paragraph, insubstantial changes to the attached exhibits shall not invalidate the Settlement Agreement.

## 39.40.  AUTHORITY

Each party hereto warrants and represents that each of the persons or entities executing this Settlement Agreement is duly empowered and authorized to do so.

## 40.41.  ADMINISTRATION OF SETTLEMENT AND COMPLIANCE

The Court shall have continuing jurisdiction to resolve any dispute which may arise with regard to the terms and conditions of this Settlement Agreement as set forth herein.

## 41.42.  NOTICE

All notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement (other than the Notice to Settlement Class Members) shall be in writing and shall be delivered personally, telecopied, or mailed postage pre-paid by first class mail to the following persons at their addresses set forth as follows:

<u>Settlement Class Counsel</u>:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**THE deRUBERTIS LAW FIRM**
~~4219 Coldwater Canyon Avenue~~
~~Studio City~~8889 W. Olympic Boulevard, Second Floor
Beverly Hills, California ~~91604~~90211

Defendant's Counsel:

~~Phillip J. Eskenazi, Esq.~~
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

      **WHEREFORE**, Plaintiffs, on their own behalf, on behalf of the Settlement Class, and as proxies for the LWDA, and Defendant, by its duly authorized agents or counsel, have executed this Settlement Agreement as of the dates set forth below.

**<u>Plaintiff Elizabeth Ochoa</u>**

Dated: ~~July ___, 2021~~June ___, 2022

                                        _____
                                        Elizabeth Ochoa, as an individual, as a representative of the Settlement Class Members, and as a proxy for the LWDA

**<u>Plaintiff Monica Velazquez</u>**

Dated: ~~July ___, 2021~~June ___, 2022

                                        _____
                                        Monica Velazquez, as an individual, as a representative of the Settlement Class Members, and as a proxy for the LWDA

**<u>Plaintiff Crystal Fregoso</u>**

Dated: ~~July ___, 2021~~June ___, 2022

                                        _____
                                        Crystal Fregoso, as an individual, as a representative of the Settlement Class Members, and as a proxy for the LWDA

**Defendant Victoria's Secret Stores, LLC**

Dated: ~~July ___, 2021~~June ___, 2022          **VICTORIA'S SECRET STORES, LLC**

By _____

Melinda McAfee
EVP, Chief Legal Officer

**Approval As To Form:**

On Behalf of Plaintiffs and the Settlement Class:

Dated: ~~July ___, 2021~~June ___, 2022          **LAVI & EBRAHIMIAN, LLP**

By _____

Joseph Lavi, Esq.

Dated: ~~July ___, 2021~~June ___, 2022                    **THE deRUBERTIS LAW FIRM**


By _____
        David M. deRubertis, Esq.


<u>On Behalf of Defendant</u>:


Dated: ~~July ___, 2021~~June ___, 2022                    **HUNTON ANDREWS KURTH LLP**


By _____
~~Phillip J. Eskenazi~~Kirk A. Hornbeck, Esq.

# Exhibit 3

# AMENDED CLASS ACTION SETTLEMENT AGREEMENT

THIS AMENDED CLASS ACTION SETTLEMENT AGREEMENT (hereinafter "Settlement Agreement") is entered into and effective upon its execution by all parties hereto, subject to final approval by the Court.  It is entered into by and between Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs"), on their own behalf and on behalf of all members of the "Settlement Class," as defined below, and as proxies for California's Labor & Workforce Development Agency ("LWDA"), on the one hand, and Victoria's Secret Stores, LLC ("Defendant"), on the other hand, with reference to the recitals and provisions set forth below.

# RECITALS

A.    Certain claims, demands and differences have existed heretofore between Plaintiffs, on their own behalf, the Settlement Class (as defined below), and Plaintiffs as proxies for the LWDA, on the one hand, and Defendant, on the other hand, including the Settlement Class and PAGA Group's (as defined below) contentions that Defendant, as well as L Brands, Inc. (now known as Bath & Body Works, Inc.), Limited Brands, Inc., and The Limited, Inc. (collectively, the "L Brands Defendants"): (1) failed to pay wages to the Settlement Class for all time worked at the minimum wage in violation of California Labor Code §§ 1194 and 1197; (2) failed to pay proper overtime wages to the Settlement Class for all hours worked, including by failing to include bonus and similar pay in the regular rate, in violation of California Labor Code §§ 510, 1194, and 1198; (3) failed to provide meal periods to the Settlement Class in violation of California Labor Code §§ 512 and 226.7; (4) failed to authorize and permit the Settlement Class to take rest breaks in violation of Labor Code § 226.7; (5) failed to provide accurate wage statements to the Settlement Class and maintain accurate records in violation of California Labor Code § 226; (6) failed to timely pay all final wages at termination to the Settlement Class in violation of California Labor Code §§ 201 and 202; and (7) engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code § 17200, *et seq.*  Plaintiffs and the PAGA Group also seek penalties against Defendant and the L Brands Defendants pursuant to the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on the aforementioned claims as well as an alleged failure to provide suitable seating.

B.    These claims were brought by Plaintiffs on behalf of the Settlement Class and the PAGA Group against Defendant in the matter of *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Case No. BC661822 (the "Lawsuit"), which is pending before the Honorable Maren E. Nelson in the Los Angeles County Superior Court (the "Court").  Plaintiff Velazquez and Plaintiff Fregoso had initially asserted their claims in the matter of *Velazquez, et al. v. L Brands, Inc., et al.*, C.D. Cal. Case No. 2:20-CV-03521-DOC (KESX) (the "*Velazquez/Fregoso* Lawsuit"), and have agreed to dismiss their action and join the *Ochoa* Lawsuit as part of the instant settlement.

C.    Plaintiffs are represented in the Lawsuit by the following law firms ("Settlement Class Counsel"):

**LAVI & EBRAHIMIAN, LLP**
**THE deRUBERTIS LAW FIRM**



D.      Defendant and the L Brands Defendants are represented in the Lawsuit by:

### HUNTON ANDREWS KURTH LLP

E.      Plaintiffs and Defendant prepared for and engaged in two formal mediations.  The first mediation took place on May 30, 2018, before the Honorable Carl J. West (Ret.), an experienced mediator, but the parties were not able to resolve the matter.  A second mediation, which was presided over by another experienced mediator, Jeffrey A. Ross, Esq., took place on February 22, 2021, and it ultimately resulted in a settlement.

F.      The parties hereto have conducted substantial formal discovery and informal investigation in connection with the claims asserted in the Lawsuit.  The parties have propounded substantial written discovery, taken party depositions, and researched and briefed the relevant legal and factual issues arising from all of the claims that are alleged in, or could have been alleged in, the Lawsuit, including in multiple motions for summary judgment / adjudication, and writ petitions to the California Court of Appeal and California Supreme Court.  The parties have considered: (1) Plaintiffs' ability to certify each of the subclasses alleged in the operative complaint; (2) the relative merits of the case and the uncertainties of trial; (3) the benefits of settlement; (4) the costs, risks, and delays associated with litigating this Lawsuit; and (5) the likely appeals from any dispositive rulings or denial of class certification.  Based on these considerations, the parties agreed to completely settle this Lawsuit to avoid the risk and cost of continued litigation and trial.

G.      On December 22, 2021, Plaintiffs moved for preliminary approval of the original Class Action Settlement Agreement.  On January 14, 2022, the Court ordered further briefing and the submission of an amended class action settlement agreement as part of the Court's effort to discharge its obligation to conduct an inquiry into the fairness of the proposed settlement.  The parties have met and conferred as appropriate to address the issues identified by the Court.  This Settlement Agreement is one product of those efforts.

H.      Defendant denies each and every allegation by Plaintiffs.  Defendant contends that Plaintiffs, the Settlement Class Members, and the PAGA Group Members received all of the entitlements provided by the California Labor Code.  Defendant also denies that the Lawsuit is amenable to class treatment.  Neither this Settlement Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Settlement Agreement, is or may be construed or used in the Lawsuit or in any other action or proceeding as an admission, concession, or indication by or against Defendant or the L Brands Defendants of any fault, wrongdoing, or liability whatsoever.

I.      It is the intention of the parties to this Settlement Agreement to settle and dispose of, fully and completely, any and all claims, demands, and causes of action that were or could have been, set forth in the Lawsuit based on the facts and causes of action alleged in the Second Amended Complaint.



# PROVISIONS

## 1.    COOPERATION BY THE PARTIES

The parties to this Settlement Agreement and their counsel agree to cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms and conditions of this Settlement Agreement.

## 2.    AMENDED CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement supersedes the prior Class Action Settlement Agreement entered into by the parties on or about July 28, 2021.

## 3.    AMENDED COMPLAINT

As a material term of this Settlement, Plaintiff Ochoa agreed to amend her operative complaint to: (a) add Monica Velazquez and Crystal Fregoso (together with Elizabeth Ochoa, "Plaintiffs") as named plaintiffs; and (b) allege all causes of action and underlying factual bases that the parties actually have litigated in this Lawsuit and intend to release through the Settlement. Those claims include alleged: (a) failures to provide uninterrupted, duty-free, 30-minute meal periods as well as rest breaks of the requisite duration; (b) failures to provide "separate rest break" pay; (c) failures to pay meal period and rest break premiums, including at the proper rate; (d) failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; (e) failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and pre-/post-shift work; (f) failures to pay associates the applicable minimum wage; (g) failures to pay reporting time pay; (h) failures to provide suitable seating; (i) failures to provide accurate wage statements and maintain accurate records; (j) failures to pay all wages owing at termination; (k) violation of California Business and Professions Code § 17200, *et seq.*; and, based on the foregoing, (l) claims for civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code 2698, *et seq.* ("PAGA"). Plaintiffs filed the second amended complaint described in this paragraph on May 17, 2022, per the Court's order.

## 4.    DISMISSAL OF *VELAZQUEZ/FREGOSO* ACTION

As a material term of this settlement, Plaintiffs Velazquez and Fregoso shall dismiss the *Velazquez/Fregoso* Lawsuit within five (5) days after filing the amended complaint contemplated by Paragraph 3 of this Settlement Agreement.

## 5.    APPOINTMENT OF ADMINISTRATOR

The parties will stipulate to and seek the Court's order appointing CPT Group, Inc. to act as the settlement and claims administrator (the "Claims Administrator") for purposes of this settlement. The Claims Administrator shall be responsible for, among other matters:

(a)    The Settlement Administrator will be responsible for establishing a qualified settlement fund account; updating addresses with the U.S. Postal Service's National Change of



Address ("NCOA") database; making commercially reasonable searches for new addresses for Settlement Class Members whose Notices are returned as undeliverable with no forwarding address; maintaining a manned and dedicated toll free number and email address for this Settlement; determining the amount of payments allocated to each Settlement Class Member in accordance with this Settlement Agreement, along with the amount of all payroll taxes to be paid and deductions to be withheld; preparing and mailing settlement checks; distributing any approved incentive award and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; and retaining and, upon request, providing a copy of the settlement checks to Defendant's Counsel.

(b)      Preparing and mailing of the Notice (as defined below);

(c)      After final approval of the settlement by the Court, shall resolve any dispute by any member of the Settlement Class (as defined below) as to any factor or issue regarding the computation of that member of the Settlement Class's Individual Settlement Award (as defined below) as well as any similar issues regarding any member of the PAGA Group's Individual PAGA Payment (as defined below); and the Claims Administrator's decision on any such issue or dispute shall be final, binding, and non-appealable;

(d)      Resolving any disputes regarding membership in the Settlement Class (as defined below) and the PAGA Group (as defined below) and the Claims Administrator's decision on any such issue or dispute shall be final, binding, and non-appealable;

(e)      Issuing the Individual Settlement Awards and Individual PAGA Payments, making appropriate payroll deductions, and complying with any necessary reporting as set forth below; and

(f)      Providing Settlement Class Counsel and Defendant's Counsel with periodic reports of the administration process, including, but not limited to, the mailing of the Notice, remailing of returned Notices, settlement checks mailed, settlement checks cashed, and the number of opt outs.

## 6.   APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

For the purpose of the settlement of the Lawsuit only, Plaintiffs shall request that the Court appoint them as representatives of the Settlement Class ("Settlement Class Representatives"), and to appoint Lavi & Ebrahimian, LLP and The deRubertis Law Firm as "Settlement Class Counsel." Defendant shall not oppose Plaintiffs' request.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision of the Settlement Agreement or the appointment of Settlement Class Representatives and/or Settlement Class Counsel for any purpose whatsoever in the Lawsuit or in any other action or proceeding.



## 7. DEFINITION OF THE SETTLEMENT CLASS AND PAGA GROUP

(a)    For purposes of this settlement only, the parties agree that the "Settlement Class" is defined as follows:

> All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.

(b)    For purposes of this settlement only, the parties agree that the "PAGA Group" is defined as follows:

> All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.

(c)    <u>Persons Expressly Excluded From the Settlement Class</u>

Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class.

## 8. CERTIFICATION OF THE SETTLEMENT CLASS

Solely for the purposes of implementing this Settlement Agreement and effectuating the settlement, Defendant shall not oppose a request by Plaintiffs that the Court enter an order: (1) preliminarily certifying the Settlement Class (which includes the individuals in the PAGA Group) (2) appointing Lavi & Ebrahimian, LLP and The deRubertis Law Firm as Settlement Class Counsel; and (3) appointing Plaintiffs as Settlement Class Representatives. In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or the certification of the Settlement Class, the appointment of Plaintiffs as Settlement Class Representatives, or the appointment of Lavi & Ebrahimian, LLP and The deRubertis Law Firm as Settlement Class Counsel for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

## 9. MEMBERS' RIGHT TO EXCLUDE THEMSELVES FROM THE SETTLEMENT

(a)    Members of the Settlement Class may exclude themselves from participating in the settlement by submitting a written request to be excluded from (or "opt-out" of) the settlement, which must be post-marked and returned to the Claims Administrator at the address provided in the Notice by no later than forty-five (45) days after the Notice is mailed, unless extended as provided for herein. Such written requests for exclusion must contain the individual's name, address, telephone number, and the last four (4) digits of the Social Security Number of the person requesting exclusion from the settlement. Such written requests must explicitly and unambiguously state the following in identical or substantially similar language: "I wish to exclude



DocuSign Envelope ID: 814A3AB0-05ED-43F7-982E-A160EDCF642F

myself from the settlement reached in the matter of *Ochoa vs. Victoria's Secret Stores, LLC, et al*. I understand that by excluding myself I will not receive any money from the settlement of the class claims in this matter." Any person who properly opts-out of the settlement using this procedure will not be entitled to any payment from the Maximum Settlement Amount (or Potential Gross Settlement Proceeds) and will not be bound by the settlement or have any right to object, appeal, or comment thereon, except as to PAGA release. Any member of the Settlement Class who does not properly exclude himself or herself from the settlement class shall be bound by all the terms and conditions of this Settlement Agreement, including the release of identified claims set forth hereinafter upon Final Approval, entry of Judgment by the Court and funding of the settlement by the Defendant.

(b)    Notwithstanding anything to the contrary in this Settlement Agreement, PAGA Group Members shall have no right to exclude themselves from the PAGA Group, because Plaintiffs are settling the PAGA claims as proxies for the LWDA on behalf of the State of California.

## 10.    DEFENDANT'S RIGHT TO VOID SETTLEMENT

If the total number of persons who opt-out of the Settlement Class on a timely basis is equal to or in excess of ten percent (10%) of the number of persons to whom Notices are mailed, Defendant shall have the option, in its sole and absolute discretion, to be exercised within twenty-one (21) days of receiving notice of the total opt-out percentage to void this Settlement Agreement and the parties' settlement by notifying Settlement Class Counsel in writing of its intention to do so. The Settlement Agreement and the parties' settlement shall become void seven (7) days after the delivery of such written notification unless, during that period, the parties agree in writing to a mutually acceptable resolution and thereafter the Court approves such resolution. Should Defendant exercise its right under this Paragraph, Defendant shall be solely responsible for all costs incurred by the Claims Administrator.

## 11.    CONSIDERATION BY DEFENDANT

In consideration for the releases and dismissals set forth in this Settlement Agreement, Defendant agrees to: (a) the payments to the individual Settlement Class Members pursuant to the payment procedure as described herein; (b) the PAGA Allocation, as defined below and as set forth herein and as approved by the Court; (c) the payment of attorneys' fees and costs, as set forth herein and as awarded by the Court; (d) the payment of incentive awards to Plaintiffs, as set forth herein and as awarded by the Court; and (e) the payment of the cost of administration of the settlement, including, without limitation, the fees of the Claims Administrator, as set forth hereinafter.

(a)    "Maximum Settlement Amount" to be Paid by Defendant

The "Maximum Settlement Amount" to be paid by Defendant is the total sum of Five Million Dollars and No Cents ($5,000,000.00). This is a non-reversionary, "no claims made" settlement. No amount of the "Maximum Settlement Amount" shall be retained by Defendant. Subject to Paragraph 11(a)(2) and 11(a)(3), the maximum payment by Defendant shall be "all inclusive," including: any damages, penalties, or other relief arising from the alleged Labor Code



violations committed against the Settlement Class and PAGA Group; any failure to pay the Settlement Class Members and PAGA Group Members minimum or overtime wages, as a result of off-the-clock work or otherwise; any failure to provide Settlement Class Members and PAGA Group Members with compliant meal breaks or rest breaks, or appropriate meal and rest break premiums or "separate rest break pay"; any failure to provide Settlement Class Members and PAGA Group Members with reporting time pay, any failure to timely pay Settlement Class Members and PAGA Group Members all wages due upon the termination of the their employment with Defendant; any failure to provide Settlement Class Members and PAGA Group Members with accurate wage statements or maintain accurate records; any failure to provide PAGA Group members with suitable seating; any restitution to Settlement Class Members and PAGA Group Members under California Business & Professions Code Section 17200 *et seq.*, based on the aforementioned claims; any PAGA penalties based upon the aforementioned alleged California Labor Code violations; interest, attorneys' fees and costs, as approved by the Court; the fees and costs of the Claims Administrator in connection with settlement and claims administration, as approved by the Court, including any fees and costs in connection with notice, the claims process, and the exclusion process, which is not to exceed $155,000; settlement payments; the incentive awards to Plaintiffs, as approved by the Court; and all other settlement-related payments and costs.

(1)    Under no condition will Defendant's liability for payments exceed the Maximum Settlement Amount, subject to Paragraphs 11(a)(2) and 11(a)(3) below. At no time shall Defendant have the obligation to segregate the funds comprising the Maximum Settlement Amount, and Defendant shall retain exclusive authority over, and the responsibility for, those funds, as long as the Claims Administrator will be able to complete its tasks and duties. All Settlement Class Members' payments, the PAGA Allocation (as defined below), and all attorneys' fees, costs, incentive awards, and claims administration expenses shall be paid out of the Maximum Settlement Amount.

(2)    In addition to the Maximum Settlement Amount, Defendant shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions, and unemployment taxes), including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of the Settlement Class. Settlement Class Members and PAGA Group Members will be responsible for their own tax obligations.

(3)    The Maximum Settlement Amount is based on Settlement Class Counsel's estimate of approximately 730,000 total shifts worked by Settlement Class Members in 2017, based on data provided by Defendant. Defendant will provide Settlement Class Counsel with a declaration confirming that to the best of Defendant's knowledge the data provided to Settlement Class Counsel for purposes of mediation purposes is correct. Defendant's provision of the declaration contemplated by this paragraph is a material term of this Settlement Agreement.



(4)    Defendant's sole monetary obligations under this Settlement Agreement shall be the Maximum Settlement Amount and the employer-paid withholding and payroll taxes and similar expenses referred to in Paragraph 11(a)(2) above.

(b)    <u>Attorneys' Fees and Costs</u>

Defendant understands that Settlement Class Counsel will file an application for an award of attorneys' fees in an amount not to exceed 33.3% of the Maximum Settlement Amount or One Million Six Hundred Sixty Five Thousand Dollars ($1,665,000.00) and reimbursement of costs in an amount not to exceed Forty-One Thousand Dollars ($41,000.00) incurred in the prosecution of the Lawsuit for the benefit of the Settlement Class and the PAGA Group.  Defendant agrees not to object to such application up to such amounts.  Notwithstanding any other provision of this Agreement, if the Court should fail to award attorneys' fees to Settlement Class Counsel in the full amount provided for in this Settlement Agreement, no order of the Court or modification of any order of the Court concerning the amount of any attorneys' fees to be paid by Defendant to Settlement Class Counsel pursuant to this settlement shall constitute grounds for cancellation or termination of the Settlement Agreement or grounds for limiting any other provision of the judgment or release contained herein.  It is agreed that no order of the Court, including any order concerning attorneys' fees, may alter or otherwise increase the Maximum Settlement Amount.  However, Settlement Class Counsel retains their right to appeal any decision by the Court regarding any award of attorney's fees and costs.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or the award of attorneys' fees and costs for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

(c)    <u>Incentive Awards</u>

Settlement Class Counsel will file an application for approval of an incentive award for each Plaintiff as follows: as to Plaintiff Ochoa, Seven Thousand Five Hundred Dollars ($7,500.00); as to Plaintiffs Velazquez and Fregoso, each not to exceed, Three Thousand Dollars ($3,000.00).  These awards are in addition to Plaintiffs' Individual Settlement Awards.  Defendant agrees not to object to such application.  Any such incentive awards approved by the Court shall be paid from the Maximum Settlement Amount.

(d)    <u>The PAGA Allocation; Payment to the California Labor and Workforce Development Agency</u>

Plaintiffs shall apply to the Court for approval of payments under PAGA.  The parties agree to allocate Five Hundred Thousand Dollars ($500,000.00) to PAGA penalties (the "PAGA Allocation").  Seventy-five percent (75%) of the PAGA Allocation, or Three Hundred and Seventy-Five Thousand Dollars ($375,000.00), shall be paid to the LWDA (the "LWDA Payment").  The remaining twenty-five percent (25%) of the PAGA allocation (the "PAGA Group Share"), or One Hundred and Twenty-Five Thousand Dollars ($125,000.00), shall be distributed to PAGA Group Members as "Individual PAGA Payments" in the manner described below.  In the event the Court rejects the amount of the PAGA Allocation, the parties will meet and confer



with the Court to reach a penalty allocation acceptable to all parties that does not materially alter the terms of the settlement or increase the Maximum Settlement Amount hereunder.

## 12.    FILING OF MOTION TO CERTIFY SETTLEMENT CLASS

As part of Plaintiffs' Motion for Preliminary Approval, Plaintiffs shall request the Court to certify the Settlement Class, as defined herein, for purposes of settling the Lawsuit.  Defendant shall not oppose such certification for settlement purposes only.  In the event that this settlement does not receive final approval from the Court (or if a final approval order is reversed on appeal), no party shall use this provision or such certification for any purpose whatsoever in the Lawsuit or in any other action or proceeding.

## 13.    INFORMATION TO ADMINISTRATOR; NOTICE OF SETTLEMENT AND CLAIM FORM; TIME TO SUBMIT CLAIMS

(a)    <u>Information To Claims Administrator</u>

The parties agree that within fourteen (14) calendar days of execution of the Court's order granting preliminary approval, Defendant will provide the Settlement Class Members' and PAGA Group Members' information to the Claims Administrator to the extent Defendant possesses such information and it has not already done so.  Such information shall include each Settlement Class Member's name, last known address, last known home or mobile telephone number, dates of employment within the relevant period, and Social Security Number.  All such information and any other information provided to the Claims Administrator by the Defendant regarding the Settlement Class Members and the PAGA Group Members is confidential and shall not be disclosed to anyone other than the Claims Administrator to protect those individuals' privacy rights.  Notwithstanding the foregoing, Settlement Class Counsel shall be entitled to information sufficient to evaluate any Settlement Class Member workweek disputes.

(b)    <u>Notice of Settlement</u>

Within forty-five (45)  calendar days of preliminary approval of this Settlement Agreement and Court approval of a settlement notice to the Settlement Class, the Claims Administrator will mail to the Settlement Class Members via first class United States Mail, at their last known address, the Court-approved notice of the terms and conditions of this settlement in the form of a "Notice" agreed upon by the parties, approved by the Court, and in substantially the same form as Exhibit "A" attached hereto.

The Notice shall inform Settlement Class Members:

(1)    of the terms of the settlement, including the Class Member's estimated settlement share;

(2)    that any Class Member may submit workweek disputes to the Claims Administrator as well as the deadline and procedure for submitting any such disputes;



(3)     that any Settlement member who does not exclude himself or herself from the settlement will release all claims he or she may have;

(4)     of the deadlines for submitting a request for exclusion to the Claims Administrator (*i.e.*, forty-five (45) days after the Notice is mailed, except as to those Settlement Class Members who receive the Notice pursuant to re-mailing, whose deadline shall be forty-five (45) days from the date the Notice is mailed to the updated address;

(5)     that any request for exclusion that is post-marked later than the respective deadlines will not be considered timely;

(6)     of the name, address, and email address of the Claims Administrator to which the request for exclusion must be returned;

(7)     that there is a toll-free number to contact the Claims Administrator;

(8)     that there is an available website which provides information about the settlement;

(9)     The date, time, and location of the Final Approval Hearing, as defined herein; and

(10)    That Class Members may appear by audio or video at the Final Approval Hearing.

(c)     <u>Mailing of Notice; Website</u>

The Claims Administrator shall send the Notice to all Settlement Class Members via first class United States Mail. Before the first mailing, the Claims Administrator will perform a National Change of Address ("NCOA") search for the Settlement Class Members. The Claims Administrator shall perform one skip trace as to any Notices that are returned by the post office for invalid addresses within five (5) days of its receipt of such returned Notice. Those Settlement Class Members who receive Notice pursuant to the one skip trace shall be informed (via an insert in the Notice) that his or her time to submit a request for exclusion to the Claims Administrator shall be forty-five (45) days after the re-mailing. The Claims Administrator shall notify Settlement Class Counsel and Defendant's counsel of the number of all Settlement Class Members who were sent Notice as a result of a skip trace and whose Notice was again returned. The Claims Administrator shall provide such notification within seven (7) days of its receipt of such returned Notice. The Claims Administrator shall establish a website to be approved by both parties that: (a) is operational from the date the Notice is mailed; (b) identifies settlement-related deadlines; (c) and includes copies (available through hyperlink) of this amended Settlement Agreement once filed; the revised Notice; Plaintiffs' motion for attorneys' fees and costs; Plaintiffs' motion for service awards; motion for final approval; and order of final approval and judgment.



(d)    Settlement Class Members' Disputes

A Settlement Class Member may dispute the number of work weeks shown on his or her Notice within forty-five (45) days of the Notice's mailing or re-mailing, as the case may be. The Class Member will be asked to provide the correct number of work weeks he or she believes she worked in a covered position during the applicable class period. The Settlement Class Members will be asked to provide documentation in his or her possession to substantiate the dispute; however, supporting documentation is not mandatory for the dispute. The Claims Administrator shall promptly notify Defendant and Settlement Class Counsel of all such disputes and provide any information the Settlement Class Member has furnished regarding their dispute. Defendant shall investigate the dispute. In all such disputes, Defendant's records will carry a presumption of correctness. The Claims Administrator shall review Defendant's response to the dispute as well any additional information provided by the Settlement Class Member or Settlement Class Counsel and make a determination on the dispute. The Claims Administrator's determination shall be final and binding on all parties without right of appeal.

(e)    Reports by Claims Administrator

On weekly basis, the Claims Administrator shall provide the parties with a report (the "Claims Administration Report") setting forth the number of undeliverable Notices, the number of valid requests for exclusion received, and the number of disputed claims and their resolution.

The Claims Administrator shall submit a declaration in support of Plaintiffs' motion for final approval of this settlement detailing: (a) the number of Notices mailed and re-mailed to Settlement Class Members, (b) the number of undeliverable Notices, (c) the number of timely requests for exclusion, (d) the number of timely objections received, (e) the amount of the average Individual Settlement Award and the highest Individual Settlement Award, (f) the amount of settlement administration costs, and (g) any other information that the parties mutually agree or the Court orders the Claims Administrator to provide.

(f)    Retention of Requests for Exclusion

The Claims Administrator shall maintain any requests for exclusion throughout the administration of the settlement. The Claims Administrator shall make the requests for exclusion available to Defendant upon a reasonable request for such documentation.

## 14.    PAYMENT TO SETTLEMENT CLASS MEMBERS AND PAGA GROUP MEMBERS

(a)    Claims Administrator's Role

The Claims Administrator shall calculate amounts to be paid to Settlement Class Members and PAGA Group Members as provided below.



(b)    <u>Potential Gross Settlement Proceeds</u>

The "Potential Gross Settlement Proceeds" shall equal the Maximum Settlement Amount minus the total of: (1) Court-approved attorneys' fees; (2) Court-approved reimbursement of costs; (3) Court-approved incentive awards; (4) Court-approved payments to Plaintiffs in connection with their general release of all claims (described below); and (5) the fees and costs of the Claims Administrator. The Potential Gross Settlement Proceeds minus the PAGA Allocation (as defined above) shall be known as the "Settlement Class Member Allocation."

(c)    <u>Individual Awards</u>

(1)    <u>Calculation of Settlement Class Member's Individual Settlement Award</u>: Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation.

(i)    The amounts representing the Individual Settlement Awards of Settlement Class Members who opt out of participating in the settlement will remain a part of the Settlement Class Member Allocation and be distributed to Settlement Class Members who have not opted out. Thus, the total of all Individual Settlement Awards necessarily will equal the Settlement Class Member Allocation.

(2)    <u>Calculation of PAGA Group Member's Individual PAGA Payment</u>: In addition to any Individual Settlement Award allocated pursuant to Paragraph 14(c)(1) above, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share.

(3)    For purposes of calculating Individual Settlement Awards and Individual PAGA Payments, workweeks worked shall be determined by Defendant's records.

(4)    The Claims Administrator will pay out all Settlement Class Members and all Individual PAGA Payments, out of a qualified settlement fund, and issue IRS tax forms.

(5)    The Individual Settlement Awards will be allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099. The Individual



PAGA Payments will be denominated as non-wages (*i.e.*, penalties) that will be reported to the IRS on Form 1099.

(d)    <u>Claimed Settlement Amounts; Unclaimed Amounts</u>

All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void. Should there remain uncashed checks thirty (30) days following issuance, the Claims Administrator will mail a postcard to each holder of an uncashed check to remind them to cash the funds before the void date. Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members.

(f)    <u>Tax Liability and Net Payments</u>

The payment by the Defendant pursuant to this Settlement Agreement is for an alleged failure to pay compensation due, interest on said sum, and all other claims as set forth in the Second Amended Complaint. In accordance with both State and Federal tax laws, taxes and other applicable withholdings shall be withheld from each Settlement Class Member's Individual Settlement Award as is required in order to comply with the same. Portions of any Individual Settlement Award not subject to withholding will be issued with a Form 1099. After appropriate tax withholding, the net payment to be received by each Settlement Class Member shall be designated as the "Net Payment," and said sum shall be paid as provided in this Settlement Agreement. The Claims Administrator shall report the taxes withheld from the wages of each Settlement Class Member as required by law via a W-2 form, and shall immediately pay over all such withheld funds, plus the employer's contribution, to the appropriate State and Federal taxing authorities. The Claims Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with State and Federal tax requirements. In addition, the Claims Administrator shall provide such information to Defendant's counsel and to Settlement Class Counsel. Settlement Class Members and PAGA Group Members shall be solely responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due. Neither Defendant, Plaintiffs, Defendant's counsel, Settlement Class Counsel, nor the Claims Administrator shall be responsible for the amount or calculation of any taxes that may be owed by Settlement Class Members as a result of this Agreement.

The parties agree that nothing contained herein is intended to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. The tax issues for each Settlement Class Member are unique, and each Settlement Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this settlement. The parties make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Settlement Class Members are not relying on any statement or representation by the parties, Settlement Class Counsel, and Defense Counsel in this regard. Settlement Class Members understand and agree that they will be responsible for the payment of any employee taxes and penalties assessed on the Individual Settlement Payments described herein and will hold the parties, Settlement Class Counsel and Defense Counsel free and harmless from



and against any claims, liabilities, costs and expenses, including attorney's fees, resulting in any way from personal tax treatment of the payments made pursuant to this Settlement Agreement.

(g)    Payment of Settlement Funds Will Not Be Considered By Defendant as Having Any Effect on Any Employee Benefit Plan and Similar Plans

The payment to any Settlement Class Member or PAGA Group Member as provided for in this Settlement Agreement is not and shall not be deemed by Defendant to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation and/or wages under any employee benefit plan, employment policy, or stock option plan of or sponsored by the Defendant or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Any such payment to any Settlement Class Member or PAGA Group Member shall not be considered by Defendant to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendant or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Defendant and each of its present and former parent corporations and affiliates retain the right to modify and/or amend the language of their employee benefit plans, employment policies, and stock option plans, and to seek to have modified and/or amended the language of any jointly trusteed benefit plans, to make clear that any amounts paid as a result of this Settlement Agreement are not considered by Defendant as compensation or wages, or payments for "hours worked," as defined by the applicable plans and policies, and that no additional contributions or benefits will be provided by Defendant by reason of the settlement.

## 15.    ADMINISTRATION OF MAXIMUM SETTLEMENT AMOUNT

(a)    The Claims Administrator will calculate the Net Payments to be made to the Settlement Class Members from the Potential Gross Settlement Proceeds in accordance with the terms and provisions of this Settlement Agreement, and shall calculate the Individual PAGA Payments to be made to the PAGA Group Members from the Potential Gross Settlement Proceeds in accordance with the terms and provisions of this Settlement Agreement. Defendant's counsel and Settlement Class Counsel will be provided access to all calculations forming the basis for such determinations. The fees and costs of the Claims Administrator in connection with said verification and/or performance shall be considered settlement administration expenses and shall be paid from the Maximum Settlement Amount. All of the fees, costs of the Claims Administrator in connection with printing, issuing and/or mailing settlement payments shall be considered settlement administration expenses and shall be paid from the Maximum Settlement Amount, as provided herein.

(b)    No person shall have any claim against Defendant, Defendant's counsel, Plaintiffs, the Settlement Class, the PAGA Group, Settlement Class Counsel, or the Claims Administrator based on distributions and payments made in accordance with this Settlement Agreement.

## 16.    COURT'S PRELIMINARY APPROVAL

Plaintiffs shall seek preliminary approval of this settlement by the Court for entry of a Preliminary Approval Order in substantially the same form as Exhibit "B" attached hereto. As



part of the preliminary approval process, the Court shall be asked to approve, among other matters, the terms of the settlement, the method of providing notice, the Notice, the procedure for the calculation of settlement distributions, the payment of incentive awards, and Settlement Class Counsel's fees, costs, and expenses as set forth herein.

## 17.    FINAL APPROVAL HEARING

The Notice shall contain a date, time, and location for a "Final Approval Hearing." The Final Approval Hearing shall be held on a date approved by the Court no earlier than ten (10) days after the last day for Defendant to exercise its right to void this Settlement Agreement, as provided for in Paragraph 10 hereof. The exact date, time, and location of the Final Approval Hearing shall be set forth in the Notice. At the Final Approval Hearing, Settlement Class Counsel shall request the Court to grant final approval of the applications for attorneys' fees, costs, expenses, and incentive awards referred to in Paragraphs 11(b) and 11(c) of this Settlement Agreement.

## 18.    PROCEDURE FOR OBJECTIONS TO SETTLEMENT

Settlement Class Members also may object to the settlement by submitting a written objection to the Claims Administrator no later than the Objection Deadline or forty-five (45) days after the Notice is mailed. The written objection must be signed and dated, and additionally state the Settlement Class Member's name, dates of employment with Defendant, the case name and number and the basis for the objection. A Settlement Class Member who objects to the settlement will still be considered a Settlement Class Member, unless he or she submits a valid and timely request for exclusion as set forth herein. Settlement Class Counsel shall file copies of such objections at the time the Motion for Order Granting Final Approval of Class Action Settlement is filed with the Court. Even if a Class Member does not submit a written objection, he or she may appear at the Final Approval hearing to lodge an objection.

## 19.    [PROPOSED] FINAL APPROVAL ORDER AND FINAL JUDGMENT

Upon final approval of the settlement, the Court shall be requested to issue a [Proposed] Final Approval Order and Final Judgment ("Proposed Final Judgment") in substantially the same form as Exhibits "C" and "D" attached hereto, respectively, which shall, *inter alia*:

(a)    With respect to the Settlement Class, grant final approval of the settlement as fair, reasonable, adequate, in good faith and in the best interests of the Settlement Class, as a whole, and order the parties to carry out the provisions of this Settlement Agreement. With respect to the PAGA Group, approve the settlement as fair and reasonable and in the best interest of the PAGA Group and the State of California.

(b)    Adjudge that all Settlement Class Members are conclusively deemed to have released Defendant and the other Releasees (as defined below), of and from any and all rights, claims, demands, liabilities, causes of action, liens and judgments reasonably arising out of the wage and hour matters set forth, or that could have been set forth, based on the facts alleged in the Second Amended Complaint (or LWDA Notice letter, as the case may be), in relation to the alleged claims against Defendant relating to the release of the Settlement Class.



(c)     Adjudge that Defendant and the other Releasees (as defined below) have been released from all PAGA claims that were set forth, or that could have been set forth, based on the facts alleged the LWDA Notice letter.

(d)     Reserve continuing jurisdiction as provided herein.

## 20.    APPROVAL AND ADOPTION OF [PROPOSED] FINAL JUDGMENT BY COURT AND FINAL JUDGMENT

Plaintiffs shall seek final approval and adoption of this settlement from the Court for entry of the [Proposed] Final Judgment and the Final Approval Order, as well as an Attorneys' Fee and Costs Order and Incentive Awards Order.

## 21.    PAYMENT OF SETTLEMENT PROCEEDS

(a)     <u>Timing of Payments</u>

Net payments to Settlement Class Members (including any Court-approved payments to Plaintiffs), payment to Settlement Class Counsel for Court-approved attorneys' fees and costs, payment to PAGA Group Members, and payment to the Claims Administrator for all settlement administration expenses shall be made no later than five (5) business days after the date on which the time to challenge any aspect of this settlement by appeal has lapsed, provided that no such appeal has been filed (regardless of whether any objections to the settlement were made).  If any such appeal is filed, the payments described in this Paragraph shall be made no later than five (5) business days after a final resolution of all appeals that result in the upholding of the parties' settlement.  The date defined and determined by this Paragraph shall be called the "Effective Date."

(b)     <u>Method of Payment</u>

Defendant will fund a qualified settlement fund established by the Claims Administrator no later than fourteen (14) days after Court grants final approval to the Settlement.  The Claims Administrator will be responsible for making appropriate payroll deductions and reporting obligations and issue the Individual Settlement Awards and the Individual PAGA Payments.  The expiration date on the settlement checks will be 180 days from the date the settlement checks are issued.  Uncashed settlement checks shall be paid to California's unclaimed property fund in the name of the respective Claiming Settlement Class Members.

## 22.    COSTS

Defendant shall bear its own costs and attorneys' fees incurred in connection with or arising out of the Lawsuit.  The Settlement Class's attorneys' fees and costs, as approved by the Court, shall be paid from the Maximum Settlement Amount.



## 23.    RELEASED CLAIMS

(a)    <u>Released Claims by Settlement Class Members</u>

As of the Effective Date, or at the time that Defendant fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims." The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

For purposes of this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.



For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

      (b)    <u>Release by the Named Plaintiffs</u>

Plaintiffs each agree to execute a separate general release of all claims. Such release shall be substantially in the same form as Exhibit "E" attached hereto.

## 24.   WAIVER OF RIGHTS

      (a)    The parties hereto, including the Settlement Class, stipulate and agree that the consideration received by the Settlement Class Members pursuant to this Settlement Agreement compensates the Settlement Class for all damages, all restitution, all penalties (including PAGA penalties), and all liability related to any compensation to which they may be entitled as a result of the allegations that were or could have been made in the Lawsuit based on the facts alleged in the Lawsuit.

      (b)    By granting preliminary and final approval of the settlement, the Court will have reviewed this Settlement Agreement and concluded that the Settlement appears fair, reasonable and adequate.



## 25.    NO ADMISSION BY THE PARTIES

Defendant and the other Releasees deny any and all claims alleged in the Lawsuit and deny all wrongdoing whatsoever.  This Settlement Agreement is neither a concession nor an admission, and shall not be used against Defendant or the other Releasees as an admission or indication with respect to any claim of any fault, concession or omission by Defendant or the other Releasees. Whether or not the settlement is finally approved, neither the settlement, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be:

(a)    construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant or the other Releasees, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendant, or any of the other Releasees, of any liability, fault, wrongdoing, omission, concession or damage; or

(b)    disclosed, referred to or offered or received in evidence against Defendant or any of the other Releasees in any further proceeding in the Lawsuit, or any other civil, criminal or administrative action or proceeding, except for purposes of settling the Lawsuit pursuant to this Settlement Agreement or for the enforcement of the terms of this Settlement Agreement.

## 26.    CONFIDENTIALITY

Plaintiffs and Defendant shall not: (i) initiate or cause the initiation of any communications concerning the settlement with any media organization and/or (ii) respond to or cause a response to be made to any communications concerning the settlement with any media organization. Plaintiffs and Defendant shall also instruct their attorneys not to (i) initiate or cause the initiation of any communications concerning the settlement with any media organization and/or (ii) respond to or cause a response to be made to any communications concerning the settlement with any media organization.  Plaintiffs shall instruct their attorneys not to use Defendant's name in marketing materials.  Plaintiffs will not make, and Plaintiff shall instruct their attorneys not to make, any posting on any website, instant message site, blog, or social networking site that uses Defendant's name and will not list or refer to the Lawsuit in any website, mailings, publicity, or other similar forums or materials.  However, following the Effective Date and notwithstanding the foregoing, nothing in this Agreement shall be read to prohibit Settlement Class Counsel in marketing materials or on websites from providing a brief description of the nature of the Lawsuit, the amount of settlement and that the defendant in the action was a "retailer."

## 27.    NULLIFICATION OF AGREEMENT

In the event: (a) the Court does not enter the Preliminary Approval Order specified herein in substantially the same form as Exhibit "B" attached hereto; (b) the Court does not finally approve the settlement as provided herein; (c) the Court does not issue a [Proposed] Final Judgment (as provided herein and in substantially the same form as Exhibit "D" attached hereto) which becomes final and not subject to any appeals; or (d) the settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this settlement shall be treated as void *ab initio*.  In such event, the parties hereto and any funds to be awarded under this settlement shall be returned to



DocuSign Envelope ID: 814A3AB0-05ED-43F7-982E-A160EDCF642F

their respective statuses as of the date and time immediately prior to the execution of this Settlement Agreement, and the parties shall proceed in all respects as if this Settlement Agreement had not been executed; however in this event, Defendant agrees to separately pay for the cost charged by the Claims Administrator directly to the Claims Administrator.

## 28.    RETURN OF DOCUMENTS AND INFORMATION

Plaintiffs, the Settlement Class, the PAGA Group, and Settlement Class Counsel agree that none of the documents and information provided to them by Defendant shall be used for any purpose other than prosecution of the Lawsuit. No later than ten (10) days after Settlement Class Counsel receives any Court-approved award of attorneys' fees, Plaintiffs and Settlement Class Counsel shall destroy the original and all copies of any documents that Defendant produced or provided to Plaintiffs' or Settlement Class Counsel during the Lawsuit and shall certify to Defendant's counsel that such destruction has been completed. The certification contemplated by this paragraph is a material term of this Settlement Agreement. In addition, Defendant counsel's firm shall retain copies of any and all documents produced in the Lawsuit, whether formally or informally, for four (4) years after judgment has been entered and shall produce all said documents to Settlement Class Counsel upon reasonable request and upon proof that such documents are required to defend itself against any claim arising out of this matter.

## 29.    REPRESENTATIONS AND WARRANTIES

Each party to this Settlement Agreement represents and warrants that he, she, or it has not heretofore assigned or transferred, or purported to assign or transfer, any of the claims released pursuant to this Settlement Agreement to any other person and that he, she or it is fully entitled to compromise and settle same.

## 30.    CALIFORNIA LAW

All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of California applicable to agreements to be wholly performed within the State of California.

## 31.    OWN COUNSEL

Each party hereto acknowledges that he, she or it has been represented by counsel of his, her or its own choice throughout all of the negotiations which preceded the execution of this Settlement Agreement and in connection with the preparation and execution of this Settlement Agreement.

## 32.    FURTHER ACTS AND DOCUMENTS

The parties hereto agree to do such acts and execute all such documents necessary to effectuate the intent of this Settlement Agreement.



DocuSign Envelope ID: 814A3AB0-05ED-43F7-982E-A160EDCF642F

## 33. COUNTERPARTS

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and will be effective upon execution by all parties. Facsimile and electronic/digital signatures shall be deemed original signatures for all purposes.

## 34. HEADINGS

The headings contained in this Settlement Agreement are for reference only and are not to be construed in any way as a part of the Settlement Agreement.

## 35. ENTIRE AGREEMENT

This Settlement Agreement represents the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior oral and written agreements and discussions. Each of the parties covenants that he, she or it has not entered into this Settlement Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein. Each party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further consideration have been made by any person. This Settlement Agreement may be amended only by an agreement in writing duly executed by all parties hereto.

## 36. BINDING EFFECT

This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, assigns and successors-in-interest.

## 37. DRAFTING

Each party hereto has cooperated in the drafting and preparation of this Settlement Agreement. Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any party as drafter of this Settlement Agreement.

## 38. SEVERABILITY

In the event any covenant or other provision herein is held to be invalid, void or illegal, the same shall be deemed severed from the remainder of this Settlement Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision herein. If any covenant, condition or other provision herein is held to be invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

## 39. INCORPORATION OF EXHIBITS

All exhibits attached to this Settlement Agreement are hereby incorporated by reference as though set forth fully herein and are a material part of this Settlement Agreement. Any notice,



order, judgment or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Settlement Agreement to become effective. Notwithstanding this Paragraph, insubstantial changes to the attached exhibits shall not invalidate the Settlement Agreement.

## 40.   AUTHORITY

Each party hereto warrants and represents that each of the persons or entities executing this Settlement Agreement is duly empowered and authorized to do so.

## 41.   ADMINISTRATION OF SETTLEMENT AND COMPLIANCE

The Court shall have continuing jurisdiction to resolve any dispute which may arise with regard to the terms and conditions of this Settlement Agreement as set forth herein.

## 42.   NOTICE

All notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement (other than the Notice to Settlement Class Members) shall be in writing and shall be delivered personally, telecopied, or mailed postage pre-paid by first class mail to the following persons at their addresses set forth as follows:

Settlement Class Counsel:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**THE deRUBERTIS LAW FIRM**
8889 W. Olympic Boulevard, Second Floor
Beverly Hills, California 90211

Defendant's Counsel:

Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**WHEREFORE**, Plaintiffs, on their own behalf, on behalf of the Settlement Class, and as proxies for the LWDA, and Defendant, by its duly authorized agents or counsel, have executed this Settlement Agreement as of the dates set forth below.



**Plaintiff Elizabeth Ochoa**

Dated:  June __, 2022
      June 10, 2022



_____
Elizabeth Ochoa, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Plaintiff Monica Velazquez**

Dated:  June __, 2022
      June 10, 2022

_____
Monica Velazquez, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Plaintiff Crystal Fregoso**

Dated:  June __, 2022
      June 9, 2022

_____
Crystal Fregoso, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Defendant Victoria's Secret Stores, LLC**

Dated:  June __, 2022

**VICTORIA'S SECRET STORES, LLC**

By _____
     Melinda McAfee
     EVP, Chief Legal Officer

**Approval As To Form:**

On Behalf of Plaintiffs and the Settlement Class:

Dated:  June __, 2022
      June 10, 2022

**LAVI & EBRAHIMIAN, LLP**

By _____
     Joseph Lavi, Esq.



**Plaintiff Elizabeth Ochoa**

Dated:  June __, 2022

_____
Elizabeth Ochoa, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Plaintiff Monica Velazquez**

Dated:  June __, 2022

_____
Monica Velazquez, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Plaintiff Crystal Fregoso**

Dated:  June __, 2022

_____
Crystal Fregoso, as an individual, as a
representative of the Settlement Class
Members, and as a proxy for the LWDA

**Defendant Victoria's Secret Stores, LLC**

Dated:  June 8, 2022

**VICTORIA'S SECRET STORES, LLC**

By _Melinda R. McAfee_
_____
      Melinda McAfee
      EVP, Chief Legal Officer

**Approval As To Form:**

On Behalf of Plaintiffs and the Settlement Class:

Dated:  June __, 2022

**LAVI & EBRAHIMIAN, LLP**

By _____
      Joseph Lavi, Esq.

Dated:  June 10, 2022                     **THE deRUBERTIS LAW FIRM**

                                          By _____
                                                David M. deRubertis, Esq.


On Behalf of Defendant:


Dated:  June __, 2022                     **HUNTON ANDREWS KURTH LLP**


                                          By _____
                                                Kirk A. Hornbeck, Esq.

Dated:  June __, 2022                              **THE deRUBERTIS LAW FIRM**


                                                   By _____
                                                        David M. deRubertis, Esq.


On Behalf of Defendant:


Dated:  June 10, 2022                              **HUNTON ANDREWS KURTH LLP**

                                                   By _____
                                                        Kirk A. Hornbeck, Esq.

# AMENDED EXHIBIT A

## NOTICE OF CLASS ACTION SETTLEMENT AND
## FINAL APPROVAL HEARING
### *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*
**Los Angeles County Superior Court**
**Case No. BC661822**

---

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.
YOUR RIGHTS MAY BE AFFECTED
BY THE PROPOSED SETTLEMENT DESCRIBED IN
THIS NOTICE.**

---

**TO:** **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.**

On [INSERT Date of Preliminary Approval Order], the Court in this lawsuit granted preliminary approval to a proposed settlement as set forth in an Amended Class Action Settlement Agreement (the "Settlement Agreement"). If the settlement is granted final approval by the Court, Defendants (as defined below) will be released from all claims that were asserted, or could have been asserted based on the facts alleged, in this lawsuit (*i.e.*, "Released Claims" as defined below). The Settlement Class Representatives and Settlement Class Counsel (as defined below) believe the proposed settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class (as defined below). This Notice informs you of the proposed settlement and its terms as well as your rights to object to the terms of the proposed settlement, dispute the number of workweeks on which your settlement payment will be calculated, and to exclude yourself from the proposed settlement. This Notice also explains how you can obtain more information about the settlement. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

| Your Legal Rights And Options In This Settlement | |
|---|---|
| **Do nothing** | If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.** |
| **Ask to Be Excluded** | You are entitled to opt-out of the Settlement Class by submitting a written request to be excluded from the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than [**INSERT: 45 days after notice**]. Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that would be released by members of the Settlement Class. Note that if you are a member of the PAGA Group (as defined below), you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment (as defined below), even if you timely and validly exclude yourself from the Settlement Class. |
| **Object** | You may object to the settlement by submitting a written objection to the Claims Administrator no later than [**INSERT: 45 DAYS AFTER NOTICE**]. If you object to the settlement, you still will be considered a Settlement Class Member. Even if you do |

| | |
|---|---|
| | not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection. |
| **Dispute Your Workweeks Number** | You will be provided with the number of workweeks that VSS's records show you were employed by VSS for the time periods between: (1) January 3, 2013 and May 26, 2021; and (2) January 3, 2016 and May 26, 2021.  Those numbers will be used to calculate the amount of money you are entitled to receive from the settlement.  You may dispute the accuracy of those workweek numbers.  To do so, please provide the Claims Administrator with any information and documentation (if any) you have to substantiate your dispute by [deadline].  The Claims Administrator will resolve your dispute. |
| **Attend the Final Approval Hearing** | You may appear at the Final Approval Hearing by telephone, videoconference, or in person.  For more information about scheduling a remote appearance, please see the Court's website at https://my.lacourt.org/laccwelcome.  You do not need advance permission from the Court to appear at the Final Approval Hearing.  The Final Approval Hearing will occur as follows:<br><br>Date: [Date], 2022<br>Time: [Time]<br>Location:  Spring Street Courthouse<br>Department SSC17<br>312 North Spring Street<br>Los Angeles, California 90012 |

## I.    SUMMARY

Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs") have brought a lawsuit (the "Lawsuit") against Defendants Victoria's Secret Stores, LLC ("VSS"), L Brands, Inc. (now known as Bath & Body Works, Inc.), Limited Brands, Inc., and The Limited, Inc. (collectively, "Defendants") on behalf of themselves and other current and former non-exempt (hourly) employees of VSS.  The Lawsuit is styled as *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Los Angeles County Superior Court Case No. BC661822.

Plaintiffs allege that Defendants violated the California Labor Code based on alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide suitable seating; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200.  Plaintiffs also seek penalties against Defendants pursuant to the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on the aforementioned claims and a claim that Defendants failed to provide VSS employees with suitable seating.

Defendants deny Plaintiffs' allegations in their entirety.  Defendants contend that Plaintiffs and other Settlement Class Members properly received all of the rights and benefits to which they are entitled under California law.

Plaintiffs and Defendants conducted substantial formal discovery and informal investigation in connection with the claims asserted in the Lawsuit.  The parties also have researched and analyzed the relevant legal and factual issues arising from all of the claims that are alleged in, or could have been alleged in, the Lawsuit.  Defendants provided Plaintiffs with sufficient information to allow Plaintiffs to evaluate Defendants' potential exposure in the Lawsuit.

The parties acknowledge the mutual costs and risks of litigation.  The mutual costs and risks of continuing to prosecute and defend the Lawsuit have led the parties to resolve the Lawsuit by way of settlement.

## II.    CLASS DEFINITION

The Lawsuit is being settled as a class action.  In a class action, a plaintiff or plaintiffs, also referred to as class representative(s), sue on behalf of themselves and other persons with similar claims.  The Court has conditionally approved a class for settlement purposes only.  The settlement class ("Settlement Class") is defined as follows:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.**

According to VSS's records, you are a member of the Settlement Class.  In addition to any individual settlement award to which you may be entitled as a member of the Settlement Class, you may be eligible to receive a share of PAGA penalties allocated in the Settlement Agreement.  You qualify for this additional payment if you are a member of the "PAGA Group," which is defined as:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.**

Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class.

If the Court approves the settlement, the settlement will bind all Settlement Class Members who have not excluded themselves from the Settlement Class. (You will have the opportunity to exclude yourself from the Settlement Class pursuant to the procedure described below.)  The Court has not yet determined that the Lawsuit could be litigated as a class action.  If the Court does not approve this settlement, the conditional class certification for settlement purposes will have no effect or precedential value in any subsequent proceedings in the Lawsuit or in any other litigation.

## III.    SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

The Court has appointed Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso as the Settlement Class Representatives to represent the Settlement Class.  The Court appointed the following attorneys to represent the Settlement Class as Settlement Class Counsel:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604

## IV.    SETTLEMENT AMOUNT

The proposed settlement obligates VSS to pay a settlement amount (called the "Maximum Settlement Amount" in the Settlement Agreement) of Five Million Dollars and No Cents ($5,000,000).  Except for the payment of all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions, and unemployment taxes), which are the responsibility of VSS and shall be paid by VSS in addition to the Maximum Settlement Amount, the Maximum Settlement Amount shall be "all inclusive," including: any damages, penalties, or other relief arising from the alleged Labor Code violations committed against the Settlement Class and PAGA Group by Defendants; any failure to pay the Settlement Class Members and PAGA Group Members minimum or overtime wages, as a result of off-the-clock work or otherwise; any failure to provide Settlement Class Members and PAGA Group Members with compliant meal breaks or rest breaks, or appropriate meal and rest break premiums or "separate rest break pay;" any failure to provide Settlement Class Members and PAGA Group Members with reporting time pay, any failure to timely pay Settlement Class Members and PAGA

Group Members all wages due upon the termination of the their employment with Defendants; any failure to provide Settlement Class Members and PAGA Group Members with accurate wage statements or maintain accurate records; any failure to provide PAGA Group members with suitable seating; any restitution to Settlement Class Members and PAGA Group Members under California Business & Professions Code Section 17200 *et seq.*, based on the aforementioned claims; any PAGA penalties based upon the aforementioned alleged California Labor Code violations; interest, attorneys' fees and costs, as approved by the Court; the fees and costs of the Claims Administrator in connection with settlement and claims administration, as approved by the Court, including any fees and costs in connection with notice, the claims process, and the exclusion process, which is not to exceed One Hundred And Fifty-Five Thousand Dollars ($155,000); settlement payments; the incentive awards to Plaintiffs, as approved by the Court; and all other settlement-related payments and costs. VSS's sole monetary obligations under this Settlement Agreement shall be the Maximum Settlement Amount and the employer-paid withholding and payroll taxes and similar expenses.

## V.    SUMMARY OF YOUR OPTIONS

As a member of the Settlement Class, you have the options described below.

1.    **Do Nothing.**  If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment.  **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

2.    **Exclude Yourself From the Settlement Class.**  You are entitled to exclude yourself from the Settlement Class by submitting a written request to be excluded from (or "opt-out" of) the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than **[INSERT: 45 DAYS AFTER NOTICE]**.  Such written requests for exclusion must contain your name, address, telephone number, and the last four (4) digits of the Social Security Number.  Such written requests also must state the following in identical or substantially similar language: "I wish to exclude myself from the settlement reached in the matter of *Ochoa vs. Victoria's Secret Stores, LLC, et al*.  I understand that by excluding myself I will not receive any money from the settlement of the class claims in this matter."  Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that will be released by members of the Settlement Class.  If you are a member of the PAGA Group, you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment even if you timely and validly exclude yourself from the Settlement Class.

3.    **Object to the Settlement.**  You may object to the settlement by submitting a written objection to the Claims Administrator no later than **[INSERT: 45 DAYS AFTER NOTICE]**.  The written objection must be signed and dated, and additionally state your name, dates of employment with VSS, the case name and number, and the basis for the objection.  If you object to the settlement, you still will be considered a Settlement Class Member, unless you also submit a valid and timely request for exclusion in the manner described above.  Even if you do not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection.

Members of the Settlement Class who fail to submit timely written objections in the manner specified above shall be deemed to have waived any objections to the settlement and shall forever be foreclosed from making any objection (whether by appeal or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs.

4.    **Dispute the Number of Your Workweeks**:  The money you are eligible to receive from the Settlement is based on the number of workweeks you were employed during the Settlement Class and PAGA Group time periods, respectively.  For the period between January 3, 2013 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  For the period between January 3, 2016 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  You may dispute the number of workweeks you were employed by VSS during those time periods.  The deadline to submit your workweek dispute is **[INSERT: 45 DAYS AFTER NOTICE.]** To do so, you must mail to the Claims Administrator a written letter with your name, address, telephone number, and the last four (4) digits of the Social Security Number and any information and documentation you have to substantiate your dispute.  (Supporting documentation is not mandatory for you to make such a dispute.)  After you send your dispute, the Claims Administrator will promptly notify Defendant and Settlement Class Counsel of your dispute and provide any information and documentation that you have furnished regarding your dispute. VSS shall then investigate the dispute.  In all such disputes, VSS's records will carry a

presumption of correctness. The Claims Administrator shall review VSS's response to the dispute as well any additional information provided by you or Settlement Class Counsel and make a determination on the dispute. The Claims Administrator's determination shall be final and binding on all parties without right of appeal.

## VI.    SETTLEMENT ADMINISTRATOR

The settlement process will be administered by CPT Group, Inc. (the "Claims Administrator"), a company that provides settlement administration services. The Court has approved CPT Group, Inc. to act as the Claims Administrator for purposes of this settlement. The fees and costs of the Administrator shall be paid out of and deducted from the Maximum Settlement Amount. The Settlement Administrator can be contacted at the following address:

> CPT Group, Inc.
> [address line 1]
> [address line 2]
> [phone number] (toll free)

## VII.    RELEASE AND WAIVER

As of the Effective Date, or at the time that VSS fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, as defined in the Settlement Agreement, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims." The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

For purposes of this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying

California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

## VIII.    ATTORNEYS' FEES AND COSTS

Settlement Class Counsel have litigated the Lawsuit since January 3, 2017. It is customary for courts to award to class counsel attorneys' fees based upon a percentage of the maximum settlement amount for the benefit of a class. In this case, Settlement Class Counsel will request an award of 33.3% of the Maximum Settlement Amount. Settlement Class Counsel also will seek reimbursement of reasonable costs that they have incurred on behalf of the Settlement Class, which amount shall be paid from the Maximum Settlement Amount.

## IX.    INCENTIVE AWARDS & OTHER PAYMENTS TO THE SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs will request the Court to approve incentive award for each Plaintiff in the following amounts Plaintiff Ochoa ($7,500), Plaintiff Velazquez ($3,000), and Plaintiff Fregoso ($3,000) for their work as named plaintiffs in the action. In addition, Plaintiffs are entering into individual settlement agreements containing general releases of all claims against Defendants for which they will receive the following additional monetary amounts: Plaintiff Ochoa ($12,500), Plaintiff Velazquez ($7,000), and Plaintiff Fregoso ($7,000). The incentive awards and individual settlement agreement payments will be paid from the Maximum Settlement Amount, and they are in addition to the payments to Plaintiffs of their share of the settlement as members of the Settlement Class.

## X.    PAYMENT TO THE CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY

Plaintiffs shall apply to the Court for approval of payments under PAGA. The parties agree to allocate Five Hundred Thousand Dollars ($500,000) of the Potential Gross Settlement Proceeds, as defined below, to PAGA penalties (the "PAGA Allocation"). Seventy-five percent (75%) of the PAGA Allocation shall be paid to the LWDA (the "LWDA Payment"). The remaining twenty-five percent of the PAGA allocation (the "PAGA Group Share") shall be distributed to "PAGA Group Members" as "Individual PAGA Payments." PAGA Group Members are those individuals employed by VSS as non-exempt (hourly) employees in California at any time between January 3, 2016 and May 26, 2021. If you are a PAGA Group Member, you will receive your Individual PAGA Payment regardless of any action you take in response to this Notice.

## XI.    CALCULATION OF PAYMENTS

The "Potential Gross Settlement Proceeds" shall equal the Maximum Settlement Amount minus the total of: (1) Court-approved attorneys' fees; (2) Court-approved reimbursement of costs; (3) Court-approved incentive awards; (4) Court-approved payments to Plaintiffs in connection with their general release of all claims (described above); and (5) the fees and costs of the Claims Administrator. The Potential Gross Settlement Proceeds minus the PAGA Allocation (as defined above) shall be known as the "Settlement Class Member Allocation." The amount available for distribution to each member of the Settlement Class shall be calculated as follows:

1.    <u>Calculation of Settlement Class Member's Individual Settlement Award</u>: Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked

during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation. The parties estimate that your pre-tax share of the Settlement Class Member Allocation will be approximately $____, based upon ____ workweeks worked during the relevant period.

       2.   <u>Calculation of PAGA Group Member's Individual PAGA Payment</u>:  In addition to any Individual Settlement Award, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share.  The parties estimate that your pre-tax share of PAGA Group Share will be approximately $____, based upon ____ workweeks worked during the relevant period.

       3.   <u>Tax Liability and Net Payments</u>:  The Individual Settlement Awards will be allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099.  The Individual PAGA Payments will be denominated as non-wages (*i.e.*, penalties) that will be reported to the IRS on Form 1099.  The Claims Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with State and Federal tax requirements.  Settlement Class Members shall be responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold Defendants and the Claims Administrator harmless and indemnify it or them for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority relating in any way to the tax treatment of the payments made pursuant to this Settlement Agreement.  All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void.  Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members.

       4.   <u>Payment of Settlement Funds Will Not Be Considered By Defendants As Having Any Effect on Any Employee Benefit Plan and Similar Plans</u>:  The payment to any Settlement Class Member or PAGA Group Member as provided for in this Settlement Agreement is not and shall not be deemed by Defendants to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation and/or wages under any employee benefit plan, employment policy, or stock option plan of or sponsored by the Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans.  Any such payment to any Settlement Class Member or PAGA Group Member shall not be considered by Defendants to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans.  Defendant and each of its present and former parent corporations and affiliates retain the right to modify and/or amend the language of their employee benefit plans, employment policies, and stock option plans, and to seek to have modified and/or amended the language of any jointly trusteed benefit plans, to make clear that any amounts paid as a result of this Settlement Agreement are not considered by Defendants as compensation or wages, or payments for "hours worked," as defined by the applicable plans and policies, and that no additional contributions or benefits will be provided by Defendants by reason of the settlement.

## XII.   FINAL APPROVAL HEARING

     A hearing (the "Final Approval Hearing") has been scheduled on [INSERT Date and Time of Final Approval Hearing], before the Honorable Maren E. Nelson in Department SSC17 of the above-captioned court, located at Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, at which time the Court will determine:  (1) whether the proposed settlement should be approved as fair, reasonable, and adequate to members of the Settlement Class; (2) whether the application of Settlement Class Counsel for an award of attorneys' fees and costs should be approved and in what amount; (3) whether the application for an incentive award for Plaintiffs should be approved and in what amount; (4) whether the allocation for PAGA penalties is fair and adequate; and (5) whether a proposed Final Approval Order should be entered, dismissing the Lawsuit with prejudice.  You may also confirm the date and time of the Final Approval Hearing with Class Counsel.

<u>**You Are Not Required To Attend The Final Approval Hearing.**</u>

- 7 -

You are welcome to attend the Final Approval Hearing at your own expense.  You may request permission to speak at the Final Approval Hearing at your own expense.  You may hire your own attorney at your own expense to speak at the Final Approval Hearing.  If the Court is open to the public, you and/or your attorney may appear at the Final Approval Hearing in person.  If you wish to appear in person at the hearing, you must practice social distancing, face masks, and all existing COVID-19 protocols. Please refer to lacourt.org for the most up to date procedures.  If the Court is not open to the public and/or you wish to be heard at the Final Approval Hearing via videoconference, you must request permission from the Court so that appropriate arrangements can be made.  To do so, send a letter to the Court (at the address set forth above in this Section of this Notice) with a copy to the Administrator (at the address set forth in Section VI of this Notice), Settlement Class Counsel, and Defendants' counsel (at the addresses set forth Section XIV of this Notice) no later than [INSERT Date], requesting permission to speak at the Final Approval Hearing via videoconference.  Such letter should be signed and should contain a brief statement of the position that you wish to put before the Court at the Final Approval Hearing and the basis for that position.

## XIII.    COUNSEL FOR THE PARTIES

The service addresses for Settlement Class Counsel and Defendant's counsel are as follows:

| Class Counsel: | Defendants' Counsel: |
|---|---|
| Joseph Lavi, Esq. | Kirk A. Hornbeck, Esq. |
| Vincent C. Granberry, Esq. | **HUNTON ANDREWS KURTH LLP** |
| **LAVI & EBRAHIMIAN, LLP** | 550 South Hope Street, Suite 2000 |
| 8889 W. Olympic Boulevard, Suite 200 | Los Angeles, CA 90071 |
| Beverly Hills, California 90211 | (213) 532-2000 |
| [phone number] | |

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604
[phone number]

## XIV.    REMINDER OF IMPORTANT SETTLEMENT DATES AND DEADLINES

The following are important dates and deadlines under the proposed settlement:

| | |
|---|---|
| Deadline To Object To Settlement: | [INSERT: 45 days after notice] |
| Exclusion Deadline: | [INSERT: 45 days after notice] |
| Final Approval Hearing: | [INSERT] |

## XV.    AVAILABILITY OF COMPLETE SETTLEMENT AGREEMENT

This Notice contains a summary of the proposed settlement contained in the Settlement Agreement that is on file with the Clerk of the Court.  The complete Settlement Agreement may be inspected during normal business hours at the offices of the Clerk.  If the office of the Clerk of the Court is not open to the public, you may contact the Administrator for more information.  Documents about the case, including the Settlement Agreement, the motion for attorneys' fees/costs, etc. can also be obtained from Class Counsel.

## XVI.    ADDITIONAL INFORMATION

For more detailed information concerning the matters involved in the Lawsuit, please refer to the pleadings, the Settlement Agreement, the orders entered in the Lawsuit, and to the other papers filed in the Lawsuit, which may be inspected at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, on dates and at times when the Court is open to the public.  In the alternative, additional information regarding the settlement may be found at the following website: [INSERT website address].  Please note that any final judgment in this lawsuit will be posted to that website.

Any questions concerning the matters contained in this Notice may be directed to the Administrator or Settlement Class Counsel (at the addresses set forth above).

You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**Do Not Call Or Write The Court To Obtain Copies Of Documents
Or To Ask Questions About The Settlement.**

# AMENDED EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES—SPRING STREET COURTHOUSE**

| | |
|---|---|
| ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf of themselves and others similarly situated, | Case No.: BC661822 |
| | [Hon. Maren E. Nelson: Dept. SSC17] |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, inclusive, | |
| Defendants. | Complaint Filed:     January 3, 2017 |

## **PRELIMINARY APPROVAL ORDER**

The Court, having reviewed Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the supporting Points and Authorities, the Declaration of _____, the parties' Amended Class Action Settlement Agreement ("Settlement Agreement"), as well as the amended Notice of Class Action Settlement ("Notice"), and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement, and if preliminarily determined to be reasonable, to ensure proper notice is provided to Settlement Class Members in accordance with due process requirements; and to conduct a Final Approval Hearing as to the good faith, fairness, adequacy, and reasonableness of any proposed settlement, THE COURT HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS:

The Court finds, on a preliminary basis, that the Settlement Agreement, incorporated in full by this reference and made a part of this Order of Preliminary Approval, appears to be for an amount that is within the range of reasonableness of a settlement that ultimately could be given final approval by this Court; the Court notes that Defendant Victoria's Secret Stores, LLC ("Defendant") has agreed to pay up to the Maximum Settlement Amount of Five Million Dollars ($5,000,000) to the Settlement Class, the Settlement Class Representatives, Settlement Class Counsel, the Administrator, the PAGA Group, and the California Labor & Workforce Development Agency, in full satisfaction of the claims as more specifically described in the Settlement Agreement.

It further appears to the Court, on a preliminary basis, that the Settlement is fair and reasonable to the Settlement Class when balanced against the probable outcome of further litigation relating to class certification, liability and damages issues, and potential appeals of rulings. It also appears that settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the litigation.

It further appears to the Court that significant formal and informal discovery, investigation, research, and litigation has been conducted such that counsel for the parties at this time are able to evaluate their respective positions reasonably. It also appears that the proposed settlement has been

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

reached as the result of intensive, informed, and non-collusive negotiations between the parties, including at two separate mediations presided over by experienced neutrals.

It further appears to the Court, on a preliminary basis and for purposes of settlement only, that the prerequisites for a class action under California Code of Civil Procedure § 382 have been satisfied in that:  (a) the number of members of the Settlement Class is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the common questions of law and fact predominate over questions affecting only individual members of the Settlement Class; (d) Plaintiffs' claims are typical of the claims of the Settlement Class; (e) Plaintiffs will fairly and adequately protect the interests of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient resolution of the action.

ACCORDINGLY, GOOD CAUSE APPEARING, THE MOTION FOR ORDER OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT IS HEREBY GRANTED; AND THE COURT HEREBY TEMPORARILY AND CONDITIONALLY CERTIFIES THE CLASS FOR SETTLEMENT PURPOSES ONLY, PURSUANT TO THE TERMS AND CONDITIONS CONTAINED IN THE SETTLEMENT AGREEMENT.

The Court finds, on a preliminary basis, that Plaintiffs and Plaintiffs' attorneys have fairly represented and protected the interests of the Settlement Class.

It further appears to the Court, on a preliminary basis, that Plaintiffs' attorneys are experienced and capable of fairly and competently representing the interests of the Class.

It further appears to the Court that CPT Group, Inc. is qualified to serve as the settlement administrator for purposes of this Settlement.

ACCORDINGLY, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:

For purposes of the settlement of this action only, the Court hereby certifies the "Settlement Class" as defined below:

All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

For purposes of the settlement of this action only, the Court finds that certain aspects of the settlement will affect the "PAGA Group," as defined below:

All non-exempt employees employed by Defendant Victoria's Secret Stores,

LLC in California at any time between January 3, 2016 and May 26, 2021.

For purposes of the settlement of this action only, the Court hereby appoints Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso as representatives of the Settlement Class (the "Settlement Class Representatives");

For purposes of the settlement of this action only, the Court hereby appoints the following attorneys as counsel for the Settlement Class ("Settlement Class Counsel"):

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
The deRubertis Law Firm
4219 Coldwater Canyon Avenue
Studio City, California 91604

The Court hereby appoints CPT Group, Inc. as the settlement administrator for purposes of this Settlement (the "Administrator").  It appears to the Court, on a preliminary basis, that administration costs not to exceed One Hundred And Fifty-Five Thousand Dollars ($155,000) is fair, reasonable, and justified.

The Court finds, on a preliminary basis, that an award of attorneys' fees to Class Counsel of 33.3% of the $5,000,000 Maximum Settlement Amount (*i.e.*, $1,665,000 in attorneys' fees) is fair, reasonable, and justified given the time and effort that Settlement Class Counsel has expended pursuing the Settlement Class's claims, as well as the substantial benefit conferred upon the Settlement Class as a result of such time and effort.

It further appears to the Court, on a preliminary basis, that reimbursement of Settlement Class Counsel's costs and expenses in an amount not to exceed $41,000 is fair, reasonable, and justified,

3

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    subject to Settlement Class Counsel presenting at the Final Approval Hearing evidence of the nature

2    and amount of expenses actually incurred and claimed.

3        It further appears to the Court, on a preliminary basis, that incentive awards of $7,500 to

4    Plaintiff Elizabeth Ochoa, and $3,000 each to Plaintiffs Monica Velazquez and Crystal Fregoso, are

5    fair, reasonable, and justified given the amount of time and effort the Settlement Class Representatives

6    have expended during the course of the litigation, and the risk of stigma the Settlement Class

7    Representatives have assumed for being class representatives in a class action labor dispute, which in

8    turn, could affect their future employability.

9        ACCORDINGLY, GOOD CAUSE APPEARING, THE COURT PRELIMINARILY

10   APPROVES THE APPLICATION BY SETTLEMENT CLASS COUNSEL FOR ATTORNEYS'

11   FEES AND COSTS AND FOR THE INCENTIVE AWARDS AND ADDITIONAL SETTLEMENT

12   PAYMENTS TO THE SETTLEMENT CLASS REPRESENTATIVES.

13       The Court finds that the Notice advises of the pendency of the class action and of the proposed

14   settlement, of preliminary Court approval of the proposed Settlement, opt-out timing and procedures,

15   objection timing and procedures (both as to the settlement generally and as to the number of

16   workweeks forming the basis for each individual's settlement payment(s)), and of the Final Approval

17   Hearing.  These documents fairly and adequately advise Settlement Class Members of the terms of the

18   proposed settlement and the benefits available to Settlement Class Members thereunder, as well as

19   their right to exclude themselves from the settlement and procedures for doing so, and of the right of

20   Settlement Class Members to submit documentation regarding the proposed settlement, and their right

21   to appear at the Final Approval Hearing; the Court further finds that the Notice clearly comports with

22   all constitutional requirements, including those of due process.

23       ACCORDINGLY, GOOD CAUSE APPEARING, THE COURT HEREBY APPROVES

24   THE PROPOSED NOTICE TO THE SETTLEMENT CLASS.

25       The mailing to the present and/or last known addresses of the Settlement Class Members

26   constitutes an effective method of notifying Class Members of their rights with respect to the Class

27   Action and settlement.

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    ACCORDINGLY, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED as follows:

2    On or before _____, 2022 (*i.e.*, 14 days after preliminary approval of the settlement),

3  Defendant will provide the Settlement Class Members' information and the information of the PAGA

4  Group Members (as that term is defined in the Settlement Agreement) to the Administrator to the

5  extent Defendant possesses such information and it has not already done so;

6    On or before _____, 2022, the Administrator shall mail the Notice to each member of the

7  Settlement Class; and

8    All mailings shall be made to the present and/or last known mailing address of the Settlement

9  Class Members based on Defendant's records, as well as addresses that may be located by the

10  Administrator, who shall conduct standard address searches in cases of returned mail.  The Court finds

11  that the mailing of notice to Settlement Class Members as set forth in this paragraph is the best means

12  practicable by which to reach Settlement Class Members and is reasonable and adequate pursuant to

13  all constitutional and statutory requirements including all due process requirements.

14    IT IS FURTHER ORDERED that the Final Approval Hearing shall be held before the

15  undersigned on _____, 2022 at ____ a.m. in Department SSC17 of the above-captioned

16  court, located at Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012,

17  to consider the fairness, adequacy and reasonableness of the proposed settlement preliminarily

18  approved by this Order of Preliminary Approval, and to consider the application of Settlement Class

19  Counsel for an award of reasonable attorneys' fees, litigation expenses, incentive awards, and for costs

20  of administration incurred.

21    IT IS FURTHER ORDERED that any party to this case, including Settlement Class Members,

22  may appear at the Final Approval Hearing in person or by counsel, and may be heard to the extent

23  allowed by the Court, in support of or in opposition to the settlement, to inform the Court's

24  determination of the good faith, fairness, reasonableness, and adequacy of the proposed settlement,

25  the requested attorneys' fees and litigation expenses, and any Order of Final Approval and Judgment

26  regarding such settlement, fees, and expenses.  Settlement Class Members Hearing may appear at the

27

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Final Approval Hearing by telephone, videoconference, or in person.  Settlement Class Members do

2   not need advance permission from the Court to appear at the Final Approval Hearing.

3   IT IS FURTHER ORDERED that if, for any reason, the Court does not execute and file an

4   Order of Final Approval, or if the Effective Date (as defined in the Settlement Agreement) does not

5   occur for any reason whatsoever, the proposed Settlement Agreement and all evidence and

6   proceedings had in connection therewith, shall be without prejudice to the *status quo ante* rights of the

7   parties to the litigation as more specifically set forth in the Settlement Agreement.

8   IT IS FURTHER ORDERED, consistent with the Settlement, that Plaintiffs, Defendant,

9   Settlement Class Counsel, and Defendant's counsel shall not: (a) initiate or cause the initiation of any

10   communications concerning the settlement with any media organization and/or (b) respond to or cause

11   a response to be made to any communications concerning the settlement with any media organization.

12   IT IS FURTHER ORDERED that, pending further order of this Court, all proceedings in this

13   matter except those contemplated herein and in the Settlement Agreement are stayed.

14   IT IS FURTHER ORDERED that the Court will consider the fairness and adequacy of the

15   proposed settlement of the claims brought pursuant to the California Labor Code Private Attorneys'

16   General Act of 2004, Cal. Lab. Code §2698, *et seq.* ("PAGA"), at the Final Approval Hearing, but

17   finds on a preliminary basis that the Settlement Agreement's allocation of settlement funds to the

18   PAGA claim is fair and adequate.

19   The Court expressly reserves the right to adjourn or continue the Final Approval Hearing from

20   time-to-time without further notice to the Settlement Class Members.

21

22   **IT IS SO ORDERED.**

23

24   Dated: _____                    _____

The Honorable Maren E. Nelson

25

26

27

28

EMF_US9895704v1 [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# AMENDED EXHIBIT C

1

2

3

4

5

6

7

8

9

10

11 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 **FOR THE COUNTY OF LOS ANGELES—SPRING STREET COURTHOUSE**

13

| | |
|---|---|
| 14 ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf of themselves and others similarly situated, | Case No.: BC661822 |
| 15 | [Hon. Maren E. Nelson: Dept. SSC17] |
| 16 | |
| 17    Plaintiffs, | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 18    vs. | |
| 19 L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, inclusive, | |
| 20 | |
| 21 | Complaint Filed:    January 3, 2017 |
| 22    Defendants. | |

23

24

25

26

27

28

# FINAL APPROVAL ORDER

This matter came on for hearing on _____, 2022.  Joseph Lavi of Lavi & Ebrahimian and David deRubertis of The deRubertis Law Firm appeared for Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs").  _____ of _____ appeared for Defendant Victoria's Secret Stores, LLC ("Defendant").  The Court, having reviewed the submissions described herein, and having heard argument from the foregoing counsel, hereby finds as follows:

The Court finds that the parties conducted substantial formal discovery and informal investigation in connection with the claims asserted in the above-captioned case before entering into the settlement.  The Court further finds that the parties prepared for and engaged in two formal mediations: (1) an unsuccessful mediation on May 30, 2018 before the Honorable Carl J. West (Ret.), an experienced mediator; and (2) a second mediation, which was presided over by another experienced mediator, Jeffrey A. Ross, Esq., which took place on February 22, 2021 and ultimately resulted in a settlement.

The Parties have submitted their Amended Settlement Agreement (the "Settlement"), which this Court preliminarily approved in its _____, 2022 Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") after the parties addressed certain issues raised by the Court.  In accordance with the Preliminary Approval Order, Settlement Class Members have been given adequate notice of the terms of the Settlement and their right to participate in, object to, or exclude themselves from the Settlement where applicable.

Having received and considered the Settlement, Plaintiffs' Motion for Final Approval of the Class Action Settlement, Plaintiffs' Motion For Attorneys' Fees And Costs And Class Representative Awards, and the argument received by the Court at the Final Approval Hearing on _____, 2021, the Court GRANTS final approval of the Settlement, and hereby ORDERS as follows:

1.      The Settlement Class covered by this Order is defined as:  All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.  Any person who previously settled or released all of the claims covered by

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  this settlement, any person who previously was paid or received awards through civil or

2  administrative actions for all of the claims covered by this settlement, and/or any person who excludes

3  him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a

4  member of the Settlement Class.

5      2.    Specific portions of this Order also cover the "PAGA Group," which is a subset of the

6  Settlement Class defined as:  All non-exempt employees employed by Defendant Victoria's Secret

7  Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.

8      3.    Pursuant to this Court's Preliminary Approval Order, a Notice of Class Action

9  Settlement was sent to each Settlement Class Member by first-class mail as appropriate.  These papers

10  informed Settlement Class Members of the terms of the Settlement, and the extent of their right to

11  participate in, object to, or exclude themselves from, the Settlement to pursue their own remedies,

12  and their right to appear in person or by counsel at the Final Approval Hearing to be heard regarding

13  approval of the Settlement.  Adequate periods of time were provided by each of these procedures.

14      4.    The Court finds and determines that the notice provided in this case was the best notice

15  practicable, which satisfied the requirements of law and due process.  The Court further finds and

16  determines that this notice procedure afforded adequate protections to Settlement Class Members and

17  provides the basis for the Court to make an informed decision regarding approval of the Settlement

18  based on the responses of Settlement Class Members.

19      5.    No Settlement Class Members have requested exclusion from the Settlement.

20      6.    No Settlement Class Members have objected to the Settlement.

21      7.    For the reasons stated in the Court's Preliminary Approval Order, the Court finds and

22  determines that the proposed Settlement Class, as defined in the Settlement, meets all of the legal

23  requirements for class certification, and it is hereby ordered that the Settlement Class is finally

24  approved and certified as a class for purposes of settlement of this action.

25      8.    The Court further finds and determines that the terms of the Settlement are fair,

26  reasonable, and adequate to the Settlement Class and to each Settlement Class Member and that the

27  Settlement Class Members who have not excluded themselves shall be bound by the Settlement, that

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated.

9.    The Court further finds and determines that the payments to be made to the Settlement Class Members as provided for in the Settlement are fair and reasonable.  The Court hereby gives final approval to and orders the payment of those amounts be made to the Settlement Class Members out of the Five Million Dollar ($5,000,000) Maximum Settlement Amount in accordance with the terms of the Settlement.  Defendant shall transmit the settlement funds to the Claims Administrator in accordance with the terms of the Settlement.

10.    The Court further finds and determines that the Settlement is fair and adequate with respect the claims brought pursuant to California Labor Code Private Attorneys' General Act of 2004, Cal. Lab. Code §2698, *et seq.* ("PAGA").

11.    The Court hereby grants and approves the application presented by Settlement Class Counsel for an award of attorneys' fees in the amount of $1,665,000, to be paid in accordance with the terms of the Settlement.

12.    The Court hereby grants and approves the application presented by Settlement Class Counsel for an award of costs and expenses in the amount of $41,000, to be paid in accordance with the terms of the Settlement.

13.    The Court hereby grants and approves the application presented by the Settlement Class Representatives for incentive awards of $7,500 to Plaintiff Elizabeth Ochoa, and $3,000 each to Plaintiffs Monica Velazquez and Crystal Fregoso, to be paid in accordance with the terms of the Settlement.

14.    The Court hereby grants and approves the application for payment of costs of administration of the settlement including, without limitation, the fees and expenses of the Claims Administrator in the amount of $_____.

15.    Upon completion of administration of the Settlement, the Claims Administrator shall provide written certification of such completion to the Court and counsel for the parties.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

16.     Consistent with the Settlement, Plaintiffs, Defendant, Settlement Class Counsel, and Defendant's counsel shall not: (a) initiate or cause the initiation of any communications concerning the settlement with any media organization and/or (b) respond to or cause a response to be made to any communications concerning the settlement with any media organization.

17.     The parties are hereby ordered to comply with the terms of the Settlement.

18.     Without affecting the finality of this Final Order in any way, this Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Order and the Settlement.

**IT IS SO ORDERED.**

Dated: _____          _____
                                                            The Honorable Maren E. Nelson

EMF_US 89569784.1
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# AMENDED EXHIBIT D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES—SPRING STREET COURTHOUSE**

| | |
|---|---|
| ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf of themselves and others similarly situated, | Case No.: BC661822 |
| | [Hon. Maren E. Nelson: Dept. SSC17] |
| Plaintiffs, | **[PROPOSED] JUDGMENT** |
| vs. | |
| L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, inclusive, | |
| Defendants. | Complaint Filed:        January 3, 2017 |

On _____, 2022, the Court entered its Order Granting Final Approval of Class Action Settlement And Order Of Dismissal.  Pursuant to California Rules of Court, Rule 3.769(h), judgment is hereby entered as follows:

1.    The "Settlement Class" is defined as:

All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.

2.    The "PAGA Group" is defined as:

All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.

3.    As of the Effective Date (as that term is defined in the Class Action Settlement Agreement), or at the time that Defendant fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the VSS Defendants, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims."  The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

4.      For purposes of this Settlement Agreement, the "Released Class Claims" are defined as:  All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, penalties,  attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

5.      For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as:  All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been

asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

6.     In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

7.     Except as otherwise provided by the Order Granting Final Approval of Class Action Settlement, the parties shall bear their own costs and attorneys' fees.

8.    The Court retains jurisdiction over Plaintiffs, Defendants, and the members of the Settlement Class to enforce the terms of the Class Action Settlement Agreement and this judgment.

.

**IT IS SO ORDERED.**

Dated: _____        _____

The Honorable Maren E. Nelson

# EXHIBIT E.1

DocuSign Envelope ID: 255307B1-163F-4854-B2EF-095DE76FD97F

## <u>INDIVIDUAL SETTLEMENT AGREEMENT AND RELEASE</u>

This Individual Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Elizabeth Ochoa ("Plaintiff"), on the one hand, and Victoria's Secret Stores, LLC ("Defendant"), on the other hand, and is effective upon its execution by all Parties hereto. Defendant and Plaintiff are collectively referred to herein as the "Parties."

### I.

### <u>RECITALS</u>

**WHEREAS**, Plaintiff and Defendant are parties to *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Case No. BC661822 (the "Lawsuit"), pending in Los Angeles County Superior Court (the "Court");

**WHEREAS**, the Parties prepared for and engaged in formal mediations on May 30, 2018 and February 22, 2021;

**WHEREAS**, Defendant, Plaintiff, and Plaintiff's Counsel were able to reach an agreement on a settlement for the class claims;

**WHEREAS**, the terms of settlement of the class claims are set forth in a Class Action Settlement Agreement; and

**WHEREAS**, Plaintiff has agreed to execute a separate individual release of her claims;

**NOW, THEREFORE**, in consideration of the mutual promises contained herein and in the Class Action Settlement Agreement, and for good consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### II.

### <u>AGREEMENT</u>

1. <u>Plaintiff's General Release and Waiver of All Individual Claims</u>. In exchange for the consideration provided herein, and subject to the final approval of the class action settlement in which Plaintiff is a participating member, Plaintiff agrees to settle, release and waive any and all claims she has or may have against Defendant and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including L Brands, Inc., and their current and former subsidiaries and affiliates (including Limited Brands, Inc., The Limited, Inc., Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (the "Releasees") for anything that



Page 1 of 6

DocuSign Envelope ID: 255307B1-163F-4854-B2EF-095DE76FD97F

has occurred up to the date of execution of this Agreement, including but not limited to, any and all claims resulting from Plaintiff's employment with Defendant, and all "Released Claims," as that term is defined in the Class Action Settlement Agreement.

2.    <u>Payment By Defendant</u>.  On the Effective Date, as that term is defined in the Class Action Settlement Agreement, the Claims Administrator shall pay to Plaintiff Ochoa, without any conditions or contingencies, the total sum of Twelve Thousand Five Hundred Dollars ($12,500.00) (the "Settlement Amount") as consideration for the release and promises made by Plaintiff herein.  This Settlement Amount shall be: (a) in addition to any Individual Settlement Award, any Individual PAGA Payment, and any incentive award to which Plaintiff may be entitled under the Class Action Settlement Agreement; (b) paid from the Maximum Settlement Amount, as that term is defined in the Class Action Settlement Agreement; and (c) allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099.

3.    **ADEA Release/Effective Date**:  Notwithstanding anything to the contrary in this Agreement, Plaintiff expressly acknowledges and agrees that she is knowingly and voluntarily entering into this Agreement, and, by voluntarily entering into this Agreement, she is waiving any and all rights or claims that she may have arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, which have arisen on or before the date of execution of this Agreement, and understands that rights or claims under the ADEA that may arise after the date this Agreement is executed are not waived.  Plaintiff further expressly acknowledges and agrees that:

(a)    the release contained in this Agreement includes, but is not limited to, all claims under the ADEA arising up to and including the date of execution of this Agreement;

(b)    she has been advised to consult with an attorney of her own choosing before executing the waiver herein of her rights under the ADEA;

(c)    this Agreement is written in a manner designed to be understood by Plaintiff and that she has read it carefully and understands its terms;

(d)    she has been advised to fully consider this Agreement before executing it;

(e)    she has at least twenty-one (21) days to consider this Agreement, and in the event she decides to execute this Agreement in fewer than twenty-one (21) days, she has done so with the express understanding that she has been given and declined the opportunity to consider the Agreement for at least twenty-one (21) days;

(f)    she has up to seven days to revoke the Agreement (the "Revocation Period"); before the end of the Revocation Period, Plaintiff may revoke her acceptance of this Agreement by delivering written notice of her intent



Page 2 of 6

DocuSign Envelope ID: 255307B1-163F-4854-B2EF-095DE76FD97F

to revoke by facsimile and by certified mail, postmarked no later than the seventh day following the date of execution of this Agreement, to the Company's attorney, Phillip J. Eskenazi, Hunton Andrews Kurth LLP, 550 South Hope Street, Suite 2000, Los Angeles, CA 90071, fax number (213) 532-2020.  No payment shall be due under this Agreement until the seven (7) day revocation period has expired without revocation by Plaintiff;

(g)    the releases contained in this Agreement shall become effective and enforceable on the day following the end of the Revocation Period (the "Effective Date"); and

(h)    the consideration Plaintiff is receiving in this Agreement constitutes independent consideration for the said waiver under the ADEA and is in addition to any consideration to which she is otherwise entitled.

4.    <u>California Civil Code Section 1542 Waiver</u>.  Plaintiff stipulates and agrees that, upon the Effective Date, she shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release.  Section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

5.    <u>Rescission of Agreement</u>.  Should the Class Action Settlement Agreement not be granted final approval for any reason whatsoever, then this Agreement shall be null and void.

6.    <u>Application For Employment</u>.  Plaintiff agrees that she will not apply for employment with Victoria's Secret Stores, LLC, and that she will not be eligible for such employment.  Subject to the foregoing, Plaintiff agrees that the fact of this Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for rejecting any application for employment with Victoria's Secret Stores, LLC.  Should Plaintiff, in breach of this Agreement, become employed with Victoria's Secret Stores, LLC, Plaintiff agrees that the fact of this Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for terminating such employment.

7.    <u>No Admission of Liability</u>.  The Parties acknowledge and agree that this Agreement is a compromise and settlement of each Party's disputed claims and/or defenses and that neither the execution nor the terms hereof may be construed as an admission of liability on the part of any Party with respect to the disputed matters.

DocuSign Envelope ID: 255307B1-163F-4854-B2EF-095DE76FD97F

8.      <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of California.

9.      <u>Consent to Jurisdiction and Forum Selection</u>.  The Parties acknowledge and agree that any action or proceeding arising in connection with this Agreement shall be tried and litigated exclusively in the State courts located in the County of Los Angeles, State of California. The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this paragraph.

10.      <u>Incorporation of Class Action Settlement Agreement</u>.   The Class Action Settlement Agreement is hereby incorporated by reference as though set forth fully herein and is a material part of this Agreement.

11.      <u>Entire Agreement</u>.  This Agreement, and the Class Action Settlement Agreement incorporated herein, constitutes the entire agreement between the Parties and supersedes any and all other agreements, understandings, negotiations, or discussions, whether oral or in writing, express or implied, between or among the Parties.  The Parties and each of them acknowledge that no representations, inducements, promises, agreements or warranties have been made to them or by them, or by anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance upon any such representation, inducement, promise, agreement or warranty, and that no representation, inducement, promise, agreement or warranty not contained in this Agreement, including but not limited to any purported supplements, modifications, waivers or terminations of this Agreement, shall be valid or binding unless executed in writing by each of the Parties to this Agreement.

12.      <u>Agreement to Be Construed Fairly</u>.  This Agreement is to be construed fairly and not in favor of or against either Party, regardless of which Party drafted or participated in the drafting of its terms.  Any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement.

13.      <u>No Assignment</u>.  Plaintiff represents and warrants that: (a) there has been no assignment or other transfer of any interest in the claims which he/she has or may have that are being released herein, and Plaintiff shall indemnify, hold harmless, and defend Defendant from any liability, claims, demands, damages, costs, expenses and reasonable outside attorneys' fees incurred by Defendant as a result of any such assignment or transfer contrary to the foregoing representation; and (b) Plaintiff owns all claims, demands, and causes of action which Plaintiff releases by this Agreement, which release is free and clear from all liens, claims, and encumbrances.

14.      <u>Authority to Enter into Agreement</u>.  Each of the Parties represents and warrants that any person executing this Agreement on its behalf has the full right and authority to enter into this Agreement on behalf of said Party, and has the full right and authority to execute this Agreement and to fully bind that Party to the terms and obligations of this Agreement.  Each of the persons signing this Agreement on behalf of the Parties hereto makes the same warranties referred to herein.

15. <u>Successors and Assigns</u>.  The terms of this Agreement shall be binding upon the Parties and their agents, employees, successors, assigns and insurers.

16. <u>Prevailing Party Attorneys' Fees</u>.  In the event either of the Parties brings an action to enforce any provision of this Agreement, the prevailing Party shall be entitled to recover the reasonable attorneys' fees and costs it incurred in such action.

17. <u>Consultation with Counsel</u>.  Each of the Parties to the Agreement represents and warrants that this Agreement has been voluntarily and knowingly executed by the Parties after having had the opportunity to consult with legal counsel.  The Parties declare that they know and understand the contents of this Agreement, and that they have executed it voluntarily.

18. <u>Headings</u>.  The various headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of the Agreement or any provision of it.

19. <u>Severability</u>.  If any word, clause, phrase, sentence, or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent of, and severable from, the remainder, the validity of which shall remain unaffected.

20. <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one in the same instrument, and will be effective upon execution by all Parties.  Facsimile signatures shall be deemed original signatures for all purposes.

21. <u>Notice</u>.  Any notices required under this Agreement shall be served upon the Parties via U.S. Mail as follows:

<u>Plaintiff's Counsel/Settlement Class Counsel</u>:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604



Page 5 of 6

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

22.    Execution Date.  The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement.  The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Elizabeth Ochoa**

Dated:  July 20, 2021

Elizabeth Ochoa

**Defendant Victoria's Secret Stores, LLC**

Dated:  _____

By _____
     Melinda McAfee
     EVP, Chief Legal Officer

**Approval As To Form:**

On behalf of Plaintiff:

Dated:   July 21, 2021

**LAVI & EBRAHIMIAN, LLP**
**The deRubertis Law Firm**
Joseph Lavi, Esq.
David M. deRubertis, Esq.

_____
Joseph Lavi, Esq.

On behalf of Defendants:

Dated:  _____

**HUNTON ANDREWS KURTH LLP**
Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck, Esq.

_____
Phillip J. Eskenazi, Esq.

 Page 6 of 6

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

      22.    Execution Date. The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement. The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Elizabeth Ochoa**

Dated: _____

                                           Elizabeth Ochoa

**Defendant Victoria's Secret Stores, LLC**

Dated: 7/19/21

                         By _Melinda R McAfee_
                            Melinda McAfee
                            EVP, Chief Legal Officer

**Approval As To Form:**

On behalf of Plaintiff:

Dated: _____

                         **LAVI & EBRAHIMIAN, LLP**
                         **The deRubertis Law Firm**
                         Joseph Lavi, Esq.
                         David M. deRubertis, Esq.

                         Joseph Lavi, Esq.

On behalf of Defendants:

Dated: 7/28/21

                         **HUNTON ANDREWS KURTH LLP**
                         Phillip J. Eskenazi, Esq.
                         Kirk A. Hornbeck, Esq.

                         Phillip J. Eskenazi, Esq.

                                              Page 6 of 6

# EXHIBIT E.2

## INDICATOR SETTLEMENT AGREEMENT AND RELEASE

<u>**INDIVIDUAL SETTLEMENT AGREEMENT AND RELEASE**</u>

This Individual Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Monica Velazquez ("Plaintiff"), on the one hand, and Victoria's Secret Stores, LLC ("Defendant"), on the other hand, and is effective upon its execution by all Parties hereto. Defendant and Plaintiff are collectively referred to herein as the "Parties."

### I.

### <u>RECITALS</u>

**WHEREAS**, Plaintiff and Defendant are parties to *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Case No. BC661822 (the "Lawsuit"), pending in Los Angeles County Superior Court (the "Court");

**WHEREAS**, the Parties prepared for and engaged in formal mediations on May 30, 2018 and February 22, 2021;

**WHEREAS**, Defendant, Plaintiff, and Plaintiff's Counsel were able to reach an agreement on a settlement for the class claims;

**WHEREAS**, the terms of settlement of the class claims are set forth in a Class Action Settlement Agreement; and

**WHEREAS**, Plaintiff has agreed to execute a separate individual release of her claims;

**NOW, THEREFORE**, in consideration of the mutual promises contained herein and in the Class Action Settlement Agreement, and for good consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### II.

### <u>AGREEMENT</u>

1.     <u>Plaintiff's General Release and Waiver of All Individual Claims</u>.  In exchange for the consideration provided herein, and subject to the final approval of the class action settlement in which Plaintiff is a participating member, Plaintiff agrees to settle, release and waive any and all claims she has or may have against Defendant and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including L Brands, Inc., and their current and former subsidiaries and affiliates (including Limited Brands, Inc., The Limited, Inc., Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (the "Releasees") for anything that



Page 1 of 6

DocuSign Envelope ID: 634425DA-C748-48F9-B9CB-3F06D9ECCE8C

has occurred up to the date of execution of this Agreement, including but not limited to, any and all claims resulting from Plaintiff's employment with Defendant, and all "Released Claims," as that term is defined in the Class Action Settlement Agreement. Plaintiff's Released Claims and this Settlement do not effect, waive, or alter, any and all claims pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. that Plaintiff may have against Defendant or any of the Releasees.

2. <u>Payment By Defendant</u>. On the Effective Date, as that term is defined in the Class Action Settlement Agreement, the Claims Administrator shall pay to Plaintiff Velazquez, without any conditions or contingencies, the total sum of Seven Thousand Dollars ($7,000.00) (the "Settlement Amount") as consideration for the release and promises made by Plaintiff herein. This Settlement Amount shall be: (a) in addition to any Individual Settlement Award, any Individual PAGA Payment, and any incentive award to which Plaintiff may be entitled under the Class Action Settlement Agreement; (b) paid from the Maximum Settlement Amount, as that term is defined in the Class Action Settlement Agreement; and (c) allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099.

3. <u>California Civil Code Section 1542 Waiver</u>. Plaintiff stipulates and agrees that, upon the Effective Date, she shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

This 1542 release does not effect, waive, or alter, any and all claims Plaintiff may have pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. against Defendant or any of the Releasees.

4. <u>Rescission of Agreement</u>. Should the Class Action Settlement Agreement not be granted final approval for any reason whatsoever, then this Agreement shall be null and void.

5. <u>Application For Employment</u>. Plaintiff agrees that she will not apply for employment with Victoria's Secret Stores, LLC, and that she will not be eligible for such employment. Subject to the foregoing, Plaintiff agrees that the fact of this Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for rejecting any application for employment with Victoria's Secret Stores, LLC. Should Plaintiff, in breach of this Agreement, become employed with Victoria's Secret Stores, LLC, Plaintiff agrees that the fact of this



Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for terminating such employment.

6.    <u>No Admission of Liability</u>.    The Parties acknowledge and agree that this Agreement is a compromise and settlement of each Party's disputed claims and/or defenses and that neither the execution nor the terms hereof may be construed as an admission of liability on the part of any Party with respect to the disputed matters.

7.    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of California.

8.    <u>Consent to Jurisdiction and Forum Selection</u>.    The Parties acknowledge and agree that any action or proceeding arising in connection with this Agreement shall be tried and litigated exclusively in the State courts located in the County of Los Angeles, State of California. The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this paragraph.

9.    <u>Incorporation of Class Action Settlement Agreement</u>.    The Class Action Settlement Agreement is hereby incorporated by reference as though set forth fully herein and is a material part of this Agreement.

10.    <u>Entire Agreement</u>.    This Agreement, and the Class Action Settlement Agreement incorporated herein, constitutes the entire agreement between the Parties and supersedes any and all other agreements, understandings, negotiations, or discussions, whether oral or in writing, express or implied, between or among the Parties.    The Parties and each of them acknowledge that no representations, inducements, promises, agreements or warranties have been made to them or by them, or by anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance upon any such representation, inducement, promise, agreement or warranty, and that no representation, inducement, promise, agreement or warranty not contained in this Agreement, including but not limited to any purported supplements, modifications, waivers or terminations of this Agreement, shall be valid or binding unless executed in writing by each of the Parties to this Agreement.

11.    <u>Agreement to Be Construed Fairly</u>.    This Agreement is to be construed fairly and not in favor of or against either Party, regardless of which Party drafted or participated in the drafting of its terms.    Any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement.

12.    <u>No Assignment</u>.    Plaintiff represents and warrants that: (a) there has been no assignment or other transfer of any interest in the claims which he/she has or may have that are being released herein, and Plaintiff shall indemnify, hold harmless, and defend Defendant from any liability, claims, demands, damages, costs, expenses and reasonable outside attorneys' fees incurred by Defendant as a result of any such assignment or transfer contrary to the foregoing representation; and (b) Plaintiff owns all claims, demands, and causes of action which Plaintiff



Page 3 of 6

releases by this Agreement, which release is free and clear from all liens, claims, and encumbrances.

13.    <u>Authority to Enter into Agreement</u>.  Each of the Parties represents and warrants that any person executing this Agreement on its behalf has the full right and authority to enter into this Agreement on behalf of said Party, and has the full right and authority to execute this Agreement and to fully bind that Party to the terms and obligations of this Agreement.  Each of the persons signing this Agreement on behalf of the Parties hereto makes the same warranties referred to herein.

14.    <u>Successors and Assigns</u>.  The terms of this Agreement shall be binding upon the Parties and their agents, employees, successors, assigns and insurers.

15.    <u>Prevailing Party Attorneys' Fees</u>.  In the event either of the Parties brings an action to enforce any provision of this Agreement, the prevailing Party shall be entitled to recover the reasonable attorneys' fees and costs it incurred in such action.

16.    <u>Consultation with Counsel</u>.  Each of the Parties to the Agreement represents and warrants that this Agreement has been voluntarily and knowingly executed by the Parties after having had the opportunity to consult with legal counsel.  The Parties declare that they know and understand the contents of this Agreement, and that they have executed it voluntarily.

17.    <u>Headings</u>.  The various headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of the Agreement or any provision of it.

18.    <u>Severability</u>.  If any word, clause, phrase, sentence, or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent of, and severable from, the remainder, the validity of which shall remain unaffected.

19.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one in the same instrument, and will be effective upon execution by all Parties.  Facsimile signatures shall be deemed original signatures for all purposes.

20.    <u>Notice</u>.  Any notices required under this Agreement shall be served upon the Parties via U.S. Mail as follows:

<u>Plaintiff's Counsel/Settlement Class Counsel</u>:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**



Page 4 of 6

4219 Coldwater Canyon Avenue
Studio City, California 91604

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

21.     Execution Date.  The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement.  The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Monica Velazquez**

Dated:    July 20, 2021                          _____

                                                Monica Velazquez

**Defendant Victoria's Secret Stores, LLC**

Dated:  _____

                                        By _____

                                                Melinda McAfee
                                                EVP, Chief Legal Officer

**Approval As To Form:**

On behalf of Plaintiff:

Dated:    July 21, 2021                  **LAVI & EBRAHIMIAN, LLP**
                                        **The deRubertis Law Firm**
                                        Joseph Lavi, Esq.
                                        David M. deRubertis, Esq.

                                        _____
                                        Joseph Lavi, Esq.

Page 5 of 6

4219 Coldwater Canyon Avenue
Studio City, California 91604

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

     21.   Execution Date. The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement.  The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Monica Velazquez**

Dated: _____

                                                      _____
                                                     Monica Velazquez

**Defendant Victoria's Secret Stores, LLC**

Dated:  7/19/21

                                    By _Melinda McAfee_____
                                        Melinda McAfee
                                        EVP, Chief Legal Officer

**Approval As To Form:**

On behalf of Plaintiff:

Dated: _____

                                      **LAVI & EBRAHIMIAN, LLP**
                                      **The deRubertis Law Firm**
                                      Joseph Lavi, Esq.
                                      David M. deRubertis, Esq.

                                      _____
                                      Joseph Lavi, Esq.

<u>On behalf of Defendants</u>:

Dated: _____          **HUNTON ANDREWS KURTH LLP**
                                     Phillip J. Eskenazi, Esq.
                                     Kirk A. Hornbeck, Esq.


                                     _____
                                     Phillip J. Eskenazi, Esq.

<u>On behalf of Defendants</u>:

Dated: ___7/28/21___

**HUNTON ANDREWS KURTH LLP**
Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck, Esq.

_____
Phillip J. Eskenazi, Esq.

# EXHIBIT E.3

## INDIVIDUAL SETTLEMENT AGREEMENT AND RELEASE

This Individual Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Crystal Fregoso ("Plaintiff"), on the one hand, and Victoria's Secret Stores, LLC ("Defendant"), on the other hand, and is effective upon its execution by all Parties hereto. Defendant and Plaintiff are collectively referred to herein as the "Parties."

## I.

## RECITALS

**WHEREAS**, Plaintiff and Defendant are parties to *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Case No. BC661822 (the "Lawsuit"), pending in Los Angeles County Superior Court (the "Court");

**WHEREAS**, the Parties prepared for and engaged in formal mediations on May 30, 2018 and February 22, 2021;

**WHEREAS**, Defendant, Plaintiff, and Plaintiff's Counsel were able to reach an agreement on a settlement for the class claims;

**WHEREAS**, the terms of settlement of the class claims are set forth in a Class Action Settlement Agreement; and

**WHEREAS**, Plaintiff has agreed to execute a separate individual release of her claims;

**NOW, THEREFORE**, in consideration of the mutual promises contained herein and in the Class Action Settlement Agreement, and for good consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## II.

## AGREEMENT

1.      <u>Plaintiff's General Release and Waiver of All Individual Claims</u>.  In exchange for the consideration provided herein, and subject to the final approval of the class action settlement in which Plaintiff is a participating member, Plaintiff agrees to settle, release and waive any and all claims she has or may have against Defendant and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including L Brands, Inc., and their current and former subsidiaries and affiliates (including Limited Brands, Inc., The Limited, Inc., Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (the "Releasees") for anything that



Page 1 of 6

has occurred up to the date of execution of this Agreement, including but not limited to, any and all claims resulting from Plaintiff's employment with Defendant, and all "Released Claims," as that term is defined in the Class Action Settlement Agreement. Plaintiff's Released Claims and this Settlement do not effect, waive, or alter, any and all claims pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* that Plaintiff may have against Defendant or any of the Releasees.

2.    <u>Payment By Defendant</u>. On the Effective Date, as that term is defined in the Class Action Settlement Agreement, the Claims Administrator shall pay to Plaintiff Fregoso, without any conditions or contingencies, the total sum of Seven Thousand Dollars ($7,000.00) (the "Settlement Amount") as consideration for the release and promises made by Plaintiff herein. This Settlement Amount shall be: (a) in addition to any Individual Settlement Award, any Individual PAGA Payment, and any incentive award to which Plaintiff may be entitled under the Class Action Settlement Agreement; (b) paid from the Maximum Settlement Amount, as that term is defined in the Class Action Settlement Agreement; and (c) allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099.

3.    <u>California Civil Code Section 1542 Waiver</u>. Plaintiff stipulates and agrees that, upon the Effective Date, she shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

This 1542 release does not effect, waive, or alter, any and all claims Plaintiff may have pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* against Defendant or any of the Releasees.

4.    <u>Rescission of Agreement</u>. Should the Class Action Settlement Agreement not be granted final approval for any reason whatsoever, then this Agreement shall be null and void.

5.    <u>Application For Employment</u>. Plaintiff agrees that she will not apply for employment with Victoria's Secret Stores, LLC, and that she will not be eligible for such employment. Subject to the foregoing, Plaintiff agrees that the fact of this Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for rejecting any application for employment with Victoria's Secret Stores, LLC. Should Plaintiff, in breach of this Agreement, become employed with Victoria's Secret Stores, LLC, Plaintiff agrees that the fact of this



DocuSign Envelope ID: 1121351A-7348-43EC-B977-3E746AE128EB

Agreement constitutes a legitimate, non-discriminatory, and non-retaliatory reason for terminating such employment.

6.    <u>No Admission of Liability</u>.    The Parties acknowledge and agree that this Agreement is a compromise and settlement of each Party's disputed claims and/or defenses and that neither the execution nor the terms hereof may be construed as an admission of liability on the part of any Party with respect to the disputed matters.

7.    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of California.

8.    <u>Consent to Jurisdiction and Forum Selection</u>.    The Parties acknowledge and agree that any action or proceeding arising in connection with this Agreement shall be tried and litigated exclusively in the State courts located in the County of Los Angeles, State of California. The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the Parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this paragraph.

9.    <u>Incorporation of Class Action Settlement Agreement</u>.    The Class Action Settlement Agreement is hereby incorporated by reference as though set forth fully herein and is a material part of this Agreement.

10.    <u>Entire Agreement</u>.    This Agreement, and the Class Action Settlement Agreement incorporated herein, constitutes the entire agreement between the Parties and supersedes any and all other agreements, understandings, negotiations, or discussions, whether oral or in writing, express or implied, between or among the Parties.  The Parties and each of them acknowledge that no representations, inducements, promises, agreements or warranties have been made to them or by them, or by anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance upon any such representation, inducement, promise, agreement or warranty, and that no representation, inducement, promise, agreement or warranty not contained in this Agreement, including but not limited to any purported supplements, modifications, waivers or terminations of this Agreement, shall be valid or binding unless executed in writing by each of the Parties to this Agreement.

11.    <u>Agreement to Be Construed Fairly</u>.    This Agreement is to be construed fairly and not in favor of or against either Party, regardless of which Party drafted or participated in the drafting of its terms.  Any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement.

12.    <u>No Assignment</u>.    Plaintiff represents and warrants that: (a) there has been no assignment or other transfer of any interest in the claims which he/she has or may have that are being released herein, and Plaintiff shall indemnify, hold harmless, and defend Defendant from any liability, claims, demands, damages, costs, expenses and reasonable outside attorneys' fees incurred by Defendant as a result of any such assignment or transfer contrary to the foregoing representation; and (b) Plaintiff owns all claims, demands, and causes of action which Plaintiff



Page 3 of 6

releases by this Agreement, which release is free and clear from all liens, claims, and encumbrances.

13.     Authority to Enter into Agreement.  Each of the Parties represents and warrants that any person executing this Agreement on its behalf has the full right and authority to enter into this Agreement on behalf of said Party, and has the full right and authority to execute this Agreement and to fully bind that Party to the terms and obligations of this Agreement.  Each of the persons signing this Agreement on behalf of the Parties hereto makes the same warranties referred to herein.

14.     Successors and Assigns.  The terms of this Agreement shall be binding upon the Parties and their agents, employees, successors, assigns and insurers.

15.     Prevailing Party Attorneys' Fees.  In the event either of the Parties brings an action to enforce any provision of this Agreement, the prevailing Party shall be entitled to recover the reasonable attorneys' fees and costs it incurred in such action.

16.     Consultation with Counsel.  Each of the Parties to the Agreement represents and warrants that this Agreement has been voluntarily and knowingly executed by the Parties after having had the opportunity to consult with legal counsel.  The Parties declare that they know and understand the contents of this Agreement, and that they have executed it voluntarily.

17.     Headings.  The various headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of the Agreement or any provision of it.

18.     Severability.  If any word, clause, phrase, sentence, or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent of, and severable from, the remainder, the validity of which shall remain unaffected.

19.     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one in the same instrument, and will be effective upon execution by all Parties.  Facsimile signatures shall be deemed original signatures for all purposes.

20.     Notice.  Any notices required under this Agreement shall be served upon the Parties via U.S. Mail as follows:

Plaintiff's Counsel/Settlement Class Counsel:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**



4219 Coldwater Canyon Avenue
Studio City, California 91604

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

    21.    Execution Date.  The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement.  The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Crystal Fregoso**

Dated:    July 21, 2021            _____
                                   Crystal Fregoso

**Defendant Victoria's Secret Stores, LLC**

Dated:    _____

                                   By _____
                                      Melinda McAfee
                                      EVP, Chief Legal Officer


**Approval As To Form:**

On behalf of Plaintiff:

Dated:    July 20, 2021            **LAVI & EBRAHIMIAN, LLP**
                                   **The deRubertis Law Firm**
                                   Joseph Lavi, Esq.
                                   David M. deRubertis, Esq.

                                   _____
                                   Joseph Lavi, Esq.

4219 Coldwater Canyon Avenue
Studio City, California 91604

Defendant's Counsel:

Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck. Esq.
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627

     21.    Execution Date.  The terms of this Agreement as between the Parties are binding upon Final Approval of the Class Action Settlement Agreement.  The Parties have executed this Agreement as of the last date set forth below.

**Plaintiff Crystal Fregoso**

Dated: _____

                                                _____
                                                Crystal Fregoso

**Defendant Victoria's Secret Stores, LLC**

Dated: _7/19/21_

                                          By _Melinda McAfee_
                                             Melinda McAfee
                                             EVP, Chief Legal Officer

**Approval As To Form:**

On behalf of Plaintiff:

Dated: _____

                                          **LAVI & EBRAHIMIAN, LLP**
                                          **The deRubertis Law Firm**
                                          Joseph Lavi, Esq.
                                          David M. deRubertis, Esq.

                                          _____

                                          Joseph Lavi, Esq.

DocuSign Envelope ID: 1121351A-7348-43EC-B977-3E746AE128EB

<u>On behalf of Defendants</u>:

Dated:  _____     **HUNTON ANDREWS KURTH LLP**
Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck, Esq.


_____
Phillip J. Eskenazi, Esq.



EMF_US 85589673

On behalf of Defendants:

Dated:  7/28/21

**HUNTON ANDREWS KURTH LLP**
Phillip J. Eskenazi, Esq.
Kirk A. Hornbeck, Esq.

_____
Phillip J. Eskenazi, Esq.

EMF_US 85589673

# Exhibit 4

LAW OFFICES OF

## LAVI & EBRAHIMIAN, LLP

8889 W. OLYMPIC BLVD., SUITE 200
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE: (310) 432-0000
FACSIMILE: (310) 432-0001
WWW.LELAWFIRM.COM

February 28, 2022

## AMENDED NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO LABOR CODE SECTION 2699.3

To:     California Labor and Workforce Development Agency
        Attn. PAGA Administrator
        1515 Clay Street, Suite 801
        Oakland, California 94612
        *Via Online Submission Only*
        Case Nos.: LWDA-CM-194056-17
                LWDA-CM-625664-18

        Department of Industrial Relations
        Accounting Unit
        455 Golden Gate Avenue, 10th Floor
        San Francisco, California 94102
        Certified Mail Number: **7021 0950 0000 9981 2735**

        L Brands, Inc., Limited Brands, Inc., The Limited, Inc., Victoria's Secret Stores, LLC
        c/o **HUNTON ANDREWS KURTH LLP**
        Phillip J. Eskenazi (SBN 158976)
        peskenazi@HuntonAK.com
        Kirk A. Hornbeck (SBN 241708)
        khornbeck@HuntonAK.com
        550 South Hope Street, Suite 2000
        Los Angeles, California 90071-2627
        Telephone: (213) 532-2000
        Facsimile: (213) 532-2020
        Certified Mail Number: **7021 0950 0000 9981 2742**

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 2 of 7

From:   ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf
        of themselves and all other current and former aggrieved California-based hourly non-
        exempt employees of L Brands, Inc., et al.

        c/o Joseph Lavi, Esq.
        Email: jlavi@lelawfirm.com
        Vincent C. Granberry, Esq.
        Email: vgranberry@lelawfirm.com
        Melissa A. Huether, Esq.
        Email: mhuether@lelawfirm.com
        LAVI & EBRAHIMIAN, LLP
        8889 W. Olympic Boulevard, Suite 200
        Beverly Hills, California 90211


        My firm has been retained by aggrieved employee ELIZABETH OCHOA to prosecute a
class action and a representative action pursuant to the Private Attorneys General Act of 2004,
Labor Code sections 2698, *et seq*. ("PAGA") against her employer, L Brands, Inc., Limited Brands,
Inc., The Limited, Inc., and/or Victoria's Secret Stores, LLC.  Ms. Ochoa submitted her original
PAGA notice letter to the Labor and Workforce Development Agency ("LWDA") on January 5,
2017 (LWDA-CM-194056-17).  Ms. Ochoa filed her original complaint around the same time,
then filed the currently operative First Amended Complaint to add PAGA claims in March 2017.
The lawsuit is currently pending as *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Los Angeles
County Superior Court Case No. BC661822 (the "*Ochoa* Action").

        Following several years of litigation, including substantial discovery and investigation as
well as two formal mediations before well-respected neutrals, a multi-million dollar settlement has
been reached in the *Ochoa* Action.  As part of the settlement, Ms. Ochoa as well as Ms. Monica
Velazquez and Ms. Crystal Fregoso, whom we also represent, intend to file a Second Amended
Complaint ("SAC") to assert the claims that have been actually investigated and litigated in the
*Ochoa* Action.[1]    The purpose of this letter is to provide the LWDA with notice of the PAGA
claims that my clients intend to assert in the SAC, absent LWDA intervention.

### Factual Statement and Theories of Labor Code Violations
        Aggrieved employees Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso
(collectively, "Plaintiffs") are former employees of L Brands, Inc., Limited Brands, Inc., The
Limited, Inc., and/or Victoria's Secret Stores, LLC (collectively, "Employers"). Employers
employed Plaintiffs as hourly, non-exempt employees who were paid on an hourly, or an hourly
plus commission/sales incentive, basis.   Employers employed Plaintiff OCHOA from
approximately May of 2014 through approximately February 2, 2016.  Employers employed
Plaintiff VELAZQUEZ from approximately April 21, 2015 through approximately October 26,

---

[1] Ms. Velazquez and Ms. Fregoso submitted a separate PAGA notice letter to the LWDA on
October 8, 2018 (LWDA-CM-625664-18).

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 3 of 7

2017.  Employers employed Plaintiff FREGOSO from approximately November 19, 2014 through approximately October 17, 2017.  As described in more detail below, Plaintiffs predicate their PAGA claims on Labor Code violations that they suffered during their employment with Employers.

First, Plaintiffs maintain that, during their employment, Employers failed to pay them and other California-based hourly non-exempt employees with compensation at the minimum wage rate of pay for all the hours that they worked in violation of California Labor Code sections 1194 and 1197 and compensation at their overtime rate for overtime hours worked in violation of California Labor Code sections 510 and 1194. Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful." Labor Code section 1194 states, " ... any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Labor Code section 1197 provides, "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

With regard to overtime hours, Labor Code section 510 provides:

"Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

Importantly, overtime is based upon an employee's regular rate of pay. "The regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf, of the employee." *See* Division of Labor Standards Enforcement- Enforcement Policies and Interpretations Manual, Section 49 .1.2.

Finally, Labor Code section 1194 states, " ... any employee receiving less than the legal minimum wage or the legal ove1iime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

Plaintiffs maintain that they and other California-based hourly non-exempt employees worked more hours per day than Employers credited them with having worked because Employers maintained a policy, practice, and/or procedure whereby they required Plaintiffs and other California-based hourly non-exempt employees to arrive approximately 15 minutes prior to the

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 4 of 7

start of their shift in order to perform work, including arranging the stores before they opened to the public (sometimes called "pre-shift work"). Plaintiffs also engaged in work after clocking out for their shifts (sometimes called "post-shift work"), including closing procedures and waiting to exit the store. Plaintiffs and California-based hourly non-exempt employees were also required to undergo security bag checks  and wait for the lock up procedure after their shift and at other times off-the-clock. Additionally, Employers caused Plaintiffs and other California-based hourly non-exempt employees to work off-the-clock due to understaffing. Employers also automatically deducted meal periods even if an employee was not provided with a legally compliant meal period. Employers also operated a rounding policy which Plaintiffs contend operated against the California-based hourly non-exempt employees. Plaintiffs also allege that she and other California-based hourly non-exempt employees were required to report to work but did not work a complete shift and instead were only put to work for one or two hours. Employers did not pay Plaintiffs and other California-based hourly non-exempt employees for this time. Accordingly, Employers' foregoing policies practices, and/or procedures resulted in time each workday that Plaintiffs and other California-based hourly employees were subject to Employers' control, but not compensated for that time. To the extent that the uncompensated time described above resulted in Plaintiffs and other California-based hourly employees being subject to the control of Employers exceed eight (8) hours in a day or forty (40) hours in a week, that time should have been compensated at Plaintiffs' and other California-based hourly employees' overtime rates of pay. In addition, Employers failed to pay her and other California-based hourly employees for overtime hours worked at their proper overtime rate, including because Employers failed to include all remuneration, including bonus pay and/or other similar remuneration.  Such bonuses include, but are not limited to: non-cash awards, gift cards, spot bonuses, total earnings bonuses, "Bon TrueUp," "New Team Bonus," "Bra Bonus," "Bra Fitting Bonus," "Sales Bonus," "Term True Up," "California True Up Waiting," "Team Bonus," and "Customer Sales Leading," commissions, and/or incentives in their overtime rate of pay for pay periods in which they worked in excess of eight hours in a day or 40 hours in a week and earned one or more of the aforementioned bonuses.

Based on Employers' above-described violations, Plaintiffs intend to seek civil penalties pursuant to PAGA on behalf of the LWDA against Employers if authorized to assert those claims in the SAC.

Second, Plaintiffs maintain that during their employment, Employers failed to maintain compliant meal period polices. With regard to first meal periods, Plaintiffs maintain that Employers' policies, practices, and/or procedures failed to authorize or permit timely duty free first meal periods of not less than 30 minutes prior to the sixth hour of work. Employer also automatically deducted meal periods even if an employee was not provided with a legally compliant meal period. Further, Plaintiffs and other California-based hourly non-exempt employees were required to undergo a security bag check when they left the premises for a meal periods thus rendering their meal periods short. Moreover, Plaintiffs maintain that Employers often employed them and other California-based hourly nonexempt employees to work shifts more than 10 hours in length without providing second meals whatsoever and failed to inform them their right to take a second off duty unpaid 30 minute meal period for when they worked shifts over 10 hours in length as required by Labor Code § 226.7, Labor Code § 512 and Industrial Welfare

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 5 of 7

Commission ("IWC") Wage Order 7-2001, 11. In addition, Employers failed to provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for untimely first meal periods that occurred after the sixth hour of work and/or missed second meal periods for qualifying shifts. Plaintiffs will seek civil penalties under PAGA for each violation of Labor Code § 226.7 (and failure to pay premium pay).

Third, Plaintiffs maintain that during their employment, Employers failed to maintain compliant rest period policies. Employers did not authorize or permit all its hourly non-exempt employees to take 10-minute paid rest periods for every four hours of work or major fraction thereof, as required by Labor Code § 226.7 and Industrial Welfare commission (IWC) Wage Order 7-2001, 12. Specifically, Plaintiffs maintain that Employers' failed to authorize or permit third rest periods when she and other California-based hourly non-exempt employees worked shifts more than 10 hours in length. Further, Plaintiffs contend that they and other California-based hourly non-exempt employees could not leave the premises during their rest periods because there was insufficient time to leave due to Employers' mandatory security bag checks. Finally, Plaintiffs and other California-based hourly non-exempt employees were required to remain on call during their rest breaks and were therefore not relieved of all of their duties. At no time did Employers provide a "premium" wage (one hour of pay at the employee's regular rate of pay) for rest periods shorter than 10 minutes in length and/or failure to authorize or permit third rest periods for qualifying shifts. Plaintiffs will seek civil penalties under PAGA for each violation of Labor Code §226.7 (and failure to pay premium pay).

Fourth, Employer failed to separately compensate Plaintiffs and other California-based hourly non-exempt employees who were paid on commission and/or sales incentives for rest periods. California law requires an employer to separately compensate commissioned employees for rest periods where the employer uses a commission compensation system that does not directly compensate for rest periods. *See* Wage Order No. 7, §§1, 2(T), 12(A); *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864, 872; and *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43. Plaintiffs will seek civil penalties under PAGA for such Labor Code violations.

Fifth, in direct violation of Labor Code § 226, Employers failed to provide Ms. Ochoa and other California-based hourly employees who received commission pay accurate paystubs because Employers deducted employees' hourly wages from their earned commissions rendering the total amount of their commissions, and thus their total gross, earned wages and deductions inaccurate in direct violation of Labor Code§§ 226(a)(l) and (4). Moreover, based on the aforementioned claims, Plaintiffs will assert derivative wage statement claims and seek recovery of civil PAGA penalties under Labor Code § 226.3 and § 2699(f)(2).. In addition, based on the foregoing, Employers also failed to maintain accurate records in violation of California Labor Code section 1174, and Plaintiffs intend to seek civil penalties under PAGA for those violations.

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 6 of 7

Plaintiffs also maintain accurate records as a derivative of the foregoing claims in violation of California Labor Code section 1174.

Plaintiffs also allege that Employers failed to provide suitable seating for them and other California based hourly non-exempt employees who worked as cashiers or performed cashiering duties for Employers. Section 14 of Wage Order 7 provides, "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats." Plaintiffs allege that Employers failed to comply with the requirements of Section 14 of Wage Order 7 by failing to provide suitable seating for its cashiers and other employees who performed cashiering duties despite that the nature of their work when performing cashiering duties and all other California-based hourly non-exempt employees who performed cashiering duties reasonably permitted the use of seats. Plaintiffs will seek civil penalties pursuant to Labor Code section 2699(a) for themselves and other aggrieved employees for Employers' failure to provide suitable seating.

Finally, as a result of Employers' aforementioned violations of the California Labor Code, Plaintiffs were not paid their final wages pay in a timely manner as required by Labor Code § 201-202. The wages for all hours worked, including overtime hours worked and overtime wages at the proper overtime rate of pay, premium wages for late first meal periods and/or missed second meal periods, and rest periods premium wages for missed third rest periods were not paid at the time of Plaintiffs' respective terminations. Plaintiffs are informed and believe other employees who separated from Employers, whether voluntarily or involuntarily, were not paid all wages due in a timely manner, including wages for all hours worked, including overtime hours worked and at the proper overtime rate, and premium wages for late and/or missed meal and rest periods, as required by Labor Code § 201-202. Plaintiffs will seek civil penalties under PAGA for Employers' failure to timely pay all wages owed at termination.

### Request for Relief and Remedies
By this letter, Plaintiffs, on behalf of themselves and all other aggrieved employees in the State of California, intend to assert the following claims on behalf of the LWDA in the *Ochoa* Action through the SAC:

(1) Employers are subject to civil penalties under PAGA for failing to pay wages for all hours worked, including overtime hours worked at the proper overtime rate of pay, minimum wages, reporting time pay, and time unpaid as a result of an unlawful rounding policy, as required by California Labor Code sections 510, 1194 and 1197;

(2) Employers are subject to civil penalties under PAGA for failing to authorize or permit a first meal period of not less than 30 minutes prior to the sixth hour of work and second meal period when employees worked in shifts exceeding 10 hours in length as required under Wage Order 7, Section 11. Moreover, Employers failed to pay one hour of premium pay at the employee's regular rate of pay for each day an employee did not receive a timely first meal period prior to the sixth hour of work and/or worked over 10 hours in a

Labor & Workforce Development Agency
Re: OCHOA *v. VICTORIA'S SECRET, LLC, ET AL.*
February 28, 2022
Page 7 of 7

shift, but was not provided a 30-minute, uninterrupted and duty-free second meal period, including because of security checks, in violation of Labor Code Section§ 226.7;

(3)    Employers are subject to civil penalties under PAGA for failing to implement a policy to authorize and permit duty-free, paid 10-minute rest periods for every four hours worked (or every major fraction thereof) as required under Wage Order 7, Section 12, including because of required security checks, on-call breaks, and failures to provide "separate rest break pay," as well as failures to pay rest period premiums at the regular rate of pay as required by Labor Code § 226.7;

(4)    Employers are subject to civil penalties under Labor Code § 226.3 for direct violations of Labor Code §§ 226(a)(l) and (4), including failing to accurately reflect commissioned employees' gross wages earned and all deductions as well as derivative claims for Employers' failure to pay and document wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as well as meal and rest period premium wages for employees not provided compliant meal and rest periods as required by Labor Code § 226(a)(l), thus rendering wage statements inaccurate in the amount of "gross wages earned";

(5)    Employers are subject to civil penalties under PAGA for willfully failing to timely pay wages to employees who were discharged or quit, including wages for all hours worked, including overtime hours worked and at the proper overtime rate of pay, as well as meal and rest period premium wages; and

(6)    Employers are subject to civil penalties pursuant to Labor Code section 2699(a) for Employers' failure to provide suitable seating to Plaintiffs and other California-based employees who worked as cashiers.

## **CONCLUSION**

My client intends to amend a representative action pursuant to PAGA concerning his wage claims as warranted by Employer's violations of Labor Code sections 201-204, 223, 226, 226.3, 226.7, 510, 512, 1174, 1174.5, 1174, 1194, 1197, 1197.1, 1198 and the IWC Wage Orders. Thank you for your assistance and cooperation in this matter. If you have any questions or concerns, please contact me at the above-listed information.

Very truly yours,
**LAVI & EBRAHIMIAN, LLP**

Melissa A. Huether, Esq.

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)       $ _____
☐ Return Receipt (electronic)     $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required        $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

L Brands, Inc., Limited Brands, Inc., The Limited, Inc.,
Victoria's Secret Stores, LLC
c/o HUNTON ANDREWS KURTH LLP
Phillip J. Eskenazi
Kirk A. Hornbeck
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

7021 0950 0000 9981 2742

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

L Brands, Inc., Limited Brands, Inc., The Limited, Inc.,
Victoria's Secret Stores, LLC
c/o HUNTON ANDREWS KURTH LLP
Phillip J. Eskenazi
Kirk A. Hornbeck
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 7049 1225 2783 31

2. Article Number *(Transfer from service label)*

7021 0950 0000 9981 2742

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                            ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

USPS TRACKING #





9590 9402 7049 1225 2783 31

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**LAVI & EBRAHIMIAN, LLP**

8889 W. Olympic Boulevard

Suite 200

Beverly Hills, CA 90211

OCHOA V. VICTORIA'S SECRET, LLC
PAGA LETTER: J.L/V.G/M.H/S.R

---

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

L Brands, Inc., Limited Brands, Inc., The Limited, Inc.,
Victoria's Secret Stores, LLC

c/o **HUNTON ANDREWS KURTH LLP**

Phillip J. Eskenazi

Kirk A. Hornbeck

550 South Hope Street, Suite 2000

Los Angeles, California 90071-2627



9590 9402 7049 1225 2783 31

2. Article Number *(Transfer from service label)*

7021 0950 0000 9981 2742

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



US POSTAGE $ 008.76°
PITNEY BOWES
02 1P
0001217907
MAILED FROM ZIP CODE 00211
FEB 20 2022
FIRST-CLASS

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

L Brands, Inc., Limited Brands, Inc., The Limited, Inc.,
Victoria's Secret Stores, LLC
**c/o HUNTON ANDREWS KURTH LLP**
Phillip J. Eskenazi
Kirk A. Hornbeck
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9590 9402 7049 1225 2783 31

2. Article Number (Transfer from service label)

7021 0950 0000 9981 2742

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

7021 0950 0000 9981 2742

L Brands, Inc., Limited Brands, Inc.,
The Limited, Inc., Victoria's Secret
Stores, LLC
c/o **HUNTON ANDREWS
KURTH LLP**
Phillip J. Eskenazi
Kirk A. Hornbeck
550 South Hope Street, Suite 2000
Los Angeles, California
90071-2627

T & EBRAHIMIAN, LLP
39 W. Olympic Boulevard
Suite 200
Beverly Hills, CA 90211

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$

Postmark
Here

**Department of Industrial Relations**
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

for Instructions

7021 0950 0000 9981 2735

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Department of Industrial Relations**
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

9590 9402 7049 1225 2783 48

2. Article Number *(Transfer from service label)*

7021 0950 0000 9981 2735

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____   ☐ Agent
                        ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ _____red Mail
☐ _____red Mail Restricted Delivery
   (____r $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2020 PSN 7530-02-000-9053         Domestic Return Receipt

USPS TRACKING #



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 7049 1225 2783 48

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**LAVI & EBRAHIMIAN, LLP**

8889 W. Olympic Boulevard

Suite 200

Beverly Hills, CA 90211

OCHOA V. VICTORIA'S SECRET, LLC
PAGA LETTER: J.L/V.G/M.H/S.R

---

**SENDER: *COMPLETE THIS SECTION***

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Department of Industrial Relations**
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

9590 9402 7049 1225 2783 48

2. Article Number *(Transfer from service label)*

7021 0950 0000 9981 2735

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*       C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___red Mail
☐ ___red Mail Restricted Delivery
    ___er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt



FIRST-CLASS

US POSTAGE
$ 008.76°
02 1P
0001217907
MAILED FROM ZIP CODE 90211
FEB 28 2022
PITNEY BOWES

7021 0950 0000 9981 2735

CERTIFIED MAIL

**SENDER: COMPLETE THIS SECTION**



- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Department of Industrial Relations**
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

9590 9402 7049 1225 2783 48

2. Article Number *(Transfer from service label)*

7021 0950 0000 9981 2735

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ _____ed Mail
☐ _____ured Mail Restricted Delivery
  _____er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

**Department of Industrial Relations**
Accounting Unit
455 Golden Gate Avenue
10th Floor
San Francisco, California 94102

& EBRAHIMIAN, LLP
_ W. Olympic Boulevard
Suite 200
_verly Hills, CA 90211

# Exhibit 5

# NOTICE OF CLASS ACTION SETTLEMENT AND
# FINAL APPROVAL HEARING
*Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*
**Los Angeles County Superior Court**
**Case No. BC661822**

---

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.
YOUR RIGHTS MAY BE AFFECTED
BY THE PROPOSED SETTLEMENT DESCRIBED IN
THIS NOTICE.**

---

**TO:    All non-exempt employees employed by Defendant Victoria's Secret
Stores, LLC in California at any time between January 3, 2013 and
May 26, 2021.**

On [INSERT Date of Preliminary Approval Order], the Court in this lawsuit granted preliminary approval to a proposed settlement as set forth in ~~a~~an Amended Class Action Settlement Agreement (the "Settlement Agreement"). If the settlement is granted final approval by the Court, ~~this lawsuit will be dismissed with prejudice, and~~ Defendants (as defined below) will be released from all claims that were asserted, or could have been asserted based on the facts alleged, in this lawsuit (*i.e.*, "Released Claims" as defined below). The Settlement Class Representatives and Settlement Class Counsel (as defined below) believe the proposed settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class (as defined below). This Notice informs you of the proposed settlement and its terms ~~and~~as well as your rights to object to the terms of the proposed settlement, dispute the number of workweeks on which your settlement payment will be calculated, and to exclude yourself from the proposed settlement. This Notice also explains how you can obtain more information about the settlement. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

| Your Legal Rights And Options In This Settlement | |
|---|---|
| **Do nothing** | If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.** |
| **Ask to Be Excluded** | You are entitled to opt-out of the Settlement Class by submitting a written request to be excluded from the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than [**INSERT: 45 days after notice**]. Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that were released by members of the Settlement Class. Note that if you are a member of the PAGA Group (as defined below), you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment (as defined below), even if you timely and validly exclude yourself from the Settlement Class. |
| **Object** | You may object to the settlement by submitting a written objection to the Claims Administrator no later than [**INSERT: 45 DAYS AFTER NOTICE**]. If you object to the settlement, you still will be considered a Settlement Class Member. Even if you do |

| | |
|---|---|
| | not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection. |
| **Dispute Your Workweeks Number** | You will be provided with the number of workweeks that VSS's records show you were employed by VSS for the time periods between: (1) January 3, 2013 and May 26, 2021; and (2) January 3, 2016 and May 26, 2021. Those numbers will be used to calculate the amount of money you are entitled to receive from the settlement. You may dispute the accuracy of those workweek numbers. To do so, please provide the Claims Administrator with any information and documentation (if any) you have to substantiate your dispute by [deadline]. The Claims Administrator will resolve your dispute. |
| **Attend the Final Approval Hearing** | You may appear at the Final Approval Hearing by telephone, videoconference, or in person. For more information about scheduling a remote appearance, please see the Court's website at https://my.lacourt.org/laccwelcome. You do not need advance permission from the Court to appear at the Final Approval Hearing. The Final Approval Hearing will occur as follows:<br><br>Date: [Date], 2022<br>Time: [Time]<br>Location:  Spring Street Courthouse<br>Department SSC17<br>312 North Spring Street<br>Los Angeles, California 90012 |

## I.  SUMMARY

Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs") have brought a lawsuit (the "Lawsuit") against Defendants Victoria's Secret Stores, LLC ("VSS"), L Brands, Inc., (now known as Bath & Body Works, Inc.), Limited Brands, Inc., and The Limited, Inc. (collectively, "Defendants") on behalf of themselves and other current and former non-exempt (hourly) employees of VSS. The Lawsuit is styled as *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Los Angeles County Superior Court Case No. BC661822.

Plaintiffs allege that Defendants violated the California Labor Code based on alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide suitable seating; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200. Plaintiffs also seek penalties against Defendants pursuant to the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on the aforementioned claims and a claim that Defendants failed to provide VSS employees with suitable seating.

Defendants deny Plaintiffs' allegations in their entirety. Defendants contend that Plaintiffs and other Settlement Class Members properly received all of the rights and benefits to which they are entitled under California law.

Plaintiffs and Defendants conducted substantial formal discovery and informal investigation in connection with the claims asserted in the Lawsuit. The parties also have researched and analyzed the relevant legal and factual issues arising from all of the claims that are alleged in, or could have been alleged in, the Lawsuit. Defendants provided Plaintiffs with sufficient information to allow Plaintiffs to evaluate Defendants' potential exposure in the Lawsuit.

The parties acknowledge the mutual costs and risks of litigation. The mutual costs and risks of continuing to prosecute and defend the Lawsuit have led the parties to resolve the Lawsuit by way of settlement.

II.    **CLASS DEFINITION**

The Lawsuit is being settled as a class action.  In a class action, a plaintiff or plaintiffs, also referred to as class representative(s), sue on behalf of themselves and other persons with similar claims.  The Court has conditionally approved a class for settlement purposes only.  The settlement class ("Settlement Class") is defined as follows:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.**

According to VSS's records, you are a member of the Settlement Class.  In addition to any individual settlement award to which you may be entitled as a member of the Settlement Class, you may be eligible to receive a share of PAGA penalties allocated in the Settlement Agreement.  You qualify for this additional payment if you are a member of the "PAGA Group," which is defined as:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.**

Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class.

If the Court approves the settlement, the settlement will bind all Settlement Class Members who have not excluded themselves from the Settlement Class. (You will have the opportunity to exclude yourself from the Settlement Class pursuant to the procedure described below.)  The Court has not yet determined that the Lawsuit could be litigated as a class action.  If the Court does not approve this settlement, the conditional class certification for settlement purposes will have no effect or precedential value in any subsequent proceedings in the Lawsuit or in any other litigation.

III.    **SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL**

The Court has appointed Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso as the Settlement Class Representatives to represent the Settlement Class.  The Court appointed the following attorneys to represent the Settlement Class as Settlement Class Counsel:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604

IV.    **SETTLEMENT AMOUNT**

The proposed settlement obligates VSS to pay a settlement amount (called the "Maximum Settlement Amount" in the Settlement Agreement) of Five Million Dollars and No Cents ($5,000,000).  Except for the payment of all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions, and unemployment taxes), which are the responsibility of VSS and shall be paid by VSS in addition to the Maximum Settlement Amount, the Maximum Settlement Amount shall be "all inclusive," including: any damages, penalties, or other relief arising from the alleged Labor Code violations committed against the Settlement Class and PAGA Group by Defendants; any failure to pay the Settlement Class Members and PAGA Group Members minimum or overtime wages, as a result of off-the-clock work or otherwise; any failure to provide Settlement Class Members and PAGA Group Members with compliant meal breaks or rest breaks, or appropriate meal and rest break premiums or "separate rest break pay;" any failure to provide Settlement Class Members and PAGA Group Members with reporting time pay, any failure to timely pay Settlement Class Members and PAGA

Group Members all wages due upon the termination of the their employment with Defendants; any failure to provide Settlement Class Members and PAGA Group Members with accurate wage statements or maintain accurate records; any failure to provide PAGA Group members with suitable seating; any restitution to Settlement Class Members and PAGA Group Members under California Business & Professions Code Section 17200 *et seq.*, based on the aforementioned claims; any PAGA penalties based upon the aforementioned alleged California Labor Code violations; interest, attorneys' fees and costs, as approved by the Court; the fees and costs of the Claims Administrator in connection with settlement and claims administration, as approved by the Court, including any fees and costs in connection with notice, the claims process, and the exclusion process, ~~up~~which is not to ~~a maximum of Two~~exceed One Hundred And ~~Twenty~~Fifty-Five Thousand Dollars ($~~225~~155,000); settlement payments; the incentive awards to Plaintiffs, as approved by the Court; and all other settlement-related payments and costs. VSS's sole monetary obligations under this Settlement Agreement shall be the Maximum Settlement Amount and the employer-paid withholding and payroll taxes and similar expenses.

## V.    SUMMARY OF YOUR OPTIONS

As a member of the Settlement Class, you have the options described below.

1.    **Do Nothing.**  If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment.  **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

2.    **Exclude Yourself From the Settlement Class.**  You are entitled to exclude yourself from the Settlement Class by submitting a written request to be excluded from (or "opt-out" of) the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than **[INSERT~~.~~: 45 DAYS AFTER NOTICE].**  Such written requests for exclusion must contain your name, address, telephone number, and the last four (4) digits of the Social Security Number.  Such written requests also must state the following in identical or substantially similar language: "I wish to exclude myself from the settlement reached in the matter of *Ochoa vs. Victoria's Secret Stores, LLC, et al*.  I understand that by excluding myself I will not receive any money from the settlement of the class claims in this matter."  Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that will be released by members of the Settlement Class.  If you are a member of the PAGA Group, you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment even if you timely and validly exclude yourself from the Settlement Class.

3.    **Object to the Settlement.**  You may object to the settlement by submitting a written objection to the Claims Administrator no later than **[INSERT~~.~~: 45 DAYS AFTER NOTICE].**  The written objection must be signed and dated, and additionally state your name, dates of employment with VSS, the case name and number, and the basis for the objection.  If you object to the settlement, you still will be considered a Settlement Class Member, unless you also submit a valid and timely request for exclusion in the manner described above.  Even if you do not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection.

Members of the Settlement Class who fail to submit timely written objections in the manner specified above shall be deemed to have waived any objections to the settlement and shall forever be foreclosed from making any objection (whether by appeal or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs.

4.    **Dispute the Number of Your Workweeks**:  The money you are eligible to receive from the Settlement is based on the number of workweeks you were employed during the Settlement Class and PAGA Group time periods, respectively.  For the period between January 3, 2013 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  For the period between January 3, 2016 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  You may dispute the number of workweeks you were employed by VSS during those time periods.  The deadline to submit your workweek dispute is **[INSERT: 45 DAYS AFTER NOTICE.]** To do so, you must mail to the Claims Administrator a written letter with your name, address, telephone number, and the last four (4) digits of the Social Security Number and any information and documentation you have to substantiate your dispute.  (Supporting documentation is not mandatory for you to make such a dispute.)  After you send your dispute, the Claims Administrator will promptly notify Defendant and Settlement Class Counsel of your dispute and provide any information and documentation that you have furnished regarding your dispute. VSS shall then investigate the dispute.  In all such disputes, VSS's records will carry a

presumption of correctness. The Claims Administrator shall review VSS's response to the dispute as well any additional information provided by you or Settlement Class Counsel and make a determination on the dispute. The Claims Administrator's determination shall be final and binding on all parties without right of appeal.

## VI.  SETTLEMENT ADMINISTRATOR

The settlement process will be administered by CPT Group, Inc. (the "Claims Administrator"), a company that provides settlement administration services. The Court has approved CPT Group, Inc. to act as the Claims Administrator for purposes of this settlement. The fees and costs of the Administrator shall be paid out of and deducted from the Maximum Settlement Amount. The Settlement Administrator can be contacted at the following address:

CPT Group, Inc.<br>
[address line 1]<br>
[address line 2]<br>
[phone number] (toll free)

## VII.  RELEASE AND WAIVER

As of the Effective Date, or at the time that VSS fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc., (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, as defined in the Settlement Agreement, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims"." The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

For purposes of the this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were, or could have been, asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)),, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") as to the Labor Code provisions and causes of action identified in this paragraph and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, statutory penalties, civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1199, 2699(f)), 2699.3, 2699.5),penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide suitable seating; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200; and, based on the foregoing, claims for civil penalties pursuant to PAGA.

For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

## VIII. ATTORNEYS' FEES AND COSTS

Settlement Class Counsel have litigated the Lawsuit since January 3, 2017. It is customary for courts to award to class counsel attorneys' fees based upon a percentage of the maximum settlement amount for the benefit of a class. In this case, Settlement Class Counsel will request an award of 33.3% of the Maximum Settlement Amount. Settlement Class Counsel also will seek reimbursement of reasonable costs that they have incurred on behalf of the Settlement Class, which amount shall be paid from the Maximum Settlement Amount.

## IX. INCENTIVE AWARDS & OTHER PAYMENTS TO THE SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs will request the Court to approve incentive award for each Plaintiff in the following amounts Plaintiff Ochoa ($7,500), Plaintiff Velazquez ($3,000), and Plaintiff Fregoso ($3,000) for their work as named plaintiffs in the action. In addition, Plaintiffs are entering into individual settlement agreements containing general releases of all claims against Defendants for which they will receive the following additional monetary amounts: Plaintiff Ochoa ($12,500), Plaintiff Velazquez ($7,000), and Plaintiff Fregoso ($7,000). The incentive awards and individual settlement agreement payments will be paid from the Maximum Settlement Amount, and they are in addition to the payments to Plaintiffs of their share of the settlement as members of the Settlement Class.

## X. PAYMENT TO THE CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY

Plaintiffs shall apply to the Court for approval of payments under PAGA. The parties agree to allocate o~~Three~~Five Hundred Thousand Dollars ($~~300~~500,000) of the Potential Gross Settlement Proceeds, as defined below, to PAGA penalties (the "PAGA Allocation"). Seventy-five percent (75%) of the PAGA Allocation shall be paid to the LWDA (the "LWDA Payment"). The remaining twenty-five percent of the PAGA allocation (the "PAGA Group Share") shall be distributed to "PAGA Group Members" as "Individual PAGA Payments." PAGA Group Members are those individuals employed by VSS as non-exempt (hourly) employees in California at any time between January 3, 2016 and May 26, 2021. If you are a PAGA Group Member, you will receive your Individual PAGA Payment regardless of any action you take in response to this Notice.

## XI. CALCULATION OF PAYMENTS

The "Potential Gross Settlement Proceeds" shall equal the Maximum Settlement Amount minus the total of: (1) Court-approved attorneys' fees; (2) Court-approved reimbursement of costs; (3) Court-approved incentive awards; (4) Court-approved payments to Plaintiffs in connection with their general release of all claims (described above); and (5) the fees and costs of the Claims Administrator. The Potential Gross Settlement Proceeds minus the

PAGA Allocation (as defined above) shall be known as the "Settlement Class Member Allocation." The amount available for distribution to each member of the Settlement Class shall be calculated as follows:

       1.     <u>Calculation of Settlement Class Member's Individual Settlement Award</u>: Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation. The parties estimate that your pre-tax share of the Settlement Class Member Allocation will be approximately $____, based upon ____ workweeks worked during the relevant period.

       2.     <u>Calculation of PAGA Group Member's Individual PAGA Payment</u>: In addition to any Individual Settlement Award, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share. The parties estimate that your pre-tax share of PAGA Group Share will be approximately $____, based upon ____ workweeks worked during the relevant period.

       3.     <u>Tax Liability and Net Payments</u>: The Individual Settlement Awards will be allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099. The Individual PAGA Payments will be denominated as non-wages (*i.e.*, penalties) that will be reported to the IRS on Form 1099. The Claims Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with State and Federal tax requirements. Settlement Class Members shall be responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold Defendants and the Claims Administrator harmless and indemnify it or them for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority relating in any way to the tax treatment of the payments made pursuant to this Settlement Agreement. All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void. Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members.

       4.     <u>Payment of Settlement Funds Will Not Be Considered By Defendants As Having Any Effect on Any Employee Benefit Plan and Similar Plans</u>: The payment to any Settlement Class Member or PAGA Group Member as provided for in this Settlement Agreement is not and shall not be deemed by Defendants to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation and/or wages under any employee benefit plan, employment policy, or stock option plan of or sponsored by the Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Any such payment to any Settlement Class Member or PAGA Group Member shall not be considered by Defendants to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Defendant and each of its present and former parent corporations and affiliates retain the right to modify and/or amend the language of their employee benefit plans, employment policies, and stock option plans, and to seek to have modified and/or amended the language of any jointly trusteed benefit plans, to make clear that any amounts paid as a result of this Settlement Agreement are not considered by Defendants as compensation or wages, or payments for "hours worked," as defined by the applicable plans and policies, and that no additional contributions or benefits will be provided by Defendants by reason of the settlement.

**XII.    FINAL APPROVAL HEARING**

       A hearing (the "Final Approval Hearing") has been scheduled on [INSERT Date and Time of Final Approval Hearing], before the Honorable Maren E. Nelson in Department SSC17 of the above-captioned court, located at Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, at which time the Court will determine: (1) whether the proposed settlement should be approved as fair, reasonable, and adequate to members of the Settlement Class; (2) whether the application of Settlement Class Counsel for an award of attorneys' fees and costs should be approved and in what amount; (3) whether the application for an incentive award for Plaintiffs should be approved and in what amount; (4) whether the allocation for PAGA penalties is fair and

- 7 -

adequate; and (5) whether a proposed Final Approval Order should be entered, dismissing the Lawsuit with prejudice. You may also confirm the date and time of the Final Approval Hearing with Class Counsel.

**<u>You Are Not Required To Attend The Final Approval Hearing.</u>**

You are welcome to attend the Final Approval Hearing at your own expense. You may request permission to speak at the Final Approval Hearing. You may hire your own attorney at your own expense to speak at the Final Approval Hearing. If the Court is open to the public, you and/or your attorney may appear at the Final Approval Hearing in person. If you wish to appear in person at the hearing, you must practice social distancing, face masks, and all existing COVID-19 protocols. Please refer to lacourt.org for the most up to date procedures. If the Court is not open to the public and/or you wish to be heard at the Final Approval Hearing via videoconference, you must request permission from the Court so that appropriate arrangements can be made. To do so, send a letter to the Court (at the address set forth above in this Section of this Notice) with a copy to the Administrator (at the address set forth in Section VI of this Notice), Settlement Class Counsel, and Defendants' counsel (at the addresses set forth Section XIV of this Notice) no later than [INSERT Date], requesting permission to speak at the Final Approval Hearing via videoconference. Such letter should be signed and should contain a brief statement of the position that you wish to put before the Court at the Final Approval Hearing and the basis for that position.

## XIII.   COUNSEL FOR THE PARTIES

The service addresses for Settlement Class Counsel and Defendant's counsel are as follows:

| Class Counsel: | Defendants' Counsel: |
|---|---|
| Joseph Lavi, Esq. | ~~Phillip J. Eskenazi, Esq.~~ |
| Vincent C. Granberry, Esq. | Kirk A. Hornbeck, Esq. |
| **LAVI & EBRAHIMIAN, LLP** | **HUNTON ANDREWS KURTH LLP** |
| 8889 W. Olympic Boulevard, Suite 200 | 550 South Hope Street, Suite 2000 |
| Beverly Hills, California 90211 | Los Angeles, CA 90071 |
| [phone number] | (213) 532-2000 |

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604
[phone number]

## XIV.   REMINDER OF IMPORTANT SETTLEMENT DATES AND DEADLINES

The following are important dates and deadlines under the proposed settlement:

| | |
|---|---|
| Deadline To Object To Settlement: | [INSERT: 45 days after notice] |
| Exclusion Deadline: | [INSERT] |
| ~~Deadline To Object To Attorneys' Fees:~~ | ~~[INSERT: 45 days after notice]~~ |
| Final Approval Hearing: | [INSERT] |

## XV.   AVAILABILITY OF COMPLETE SETTLEMENT AGREEMENT

This Notice contains a summary of the proposed settlement contained in the Settlement Agreement that is on file with the Clerk of the Court. The complete Settlement Agreement may be inspected during normal business hours at the offices of the Clerk. If the office of the Clerk of the Court is not open to the public, you may contact the Administrator for more information. Documents about the case, including the Settlement Agreement, the motion for attorneys' fees/costs, etc. can also be obtained from Class Counsel.

## XVI.   ADDITIONAL INFORMATION

For more detailed information concerning the matters involved in the Lawsuit, please refer to the pleadings, the Settlement Agreement, the orders entered in the Lawsuit, and to the other papers filed in the Lawsuit, which may be inspected at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, on dates and at times when the Court is open to the public. In the alternative, additional information regarding the settlement may

be found at the following website: [INSERT website address].  Please note that any final judgment in this lawsuit will be posted to that website.

Any questions concerning the matters contained in this Notice may be directed to the Administrator or Settlement Class Counsel (at the addresses set forth above).

You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**Do Not Call Or Write The Court To Obtain Copies Of Documents
Or To Ask Questions About The Settlement.**

# Exhibit 6

# NOTICE OF CLASS ACTION SETTLEMENT AND
# FINAL APPROVAL HEARING
### *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*
### Los Angeles County Superior Court
### Case No. BC661822

---

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.
YOUR RIGHTS MAY BE AFFECTED
BY THE PROPOSED SETTLEMENT DESCRIBED IN
THIS NOTICE.**

---

**TO:    All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.**

On [INSERT Date of Preliminary Approval Order], the Court in this lawsuit granted preliminary approval to a proposed settlement as set forth in an Amended Class Action Settlement Agreement (the "Settlement Agreement"). If the settlement is granted final approval by the Court, Defendants (as defined below) will be released from all claims that were asserted, or could have been asserted based on the facts alleged, in this lawsuit (*i.e.*, "Released Claims" as defined below). The Settlement Class Representatives and Settlement Class Counsel (as defined below) believe the proposed settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class (as defined below). This Notice informs you of the proposed settlement and its terms as well as your rights to object to the terms of the proposed settlement, dispute the number of workweeks on which your settlement payment will be calculated, and to exclude yourself from the proposed settlement. This Notice also explains how you can obtain more information about the settlement. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

| Your Legal Rights And Options In This Settlement | |
|---|---|
| **Do nothing** | If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment. **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.** |
| **Ask to Be Excluded** | You are entitled to opt-out of the Settlement Class by submitting a written request to be excluded from the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than [**INSERT: 45 days after notice**]. Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that will be released by members of the Settlement Class. Note that if you are a member of the PAGA Group (as defined below), you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment (as defined below), even if you timely and validly exclude yourself from the Settlement Class. |
| **Object** | You may object to the settlement by submitting a written objection to the Claims Administrator no later than [**INSERT: 45 DAYS AFTER NOTICE**]. If you object to the settlement, you still will be considered a Settlement Class Member. Even if you do |

| | |
|---|---|
| | not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection. |
| **Dispute Your Workweeks Number** | You will be provided with the number of workweeks that VSS's records show you were employed by VSS for the time periods between: (1) January 3, 2013 and May 26, 2021; and (2) January 3, 2016 and May 26, 2021.  Those numbers will be used to calculate the amount of money you are entitled to receive from the settlement.  You may dispute the accuracy of those workweek numbers.  To do so, please provide the Claims Administrator with any information and documentation (if any) you have to substantiate your dispute by [deadline].  The Claims Administrator will resolve your dispute. |
| **Attend the Final Approval Hearing** | You may appear at the Final Approval Hearing by telephone, videoconference, or in person.  For more information about scheduling a remote appearance, please see the Court's website at https://my.lacourt.org/laccwelcome.  You do not need advance permission from the Court to appear at the Final Approval Hearing.  The Final Approval Hearing will occur as follows:<br><br>Date: [Date], 2022<br>Time: [Time]<br>Location:  Spring Street Courthouse<br>Department SSC17<br>312 North Spring Street<br>Los Angeles, California 90012 |

I.    SUMMARY

Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso (collectively, "Plaintiffs") have brought a lawsuit (the "Lawsuit") against Defendants Victoria's Secret Stores, LLC ("VSS"), L Brands, Inc. (now known as Bath & Body Works, Inc.), Limited Brands, Inc., and The Limited, Inc. (collectively, "Defendants") on behalf of themselves and other current and former non-exempt (hourly) employees of VSS.  The Lawsuit is styled as *Elizabeth Ochoa, et al. v. L Brands, Inc., et al.*, Los Angeles County Superior Court Case No. BC661822.

Plaintiffs allege that Defendants violated the California Labor Code based on alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide suitable seating; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200.  Plaintiffs also seek penalties against Defendants pursuant to the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on the aforementioned claims and a claim that Defendants failed to provide VSS employees with suitable seating.

Defendants deny Plaintiffs' allegations in their entirety.  Defendants contend that Plaintiffs and other Settlement Class Members properly received all of the rights and benefits to which they are entitled under California law.

Plaintiffs and Defendants conducted substantial formal discovery and informal investigation in connection with the claims asserted in the Lawsuit.  The parties also have researched and analyzed the relevant legal and factual issues arising from all of the claims that are alleged in, or could have been alleged in, the Lawsuit.  Defendants provided Plaintiffs with sufficient information to allow Plaintiffs to evaluate Defendants' potential exposure in the Lawsuit.

The parties acknowledge the mutual costs and risks of litigation.  The mutual costs and risks of continuing to prosecute and defend the Lawsuit have led the parties to resolve the Lawsuit by way of settlement.

## II.    CLASS DEFINITION

The Lawsuit is being settled as a class action.  In a class action, a plaintiff or plaintiffs, also referred to as class representative(s), sue on behalf of themselves and other persons with similar claims.  The Court has conditionally approved a class for settlement purposes only.  The settlement class ("Settlement Class") is defined as follows:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021.**

According to VSS's records, you are a member of the Settlement Class.  In addition to any individual settlement award to which you may be entitled as a member of the Settlement Class, you may be eligible to receive a share of PAGA penalties allocated in the Settlement Agreement.  You qualify for this additional payment if you are a member of the "PAGA Group," which is defined as:

> **All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021.**

Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class.

If the Court approves the settlement, the settlement will bind all Settlement Class Members who have not excluded themselves from the Settlement Class. (You will have the opportunity to exclude yourself from the Settlement Class pursuant to the procedure described below.)  The Court has not yet determined that the Lawsuit could be litigated as a class action.  If the Court does not approve this settlement, the conditional class certification for settlement purposes will have no effect or precedential value in any subsequent proceedings in the Lawsuit or in any other litigation.

## III.    SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

The Court has appointed Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso as the Settlement Class Representatives to represent the Settlement Class.  The Court appointed the following attorneys to represent the Settlement Class as Settlement Class Counsel:

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211

David M. deRubertis, Esq.
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604

## IV.    SETTLEMENT AMOUNT

The proposed settlement obligates VSS to pay a settlement amount (called the "Maximum Settlement Amount" in the Settlement Agreement) of Five Million Dollars and No Cents ($5,000,000).  Except for the payment of all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions, and unemployment taxes), which are the responsibility of VSS and shall be paid by VSS in addition to the Maximum Settlement Amount, the Maximum Settlement Amount shall be "all inclusive," including: any damages, penalties, or other relief arising from the alleged Labor Code violations committed against the Settlement Class and PAGA Group by Defendants; any failure to pay the Settlement Class Members and PAGA Group Members minimum or overtime wages, as a result of off-the-clock work or otherwise; any failure to provide Settlement Class Members and PAGA Group Members with compliant meal breaks or rest breaks, or appropriate meal and rest break premiums or "separate rest break pay;" any failure to provide Settlement Class Members and PAGA Group Members with reporting time pay, any failure to timely pay Settlement Class Members and PAGA

Group Members all wages due upon the termination of their employment with Defendants; any failure to provide Settlement Class Members and PAGA Group Members with accurate wage statements or maintain accurate records; any failure to provide PAGA Group members with suitable seating; any restitution to Settlement Class Members and PAGA Group Members under California Business & Professions Code Section 17200 *et seq.*, based on the aforementioned claims; any PAGA penalties based upon the aforementioned alleged California Labor Code violations; interest, attorneys' fees and costs, as approved by the Court; the fees and costs of the Claims Administrator in connection with settlement and claims administration, as approved by the Court, including any fees and costs in connection with notice, the claims process, and the exclusion process, which is not to exceed One Hundred And Fifty-Five Thousand Dollars ($155,000); settlement payments; the incentive awards to Plaintiffs, as approved by the Court; and all other settlement-related payments and costs. VSS's sole monetary obligations under this Settlement Agreement shall be the Maximum Settlement Amount and the employer-paid withholding and payroll taxes and similar expenses.

## V.      SUMMARY OF YOUR OPTIONS

As a member of the Settlement Class, you have the options described below.

1.      **Do Nothing.**  If you do nothing in response to this Notice, you will remain a member of the Settlement Class, you will be bound by the Settlement Agreement, you will give up the claims that are released by the Settlement Agreement, and you will receive a cash payment.  **YOU DO NOT NEED TO SUBMIT ANY PAPERWORK TO RECEIVE A CASH PAYMENT.**

2.      **Exclude Yourself From the Settlement Class.**  You are entitled to exclude yourself from the Settlement Class by submitting a written request to be excluded from (or "opt-out" of) the settlement, which must be post-marked and returned to the Claims Administrator at the address provided below by no later than **[INSERT: 45 DAYS AFTER NOTICE]**.  Such written requests for exclusion must contain your name, address, telephone number, and the last four (4) digits of the Social Security Number.  Such written requests also must state the following in identical or substantially similar language: "I wish to exclude myself from the settlement reached in the matter of *Ochoa vs. Victoria's Secret Stores, LLC, et al*.  I understand that by excluding myself I will not receive any money from the settlement of the class claims in this matter."  Any person who properly opts-out of the settlement using this procedure will not be entitled to any cash payment, and you will retain all of the claims that will be released by members of the Settlement Class.  If you are a member of the PAGA Group, you may not request exclusion from the PAGA Group and you will receive your Individual PAGA Payment even if you timely and validly exclude yourself from the Settlement Class.

3.      **Object to the Settlement.**  You may object to the settlement by submitting a written objection to the Claims Administrator no later than **[INSERT: 45 DAYS AFTER NOTICE]**.  The written objection must be signed and dated, and additionally state your name, dates of employment with VSS, the case name and number, and the basis for the objection.  If you object to the settlement, you still will be considered a Settlement Class Member, unless you also submit a valid and timely request for exclusion in the manner described above.  Even if you do not submit a written objection, you still may appear at the Final Approval hearing to lodge an objection.

Members of the Settlement Class who fail to submit timely written objections in the manner specified above shall be deemed to have waived any objections to the settlement and shall forever be foreclosed from making any objection (whether by appeal or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs.

4.      **Dispute the Number of Your Workweeks**:  The money you are eligible to receive from the Settlement is based on the number of workweeks you were employed during the Settlement Class and PAGA Group time periods, respectively.  For the period between January 3, 2013 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  For the period between January 3, 2016 and May 26, 2021, VSS's records indicate that you were employed for [INSERT] workweeks.  You may dispute the number of workweeks you were employed by VSS during those time periods.  The deadline to submit your workweek dispute is **[INSERT: 45 DAYS AFTER NOTICE.]** To do so, you must mail to the Claims Administrator a written letter with your name, address, telephone number, and the last four (4) digits of the Social Security Number and any information and documentation you have to substantiate your dispute.  (Supporting documentation is not mandatory for you to make such a dispute.)  After you send your dispute, the Claims Administrator will promptly notify Defendant and Settlement Class Counsel of your dispute and provide any information and documentation that you have furnished regarding your dispute. VSS shall then investigate the dispute.  In all such disputes, VSS's records will carry a

presumption of correctness. The Claims Administrator shall review VSS's response to the dispute as well any additional information provided by you or Settlement Class Counsel and make a determination on the dispute. The Claims Administrator's determination shall be final and binding on all parties without right of appeal.

## VI.    SETTLEMENT ADMINISTRATOR

The settlement process will be administered by CPT Group, Inc. (the "Claims Administrator"), a company that provides settlement administration services. The Court has approved CPT Group, Inc. to act as the Claims Administrator for purposes of this settlement. The fees and costs of the Administrator shall be paid out of and deducted from the Maximum Settlement Amount. The Settlement Administrator can be contacted at the following address:

CPT Group, Inc.
[address line 1]
[address line 2]
[phone number] (toll free)

## VII.   RELEASE AND WAIVER

As of the Effective Date, or at the time that VSS fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (*i.e.*, Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, as defined in the Settlement Agreement, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims." The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined below.

For purposes of this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, *et seq.* ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA") based on alleged underlying

California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (*e.g.*, permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating.

In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims.

## VIII.   ATTORNEYS' FEES AND COSTS

Settlement Class Counsel have litigated the Lawsuit since January 3, 2017.  It is customary for courts to award to class counsel attorneys' fees based upon a percentage of the maximum settlement amount for the benefit of a class.  In this case, Settlement Class Counsel will request an award of 33.3% of the Maximum Settlement Amount. Settlement Class Counsel also will seek reimbursement of reasonable costs that they have incurred on behalf of the Settlement Class, which amount shall be paid from the Maximum Settlement Amount.

## IX.   INCENTIVE AWARDS & OTHER PAYMENTS TO THE SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs will request the Court to approve incentive award for each Plaintiff in the following amounts Plaintiff Ochoa ($7,500), Plaintiff Velazquez ($3,000), and Plaintiff Fregoso ($3,000) for their work as named plaintiffs in the action.  In addition, Plaintiffs are entering into individual settlement agreements containing general releases of all claims against Defendants for which they will receive the following additional monetary amounts: Plaintiff Ochoa ($12,500), Plaintiff Velazquez ($7,000), and Plaintiff Fregoso ($7,000).  The incentive awards and individual settlement agreement payments will be paid from the Maximum Settlement Amount, and they are in addition to the payments to Plaintiffs of their share of the settlement as members of the Settlement Class.

## X.   PAYMENT TO THE CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY

Plaintiffs shall apply to the Court for approval of payments under PAGA.  The parties agree to allocate Five Hundred Thousand Dollars ($500,000) of the Potential Gross Settlement Proceeds, as defined below, to PAGA penalties (the "PAGA Allocation").  Seventy-five percent (75%) of the PAGA Allocation shall be paid to the LWDA (the "LWDA Payment").  The remaining twenty-five percent of the PAGA allocation (the "PAGA Group Share") shall be distributed to "PAGA Group Members" as "Individual PAGA Payments."  PAGA Group Members are those individuals employed by VSS as non-exempt (hourly) employees in California at any time between January 3, 2016 and May 26, 2021.  If you are a PAGA Group Member, you will receive your Individual PAGA Payment regardless of any action you take in response to this Notice.

## XI.   CALCULATION OF PAYMENTS

The "Potential Gross Settlement Proceeds" shall equal the Maximum Settlement Amount minus the total of: (1) Court-approved attorneys' fees; (2) Court-approved reimbursement of costs; (3) Court-approved incentive awards; (4) Court-approved payments to Plaintiffs in connection with their general release of all claims (described above); and (5) the fees and costs of the Claims Administrator.  The Potential Gross Settlement Proceeds minus the PAGA Allocation (as defined above) shall be known as the "Settlement Class Member Allocation."  The amount available for distribution to each member of the Settlement Class shall be calculated as follows:

1.    <u>Calculation of Settlement Class Member's Individual Settlement Award</u>:  Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked

during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation. The parties estimate that your pre-tax share of the Settlement Class Member Allocation will be approximately $_____, based upon _____ workweeks worked during the relevant period.

   2. <u>Calculation of PAGA Group Member's Individual PAGA Payment</u>: In addition to any Individual Settlement Award, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share. The parties estimate that your pre-tax share of PAGA Group Share will be approximately $_____, based upon _____ workweeks worked during the relevant period.

   3. <u>Tax Liability and Net Payments</u>: The Individual Settlement Awards will be allocated as follows: thirty-three percent (33%) to alleged unpaid wages, which will be reported to the IRS on Form W-2; and thirty-three percent (33%) as interest, which will be reported to the IRS on Form 1099; and thirty-four percent (34%) as penalties, which will be reported to the IRS on Form 1099. The Individual PAGA Payments will be denominated as non-wages (*i.e.*, penalties) that will be reported to the IRS on Form 1099. The Claims Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with State and Federal tax requirements. Settlement Class Members shall be responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold Defendants and the Claims Administrator harmless and indemnify it or them for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority relating in any way to the tax treatment of the payments made pursuant to this Settlement Agreement. All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void. Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members.

   4. <u>Payment of Settlement Funds Will Not Be Considered By Defendants As Having Any Effect on Any Employee Benefit Plan and Similar Plans</u>: The payment to any Settlement Class Member or PAGA Group Member as provided for in this Settlement Agreement is not and shall not be deemed by Defendants to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation and/or wages under any employee benefit plan, employment policy, or stock option plan of or sponsored by the Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Any such payment to any Settlement Class Member or PAGA Group Member shall not be considered by Defendants to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan, employment policy, or stock option plan of or sponsored by Defendants or any of its present or former parent corporations or affiliates or any jointly trusteed benefit plans. Defendant and each of its present and former parent corporations and affiliates retain the right to modify and/or amend the language of their employee benefit plans, employment policies, and stock option plans, and to seek to have modified and/or amended the language of any jointly trusteed benefit plans, to make clear that any amounts paid as a result of this Settlement Agreement are not considered by Defendants as compensation or wages, or payments for "hours worked," as defined by the applicable plans and policies, and that no additional contributions or benefits will be provided by Defendants by reason of the settlement.

## XII. FINAL APPROVAL HEARING

   A hearing (the "Final Approval Hearing") has been scheduled on [INSERT Date and Time of Final Approval Hearing], before the Honorable Maren E. Nelson in Department SSC17 of the above-captioned court, located at Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, at which time the Court will determine: (1) whether the proposed settlement should be approved as fair, reasonable, and adequate to members of the Settlement Class; (2) whether the application of Settlement Class Counsel for an award of attorneys' fees and costs should be approved and in what amount; (3) whether the application for an incentive award for Plaintiffs should be approved and in what amount; (4) whether the allocation for PAGA penalties is fair and adequate; and (5) whether a proposed Final Approval Order should be entered, dismissing the Lawsuit with prejudice. You may also confirm the date and time of the Final Approval Hearing with Class Counsel.

<u>**You Are Not Required To Attend The Final Approval Hearing.**</u>

You are welcome to attend the Final Approval Hearing at your own expense.  You may request permission to speak at the Final Approval Hearing.  You may hire your own attorney at your own expense to speak at the Final Approval Hearing.  If the Court is open to the public, you and/or your attorney may appear at the Final Approval Hearing in person.  If you wish to appear in person at the hearing, you must practice social distancing, face masks, and all existing COVID-19 protocols. Please refer to lacourt.org for the most up to date procedures.  If the Court is not open to the public and/or you wish to be heard at the Final Approval Hearing via videoconference, you must request permission from the Court so that appropriate arrangements can be made.  To do so, send a letter to the Court (at the address set forth above in this Section of this Notice) with a copy to the Administrator (at the address set forth in Section VI of this Notice), Settlement Class Counsel, and Defendants' counsel (at the addresses set forth Section XIV of this Notice) no later than [INSERT Date], requesting permission to speak at the Final Approval Hearing via videoconference.  Such letter should be signed and should contain a brief statement of the position that you wish to put before the Court at the Final Approval Hearing and the basis for that position.

## XIII.    COUNSEL FOR THE PARTIES

The service addresses for Settlement Class Counsel and Defendant's counsel are as follows:

| Class Counsel: | Defendants' Counsel: |
|---|---|
| Joseph Lavi, Esq. | Kirk A. Hornbeck, Esq. |
| Vincent C. Granberry, Esq. | **HUNTON ANDREWS KURTH LLP** |
| **LAVI & EBRAHIMIAN, LLP** | 550 South Hope Street, Suite 2000 |
| 8889 W. Olympic Boulevard, Suite 200 | Los Angeles, CA 90071 |
| Beverly Hills, California 90211 | (213) 532-2000 |
| [phone number] | |
| | |
| David M. deRubertis, Esq. | |
| **The deRubertis Law Firm** | |
| 4219 Coldwater Canyon Avenue | |
| Studio City, California 91604 | |
| [phone number] | |

## XIV.    REMINDER OF IMPORTANT SETTLEMENT DATES AND DEADLINES

The following are important dates and deadlines under the proposed settlement:

| Deadline To Object To Settlement: | [INSERT: 45 days after notice] |
|---|---|
| Exclusion Deadline: | [INSERT: 45 days after notice] |
| Final Approval Hearing: | [INSERT] |

## XV.    AVAILABILITY OF COMPLETE SETTLEMENT AGREEMENT

This Notice contains a summary of the proposed settlement contained in the Settlement Agreement that is on file with the Clerk of the Court.  The complete Settlement Agreement may be inspected during normal business hours at the offices of the Clerk.  If the office of the Clerk of the Court is not open to the public, you may contact the Administrator for more information.  Documents about the case, including the Settlement Agreement, the motion for attorneys' fees/costs, etc. can also be obtained from Class Counsel.

## XVI.    ADDITIONAL INFORMATION

For more detailed information concerning the matters involved in the Lawsuit, please refer to the pleadings, the Settlement Agreement, the orders entered in the Lawsuit, and to the other papers filed in the Lawsuit, which may be inspected at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, California 90012, on dates and at times when the Court is open to the public.  In the alternative, additional information regarding the settlement may be found at the following website: [INSERT website address].  Please note that any final judgment in this lawsuit will be posted to that website.

Any questions concerning the matters contained in this Notice may be directed to the Administrator or Settlement Class Counsel (at the addresses set forth above).

You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**Do Not Call Or Write The Court To Obtain Copies Of Documents
Or To Ask Questions About The Settlement.**

# Exhibit 7

DocuSign Envelope ID: 2D6048A7-CB99-4889-BA87-2D23E3F6A275

Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Vincent C. Granberry, Esq. (State Bar No. 276483)
vgranberry@lelawfirm.com
Melissa A. Huether, Esq. (State Bar No. 316604)
mhuether@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Attorneys for PLAINTIFFS ELIZABETH OCHOA, MONICA VELAZQUEZ, and
CRYSTAL FREGOSO on behalf of themselves and others similarly situated.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE

| | |
|---|---|
| ELIZABETH OCHOA, on behalf of herself and others similarly situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, Inclusive,<br><br>DEFENDANTS. | Case No.: BC661822<br><br>**CLASS ACTION**<br><br>*[Assigned for All Purposes to the Hon. Maren E. Nelson, SSC Dept. 17]*<br><br>**DECLARATION OF ELIZABETH OCHOA IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

DocuSign Envelope ID: 2D6048A7-CB99-4889-BA87-2D23E3F6A275

I, Elizabeth Ochoa, declare:

1.    I am over the age of 18 and am the one of the named Plaintiffs and class representatives in this matter. I have personal knowledge of the matters stated herein and if called and sworn as a witness, I would and could competently testify under oath thereto.

2.    This declaration is submitted in support of Preliminary Approval of the Class Action settlement in this matter.

3.    I worked for Defendant Victoria's Secret Stores, LLC ("Defendant") from approximately May of 2014 through approximately February 2, 2016 as an hourly non-exempt employee.

4.    From the time of the filing of the lawsuit, I have understood that this is a class action lawsuit where I represent the interests of all non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.

5.    I believe while working for Defendant, I and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, were subject to the same policies and procedures regarding payment of wages for all hours worked, payment of overtime premium wages at the regular rate of pay, payment of meal break premium wages, payment of rest break premium wages, payment of rest break wages within commission-based compensation structure, wage statements, and final payment of wages. I believe that the claims of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, are identical to mine because Defendant's policies and procedures applied to all of us.

6.    I understand that I must continue to consider and protect the interests of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.  I have been protecting the rights of myself and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, since approximately July of 2016 when first I started looking for an attorney before this lawsuit was filed.  I have been and continue to place the interests of all other non-exempt

1    employees who worked for Defendant in California at any time between January 3, 2013 and May

2    26, 2021 before my own.

3           7.      I provided information and been available to my attorneys since approximately July

4    of 2016 when I was searching for my attorney. I have helped and been willing to support the

5    lawsuit in any way I can for the last approximate 70 months since July of 2016 when I began

6    searching for an attorney for the claims in this lawsuit.  I have searched for an attorney, met with

7    my attorneys to see if they would represent me, met with my attorneys to discuss the Defendant's

8    policies, procedures, and practices for receiving bonuses and commissions, clocking in and out,

9    paying wages for the hours that we worked, payment of premium and overtime wages, undergoing

10   security checks, wage statements, and final payment of wages.  I spent time searching for policies

11   and procedures that were given to me during my employment, any timecards I had, any pay stubs I

12   had, W2s, handbooks and other documents related to my employment. I produced all the

13   documents to my attorneys. I responded to almost all of my attorneys' telephone calls and

14   interviews and I met with them in person and/or telephonically to discuss any questions they had

15   about my employment, Defendant's policies and procedures, Defendant's practice and policy of

16   paying bonuses and commissions, paying of premiums and overtime wages, providing of accurate

17   wage statements, final payment of wages, or the documents I had provided to them. Additionally, I

18   attended my deposition on July 30, 2019. I was available during the full day mediations in this

19   case.  Once the settlement agreement was finalized, I discussed with my attorneys on multiple

20   occasions to review and discuss the settlement agreement before signing.

21          8.      I also understand that in the event this matter proceeds to trial, I must come to court

22   to participate in the trial. I will come to court if I am needed and have been ready to perform any

23   responsibility that is necessary for this lawsuit.  I know that I took a risk by filing this lawsuit

24   because if I lost, I would have to pay for all the costs incurred by the Defendant in the lawsuit. I

25   also have the risk of losing income for any time that I would have to spend fulfilling my

26   responsibilities including having to attend the trial. I also believe I have taken a risk by filing this

27   lawsuit because my employers in the future may find out that I sued my employer, and they may

28

---

**DECLARATION OF ELIZABETH OCHOA IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

3

1   not like it. The other employees will be receiving money from this lawsuit and they have not had

2   to file a lawsuit, look for an attorney, or take the risks that I have had to take.

3       9.    I understand that the settlement we have reached in this case must be approved by

4   the Court and I must protect the interests of all non-exempt employees who worked for Defendant

5   in California at any time between January 3, 2013 and May 26, 2021.

6       10.    I am also aware that my attorneys in this action have agreed to split any fees

7   received in this action and I have consented to this agreement in writing.

8       I declare under penalty of perjury, under the laws of State of California, that the foregoing is

9   true and correct.    June 9, 2022

10      Executed this _____ day of June 2022, at _____, California.

11

12      _____
        Elizabeth Ochoa

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 

---

**DECLARATION OF ELIZABETH OCHOA IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**4**

# Exhibit 8

DocuSign Envelope ID: A7B7BB76-498F-419D-A441-33D62C0EFF85

Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Vincent C. Granberry, Esq. (State Bar No. 276483)
vgranberry@lelawfirm.com
Melissa A. Huether, Esq. (State Bar No. 316604)
mhuether@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Attorneys for PLAINTIFFS ELIZABETH OCHOA, MONICA VELAZQUEZ, and
CRYSTAL FREGOSO on behalf of themselves and others similarly situated.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE

| | |
|---|---|
| MONICA VELAZQUEZ, on behalf of herself and others similarly situated, <br><br> PLAINTIFF, <br><br> vs. <br><br> L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, Inclusive, <br><br> DEFENDANTS. | Case No.:  BC661822 <br><br> **CLASS ACTION** <br><br> [*Assigned for All Purposes to the Hon. Maren E. Nelson, SSC Dept. 17*] <br><br> **DECLARATION OF MONICA VELAZQUEZ IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

DocuSign Envelope ID: A7B7BB76-498F-419D-A441-33D62C0EFF85

I, Monica Velazquez, declare:

1.      I am over the age of 18 and am the one of the named Plaintiffs and class representatives in this matter. I have personal knowledge of the matters stated herein and if called and sworn as a witness, I would and could competently testify under oath thereto.

2.      This declaration is submitted in support of Preliminary Approval of the Class Action settlement in this matter.

3.      I worked for Defendant Victoria's Secret Stores, LLC ("Defendant") from approximately April 21, 2015 through approximately October 26, 2017 as an hourly non-exempt employee.

4.      From the time of the filing of the lawsuit, I have understood that this is a class action lawsuit where I represent the interests of all non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.

5.      I believe while working for Defendant, I and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, were subject to the same policies and procedures regarding payment of wages for all hours worked, payment of overtime premium wages at the regular rate of pay, payment of meal break premium wages, payment of rest break premium wages, payment of rest break wages within commission-based compensation structure, wage statements, and final payment of wages. I believe that the claims of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, are identical to mine because Defendant's policies and procedures applied to all of us.

6.      I understand that I must continue to consider and protect the interests of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.  I have been protecting the rights of myself and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, since approximately October of 2017 when first I started looking for an attorney before this lawsuit was filed.  I have been and continue to place the interests of all other non-exempt

---

**DECLARATION OF MONICA VELAZQUEZ IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2

employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021 before my own.

7. I provided information and been available to my attorneys since approximately October of 2017 when I was searching for my attorney. I have helped and been willing to support the lawsuit in any way I can for the last approximate 55 months since October of 2017 when I began searching for an attorney for the claims in this lawsuit. I have searched for an attorney, met with my attorneys to see if they would represent me, met with my attorneys to discuss the Defendant's policies, procedures, and practices for receiving bonuses and commissions, clocking in and out, paying wages for the hours that we worked, payment of premium and overtime wages, undergoing security checks, wage statements, and final payment of wages. I spent time searching for policies and procedures that were given to me during my employment, any timecards I had, any pay stubs I had, W2s, handbooks and other documents related to my employment. I produced all the documents to my attorneys. I responded to almost all of my attorneys' telephone calls and interviews and I met with them in person and/or telephonically to discuss any questions they had about my employment, Defendant's policies and procedures, Defendant's practice and policy of paying bonuses and commissions, paying of premiums and overtime wages, providing of accurate wage statements, final payment of wages, or the documents I had provided to them. I was available during the full day mediations in this case. Once the settlement agreement was finalized, I discussed with my attorneys on multiple occasions to review and discuss the settlement agreement before signing.

8. I also understand that in the event this matter proceeds to trial, I must come to court to participate in the trial. I will come to court if I am needed and have been ready to perform any responsibility that is necessary for this lawsuit. I know that I took a risk by filing this lawsuit because if I lost, I would have to pay for all the costs incurred by the Defendant in the lawsuit. I also have the risk of losing income for any time that I would have to spend fulfilling my responsibilities including having to attend the trial. I also believe I have taken a risk by filing this lawsuit because my employers in the future may find out that I sued my employer, and they may

**DECLARATION OF MONICA VELAZQUEZ IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
3

DocuSign Envelope ID: A7B7BB76-498F-419D-A441-33D62C0EFF85

not like it. The other employees will be receiving money from this lawsuit and they have not had to file a lawsuit, look for an attorney, or take the risks that I have had to take.

9.      I understand that the settlement we have reached in this case must be approved by the Court and I must protect the interests of all non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.

10.     I am also aware that my attorneys in this action have agreed to split any fees received in this action and I have consented to this agreement in writing.

I declare under penalty of perjury, under the laws of State of California, that the foregoing is true and correct.   June 8, 2022

Executed this ____ day of June 2022, at _____, California.



_____
Monica Velazquez



---

**DECLARATION OF MONICA VELAZQUEZ IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**4**

# Exhibit 9

1  Joseph Lavi, Esq. (State Bar No. 209776)
   jlavi@lelawfirm.com
2  Vincent C. Granberry, Esq. (State Bar No. 276483)
   vgranberry@lelawfirm.com
3  Melissa A. Huether, Esq. (State Bar No. 316604)
   mhuether@lelawfirm.com
4  **LAVI & EBRAHIMIAN, LLP**
   8889 W. Olympic Blvd., Suite 200
5  Beverly Hills, California 90211
   Telephone: (310) 432-0000
6  Facsimile: (310) 432-0001

7  Attorneys for PLAINTIFFS ELIZABETH OCHOA, MONICA VELAZQUEZ, and
   CRYSTAL FREGOSO on behalf of themselves and others similarly situated.

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9       **FOR THE COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE**

10

11 | CRYSTAL FREGOSO, on behalf of herself and others similarly situated, | Case No.:  BC661822 |
   |---|---|
12 | | **CLASS ACTION** |
   | PLAINTIFF, | |
13 | | [*Assigned for All Purposes to the Hon. Maren* |
   | vs. | *E. Nelson, SSC Dept. 17*] |
14 | | |
   | L BRANDS, INC.; LIMITED BRANDS, INC.; | **DECLARATION OF CRYSTAL** |
15 | THE LIMITED, INC.; VICTORIA'S SECRET | **FREGOSO IN SUPPORT OF** |
   | STORES, LLC; and DOES 1 to 100, Inclusive, | **PRELIMINARY APPROVAL OF CLASS** |
16 | | **ACTION SETTLEMENT** |
   | DEFENDANTS. | |

17

18

19

20

21

22

23

24

25

26

27

28

---

**DECLARATION OF CRYSTAL FREGOSO IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
1

DocuSign Envelope ID: CF031545-649C-4D2E-A9A9-757D94B5C8B4

I, Crystal Fregoso, declare:

1.      I am over the age of 18 and am the one of the named Plaintiffs and class representatives in this matter. I have personal knowledge of the matters stated herein and if called and sworn as a witness, I would and could competently testify under oath thereto.

2.      This declaration is submitted in support of Preliminary Approval of the Class Action settlement in this matter.

3.      I worked for Defendant Victoria's Secret Stores, LLC ("Defendant") from approximately November 19, 2014 through approximately October 21, 2017 as an hourly non-exempt employee.

4.      From the time of the filing of the lawsuit, I have understood that this is a class action lawsuit where I represent the interests of all non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.

5.      I believe while working for Defendant, I and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, were subject to the same policies and procedures regarding payment of wages for all hours worked, payment of overtime premium wages at the regular rate of pay, payment of meal break premium wages, payment of rest break premium wages, payment of rest break wages within commission-based compensation structure, wage statements, and final payment of wages. I believe that the claims of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, are identical to mine because Defendant's policies and procedures applied to all of us.

6.      I understand that I must continue to consider and protect the interests of all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021.  I have been protecting the rights of myself and all other non-exempt employees who worked for Defendant in California at any time between January 3, 2013 and May 26, 2021, since approximately October of 2017 when first I started looking for an attorney before this lawsuit was filed.  I have been and continue to place the interests of all other non-exempt

---

**DECLARATION OF CRYSTAL FREGOSO IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2

DocuSign Envelope ID: CF031545-649C-4D2E-A9A9-757D94B5C8B4

1  employees who worked for Defendant in California at any time between January 3, 2013 and May

2  26, 2021 before my own.

3        7.    I provided information and been available to my attorneys since approximately

4  October of 2017 when I was searching for my attorney. I have helped and been willing to support

5  the lawsuit in any way I can for the last approximate 55 months since October of 2017 when I

6  began searching for an attorney for the claims in this lawsuit.  I have searched for an attorney, met

7  with my attorneys to see if they would represent me, met with my attorneys to discuss the

8  Defendant's policies, procedures, and practices for receiving bonuses and commissions, clocking

9  in and out, paying wages for the hours that we worked, payment of premium and overtime wages,

10 undergoing security checks, wage statements, and final payment of wages.  I spent time searching

11 for policies and procedures that were given to me during my employment, any timecards I had, any

12 pay stubs I had, W2s, handbooks and other documents related to my employment. I produced all

13 the documents to my attorneys. I responded to almost all of my attorneys' telephone calls and

14 interviews and I met with them in person and/or telephonically to discuss any questions they had

15 about my employment, Defendant's policies and procedures, Defendant's paying bonuses and

16 commissions, paying of premiums and overtime wages, providing of accurate wage statements,

17 final payment of wages, or the documents I had provided to them.  I was available during the full

18 day mediation in this case.  Once the settlement agreement was finalized, I discussed with my

19 attorneys on multiple occasions to review and discuss the settlement agreement before signing.

20       8.    I also understand that in the event this matter proceeds to trial, I must come to court

21 to participate in the trial. I will come to court if I am needed and have been ready to perform any

22 responsibility that is necessary for this lawsuit.  I know that I took a risk by filing this lawsuit

23 because if I lost, I would have to pay for all the costs incurred by the Defendant in the lawsuit. I

24 also have the risk of losing income for any time that I would have to spend fulfilling my

25 responsibilities including having to attend the trial. I also believe I have taken a risk by filing this

26 lawsuit because my employers in the future may find out that I sued my employer, and they may

27 not like it. The other employees will be receiving money from this lawsuit and they have not had

28

**DECLARATION OF CRYSTAL FREGOSO IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

3

DocuSign Envelope ID: CF031545-649C-4D2E-A9A9-757D94B5C8B4

1    to file a lawsuit, look for an attorney, or take the risks that I have had to take.

2           9.      I understand that the settlement we have reached in this case must be approved by

3    the Court and I must protect the interests of all non-exempt employees who worked for Defendant

4    in California at any time between January 3, 2013 and May 26, 2021.

5           10.     I I am also aware that my attorneys in this action have agreed to split any fees

6    received in this action and I have consented to this agreement in writing.

7           I declare under penalty of perjury, under the laws of State of California, that the foregoing is

8    true and correct.    June 8, 2022

9           Executed this ____ day of June 2022, at _____, California.

10

11                                            _____

12                                                   Crystal Fregoso

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 

---

**DECLARATION OF CRYSTAL FREGOSO IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

4

# Exhibit 10

**Melissa Huether**

| | |
|---|---|
| **From:** | DIR PAGA Unit <lwdadonotreply@dir.ca.gov> |
| **Sent:** | Friday, June 10, 2022 3:49 PM |
| **To:** | Melissa Huether |
| **Subject:** | [SPF FAIL] Thank you for your Proposed Settlement Submission |

06/10/2022 03:49:12 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: https://url.emailprotection.link/?bW-
oFAqkHm681mtOZRhklTaT62XVg3YO_JvhkfuHnZFztNss6PKObfl_9lEwXy_xH8uu3dopx5kpeRVhdYQ97LgWrjYG3B9xpa7F5
JiOhnGm3XRxtbZNafwcGeuZj4_IF

# EXHIBIT C

**FILED**
Superior Court of California
County of Los Angeles

FEB 0 3 2023

David W. Slayton, Executive Officer/Clerk of Court

By: R. Aspiras, Deputy

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF LOS ANGELES

| | |
|---|---|
| ELIZABETH OCHOA, MONICA VELAZQUEZ, and CRYSTAL FREGOSO, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> L BRANDS, INC.; LIMITED BRANDS, INC.; THE LIMITED, INC.; VICTORIA'S SECRET STORES, LLC; and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No.: BC661822 <br><br> ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |

## I. BACKGROUND

Plaintiffs Elizabeth Ochoa, Monica Velazquez, and Crystal Fregoso sue their former employer, Defendant Victoria's Secret Stores, LLC ("Defendant" or "VSS") for

alleged wage and hour violations.  Defendant retails apparel and accessories for women.  Plaintiffs seek to represent a class of Defendant's current and former non-exempt employees.

The case has a lengthy history.  After numerous proceedings a settlement was preliminarily approved on September 8, 2022 as addressed in the Court's order of September 14, 2022.  Notice was given to the Class Members as ordered (see Declaration of Irvin Garcia attached as Exhibit 2 to the Declaration of Melissa A. Huether ISO Final).

Plaintiffs' motion for final approval of the Settlement Agreement, including for payment of fees, costs, and a service award to the named Plaintiffs, came on for hearing on January 23, 2022.  A special appearance was made by counsel Esther L. Bylsam on behalf of putative class member  Monique Tirado and advising of another action pending involving Tirado and defendant. The matter was continued to February 2, 2023.

At hearing on February 2, 2023 counsel for the class (Ms. Huether) represented that notice of this action had been given to Ms. Tirado. Further, counsel stipulated that Ms. Tirado would be permitted to opt out of this action at this time.

For the reasons set forth below, the Court grants final approval of the settlement and sets fees, costs, and service awards.

//

//

//

//

//

## II.  THE TERMS OF THE SETTLEMENT

### A.      SETTLEMENT CLASS DEFINITION

"Settlement Class" means: All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2013 and May 26, 2021. (¶7.a)

"PAGA Group" means: All non-exempt employees employed by Defendant Victoria's Secret Stores, LLC in California at any time between January 3, 2016 and May 26, 2021. (¶7.b)

Persons Expressly Excluded From the Settlement Class: Any person who previously settled or released all of the claims covered by this settlement, any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by this settlement, and/or any person who excludes him or herself from the Settlement Class pursuant to this Settlement Agreement, shall not be a member of the Settlement Class. (¶7.c)

### B.      THE MONETARY TERMS OF SETTLEMENT

The essential monetary terms are as follows:

- The Maximum Settlement Amount is **$5,000,000** (¶11.a).  This includes payment of a PAGA penalty of **$500,000** to be paid 75% to the LWDA ($375,000) and 25% to PAGA Group Members ($125,000) (¶11.d).

The Net Settlement Amount ("Net") (**$2,625,500**) is the GSA less:

  - o  Up to **$1,665,000** (33.3%) for attorney fees (¶11.b);
  - o  Up to **$41,000** for attorney costs (*Ibid.*);

3

- - o Up to **$13,500 total** [$7,500 to Plaintiff Ochoa; $3,000 each to Plaintiffs Velazquez and Fregoso] for service awards to Plaintiffs (¶11.c); and
  - o Up to **$155,000** for settlement administration costs (¶11.a).
- Employer-side payroll taxes will be paid by Defendant in addition to the Maximum Settlement Amount (¶11.a.2).
- Assuming the Court approves all maximum requested deductions, approximately $2,625,500 will be available for automatic distribution to participating class members. Assuming full participation, the average settlement share will be approximately **$53.83**. ($2,625,500 Net ÷ 48,773 class members = $53.83). In addition, each PAGA Group Member will receive a portion of the PAGA penalty, estimated to be **$3.87** per PAGA Group Member. ($125,000 or 25% of $500,000 PAGA penalty ÷ 32,236 PAGA Group Members = $3.87). The highest amount payable is $559.98 and the lowest is $1.28. Declaration of Irvin Garcia ¶ 11.
- There is no Claim Requirement (¶11.a).
- The settlement is not reversionary (¶11.a).
- Individual Settlement Share Calculation: Each Settlement Class Member's "Individual Settlement Award" shall equal the Settlement Class Member's number of workweeks worked during the applicable class period divided by the total workweeks worked by all Settlement Class Members during the applicable class period, multiplied by the Settlement Class Member Allocation. (¶14.c.1) The amounts representing the Individual Settlement Awards of Settlement Class Members who opt out of participating in the settlement will remain a part of the Settlement Class Member Allocation and be distributed to Settlement Class Members who have not opted out. Thus, the total of all Individual Settlement

Awards necessarily will equal the Settlement Class Member Allocation.
(¶14.c.1.i)

- o PAGA Group Member's Individual PAGA Payments: In addition to any Individual Settlement Award, each PAGA Group Member's Individual PAGA Payment shall equal the PAGA Group Member's number of workweeks worked during the PAGA Group Period divided by the total number of workweeks worked by all PAGA Group Members during the PAGA Group Period, multiplied by the PAGA Group Share. (¶14.c.2)

- Tax Withholdings: 33% as wages, 33% as interest, 34% as penalties (¶14.c.5).
- Funding and Distribution: Defendant will fund a qualified settlement fund established by the Claims Administrator no later than fourteen (14) days after Court grants final approval to the Settlement. (¶21.b) Net payments to Settlement Class Members (including any Court-approved payments to Plaintiffs), payment to Settlement Class Counsel for Court-approved attorneys' fees and costs, payment to PAGA Group Members, and payment to the Claims Administrator for all settlement administration expenses shall be made no later than five (5) business days after the Effective Date. (¶21.a)
- Uncashed Settlement Payment Checks: All checks issued by the Claims Administrator will be valid for a period of one hundred eighty (180) days following issuance by the Claims Administrator, after which they will become void. Should there remain uncashed checks thirty (30) days following issuance, the Claims Administrator will mail a postcard to each holder of an uncashed check to remind them to cash the funds before the void date. Following the void date, and pursuant to California Code of Civil Procedure § 384, the Claims Administrator will cause the aggregate sum represented by those uncashed

checks to be transmitted to the California State Controller's Office's Unclaimed Property Division in the name of the Settlement Class Members. (¶14.d)

- Other - Dismissal of *Velazquez/Fregoso* Action: As a material term of this settlement, Plaintiffs Velazquez and Fregoso shall dismiss the *Velazquez/Fregoso* Lawsuit within five (5) days after filing the amended complaint contemplated by Paragraph 3 of the Settlement Agreement. (¶4). Counsel shall be prepared t hearing to provide a copy of this dismissal.

## C.    TERMS OF RELEASES

- Released Claims by Settlement Class Members: As of the Effective Date, or at the time that Defendant fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later, all Settlement Class Members who did not submit a valid request for exclusion release Defendant (i.e., Victoria's Secret Stores, LLC) and each of its respective past, present and future owners, stockholders, members, all present and former parent corporations, related or affiliated companies and agents, including Victoria's Secret & Co., L Brands, Inc. (now known as Bath & Body Works, Inc.), and their current and former subsidiaries and affiliates (including the L Brands Defendants, Limited Brands Sourcing, Inc., and Limited Brands Direct Holding, Inc.), officers, directors, shareholders, exempt employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, each of their company-sponsored employee benefit plans of any nature (including, without limitation, profit-sharing plans, pension plans, 401(k) plans, and severance plans), and all of their respective officers, directors, employees, administrators, fiduciaries,

trustees and agents, and any individual or entity that could be jointly liable with Defendant (collectively, the "Releasees") from the "Released Claims." The "Released Claims" shall consist of the "Released Class Claims" and the "Released PAGA Claims," as defined. (¶23)

- For purposes of this Settlement Agreement, the "Released Class Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant California Labor Code §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1194, 1197, 1198, 1199, IWC Wage Order 7-2001, Cal. Code Regs. Tit. 8, § 11070, Cal. Bus. & Prof. Code § 17200, et seq. ("Section 17200") as to the Labor Code provisions and causes of action identified in this paragraph, and any similar claims under the Fair Labor Standards Act (including under 29 U.S. Code § 216(b)), whether for allegedly unpaid wages, damages, liquidated damages, penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably relating to, alleged failures to provide uninterrupted and duty-free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to

account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (e.g., permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200. (¶23)

- PAGA Release: For purposes of this Settlement Agreement, the "Released PAGA Claims" are defined as: All claims, demands, rights, liabilities, and causes of action that were set forth in the operative LWDA notice letter dated February 28, 2022, or reasonably arise out of the same set of operative facts as set forth in that LWDA notice letter dated February 28, 2022, that were asserted, or could have been asserted, pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, et seq. ("PAGA") based on alleged underlying California Labor Code violations of §§ 201-204, 223, 226, 226.3, 226.7, 510, 512, 515, 1174, 1194, 1197, 1197.1, 1198, IWC Wage Order 7-2001 (including Wage Order 7-2001(14)(A) and (B)), Cal. Code Regs. Tit. 8, § 11070, whether for civil penalties (including, but not limited to, claims for penalties pursuant to Labor Code §§ 218, 225.5, 226, 210, 226.3, 256, 558, 515, 1174.5, 1197.1, 1199, 2699(f)), 2699.3, 2699.5), attorneys' fees, and/or costs (including, but not limited to, attorneys' fees and costs pursuant to Labor Code §§ 218.5, 1193.6, 2699(g), Code of Civil Procedure § 1021.5), or interest arising out of the claims at issue, including, but not limited to: causes of action based on, or reasonably related to, alleged failures to provide uninterrupted and duty-

8

free meal periods and rest breaks of the requisite duration; alleged failures to provide "separate rest break" pay; alleged failures to pay meal period and rest break premiums, including at the proper rate; alleged failures to pay overtime wages, including by failing to account for bonuses / incentives in the "regular rate" for overtime purposes; alleged failures to pay for all hours worked (e.g., permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged failures to provide suitable seating. (¶23)

- o In the event that a Settlement Class Member, who is also a member of the PAGA Group, opts out of the Settlement, the Settlement Class Member will remain a member of the PAGA Group, receive a share of the PAGA settlement, and release the Released PAGA Claims. (*Ibid.*)

- The releases are effective as of the Effective Date (¶21.a), or at the time that Defendant fully funds the Settlement Amount (including its share of payroll taxes) whichever occurs later. Defendant will fund a qualified settlement fund established by the Claims Administrator no later than fourteen (14) days after Court grants final approval to the Settlement. (¶21.b)

## III.  ANALYSIS OF SETTLEMENT AGREEMENT

"Before final approval, the court must conduct an inquiry into the fairness of the proposed settlement." Cal. Rules of Court, rule 3.769(g). "If the court approves the settlement agreement after the final approval hearing, the court must make and enter

1  judgment.  The judgment must include a provision for the retention of the court's

2  jurisdiction over the parties to enforce the terms of the judgment.  The court may not

3  enter an order dismissing the action at the same time as, or after, entry of judgment."

4  Cal. Rules of Court, rule 3.769(h).

5       As discussed more fully in the Order conditionally approving the settlement, "[i]n

6  a class action lawsuit, the court undertakes the responsibility to assess fairness in order to

7  prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class

8  action.  The purpose of the requirement [of court review] is the protection of those class

9  members, including the named plaintiffs, whose rights may not have been given due

10  regard by the negotiating parties."  See *Consumer Advocacy Group, Inc. v. Kintetsu*

11  *Enterprises of America* (2006) 141 Cal. App.4th 46, 60 [internal quotation marks

12  omitted]; see also *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245

13  ("*Wershba*"), disapproved on another ground in *Hernandez v. Restoration Hardware*

14  (2018) 4 Cal.5th 260 [Court needs to "scrutinize the proposed settlement agreement to the

15  extent necessary to  reach a reasoned judgment that the agreement is not the product of

16  fraud or overreaching by, or collusion between, the negotiating parties, and that the

17  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."] [internal

18  quotation marks omitted].

19       "The burden is on the proponent of the settlement to show that it is fair and

20  reasonable. However 'a presumption of fairness exists where: (1) the settlement is

21  reached through arm's-length bargaining; (2) investigation and discovery are sufficient to

22  allow counsel and the court to act intelligently; (3) counsel is experienced in similar

23  litigation; and (4) the percentage of objectors is small.'"  See *Wershba, supra,* 91

24  Cal.App.4th at pg. 245, citing *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794,

25  1802.  Notwithstanding an initial presumption of fairness, "the court should not give

1    rubber-stamp approval." See *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th

2    116, 130. "Rather, to protect the interests of absent class members, the court must

3    independently and objectively analyze the evidence and circumstances before it in order

4    to determine whether the settlement is in the best interests of those whose claims will be

5    extinguished." *Ibid.*, citing 4 Newberg on Class Actions (4th ed. 2002) § 11:41, p. 90. In

6    that determination, the court should consider factors such as "the strength of plaintiffs'

7    case, the risk, expense, complexity and likely duration of further litigation, the risk of

8    maintaining class action status through trial, the amount offered in settlement, the extent

9    of discovery completed and stage of the proceedings, the experience and views of

10   counsel, the presence of a governmental participant, and the reaction of the class

11   members to the proposed settlement." *Id.* at 128. This "list of factors is not exclusive and

12   the court is free to engage in a balancing and weighing of factors depending on the

13   circumstances of each case." *Wershba, supra,* 91 Cal.App.4th at pg. 245.)

### A.    A PRESUMPTION OF FAIRNESS EXISTS

15   The Court preliminarily found in its Order of September 14, 2022 that the

16   presumption of fairness should be applied. No facts have come to the Court's attention

17   that would alter that preliminary conclusion. Accordingly, the settlement is entitled to a

18   presumption of fairness as set forth in the preliminary approval order.

### B.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

20   The settlement was preliminarily found to be fair, adequate and reasonable.

21   Notice has now been given to the resulted in the following: Class and the LWDA. The

22   notice process

23            Number of class members: 48,777

24            Number of notices mailed: 48,777

25            Number of undeliverable notices: 726

1    Number of opt-outs: 5

2    Number of objections: 0

3    Number of participating class members: **48,773**

4 (Declaration of Irvin Garcia ("Garcia Decl.") ¶¶3-10.)

5    The Court finds that the notice was given as directed and conforms to due process

6 requirements. Given the reactions of the Class Members and the LWDA to the proposed

7 settlement and for the reasons set for in the Preliminary Approval order, the settlement is

8 found to be fair, adequate, and reasonable.

9    **C.    CLASS CERTIFICATION IS PROPER**

10    For the reasons set forth in the preliminary approval order, certification of the

11 Class for purposes of settlement is appropriate.

12    **D.    ATTORNEY FEES AND COSTS**

13    Class Counsel requests **$1,665,000** (33.3%) for attorney fees and **$41,000** for

14 costs. (Motion for Attorneys' Fees at 6:2-4.)

15    Courts have an independent responsibility to review an attorney fee provision and

16 award only what it determines is reasonable. *Garabedian v. Los Angeles Cellular*

17 *Telephone Company* (2004) 118 Cal.App.4th 123, 128. A percentage calculation is

18 permitted in common fund cases. *Laffitte v. Robert Half Int'l, Inc.* (2016) 1 Cal.5th 480,

19 503.

20    In the instant case, fees are sought pursuant to the percentage method, as cross-

21 checked by lodestar. (Motion for Attorneys' Fees at pp. 6-12.) The $1,665,000 fee

22 request is 33.3% of the Maximum Settlement Amount.

23    A lodestar is calculated by multiplying the number of hours reasonably expended

24 by the reasonably hourly rate. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084,

25 1095-1096 (*PLCM*). "Generally, '[t]he lodestar is calculated using the reasonable rate

for comparable legal services in *the local community* for noncontingent litigation of the same type, multiplied by the reasonable number of hours spent on the case.' " *Environmental Protection Information Center v. Dept. of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 248, quoting *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1242-1243.

As to the reasonableness of the rate and hours charged, trial courts consider factors such as "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances." *PLCM, supra,* 22 Cal.4th at p. 1096. "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.

Attorney Huether of Lavi & Ebrahimian, LLP represents that her firm spent approximately 608.3 hours on this matter. (Declaration of Melissa A. Huether ISO Final ¶31.) She summarizes her firm's work performed on the case, though she does not aggregate the hours by task so that the Court can make an informed decision as to how much time was spent on claims and the like. (*Id.* at ¶32.) She represents that her firm incurred a lodestar of $400,395 based on hourly rates for four attorneys ranging from $500 to $750. She asserts that these hourly rates are appropriate based on the Laffey Matrix as well as comparisons to the rates charged by other attorneys practicing in the field of employment law in Los Angeles. (*Id.* at ¶¶33-37, Exhibits 4-11 thereto.) However, she has not indicated whether their rates were approved by other courts.

Attorney deRubertis of The deRubertis Law Firm, APC represents that his firm spent approximately 435 hours on the case. (Declaration of David M. deRubertis ISO Final ¶22.) He asserts that his hourly rate is $1,100 per hour, resulting in a lodestar of

1    $478,500. (*Id.* at ¶31.) He represents that in June 2021, his then-current rate of $1,000

2    per hour was approved in a contested FEHA fee application and in a contested fee

3    application in an employment case. (*Id.* at ¶26.) He further contends that his hourly rate

4    for this action is below market level for work of similar complexity by attorneys

5    practicing in Los Angeles, referencing fee orders for counsel in other employment cases

6    that exceeded his own rate. (*Id.* at ¶¶23-28.) He also compares his rate to those of

7    several firms listed in the National Law Journal Billing Surveys for 2017, 2016 and

8    2014, though he does not attach the actual surveys. (*Id.* at ¶29.)

9        Class Counsel's combined lodestar of $878,895 implies a multiplier of 1.89, which

10    is on the high side of acceptable multipliers for this kind of work.

11        Nonetheless, the **$1,665,000** fee request represents a reasonable percentage of the

12    total funds paid by Defendant. Further, the notice expressly advised class members of

13    the fee percentage, and no one objected. (Garcia Decl. ¶9, Exhibit A thereto.)

14    Accordingly, the Court awards fees in the amount of **$1,665,000**.

15        <u>Fee Split</u>: Plaintiffs' counsel represent that they entered into a fee-splitting

16    agreement in writing and consented to by the Plaintiffs as required by the Rules of

17    Professional Conduct, though the percentage of the fee split was not disclosed to the

18    Court. (deRubertis Decl. ISO Final ¶18.)

19        Class Counsel requests **$41,000** in costs. This is equal to the $41,000 cap

20    provided in the settlement agreement (¶11.b). The amount was not specifically disclosed

21    to Class Members in the Notice form, though it directed class members to the settlement

22    website for further information and no objections were received. (Garcia Decl. ¶9,

23    Exhibit A thereto.) Attorney Huether represents that her firm incurred $34,191.61 in

24    costs while attorney deRubertis's firm incurred $11,946.16, for a total of $46,137.77 in

25    actual costs. (Huether Decl. ISO Final ¶38; deRubertis Decl. ISO Final ¶32.) Costs

include: Mediation ($11,950), Professional Research Services ($5,616), and Deposition Services ($3,478.35). (Huether Decl. ISO Final, Exhibit 3; deRubertis Decl. ISO Final, Exhibit H.) The costs appear to be reasonable and necessary to the litigation, are reasonable in amount, and were not objected to by the class.

For all of the foregoing reasons, costs of **$41,000** are approved.

## E.    SERVICE AWARDS TO CLASS REPRESENTATIVES

A service (or incentive) fee award to a named class representative must be supported by evidence that quantifies the time and effort expended by the individual and a reasoned explanation of financial or other risks undertaken by the class representative. See *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 806-807; see also *Cellphone Termination Cases* (2010) 186 Cal.App.4th 1380, 1394-1395 ["Criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. (Citations.)"].

Here, the Class Representatives request enhancement awards totaling **$13,500**. Plaintiff Ochoa seeks an award of $7,500, while Plaintiffs Velazquez and Fregoso seek awards of $3,000 each. (MFA at 12:4-6.) They urge that the awards are appropriate for the following reasons:

Plaintiff Ochoa represents that her contributions to the action include: meeting with her attorneys, discussing Defendant's policies and practices with them, searching for policies and other employment-related documents for her attorneys, responding to her attorneys' calls and interviews, attending her deposition on July 30, 2019, being

available during the full day mediations, and reviewing the settlement. She estimates spending approximately 55 hours on the action. (Declaration of Elizabeth Ochoa ISO Final ¶4.) She asserts that she knew the risk that filing the lawsuit could have on her future employment opportunities, though she has not shown that this has occurred. (*Id.* at ¶5.)

In similar declarations, Plaintiffs Velazquez and Fregoso each represent that their contributions to the action include: meeting with their attorneys, discussing Defendant's policies and practices with them, searching for policies and other employment-related documents for their attorneys, responding to their attorneys' calls and interviews, being available during the full day mediations, and reviewing the settlement. Plaintiff Velazquez estimates spending approximately 30 hours on the action, while Plaintiff Fregoso estimates spending 32 hours. (Declaration of Monica Velazquez ISO Final ¶4; Declaration of Crystal Fregoso ISO Final ¶4.) They each assert that they knew the risk that filing the lawsuit could have on their future employment opportunities, though they have also not shown that this has occurred. (*Id.* at ¶5.)

In light of the above-described contributions to this action, and in acknowledgment of the benefits obtained on behalf of the class, service awards in the amounts of **$7,500** to Plaintiff Ochoa and **$3,000 each** to Plaintiffs Velazquez and Fregoso are reasonable and approved.

## F.    SETTLEMENT ADMINISTRATION COSTS

The Settlement Administrator, CPT Group, Inc., requests **$155,000** in compensation for its work in administrating this case. (Garcia Decl. ¶13.) At the time of preliminary approval, costs of settlement administration were estimated at $155,000 (¶11.a). Class Members were provided with notice of this amount and did not object. (Garcia Decl. ¶9, Exhibit A thereto.)

Accordingly, settlement administration costs are approved in the amount of **$155,000.**

## IV.  CONCLUSION AND ORDER

The Court hereby:

(1)  Grants class certification for purposes of settlement;

(2)  Grants final approval of the settlement as fair, adequate, and reasonable;

(3)  Awards **$1,665,000** in attorney fees to Class Counsel, Lavi & Ebrahimian, LLP and The deRubertis Law Firm, APC;

(4)  Awards **$41,000** in litigation costs to Class Counsel;

(5)  Approves payment of **$375,000** (75% of $500,000 PAGA penalty) to the LWDA;

(6)  Awards Class Representative Service Awards of **$7,500** to Plaintiff Ochoa and **$3,000 each** to Plaintiffs Velazquez and Fregoso;

(7)  Awards **$155,000** in settlement administration costs to CPT Group, Inc.;

(8)  Orders class counsel to lodge a proposed Judgment, consistent with this ruling and containing the class definition, full release language, and the names of the class members who opted out by February 8, 2023;

(9)  Orders class counsel to provide notice to the class members pursuant to California Rules of Court, rule 3.771(b) and to the LWDA pursuant to Labor Code §2699 (l)(3); and

//

//

//

//

//

(10) Sets a Non-Appearance Case Review re: Final Report re: Distribution of Settlement Funds for November 28, 2023 at 8:30 a.m.. Final Report is to be filed by November 17, 2023.

Dated: 2/3/2023

MAREN E. NELSON

Judge of the Superior Court

18