UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Monique Tirado,

Plaintiff,

v.

Victoria's Secret Stores, LLC, et al.,

Defendants.

1:21-cv-00636-KJM-SKO

ORDER

This matter is before the court on the motion for judgment on the pleadings by defendants Victoria Secret Stores, LLC and L Brands, Inc. (together, "Victoria's Secret" for ease of reference). Victoria's Secret contends the proposed class claims against it are barred by the doctrines of res judicata and release. As explained in this order, **the motion is granted in part**, but with leave to amend.

## I. BACKGROUND

Tirado worked as a non-exempt employee for defendants in Visalia, California, from November 1, 2020, until December 6, 2020. Compl. ¶ 6, ECF No. 1. Her claims arise from a temperature check policy Victoria's Secret began in response to the COVID-19 pandemic. *Id.* ¶ 1. Tirado alleges the policy required employees to spend approximately five minutes before each shift undergoing temperature screenings while off the clock and without compensation. *Id.*

¶ 17. She alleges Victoria's Secret implemented the temperature screenings on approximately March 4, 2020, throughout California. *Id.* ¶¶ 17–19.

In April 2021, Tirado filed the operative complaint against defendants alleging five claims: (1) failure to pay for all hours worked under California Labor Code section 204; (2) failure to pay minimum wage and liquidated damages under Labor Code sections 1182.11, 1182.12, 1194, 1197, and 1197.1; (3) waiting time penalties under Labor Code sections 201–03; (4) failure to provide timely and accurate itemized wage statements under Labor Code section 226; and (5) unlawful business practices under California Business and Professions Code sections 17200. *See generally* Compl. Tirado seeks to represent a proposed class: "All current and former hourly, non-exempt workers employed at any Victoria's Secret store throughout California during the time period starting March 4, 2020, until resolution of this action." *Id.* ¶ 31. Defendants filed an answer. ECF No. 7. Relying on Federal Rule of Civil Procedure 12(c), defendants now move for judgment on the pleadings as to Tirado's putative class claims. *See* Mot., ECF No. 45. The motion is fully briefed. *See generally* Opp'n, ECF No. 51; Reply, ECF No. 53.

Defendants' motion is based on arguments about the preclusive effects of the resolution of another case against Victoria's Secret filed in state court on March 14, 2017, by Elizabeth Ochoa, another former employee. *See generally* Req. J. Not. Ex. A, ECF No. 46-1 (second amended complaint filed in *Ochoa*). Ochoa's claims included several that are very similar to those in Tirado's own complaint, including minimum wage claims.[1] Those claims arose from a Victoria's Secret policy allegedly requiring employees to arrive approximately fifteen minutes before their shifts to "perform work (sometimes called 'pre-shift work'), including arrang[ing] the stores before they opened to the public." *Id.* ¶ 18. Ochoa did not allege, however, that Victoria's

[1] Ochoa asserted eight claims: (1) failure to pay wages for all time worked at minimum wage in violation of Labor Code sections1194 and 1197; (2) failure to pay proper overtime under Labor Code sections 510, 1194, and 1198; (3) failure to authorize or permit meal periods in violation of Labor Code sections 512 and 226.7; (4) failure to authorize or permit rest periods in violation of Labor Code section 226.7; (5) failure to provide complete and accurate wage statements in violation of Labor Code section 226; (6) failure to timely pay all earned wages and final paychecks in violation of Labor Code sections 201, 202, and 203; (7) unfair business practices in violation of Business and Professions Code section 17200, et seq.; (8) civil penalties pursuant to the Private Attorneys General Act (PAGA), Labor Code section 2698 *et seq*. *Id.*

Secret had required its employees to undergo temperature checks without pay. At the time, the coronavirus pandemic was still more than two years in the future. Nor is there evidence in the record showing Ochoa amended or supplemented her complaint to assert claims about temperature checks for COVID-19.

The superior court approved a settlement agreement in the *Ochoa* action in February 2023. *See* Req. J. Not. Ex. B, ECF No. 46-2 (order approving settlement agreement and summarizing terms of settlement). The agreement released Victoria's Secret and others from liability for specific claims by members of the settlement class, which it defined as "[a]ll non-exempt employees employed by [Victoria's Secret] in California at any time between January 3, 2013 and May 26, 2021." *Id.* at 4; *see also id.* at 7–9 (defining terms of releases).[2] For reference, Tirado's proposed class in this case would include people who worked at Victoria's Secret between March 4, 2020—during the Ochoa class period—and the conclusion of this action. *See* Compl.¶ 31. The settlement agreement in *Ochoa* defined the released claims as follows:

> All claims, demands, rights, liabilities, and causes of action that were asserted in the operative Second Amended Complaint on behalf of the Settlement Class Members, or could have been asserted on behalf of the Settlement Class Members because they reasonably arise out of the same set of operative facts as alleged in the operative Second Amended Complaint, pursuant [to several specific sections of California and federal law], whether for allegedly unpaid wages, damages, liquidated damages, penalties, attorneys' fees and costs as to the Labor Code provisions and causes of action identified in this paragraph . . . , including, but not limited to: . . . alleged failures to pay for all hours worked (e.g., permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred; alleged failures to pay associates the applicable minimum wage; alleged failures to pay reporting time pay; alleged failures to provide accurate wage statements; alleged failures to maintain accurate records, alleged failures to pay all wages owing at termination; and alleged unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

Req. J. Not. Ex. C at 4, ECF No. 46-3. Tirado submitted a valid request to be excluded from the terms of this release, as recorded in the state court's judgment. *See id.* ¶ 7.

[2] Pages cited here are those applied at the top right by the CM/ECF system.

Defendants argue the settlement agreement and judgment in the *Ochoa* action bar Tirado from asserting claims on behalf of any employees who worked at Victoria's Secret through May 26, 2021—the end date used to define the *Ochoa* settlement class—under the doctrines of res judicata and release. *See* Mot. at 7–8. They also argue she cannot represent any employees who worked at Victoria's Secret after May 26, 2021, because she stopped working at Victoria's Secret before then, in December 2020. *See id.* at 8. Defendants request judgment on the pleadings to this effect. They do not move to dismiss or seek judgment on Tirado's own claims, given her valid request to be excluded from the release in *Ochoa*.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) claim, thus the same standard of review applies. *Gregg v. Hawaii, Department of Public Safety,* 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)); *see also Baiul v. NBC Sports, a division of NBCUniversal Media, LLC*, 732 F. App'x 529, 531 (9th Cir. 2018) (unpublished) (affirming district court's dismissal of plaintiff's claims based on res judicata because Rule 12(b)(6) and Rule 12(c) motions have same standard of review). A plaintiff must support each claim for relief with factual allegations that allow the court to draw a plausible inference of a defendant's potential liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(c) motion, the court assumes all factual allegations in the pleadings are true and draws "all reasonable inferences in favor of the non-moving party." *Gregg*, 870 F.3d at 886–87 (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)); *see also Doutherd v. Motesdeoca*, No. 17-02225, 2021 WL 1784917, at *3 (E.D. Cal. May 5, 2021) (summarizing these rules and collecting authority).

## III. ANALYSIS

### A. Can defendants rely on Rule 12(c) in these circumstances?

Tirado first argues defendants cannot rely on Rule 12(c) to advance arguments about the *Ochoa* action and settlement agreement. She contends Rule 12(c) does not permit partial

judgments, and she argues defendants' motion seeks a partial judgment disposing of only her putative class claims, not her individual claims. *See* Opp'n at 8. Tirado is correct that "courts have not entertained motions for partial judgment on the pleadings for only a part of an individual claim or defense or 'with respect to less than a full cause of action.'" *Swasey v. Seterus, Inc.*, No. 16- 01633, 2021 WL 4443283, at *2 (E.D. Cal. Sep. 28, 2021) (quoting *Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046, 1062–63 (S.D. Cal. 2019)).

In reply, defendants contend Rule 12(c) permits dismissals based on affirmative defenses, such as release and res judicata, citing the Ninth Circuit's opinion in *ASARCO, LLC v. Union Pacific Railroad Co.* *See* Reply at 1–2 (citing 765 F.3d 999, 1004 (9th Cir. 2014)). The Circuit's opinion in *ASARCO* neither forecloses nor authorizes defendants' motion. The Circuit did not hold that a defendant may seek to dispose of only part of a claim in a Rule 12(c) motion; it recognized only that an action or claim may be dismissed in its entirety "if the defendant shows some obvious bar to securing relief on the face of the complaint." *Id.* at 1004.

More to the point, however, defendants do cite multiple cases in which district courts have entertained Rule 12 motions that seek the dismissal or striking of only portions of specific claims. In *Allen v. Raley's*, for example, another judge of this court granted judgment on the pleadings under Rule 12(c) with respect to portions of several individual claims based on the preclusive effects of previous litigation. *See* No. 12-226, 2013 WL 1339062, at *3–6 (E.D. Cal. Apr. 3, 2013). In *Zamora v. Penski Truck Leasing Co.*, the district court granted a defense motion to dismiss or strike the plaintiff's class allegations under Rule 12(b)(6) and (f), but not her individual allegations. *See* No. 20-2503, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021). This court also has analyzed requests to strike class allegations under the terms of Rule 12(f), although as it has explained, a Rule 12 motion is not necessarily an appropriate vehicle for arguments about the propriety of class litigation. *See, e.g.*, *Hood v. City of Sacramento*, No. 23-0232, 2023 WL 6541870, at *7 (E.D. Cal. Oct. 6, 2023) (denying motion to strike and noting other courts "have generally refused" similar motions "before any discovery has commenced"); *Maestas v. Wal-Mart Stores, Inc.*, No. 16-2597, 2018 WL 1518762, *4–5 (E.D. Cal. Mar. 28, 2018) (denying

motion to strike, as allegations were "well-defined enough to proceed beyond the pleadings stage").

Rule 12 motions seeking to dismiss or strike class allegations are common enough, in fact, that federal courts have often been asked to decide whether to entertain the question at the pleadings stage or to defer the issue until the plaintiffs seek class certification. When faced with that choice, federal courts have held that "dismissal of class allegations at the pleading stage should be done rarely." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (quoting *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *4 (D.N.J. Dec. 20, 2006); collecting authority). The pleadings alone will "often" fall short of showing whether claims can be certified for class litigation. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). But a complaint must have some "factual support" beyond a bare assertion that the plaintiffs bring claims on behalf of a class. *Zamora*, 2021 WL 809403, at *3. "[I]f a class action complaint could survive a motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-1093, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015).

For these reasons, the court will not deny defendants' motion just because they seek judgment on only Tirado's class claims and not her individual claims. If this is a "rare case where the pleadings indicate that the class requirements cannot possibly be met," *Kazemi v. Payless Shoesource Inc.*, No. 09-5142, 2010 WL 963225, at *3 (N.D. Cal. Mar. 16, 2010), or if there is "some obvious bar" to the proposed class that is apparent "on the face of the complaint," *ASARCO*, 765 F.3d at 1004, then Tirado's class allegations will be dismissed or stricken under an applicable provision of Rule 12, whether that is Rule 12(c), 12(b)(6), 12(f), or another provision.

**B. Does the release in the *Ochoa* action bar this action?**

As noted, Victoria's Secret argues the settlement agreement that resolved the *Ochoa* action released it from liability in this action. District courts may enforce completed settlement agreements if they have jurisdiction to do so. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

442 F.3d 741, 748 (9th Cir. 2006); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "A settlement is a contract, and its enforceability is governed by familiar principles of contract law." *Knudsen v. Comm'r*, 793 F.3d 1030, 1035 (9th Cir. 2015). Under both federal and California law, a class action settlement agreement with a release provision is enforceable against a later action only when the later action is both within the scope of that release and is "based on the identical factual predicate as that underlying the claims in the settled class action." *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 537 (2021) (emphasis omitted) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). What makes factual predicates "identical" are the harms and injuries, not the legal theories. *See Reyn's Pasta Bella*, 442 F.3d at 749; *Amaro*, 69 Cal. App. 5th at 538.

In *Amaro*, for example, the plaintiffs had asserted wage and hour claims based on allegations about a rounding system in their employer's timekeeping software, uncompensated time spent walking or taking shuttles to and from the parking lot, missed meal and rest breaks and other similar claims. *See Amaro*, 69 Cal. App. 5th at 529–30, 537. But by its own terms, the release reached beyond those claims. It extended to all "potential claims . . . in any way relating to the same set of operative facts." *Id.* at 535 (emphasis omitted). An employee's claim of retaliatory termination for reporting Labor Code violations would fit that broad description, but a retaliation claim would be about different facts (the employee's report) and a different injury (the retaliatory termination), so the release could not cover it. *See id.* at 537–38. In *Reyn's Pasta Bella*, by contrast, the Ninth Circuit held the release was enforceable. *See* 442 F.3d at 748. In a previous case, a class of merchants had alleged two credit card companies had set excessive fees "by 'tying' their debit cards to their credit cards and conspiring to monopolize the debit-card market." *Id.* at 745. The case settled on the eve of trial. *Id.* In a later case, two members of the class alleged the credit card companies and several banks had fixed the same fees, but directly. *See id.* at 744–45. They relied on a different legal theory, but "the price-fixing predicate . . . and the underlying injury" were "identical." *Id.* at 749.

As noted, a settlement agreement is a contract, so the first step here is to interpret the release in the *Ochoa* action. The relevant rules of contract interpretation are well established. In

short, contracts must be "interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting," and when the contract is in writing, such intention "is to be ascertained from the writing alone, if possible." *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 558–59 (1999) (first quoting Cal. Civ. Code § 1636, second quoting *id.* § 1639); *see also Navarro v. Mukasey*, 518 F.3d 729, 734 (9th Cir. 2008) (applying California law). Courts view a contract's language "as a whole, avoiding a piecemeal, strict construction approach." *Segal v. Silberstein*, 156 Cal. App. 4th 627, 633 (2007). "When interpreting contracts, the language used controls if it is clear and explicit." *Id.*

The operative complaint in *Ochoa* alleged Victoria's Secret had "a policy, practice, and/or procedure whereby [it] required [employees] to arrive approximately 15 minutes prior to the start of their shift in order to perform work, *including* arranging the stores before they opened to the public." Req. J. Not. Ex. A ¶ 18. (emphasis added). Like the complaint, the settlement agreement offers non-exhaustive examples of unpaid work: "failures to pay for all hours worked (e.g., permitting off-the-clock work), including during security checks and for pre-/post-shift work or time incurred." Req. J. Not. Ex. C at 4. Based on this broad language, phrased as it is in terms of examples, the *Ochoa* settlement covers all off-the-clock work—all mandatory tasks required of employees—fifteen minutes before the start of a shift. The references to security checks and arrangements of the stores prior to opening are illustrations of the types of activities covered; the words "including, but not limited to" make this clear. The release therefore covers Tirado's allegations about similar pre-shift work.

Tirado advocates the opposite conclusion based primarily on her argument that her allegations are specific to the COVID-19 pandemic, which is not mentioned in the *Ochoa* complaint, as it was filed before the COVID-19 pandemic took hold. Her argument carries some weight. According to her complaint, the temperature screenings were a new policy specific to the novel coronavirus and the pandemic. Then again, even though the plaintiffs in *Ochoa* did not make allegations about the pandemic, they likely could have amended or supplemented their complaint to do so, and the pandemic was in full swing at the time the final settlement agreement was approved in *Ochoa*.

The parties have not cited any case in which another court dealt with an analogous situation, i.e., a case in which a court decided whether factual allegations that were not asserted specifically within a previous complaint were released because those allegations fit within a broader category of released claims in an otherwise unobjectionable settlement agreement. Despite this apparent novelty, however, the court concludes that Tirado's claims fit the *Ochoa* release. The factual predicate of her claims—Victoria's Secret having a policy of mandatory, unpaid pre-shift activities for its employees—is identical to the factual predicate of the *Ochoa* action. The injury—the uncompensated work—is the same as well. Like the mandatory activities alleged in *Ochoa*, the temperature checks alleged in Tirado's complaint were done within fifteen minutes prior to the start of employees' shifts, and like the pre-shift tasks in *Ochoa*, the temperature checks were mandatory and in furtherance of an employment policy. Because the class claims in this case and in the *Ochoa* action are based on this "identical factual predicate," the release in *Ochoa* precludes employee class members "from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action." *Hesse*, 598 F.3d at 590 (citations omitted).

For these reasons, the court grants defendants' motion for judgment on the pleadings based on the doctrine of release, but only insofar as the class claims in this action are covered by the release in *Ochoa*. The *Ochoa* release does not bar Tirado's individual claim, and it does not bar a class claim on behalf of those who worked at Victoria's Secret after May 26, 2021. *See* Req. J. Not. Ex. C at 1 (defining *Ochoa* class period). The court need not and does not consider whether Victoria's Secret would be entitled to the same judgment based on the doctrine of res judicata.

Victoria's Secret urges the court not to permit any class claims to remain in this action. In its view, Tirado cannot assert claims on behalf of people who worked at its stores after May 26, 2021, because she did not work at a Victoria's Secret store after December 2020. *See* Mot. at 16–17. It frames this issue in terms of constitutional standing. *See id.* There is no question, however, that Tirado alleges she herself was injured by the defendants' policy not to pay for time spent undergoing pre-shift temperature checks. She has standing. *See Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560–61 (1992) (discussing elements of standing and related burdens of proof). Victoria's Secret is correct, however, that under Federal Rule of Civil Procedure 23(a), Tirado could not represent a class of employees who worked at its stores after she left the company. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (named plaintiff not an adequate representative of class if she is not member of it). Tirado is therefore granted leave to amend her complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)). To be clear, this order permits an amended complaint with or without claims by an additional named plaintiff seeking to represent a class of employees with claims that would not be barred by the release in the *Ochoa* action.

## IV. CONCLUSION

For the reasons above, the court **grants in part** the motion for judgment on the pleadings **with leave to amend**. Any amended complaint must be filed **within twenty-one days**.

This order resolves ECF No. 45.

IT IS SO ORDERED.

DATED: March 18, 2025.

SENIOR UNITED STATES DISTRICT JUDGE